UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOLID 21, INC., <br><br> Plaintiff, <br><br> v. <br><br> BREITLING U.S.A., INC.; BREITLING SA; AND BREITLING AG, <br><br> Defendants. | Civil Action No. 19-cv-00514-MPS |

**PLAINTIFF SOLID 21, INC.'S MOTION FOR SUMMARY JUDGMENT**

**Oral Argument Requested**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF RELEVANT FACTS .......................................................... 2

    A.  SOLID 21'S INCONTESTABLE RED GOLD® TRADEMARK ......................... 2

    B.  BREITLING'S INVALIDITY ARGUMENT ......................................................... 2

III.  SUMMARY JUDGMENT STANDARD .......................................................... 3

IV.  INCONTESTABLE STATUS AFFORDS GREATER PROTECTION TO A
    TRADEMARK ...................................................................................................... 4

    A.  CLASSIFICATION OF MARKS: ARBITRARY, SUGGESTIVE,
        DESCRIPTIVE, OR GENERIC ............................................................................. 4

    B.  AN INCONTESTABLE TRADEMARK'S VALIDITY CANNOT BE
        CHALLENGED MERELY ON DESCRIPTIVENESS ......................................... 5

V.  BREITLING'S TRADEMARK INVALIDITY ARGUMENT IS BASED ON
    DESCRIPTIVENESS, NOT GENERICNESS ..................................................... 6

VI.  CONCLUSION .................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Exp. Marketing and Development Corp. v. Black Card LLC*,
No. 10 Civ. 1605(DLC), 2011 WL 5825146 (S.D.N.Y. Nov. 17, 2011) .............................7

*Black & Decker Corp. v. Dunsford,*
944 F. Supp. 220 (S.D.N.Y. 1996) ....................................................................................7

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,*
973 F.2d 1033 (2d. Cir. 1992) ..........................................................................................4

*Eagle Snacks, Inc. v. Nabisco Brands, Inc.,*
625 F. Supp. 571 (D.N.J. 1985) .......................................................................................9

*Flag Co., Inc. v. Chan,*
454 F. App'x. 776 (11th Cir. 2011) ..............................................................................8, 9

*Frehling Enters., Inc. v. Int'l Select Group, Inc.,*
192 F.3d 1330 (11th Cir. 1989) .......................................................................................5

*Gruner + Jahr USA Pub. v. Meredith Corp.,*
991 F.2d 1072 (2d. Cir. 1993) ..................................................................................4, 5, 6

*Harnage v. S. Barrone,*
No. 3:15-cv-01035(AWT), 2017 WL 3448543 (D. Conn. Aug. 11, 2017) ........................3

*Haydon Switch and Instrument, Inc. v. Rexnord, Inc., Civ.*
No. N 86-190(JAC), 1987 WL 26062 (D. Conn. June 4, 1987) ....................................6, 7

*Henri's Food Prods. Co., Inc. v. Tasty Snacks, Inc.,*
817 F.2d 1303 (7th Cir. 1987) ..........................................................................................8

*Ideal World Mktg., Inc. v. Duracell, Inc.,*
15 F. Supp. 2d 239 (E.D.N.Y. 1998) ................................................................................8

*In re Seats, Inc.,*
757 F.2d 274 (Fed. Cir. 1985) ..........................................................................................9

*Investacorp, Inc. v. Arabian Inv. Banking Corp.,*
931 F.2d 1519 (11th Cir. 1991) ........................................................................................8

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
467 F.3d 1355 (Fed. Cir. 2006) ........................................................................................3

*PaperCutter, Inc. v. Fay's Drug Co., Inc.,*
    900 F.2d 558 (2d Cir. 1990) ...................................................................................... 8

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,*
    469 U.S. 189 (1985) ...............................................................................................4, 5

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.,*
    887 F. Supp. 2d 519 (S.D.N.Y. 2012) ...................................................................... 8

*Pfizer Inc. v. Astra Pharmaceutical Prods., Inc.,*
    858 F. Supp. 1305 (S.D.N.Y. 1994) ........................................................................ 8

*Pilot Corp. of America v. Fisher Price, Inc.,*
    501 F. Supp. 2d 292 (D. Conn. 2007) ...................................................................... 3

*Soweco, Inc. v. Shell Oil Co.,*
    617 F.2d 1178 (5th Cir. 1980) .................................................................................. 6

*Star Industries, Inc. v. Bacardi & Co. Ltd.,*
    412 F.3d 373 (2d Cir. 2005) ..................................................................................... 4

*Therapy Prods., Inc. v. Bissoon,*
    623 F. Supp. 2d 485 (S.D.N.Y. 2009) ..................................................................... 9

*Welding Servs., Inc. v. Forman,*
    509 F.3d 1351 (11th Cir. 2007) ............................................................................... 6

**Statutes**

15 U.S.C. § 1065 ...............................................................................................................2, 5

**Rules**

Fed. R. Civ. P. 56 ...............................................................................................................1, 3

**Other Authorities**

1 J.T. McCarthy, Trademarks and Unfair Competition § 11:22 (2d ed. 1984) ...............4

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56, Plaintiff Solid 21, Inc. ("Plaintiff" or "Solid 21") moves for summary judgment on the First Affirmative Defenses and all Counterclaims of Defendants Breitling U.S.A., Inc. ("BUSA") and Breitling SA ("BSA") (collectively, "Defendants" or "Breitling").  Solid 21 requests oral argument.

## I.   INTRODUCTION

Solid 21 owns and uses the RED GOLD® trademark, which was federally registered in 2003 and covers a class of goods comprising watches and jewelry.  RED GOLD® became an incontestable mark in 2009.  Achieving incontestable status narrows the grounds upon which a mark's validity may be challenged.  Namely, it precludes an infringer from challenging a mark's validity because it is descriptive, while leaving open the possibility of invalidating a mark because it is generic.

Breitling purports to challenge the RED GOLD® mark's validity due to its contention that the mark is generic.  According to Breitling, the mark is generic because "Red Gold" is the common name for alloys of gold and copper used to make watches and jewelry.  However, even if Breitling was correct – which it is not – its argument only suggests that "Red Gold" identifies a *characteristic* of the product (the alloy or color) as opposed to the product itself (watches or jewelry).  Even crediting Breitling's invalidity argument in its most favorable light, all it would mean is that RED GOLD® is a "descriptive" mark, not a "generic" one.  What Breitling has really done is re-labeled its "descriptiveness" argument as a "genericness" argument in order to circumvent the restrictions on challenging the validity of an incontestable mark.

Because Breitling's "genericness" invalidity arguments really go towards descriptiveness at best, including all its evidence marshaled in support, Solid 21 respectfully moves this Court to rule in its favor on BUSA and BSA's First Affirmative Defenses and all Counterclaims.

II.    STATEMENT OF RELEVANT FACTS

    A.    **Solid 21's Incontestable RED GOLD® Trademark**

Solid 21 sells luxury watches and jewelry.  Local Rule 56(a)(1) Statement of Undisputed Material Facts ("SUMF") ¶ 4.  It began using its RED GOLD® mark in connection with the sale of these products in 1989.  *Id.* ¶ 3.  The RED GOLD® trademark has been federally registered since 2003 and covers a class of goods that includes watches and jewelry.  *Id.* ¶¶ 1-2.  On June 27, 2009, Solid 21 submitted a declaration of use and incontestability to the Commissioner for Trademarks.  The declaration described that the mark had been in continuous use in commerce for five years after registration or the date of publication and was still used in commerce.  The U.S. Patent and Trademark Office accepted and acknowledged this declaration.  *Id.* ¶ 2.  In August 2009, RED GOLD® became incontestable pursuant to 15 U.S.C. § 1065.  *Id.* ¶ 2.

While Solid 21 has used RED GOLD® in commerce since 1989, the early 2000s saw its success reach new heights.  Solid 21 launched an ambitious marketing campaign to expand RED GOLD®'s reach.  Solid 21 aggressively advertised in magazines and television.  It promoted RED GOLD® in runway shows where Solid 21's RED GOLD® jewelry was prominently featured.  And Solid 21 cultivated the power of celebrity association, partnering up with celebrities such as the late Muhammad Ali for RED GOLD® co-promotions and ensuring that famous celebrities such as Naomi Campbell modeled RED GOLD® pieces in runway shows.  *Id.* ¶ 5.  All this contributed to developing RED GOLD® as a successful brand for Solid 21, success which continues to this day.

    B.    **Breitling's Invalidity Argument**

In 2011, Solid 21 sued Breitling, a watch maker and seller, in the Central District of California over the latter's alleged infringement of the RED GOLD® mark.  Dkt. No. 1, ¶ 26.  The parties eventually dismissed that case and entered into a tolling agreement pending the

outcome of another case involving the RED GOLD® mark, *Solid 21, Inc. v. Hublot of America et al. Id.*, ¶¶ 27-28.  The *Hublot* case resolved in 2018.  *Id.*, ¶ 30; Dkt. No. 1-6 at 2.  Pursuant to the tolling agreement, Solid 21 resumed its dispute with Breitling following the resolution of the *Hublot* case and filed the present action in 2019.

Breitling's *sole* argument for its contention that the RED GOLD® mark is invalid due to genericness is that "Red Gold" is the common term for a type of alloy used in jewelry and watches.  This was Breitling's argument in support of its First Affirmative Defense in its Answer.  SUMF ¶ 7 (BUSA and BSA alleging that "Red Gold" is a type of gold alloy used in watches and jewelry).  BUSA and BSA's Counterclaims echoed this.  *See id.* ¶ 7 (alleging that "Red Gold" is the common and generic name for a species of gold used in watches and jewelry).  BUSA's response to Solid 21's contention interrogatory[1] repeated these same claims.  *Id.* ¶ 7.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In resolving this, a court must view the evidence in the light most favorable to the nonmoving party by resolving ambiguities and reasonable inferences in favor of the nonmoving party.  *Pilot Corp. of America v. Fisher Price, Inc.*, 501 F. Supp. 2d 292, 295-96 (D. Conn. 2007).  "When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or

---

[1] *See Harnage v. S. Barrone*, No. 3:15-cv-01035(AWT), 2017 WL 3448543, at *7 (D. Conn. Aug. 11, 2017) (contention interrogatories seek to discover the scope or basis of an adversary's claims and to take, explain, or defend that position); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006) (contention interrogatories are "useful in narrowing and sharpening the issues, which is a major purpose of discovery," and allow the parties to pin down the opponent's theories).

denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact." *Id.*

## IV.   INCONTESTABLE STATUS AFFORDS GREATER PROTECTION TO A TRADEMARK

### A.   Classification of Marks: Arbitrary, Suggestive, Descriptive, or Generic

Trademarks are classified in one of four categories, in descending order of strength: (1) arbitrary, (2) suggestive, (3) descriptive, or (4) generic. *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384-85 (2d Cir. 2005).  On one end of this spectrum, arbitrary marks are considered the strongest because they bear no relation to the product. *Id.*  Suggestive marks refer to some characteristic of the product, but require a leap of imagination to get from the mark to the product. *Id.*  Descriptive marks identify a characteristic, quality, or ingredient of the product. *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d. Cir. 1993).  Finally, generic marks refer to the genus of which a particular product is a species. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985).  Of these four categories, generic marks are the only one that is ineligible for trademark protection. *See Star Industries*, 412 F.3d at 385.

How a mark is categorized also depends on the context.  As the Second Circuit explained, the same mark can be categorized differently depending on the product it is used with: the "word 'apple' would be arbitrary when used on personal computers, suggestive when used in 'Apple-A-Day' on vitamin tablets, descriptive when used in 'Tomapple' for combination tomato-apple juice and generic when used on apples." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d. Cir. 1992) (quoting 1 J.T. McCarthy, Trademarks and Unfair Competition § 11:22, at 498-99 (2d ed. 1984)).

4

**B.     An Incontestable Trademark's Validity Cannot Be Challenged Merely on Descriptiveness**

"The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly*, 469 U.S. at 198.  Congress concluded that securing the benefits of good reputation to the mark holder would promote competition and the maintenance of product quality.  *Id.*  Under this Act, the owner of a registered trademark can obtain incontestable status for the mark after five years of continuous use in commerce by filing an affidavit affirming that certain statutory requirements have been met.  15 U.S.C. § 1065.  This serves as a means for the mark owner to quiet title in the ownership of the mark and thus encourages him to develop and cultivate the goodwill associated with that mark.  *Park 'N Fly*, 469 U.S. at 198.

Incontestability serves to enhance a mark's strength.  *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1336 (11th Cir. 1989) (citations omitted).  It provides conclusive evidence of the registrant's right to use the trademark and narrows the grounds upon which the trademark's validity may be challenged.  *Gruner + Jahr USA*, 991 F.2d at 1076-77.  As pertinent here, one of the ways in which incontestability narrows these grounds is that it precludes a mark from being challenged on the basis that the mark is descriptive.  *Park 'N Fly*, 469 U.S. at 205; *Gruner + Jahr USA*, 991 F.2d at 1077.  It can still be challenged on the grounds that it is generic.  *Park 'N Fly*, 469 U.S. at 195.

The RED GOLD® trademark has been registered since 2003 and achieved incontestable status in 2009.  *See supra* Part II.A.  Thus, this precludes any challenge to RED GOLD®'s validity on the ground that it is descriptive.

Case 3:19-cv-00514-MPS   Document 147   Filed 04/21/21   Page 10 of 15


## V.      BREITLING'S TRADEMARK INVALIDITY ARGUMENT IS BASED ON DESCRIPTIVENESS, NOT GENERICNESS

Breitling's *sole* argument for invalidity of the RED GOLD® mark is that "Red Gold" is the common term for a type of alloy used in jewelry and watches.  *See supra* Part II.B.  Even assuming Breitling is correct – which it is not – all this would mean is that the RED GOLD® mark is descriptive.[2]  Breitling cannot challenge the incontestable RED GOLD® mark based on descriptiveness, and thus it attempts to rebrand (pun intended) its "descriptiveness" argument as a "genericness" one instead in order to circumvent the Lanham Act's restrictions on challenging an incontestable mark.

A descriptive mark conveys a characteristic, quality, ingredient, or component of a product.  *See Gruner + Jahr USA*, 991 F.2d at 1076; *Haydon Switch and Instrument, Inc. v. Rexnord, Inc.*, Civ. No. N 86-190(JAC), 1987 WL 26062, at *7-8 (D. Conn. June 4, 1987); s*ee also Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980) (a "descriptive" term identifies a characteristic or quality of an article or service, as, for example, its color, odor, function, dimensions, or ingredients) (internal quotations and citations omitted).  In contrast, a generic term refers to a genus or class of which a product or service belongs; it depicts the product or service as a whole, rather than any particular feature, quality, or characteristic of that produce or service.  *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007); *Haydon Switch and Instrument*, 1987 WL 26062, at *7.

Applying these standards to the case at hand, Breitling's invalidity contention clearly falls on the side of descriptiveness.  The RED GOLD® mark is not used to cover (*i.e.*, to identify

---

[2] On the spectrum of trademark distinctiveness, Solid 21 maintains that the RED GOLD® mark is at least "suggestive" (and not "descriptive").  However, the Court need not determine the distinctiveness of the mark here as Solid 21's present motion assumes *arguendo* that Breitling's contention – that "Red Gold" is a common name for a type of alloy used in watch and jewelry components – is correct.

6

the source of) gold, a gold alloy, or any alloy as a product for that matter.  It covers a class of goods which includes various types of jewelry, including watches.  SUMF ¶ 1.  Indeed, Solid 21 and Breitling sell watches (along with jewelry, in the case of Solid 21), but neither of them sell gold, gold alloys, or any alloy as a product.  *Id.* ¶¶ 4, 6.  And Breitling's own witnesses are unequivocal in their belief that "Red Gold" describes a material used in parts of a watch, such as the case or bezel – and ***not*** a type of watch.  *Id.* ¶ 8.  Viewing Breitling's invalidity contention in its most favorable light, all they are arguing is that "Red Gold" is an ingredient (gold alloy) of a component (case, bezel, strap, etc.) of a product (watch).  Accordingly, "Red Gold" cannot depict the product as a whole, but merely an ingredient in one of that product's components.

 *Haydon Switch and Instrument, Inc. v. Rexnord, Inc.* illustrates this precisely.  1987 WL 26062, at *7.  In that case, this Court found that the PLANETGEAR mark could not be generic because it did "not identify a product that is solely a set of planetary gears."  *Id.*  Rather, the product itself was a counter, and planetary gears were a component or ingredient of the counter product.  Thus, the PLANETGEAR mark was at most descriptive, and possibly even suggestive. *Id.*  Likewise, in *American Exp. Marketing and Development Corp. v. Black Card LLC*, the court found BLACKCARD to be descriptive.  No. 10 Civ. 1605(DLC), 2011 WL 5825146, at *7-8 (S.D.N.Y. Nov. 17, 2011).  Where the product at issue was a credit card, the BLACKCARD mark conveyed a feature or characteristic of that product – its black color.  Along similar lines, the court in *Black & Decker Corp. v. Dunsford* found that the SNAKELIGHT mark was descriptive because the mark conveyed a characteristic of the product – that is, a light that was snake-like.  944 F. Supp. 220, 225 (S.D.N.Y. 1996).  And in *Ideal World Marketing, Inc. v. Duracell, Inc.*, the court concluded that the POWERCHECK mark was descriptive because it

conveyed a characteristic of the product – a battery that permitted the consumer to check the remaining power in the battery.  15 F. Supp. 2d 239, 243-44 (E.D.N.Y. 1998).

These cases elucidate the distinction between a generic term and a descriptive mark.  If the mark at issue were "wristwatch" or "timepiece," Breitling might have a genericness argument as those might be classes of goods which watches belong to.  *See Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1522 (11th Cir. 1991) (teaching that "Milk Delivery" would be an example of a generic service mark for a milk delivery service, while "BarnMilk" would instead be descriptive).  But that is clearly not the case here.  "Red Gold" is not a type or class of watch.  SUMF ¶ 8 (BUSA President making clear that "Red Gold" is not a type of watch, nor is there any type of watch that is based on the color or materials used).

"The defining feature of a descriptive mark is that it gives the consumer an immediate idea of the contents of the product.  *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 533 (S.D.N.Y. 2012) (citation omitted).  Taking Breitling's contention as true, that would be all that RED GOLD® does: inform the consumer that the product contains a certain amount of gold alloy.  A long line of cases say this is at most descriptive, not generic. *See, e.g.*, *Flag Co., Inc. v. Chan*, 454 F. App'x. 776, 779 (11th Cir. 2011) ("Farming Flags" is at the very least descriptive because "farming" is a characteristic or quality of the product sold: flags); *PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558, 563 (2d Cir. 1990) (PAPERCUTTER is descriptive and not generic because it is not the name of the product); *Henri's Food Prods. Co., Inc. v. Tasty Snacks, Inc.*, 817 F.2d 1303, 1306 (7th Cir. 1987) ("tasty" not generic as it did not describe a class of salad dressing, but instead described a quality found in many genuses of salad dressing); *Pfizer Inc. v. Astra Pharmaceutical Prods., Inc.*, 858 F. Supp. 1305, 1319-20 (S.D.N.Y. 1994) (finding that "XL" is descriptive in a drug name because it

8

describes the "utility, purpose, function, qualities and characteristics of its product," that is, a drug with an "extended life" or lasts "extra long"); *Therapy Prods., Inc. v. Bissoon*, 623 F. Supp. 2d 485, 494 (S.D.N.Y. 2009) ("lipolaser" mark is descriptive in the context of a laser used in lipoplasty and liposuction); *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 581-82 (D.N.J. 1985) ("Honey Roast" and "Honey Roasted" were not generic because they described the characteristics of the product: nuts).

Finally, even if Breitling is correct that "Red Gold" is a generic term for a type of gold alloy, that would be of no moment because a "term may be generic for one category of goods and non-generic for another." *Flag Co.*, 454 F. App'x. at 779. *In re Seats, Inc.* illustrates this, where the court found that the SEATS mark could not have been generic because while the "term 'seats' may be generic in relation to chairs or couches or bleachers," it was clearly not generic to reservation services, which was the category of services under which the mark sought protection. 757 F.2d 274, 277-78 (Fed. Cir. 1985). Here, the RED GOLD® mark does not seek protection for any type of gold or alloy, but rather for entirely different categories of goods: watches and jewelry. SUMF ¶ 1.

## VI.   CONCLUSION

The RED GOLD® mark has been federally registered since 2003 and incontestable since 2009. If Breitling wished to invalidate the RED GOLD® mark by claiming that "Red Gold" is a common name for a type of alloy used in watches and jewelry, they should have done so prior to August 2009. They did not. As such, the Lanham Act precludes them from raising this today, long after Solid 21 invested considerable energy and resources into developing, building, and growing the RED GOLD® mark and brand. For the foregoing reasons, Solid 21 respectfully requests that this Court grant its motion for summary judgment and rule in its favor on BUSA and BSA's First Affirmative Defenses and all Counterclaims

Dated: April 21, 2021

 /s/ David L. Hecht
David L. Hecht (*pro hac vice*)
Conor McDonough (*pro hac vice*)
Yi Wen Wu (*pro hac vice*)
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
P: (212) 851-6821
dhecht@hechtpartners.com
cmcdonough@hechtpartners.com
wwu@hechtpartners.com

Jeffrey W. Kennedy
Milano & Wanat LLC
471 East Main Street
Branford, CT 06405
P: (203) 315-7000
jkennedy@mwllc.us

*Counsel for Plaintiff Solid 21, Inc.*

10

## **CERTIFICATE OF SERVICE**

I, David L. Hecht, hereby certify that on April 21, 2021, I served a true and correct copy

of the foregoing **PLAINTIFF SOLID 21, INC.'S MOTION FOR SUMMARY JUDGMENT**

to counsel of record via electronic filing.

*/s/ David L. Hecht*
David L. Hecht
