## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| SOLID 21, INC., | : | |
| | : | |
| Plaintiff, | : | C.A. NO. 3:19-CV-00514-MPS |
| | : | |
| v. | : | |
| | : | |
| BREITLING U.S.A., INC.; BREITLING SA; | : | |
| AND BREITLING AG, | : | JUNE 2, 2021 |
| | : | |
| Defendants. | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR TERMINATING SANCTIONS AGAINST PLAINTIFF,
OR IN THE ALTERNATIVE, FOR ISSUE SANCTIONS AGAINST PLAINTIFF,
THE DISQUALIFICATION OF HECHT PARTNERS, REVOCATION OF DAVID
HECHT'S *PRO HAC VICE* ADMISSION, AND A REFERRAL TO VARIOUS STATE
<u>BAR DISCIPLINARY AUTHORITIES</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ...........................................................................6

      A.      Plaintiff Used Its Counsel to Attack Defendants In the Press Using Falsehoods (which Plaintiff and its Counsel Knew To Be False) ........................ 6

      B.      When Defendants Informed the Court About The Offending Release, Mr. Hecht And His Firm Lied About Their Direct Involvement—And Tried To Cover Their Tracks. ...................................................................................... 9

      C.      Defendants Have Uncovered A Pattern and Practice Of Deceit Committed By Plaintiff and Plaintiff's Counsel In This Litigation, Which Prejudiced Defendants ...................................................................................... 10

      D.      Mr. Hecht's Misrepresentations and Improper Conduct in Other Cases Illustrate that This Improper, Unethical Behavior Is A Pattern and Practice That Mr. Hecht Employs And Plaintiff Endorses .................................................. 14

III.    LEGAL ARGUMENT .....................................................................................16

      A.      Terminating Sanctions Against Plaintiff Are Warranted Here. ........................... 16

      B.      In The Unlikely Event Plaintiff Tries To Excuse Its Actions To Avoid Terminating Sanctions, Plaintiff and Its Counsel Must Be Held Accountable Via Other Sanctions and Penalties. .................................................... 18

            1.      The Court should impose issue sanctions on Plaintiff in the form of Striking Its Motion to Withdraw Deemed Admissions and Strike Its Late-Disclosed Experts. ...................................................................... 18

            2.      The Court should disqualify Hecht Partners as Counsel for Plaintiff in this Litigation. ........................................................................... 20

            3.      The Court should revoke David Hecht's pro hac vice application in this Litigation. ........................................................................... 22

            4.      The Court Should Make A Referral to the State Bars to which David Hecht is a Member and the State Bar of Connecticut to put them on notice of these ethical and professional violations. .................... 23

IV.     CONCLUSION..................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Cash Card Corp. v. AT&T Corp.*,
  No. 99–7894, 2000 WL 357670 (2d Cir. Apr. 6, 2000) ......................................................... 18

*Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*,
  606 F. Supp. 2d 617 (E.D. Va. 2008) ....................................................................... 19

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991),
  *reh'g denied*, 501 U.S. 1269 (1991) ................................................................ 16, 23

*Chin v. Port Auth. of New York & New Jersey*,
  685 F.3d 135 (2d Cir. 2012) ...................................................................... 16

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*,
  602 F.2d 1062 (2d Cir. 1979) ............................................................... 5, 17, 18

*Cohen v. Statewide Grievance Comm.*,
  189 Conn. App. 643 (2019) ......................................................................... 21

*DAG Jewish Directories, Inc. v. Y&R Media, LLC*,
  2010 WL 3219292 (S.D.N.Y. Aug. 12, 2010) .......................................................... 17

*Data Systems Analysts, Inc. v. Netplex Group, Inc.*,
  187 F.R.D. 181 (D. N.J. Apr. 20, 1999) .................................................................. 22

*DLC Mgmt. Corp. v. Town of Hyde Park*,
  163 F.3d 124 (2d Cir. 1998) ...................................................................... 16

*Fitzpatrick v. Am. Int'l Grp., Inc.*,
  No. 10 CIV. 142 MHD, 2013 WL 9948284 (S.D.N.Y. May 29, 2013) ................................... 16

*Hall v. Cole*,
  412 U.S. 1 (1973)........................................................................................... 16

*Henry v. Statewide Grievance Committee*,
  111 Conn. App. 12, 957 A.2d 547 (2008) ............................................................... 20

*Johnson v. Trueblood*,
  629 F.2d 302 (3d Cir. 1980) ................................................................................ 22

*Kramer v. Tribe*,
  156 F.R.D. 96 (D.N.J. 1994)................................................................................ 20

*LaBow v. LaBow,*
  13 Conn.App. 330,
  *cert. denied*, 207 Conn. 806, 540 A.2d 374 (1988) ................................................. 21

*Leis v. Flynt,*
  439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) ................................................. 22

*Link v. Wabash Railroad Co.,*
  370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ................................................. 17

*MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,*
  138 F.3d 33 (2d Cir. 1998) ........................................................................ 22

*Margo v. Weiss,*
  No. 96 CIV. 3842 (MBM), 1998 WL 765185 (S.D.N.Y. Nov. 3, 1998),
  *aff'd*, 213 F.3d 55 (2d Cir. 2000) ................................................................ 19

*McMunn v. Memorial Sloan-Kettering Cancer Center,*
  191 F. Supp. 2d 440 (2002) ...................................................................... 17

*Nat'l Hockey League v. Metro. Hockey Club, Inc.,*
  427 U.S. 639 (1976) .............................................................................. 17

*O'Brien v. Superior Ct.,*
  105 Conn. App. 774 (2008) ....................................................................... 21

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC,*
  685 F. Supp. 2d 456 (S.D.N.Y. 2010) ............................................................. 16

*Roadway Exp., Inc. v. Piper,*
  447 U.S. 752 (1980) .............................................................................. 16

*S.E.C. v. Smith,*
  710 F.3d 87 (2d Cir. 2013) ....................................................................... 19

*Thomas v. Cassidy,*
  249 F.2d 91 (4th Cir. 1957) ...................................................................... 22

*United States v. Gutierrez,*
  No. 94 Cr. 565(LAK), 1994 WL 593773 (S.D.N.Y. Oct. 28, 1994) ......................... 22

**Rules**

Connecticut Code of Judicial Conduct
  Rule 2.15 ......................................................................................... 23

Connecticut Rules of Professional Conduct
  Rule 3.3(a)(1) ................................................................................. 21, 23

Connecticut Rules of Professional Conduct
  Rule 3.3(a)(3) .................................................................................................................. 21

Connecticut Rules of Professional Conduct
  Rule 3.5(4) ........................................................................................................... 21, 22, 23

Connecticut Rules of Professional Conduct
  Rule 3.6 ................................................................................................................... 20, 23

Connecticut Rules of Professional Conduct
  Rule 3.6(a) .............................................................................................................. 20, 23

Connecticut Rules of Professional Conduct
  Rule 8.4(3) ..................................................................................................................... 20

Connecticut Rules of Professional Conduct
  Rule 8.4(4) ..................................................................................................................... 20

Connecticut Rules of Professional Conduct
  Rule 8.5(a) ..................................................................................................................... 23

New York Rules of Professional Conduct
  Rule 3.4(e) ..................................................................................................................... 14

New York Rules of Professional Conduct
  Rule 8.4 ............................................................................................................... 14, 20, 23

Defendants and Counterclaimants Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG) (collectively, "Defendants" or "Breitling") hereby respectfully move this Honorable Court for the issuance of terminating sanctions against Plaintiff Solid 21, Inc. ("Plaintiff"), or, *in the alternative*, to (i) impose issue sanctions on Plaintiff as set forth below, (ii) disqualify Plaintiff's lead counsel, David Hecht ("Mr. Hecht"), and his firm Hecht Partners, LLP ("Hecht Partners") (collectively, "Plaintiff's Counsel"); (iii) revoke Mr. Hecht's *pro hac vice* admission to appear in this Court; and (iv) make a referral to the disciplinary authorities of State bars to which Mr. Hecht belongs (*e.g.*, New York and New Jersey) and the Connecticut State bar to put them on notice of his deliberate unethical actions and to ensure that Mr. Hecht cannot enjoy the privilege of *pro hac* admission in this forum in the future.

## I. <u>INTRODUCTION</u>

As the saying goes, the cover-up is often worse than the crime. In this case, both are equally reprehensible. Plaintiff, aided and abetted by its counsel, has now been caught red handed engaging in a series of mistruths, half-truths, and objectively unethical behavior during this litigation—including a number of falsities presented to *this* Court. And, Defendants have discovered that this deceptive, unethical behavior is apparently standard operating procedure employed by Mr. Hecht and his namesake firm, Hecht Partners. These actions cannot stand. Terminating sanctions should be issued against Plaintiff for this egregious behavior that has tainted these proceedings, caused delay and expense, and has laid the foundation to infect the jury pool.

The history, here, is prolonged, and some of the most pertinent misconduct is explained herein below. Most recently, and only the last straw in a series of misconduct, Plaintiff engaged in a scheme whereby it, acting through its counsel, directly caused a false, misleading, and defamatory press release to be published globally in an effort to attack and libel Defendants and their officers, presumably intended as leverage in the case and, specifically, immediately following

- 1 -

referral for potential resolution efforts.  The press release—again, the latest in a string of misconduct—goes far beyond mere marketing or attempted leverage as some firms have otherwise been known to undertake.  Rather, the offending release first appeared on EUR/Electronic Urban Report (ww.eurweb.com), which bills itself as "the Internet's foremost information source for urban entertainment, sports, politics and opinion."  Mr. Hecht and his firm (acting on behalf of Plaintiff)—and not withstanding Mr. Hecht's recent statement to this Court otherwise—**directly** commissioned this defamatory release published on or about May 8, 2021, concerning this litigation specifically and Defendants generally.  The release, misleadingly entitled "Jeweler to the Stars Chris Aire Scores Victory over Breitling in Infringement Case," made a number of defamatory remarks that both Plaintiff and Plaintiff's Counsel knew to be categorically false and deceptive, and which were clearly far outside the ambit of the issues in this case, as discussed below.

Once Plaintiff's latest misdeed was discovered, Mr. Hecht (undoubtedly directed by, or complicit with, Plaintiff), proceeded to misrepresent *to this Court* his firm's involvement with the offending release.  In fact, within *minutes or hours* following the defense having called out Plaintiff for its misconduct, and Mr. Hecht having proclaimed no involvement, it appears as though Mr. Hecht and his firm tried (unsuccessfully) to scrub all traces of their involvement with the offending release.  For example, they changed the sole source attribution in the press release from "Hecht Partners" to an unknown (but likely public relations) entity, "Elevate Strategic." Unfortunately for Plaintiff, cached versions of the release corroborate the fact that (i) the original release came directly from Hecht Partners, (ii) Plaintiff has engaged in unethical behavior, and (iii) Mr. Hecht and his firm *attempted to cover up these misdeeds* once caught.  For this, and arising out of counsel and Plaintiff's history of misconduct more fully explained herein, terminating

sanctions are appropriate here because is it impossible to put this genie back in the bottle.  Simply put, the libelous and prejudicial release is now out there in various mediums and easily located via a simple Google search for all potential jurors to see.

This press release was not the first severe ethical infraction that Plaintiff has committed in these proceedings.  Once Defendants became aware of Plaintiff's weak moral compass (or lack thereof), Defendants uncovered a series of misrepresentations that Plaintiffs have injected into this litigation that cannot be easily cured.  For example, it is now crystal clear that Plaintiff has filed numerous papers with this Court that tried to excuse its failure to properly conduct and/or respond to discovery underpinned by false factual assertions that came to light thanks to recently unsealed papers in another litigation (*Damonie Earl, et. al, v. The Boeing Company et al.*, E.D.Tex. Case No. 4:19-cv-00507) involving David Hecht and his firm.  In that case, Mr. Hecht and his firm were advancing a polar-opposite narrative (likely because that story helped the fiction being perpetrated in that case), declaring under penalty of perjury that *they never left* Pierce Bainbridge Beck Price & Mr. Hecht LLP, which is the *opposite* of the declarations provided to this Court in recent discovery proceedings.  *See* Section II(C), below.

Defendants have learned of other severe infractions committed by Mr. Hecht and his firm.  Yet, Mr. Hecht and Hecht Partners remain undeterred, likely because past sanctions were not strong enough.  For example, when the court caught Mr. Hecht engaging in ethical violations in a case pending in the Southern District of New York (*Dareltech, LLC, v. Xiaomi Inc. et al*, S.D.N.Y. Case No. 18 Civ. 8729), Mr. Hecht counted it as a "win" simply because he was not disqualified and proceeded to use it as a marketing tool on the professional networking site LinkedIn:



David Hecht • 3rd+
Founding Partner at Hecht Partners LLP
1yr • 🌐

There are two ways to litigate:
(1) Focus on churning out billable hours rather than strategy, like my adversaries at JONES DAY® in the Xiaomi Technology case, or
(2) The Pierce Bainbridge approach: aggressively advocating for clients in an efficient, cost-effective manner.

We play to win, not to bill. We don't file frivolous motions. We don't make misrepresentations to courts. Instead, we think twenty moves ahead, like grandmasters in chess, with the goal of a checkmate. JONES DAY® fell flat on its face in its DQ motion because they didn't even look at the chess board. Instead, they exposed their own client (and themselves) to ridicule and embarrassment with their motion practice and by creating a dispute that opened the door to jurisdictional discovery. We would never let that happen to one of our clients!



Pierce Bainbridge Scolded But Dodges DQ In Patent Suit - Law360
law360.com

👍 11

*See* **Exhibit A**[1] at Ex. 3.

In that case, the federal trial court [1] excluded all of the improperly obtained surveillance video that Mr. Hecht and his accomplice (an investigator) recorded, and [2] found that Mr. Hecht personally "acted inconsistently with professional ethics." *See* **Exhibit B** at 12 (Judge Hellerstein's April 11, 2019 Order scolding Mr. Hecht for his actions and excluding the improper materials that Mr. Hecht obtained in violation of New York's ethical rules). Despite these severe findings against Mr. Hecht and its client in that case, Mr. Hecht touted it as a victory on LinkedIn and openly lied about the motion as being somehow "frivolous"—when Judge Hellerstein expressly found that not to be the case. *Compare* LinkedIn screenshot (**Exhibit A** at Ex. 3)

---

[1] All references to "Exhibit __" herein refer to those exhibits attached to, and properly authenticated by, the declaration of Craig J. Mariam (the "Mariam Decl.") submitted contemporaneously herewith.

referring to the motion as "frivolous" *with* **Exhibit B** at 12 where Judge Hellerstein expressly held that the motion was not frivolous.

Unfortunately, the trial court in that case was not made aware of Mr. Hecht and his firm's repeated pattern and practice of ethical violations that has now emerged and is on full display. Moreover, Plaintiff has undoubtedly advocated for its counsel to commit these violations in this litigation through numerous factually misleading submissions and false extra-judicial statements meant to smear Defendants. In other words, terminating sanctions should be imposed on Plaintiff because this is not an isolated incident capable of being adequately redressed. And the fact that when caught here, Plaintiff and Plaintiff's Counsel tried to cover up their misdeeds without remorse illustrates that they will continue undeterred. Plaintiff cannot evade responsibility for actions that its counsel committed on its behalf because, as the Second Circuit has made clear, terminating sanctions can be imposed on a party based on their counsel's nefarious conduct because "[a] litigant chooses counsel at his peril." *See Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979). And Plaintiff's violations, including those committed on its behalf by counsel, are severe enough to constitute terminating sanctions to deter others from viewing these sacrosanct ethical obligations as optional or inconsequential.

To the extent that the Court finds that terminating sanctions are not yet warranted to punish Plaintiff for its various misdeeds, in the alternative, Defendants respectfully request that the Court impose issue sanctions on Plaintiff for these outlandish tactics. In particular, Defendants ask that the Court impose issue sanctions by [1] striking Plaintiff's Motion to Withdraw its Deemed Admissions (Dkt. No. 120) and [2] excluding Plaintiff's late-disclosed experts (Dkt. No. 105), which are also premised on false excuses perpetrated by Plaintiff and Plaintiff's Counsel to justify

- 5 -

their delay.  Plaintiff's prior admissions should stand in this litigation, and Plaintiff should not be allowed to delay these proceedings with late-disclosed experts based on misrepresentations to this Court.  In addition, based on the apparent fact that Mr. Hecht and his firm have repeatedly engaged in these ethical violations—and their willingness to openly flout ethical rules as a personal "win"— Mr. Hecht and his firm must be disqualified as counsel in this litigation, Mr. Hecht's *pro hac vice* admission must be revoked, and the matter must be referred to the State bars to which Mr. Hecht belongs (*e.g.*, New York and New Jersey) and the State bar of Connecticut so that Mr. Hecht and Hecht Partners cannot infect future proceedings with these moral failings and violations of Connecticut's rules of professional conduct.  Justice demands that Plaintiff's repeated actions cannot go unchecked.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Used Its Counsel to Attack Defendants In the Press Using Falsehoods (which Plaintiff and its Counsel Knew To Be False)

On or around the morning of May 10, 2021, Defendants' counsel became aware of an online release published two days prior, which concerned this litigation and Defendants generally. *See* Mariam Decl. at ¶ 4.  It immediately became obvious that this was a Plaintiff-side "hit piece." For example, the release's headline, "Jeweler to the Stars Chris Aire Scores Victory over Breitling in Infringement Case," was drafted to mislead the reader into believing that Plaintiff has proven its trademark infringement case (it has not).  Moreover, the sole source of the release was attributed to "Hecht Partners"— Plaintiff's Counsel.  *See* **Exhibit C** (copy of release as it appeared on May 8).  Counsel feigned ignorance of the release – in writing – to this Court on May 10, 2021.  *See* **Exhibit D**.

While the offensive headline was itself misleading, the release was worse—containing a series of demonstrably false statements in an attempt to smear Breitling, taint the jury pool, and

likely attempt to influence the settlement conference judge if she or he were to research the parties. For example, the release (relying on insinuation and innuendo) tried to defame Breitling USA's president based on an adjudicated prior lawsuit brought by a disgruntled employee that was later dismissed.  *See* **Exhibit E** (Judgment dismissing all claims in that litigation).  It is unconverted that Plaintiff and Plaintiff's Counsel knew about the outcome of that case because Mr. Hecht brought up this very topic during the deposition of Breitling USA's president in this case—who explained that the lawsuit was dismissed on summary judgment.  *See* **Exhibit F** (Prissert Dep. Tr., 6:23–7:21).

The release continued its character assassination of Breitling and its management with other alleged "facts" that Hecht Partners supplied.  For example, the release takes Breitling USA's past comments about the storied watch company "taking risks" out of context—to impart a negative inference on Breitling in advance of trial.  *See* **Exhibit C** at 2.  The defamatory release includes a hyperlink to an article about a Breitling event commemorating the 50th anniversary of the Sports Illustrated Swimsuit Edition.  *Id.*  The release then gratuitously states that "[Mr. Prissert] is pictured here with his arm around a scantily-clad 'Breitling girl' with the brand's winged logo emblazoned across her chest," *id.*, undoubtedly to smear the brand and its management.

Yet again, Mr. Hecht and his firm—as the sole "source" of the release—knew that the release's misleading and prejudicial characterization *that they supplied* was false.  In fact, during Mr. Prissert's deposition, Mr. Hecht specifically asked Mr. Prissert questions about this very article covering the Breitling event and Mr. Prissert's 2014 quote (certainly not a coincidence it made its way into the release). ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████.  *See* **Exhibit F** (Prissert Dep. Tr.,

91:15-92:21).  Plaintiff cannot claim ignorance of this because Mr. Hecht and his firm were trying to advance this very same false narrative in this litigation, which was proven to be false.  *See id.* at 92:10-93:5.  Simply put, Mr. Hecht and his firm cannot weaponize the press to do what it could not in this proceeding—this is exactly the type of conduct that the ethical rules seek to prevent. What is also *extremely* troubling is the fact that this information was obtained during Mr. Prissert's **confidential** deposition, which also demonstrates that Mr. Hecht and his firm are willing to also breach confidentiality orders of this Court when the firm feeds information to the press.  *See* Dkt. No. 5 (Court's Standing Protective Order dated Apr. 5, 2019); **Exhibit F** (designating Mr. Prissert's deposition transcript as highly confidential, attorneys' eyes only).

The release then attempts to advance a false narrative concerning other prior actions in this case.  Mr. Hecht and his firm fed outright falsehoods to the public concerning this case (similar to how Mr. Hecht's LinkedIn post tried to misconstrue the findings of the S.D.N.Y. District Court that excluded evidence he wrongfully obtained in violation of ethical rules).  For example, Hecht Partners alleged that "a federal judge found that Breitling failed to search its documents for relevant emails *in what may be an attempt to hide information from Solid 21*."  *See* **Exhibit C** at 2 (emphasis added).  The release then quotes the Court as "describ[ing] Breitling's conduct as 'disturbing' and 'troubling.'"  *Id*.  The clear intent of using quotes taken out of context is to mislead the reader into believing the Court made a factual finding that Breitling was hiding information. This Court never made such a finding, and it is patently false that Breitling has anything to hide or took any steps to hide information.  Rather, Breitling opposed Plaintiff's request for production of emails dating back to 2006 on the grounds that: (1) Plaintiff lacked good cause for its inaction and year and a half delay in raising the untimely dispute; (2) the discovery sought was not relevant;

and (3) formulating an ESI protocol after discovery has ended and searching for irrelevant documents was disproportionate to the needs of the case.  *See* **Exhibit G**.

In reality, the Court did not make any findings or statements that Breitling was hiding information.  Instead, the Court simply disagreed with Breitling's position to stand on objections and not comply with (in Breitling's view) a grossly overbroad, burdensome, and disproportional document request for documents that in large part has already been produced in different formats. *See* **Exhibit H** (April 27, 2021 Hr'g Tr., 21:14-22:25).  The release deliberately distorts these facts as part of Plaintiff's apparent efforts to unfairly smear Breitling and gain an advantage in this lawsuit.

> **B.    When Defendants Informed the Court About The Offending Release, Mr. Hecht And His Firm Lied About Their Direct Involvement—And Tried To Cover Their Tracks.**

Once Defendants' counsel became aware of the offending release, they brought it to the Court's attention in the context of the parties' to-be-scheduled settlement conference.  Plaintiff's Counsel had contacted Judge Richardson's law clerk provide alternative dates for the settlement conference.  *See* **Exhibit D**.  Defendants' counsel pointed out to the clerk that Plaintiff's press release made resolution impossible at that point.  In response, Mr. Hecht categorically denied having any involvement with the release and represented to Judge Richardson's clerk and Breitling's counsel, "Counsel for plaintiff did not put out a press release this weekend." **Exhibit D** at 1.

Mr. Hecht and his firm then attempted to cover up their involvement in the publication of the release.  That same day, Mr. Hecht scrubbed all references to his namesake firm as the source for the entire misleading release.  The source previously attributed to "Hecht Partners" mysteriously changed to "Elevate Strategic" as of May 10, 2021, but not before the release was cached with the original source attribution submitted herewith.  *Compare* **Exhibit C** (cached

release) with **Exhibit I** (modified release).  Plaintiff's remedial actions through counsel demonstrate that Mr. Hecht outright lied when caught engaging in these uncouth—and unethical—tactics to gain a strategic advantage and taint settlement negotiations and, more importantly, the jury pool.

### C.      Defendants Have Uncovered A Pattern and Practice Of Deceit Committed By Plaintiff and Plaintiff's Counsel In This Litigation, Which Prejudiced Defendants

Once Defendants realized that Plaintiff and Plaintiff's Counsel would do anything or say anything to gain a strategic advantage at every phase of this litigation, they began to investigate Plaintiff's prior submissions and statements made to this Court.  It soon became clear that this defamatory release was not an isolated incident (although it worthy of sanctions on its own).  Plaintiff and Plaintiff's Counsel have routinely misrepresented salient issues in this case throughout the course of this litigation.  For example, Plaintiff alleged that its failure to properly seek or respond to discovery should be excused because Mr. Hecht was no longer affiliated at his prior firm, Pierce Bainbridge Beck Price & Mr. Hecht LLP ("Pierce Bainbridge").  But, this too was a lie; the history is below.

On April 5, 2019, Plaintiff filed this action against Breitling for alleged trademark infringement, one of a spate of cases against several well-known luxury watch brands over the use of the term "red gold" – a term dating back to ancient Egyptian times identifying a gold and copper metal alloy used to make watches and jewelry.  Mr. Hecht was Plaintiff's counsel from the outset of the lawsuit.  In his affidavit in support of the motion for admission *pro hac vice*, Mr. Hecht stated that he had a "longstanding attorney-client relationship with the Plaintiff predating the cause of action" and had "acquired specialized knowledge with respect to the dispute between the Plaintiff and the Defendants."  *See* Dkt. No. 2, ¶¶ 4-5.  Mr. Hecht represented, he had been "handing, as of spring 2018, all legal aspects of the Plaintiff's dealings related to Plaintiff's

Trademark No. 2,793,987." *Id.* ¶ 5.  At this time of seeking *pro hac vice* admission, Mr. Hecht was a named partner at Pierce Bainbridge.  *Id.*

Almost exactly a year later, on April 21, 2020, Mr. Hecht filed a motion to withdraw his appearance on behalf of Plaintiff on the grounds he was "in the process of separating from Pierce Bainbridge. . . ."  *See* Dkt. No. 82.  At that time, Mr. Hecht represented that no hardship would be caused by his withdrawal because John M. Pierce ("Pierce") and John J. Louizos "Louizos") would remain counsel of record.  *Id.*  The motion was therefore granted "since Plaintiff [had] other counsel."  *See* Dkt. No. 83.

By the end of 2020, Mr. Hecht then petitioned this Court to be readmitted *pro hac vice* on behalf of Plaintiff.  *See* Dkt. No. 101.  His motion was granted by mid-January 2021.  *See* Dkt. No. 112.  Since Mr. Hecht formally reappeared in this matter, Plaintiff has repeatedly alleged that the failures of Plaintiff's prior counsel should form the basis for various "do overs," including reopening discovery, permitting Plaintiff to designate experts late, and withdrawing certain deemed admissions that Plaintiff made (again, while still represented by counsel).  *See e.g.*, Dkt. Nos. 105 (Motion for Modification of Scheduling Order) and 120 (motion to withdraw deemed admissions).  The main thrust of these papers was premised upon the assertion that Plaintiff's prior counsel (*i.e.*, Mr. Hecht's old firm) somehow dropped the ball and Plaintiff was innocent— apparently lucky to reconnect with Mr. Hecht after those many months apart.  For his part, Mr. Hecht asserted his own innocence and complete lack of involvement or knowledge of the status of this case.  *See* Dkt. No. 105 at 2-3.  In support, **Mr. Hecht asserted that he had left Pierce Bainbridge** and had no knowledge that prior counsel had not assisted Plaintiff in retaining experts. *See* Dkt. No. 105 at 2-3.

Plaintiff and Mr. Hecht repeated this narrative throughout a series of filings that attempted to justify their failures to participate in this litigation. For example, in Plaintiff's January 15, 2021 Emergency Motion to Extend Time to Respond to Motion for Summary Judgment, Mr. Hecht (falsely) represented that he "was not authorized to represent Solid 21 in connection with this case or any of Solid 21's cases for nearly nine months." *See* Dkt. No. 115 at 2, fn. 2. On January 25, 2021, Plaintiff moved to withdraw deemed admissions, arguing that the only reason it failed to respond was due to its "imperiled" relationship with Pierce Bainbridge. *See* Dkt. No. 120 at 1. Plaintiff reminded the Court once again that Mr. Hecht was not re-admitted *pro hac vice* until January 5, 2021, implying that Mr. Hecht lacked any knowledge of the propounded requests for admissions. *Id.* at 2. In other words, Plaintiff was constructing a false narrative that minimized its counsel's continued involvement in this litigation.

These excuses **directly** impacted this Court's decision to grant such relief in favor of Plaintiff. The Court relied, in part, on Mr. Hecht's representations that he bore no responsibility for prior counsel's lack of diligence in pursuing discovery because he had withdrawn from the case as a result from his supposed separation from Pierce Bainbridge. *See* **Exhibit H** (Apr. 27, 2021 Hr'g Tr., 23:17-24) ("My understanding from the oral argument that we had last time on April 19th is that the Florida litigation was settled sometime at the end of January or early February of 2020, and thereafter Mr. Hecht made preparations to leave the Pierce Bainbridge firm… and it looks like in April[,] Pierce Bainbridge -- that Mr. Hecht left and an attorney from Pierce Bainbridge assumed the representation of the Plaintiff."); *see also id.*, 24:11-16 ("What's significant to me is that local counsel, Mr. Kennedy, appeared December 23rd of 2020, and there was a Motion to Substitute Counsel. So it appears to me that there was obviously disagreement between -- or at least some difficulties between Plaintiff and their counsel for that 60-day period

between October 14th of 2020 and December 23rd of 2020.").  The Court also relied on Plaintiff having filed its Motion to Extend the Scheduling Order in ruling in Plaintiff's favor.  *Id.* 27:21-23 ("I also think the fact that various motions to extend this scheduling order were pending and not acted on by the Court is a significant factor.").

Amazingly, these various representations submitted by Plaintiff and Plaintiff's Counsel (on behalf of Plaintiff) **proved to be utter lies**.  On April 29, 2021, two days after the April 27 hearing before Magistrate Judge Vatti (which granted relief to Plaintiff over its discovery dispute), the U.S. District Court for the Eastern District of Texas ordered Mr. Hecht's previously sealed declaration be filed publically.  This sworn declaration—*by Mr. Hecht himself*—evidences the fraud that Plaintiff and Plaintiff's Counsel has perpetrated on this Court.  For example, Mr. Hecht contradicted his representations to this Court that he was no longer with Pierce Bainbridge as of April 2020.  Instead, Mr. Hecht declared in that other case that "I have not left Pierce Bainbridge ("PB") and am still officed there."  *See* **Exhibit J** (Mr. Hecht Decl.) at ¶ 12.  Mr. Hecht went so far in that other case—undoubtedly because it helped his narrative there—that he was still actively engaged in all matters as of counsel and was actively transitioning the matters to his new firm, Hecht Partners.  *See id.* at ¶ 13 ("While I resigned from the PB partnership on March 11, 2020, I have remained of counsel since that time in order to, *inter alia*, fulfill ongoing duties to clients and to transition certain matters from PB to Hecht Partners LLP.")  *See also id.* at ¶ 14 ("Throughout this entire period I have remained on all PB systems and have continued to represent PB clients on behalf of PB.") and ¶ 16 ("I maintained 'of counsel' affiliation with PB since at least April 2, 2020.").  In other words, Mr. Hecht's excuses in this case were proven false because of the excuses that he made in that other Texas litigation.  Plaintiff obviously knew the statements of its counsel were false when made, but apparently Plaintiff was more focused on trying to "win."

- 13 -

**D.** **Mr. Hecht's Misrepresentations and Improper Conduct in Other Cases Illustrate that This Improper, Unethical Behavior Is A Pattern and Practice That Mr. Hecht Employs And Plaintiff Endorses**

Defendants have also uncovered numerous examples in other cases where courts have found Mr. Hecht to have personally "acted inconsistently with professional ethics." *See e.g.*, **Exhibit B** at 12 (Judge Hellerstein's April 11, 2019 Order scolding Mr. Hecht for his actions and excluding the improper materials that Mr. Hecht obtained in violation of New York's ethical rules.). In one Southern District of New York case, Mr. Hecht and an investigator acting under his direction attended a promotional event that a defendant company held—a company adverse to Mr. Hecht that was represented by counsel at Jones Day. *See* **Exhibit B** at 2-3. Mr. Hecht and his accomplice surreptitiously used their cell phones to record conversations with the defendant's personnel and contractors. Neither Mr. Hecht nor his sidekick disclosed their affiliation with the plaintiff or their representation in the present litigation. Mr. Hecht tried to allege that he was simply there as a private citizen, but the judge found that argument to be unpersuasive. *See id.* at 7. In that case, the court found that Mr. Hecht acted inconsistent with the New York Rules of Professional Conduct ("RPC") 3.4(e) (prohibiting lawyers from communicating with represented parties) and New York RPC 8.4 (prohibiting lawyers from engaging "in conduct involving dishonesty, deceit or misrepresentation"). *See id.* at 8, 10.

Although the Court in that other case was not put on notice of Mr. Hecht's pattern and practice of ethical violations, his response to the District Judge for the Southern District of New York's findings against him demonstrate his lack of remorse. Indeed, despite having been found to have acted improperly, Mr. Hecht celebrated it as a "win" on his LinkedIn profile where he also openly misconstrued the motion that uncovered his ethical violations as being somehow "frivolous"—when the Court expressly held the opposite *and excluded the poisonous fruits of Mr. Hecht's actions*. *See* **Exhibit A** at Ex. 3 (screenshot of LinkedIn marketing post); **Exhibit B** at 12

- 14 -

(explicitly finding that the motion was not frivolous and excluding the information that Mr. Hecht obtained unethically).

Mr. Hecht has also been sued by one of his former partners at Pierce Bainbridge, who has sought sanctions against Mr. Hecht for his misconduct.  *See, e.g.* **Exhibits A** and **K**.  The sanctions motion details a "cavalcade of dishonesty and deceit," and the plaintiff (again, his former partner) notes that Mr. Hecht is "someone who has told so many half-truths and falsehoods that h[e] is unable to keep his story straight."  The factual allegations being levied against him in that case include the following:

- three of Mr. Hecht's own clients testified under oath that he deceived them;

- a fourth ex-client said Mr. Hecht lied in a sham bar complaint;

- an ex-Pierce Bainbridge associate accused Mr. Hecht of lying multiple times to a federal court;

- an ex-Pierce Bainbridge partner accused Mr. Hecht of deceptively splicing messages submitted to a court to fit a false narrative;

- another ex-Pierce Bainbridge partner stated – in writing – Mr. Hecht has "no ethical backbone;"

- Mr. Hecht was the managing partner of the largest office for a law firm that has been sued no less than 15 times, has a reported $70 million debt; and a former long-time partner stated – in writing – Mr. Hecht would be of interest in a "reasonably likely" criminal investigation into Pierce Bainbridge.

*See* **Exhibit A** at ¶ 12.  *See also* **Exhibit K**.  Thus, a pattern and practice of deceit and falsehoods have emerged, with Plaintiff complicit in all of these actions—allowing falsehoods to pervade this litigation based, in part, on the failure to sanction this conduct in prior litigations.

## III.    LEGAL ARGUMENT

### A.    Terminating Sanctions Against Plaintiff Are Warranted Here.

"[F]ederal courts have 'well-acknowledged inherent power to levy sanctions in response to abusive litigation practices.'" *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135 (2d Cir. 1998) (citation omitted).  As the United States Supreme Court explained in *Chambers v. NASCO, Inc.,* "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. . . . These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." 501 U.S. 32, 43 (1991), *reh'g denied*, 501 U.S. 1269 (1991) (internal quotations and citation omitted) (internal quote and citation omitted).  Thus, the "power to punish for contempts is inherent in all courts." *Id.* at 44 (internal quote and citation omitted).

Such sanctions may include assessing fees and costs, excluding evidence or defenses, **or even the dismissal of a party's claims**.  *See Fitzpatrick v. Am. Int'l Grp., Inc.*, No. 10 CIV. 142 MHD, 2013 WL 9948284, at *8 (S.D.N.Y. May 29, 2013) (citing *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010), abrogated on other grounds by *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012)).  Generally, the Court must find that the party acted in "bad faith" before the Court invokes its inherent powers.  *See Chambers*, 501 U.S. at 49–50.  Bad faith may be found in the "conduct of the litigation." *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (1980) (quoting *Hall v. Cole*, 412 U.S. 1, 15 (1973).

Moreover, Courts have found certain circumstances of gross negligence amounting "to a near total dereliction of professional responsibility" on the part of counsel may also justify dismissal of the action.  *See Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures*

*Corp.*, 602 F.2d 1062, 1068-69 (2d Cir. 1979); *see also id.* at 1068 ("A litigant chooses counsel at his peril, *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), and here, as in countless other contexts, **counsel's disregard of his professional responsibilities can lead to extinction of his client's claim**.") (emphasis added).  Of particular note, the Supreme Court has held that terminating sanctions are "appropriate . . . by reason of [plaintiff's] 'flagrant bad faith' and their counsel's 'callous disregard' of their responsibilities." *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).  The Supreme Court noted that terminating sanctions are appropriate not only to punish the offending party, but also to deter others from trying to engage in these same improper tactics.  *See id.* at 643 ("[T]he most severe in the spectrum of sanctions provided by statute or rule must be available. . . not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.").

Courts have also issued terminating sanctions when it appears that they attempt to cover up their actions once caught.  *See DAG Jewish Directories, Inc. v. Y&R Media, LLC*, 2010 WL 3219292, at *5 (S.D.N.Y. Aug. 12, 2010) (intentional fraud on court and subsequent lies to cover it up showed that "further misconduct [was] likely" and dismissal was warranted); *McMunn v. Memorial Sloan-Kettering Cancer Center*, 191 F. Supp. 2d 440, 462 (2002) (awarding terminating sanctions because a litigant's "lies and misconduct will almost certainly continue in the future if this action is permitted to go forward . . . nullifying any chance for a fair adjudication of the merits").

Here, as discussed above, Plaintiff directed its counsel to file untrue and false statements with this Court in bad faith to gain a litigation advantage and excuse its multiple failures to properly conduct discovery.  *Compare* Dkt Nos. 105 and 120 with **Exhibit J** (exposing Mr. Hecht's

- 17 -

contradictory statements).  These bad faith tactics warrant the harshest of sanctions—dismissal of Plaintiff's claims.  In addition, as noted above, Mr. Hecht and his firm played an active role in deceiving this Court (and other Courts) while attempting to poison the well and gain an unfair settlement advantage by openly violating various ethical rules.  Mr. Hecht and his firm have evidenced a pattern and practice of callously disregarding ethical obligations and responsibilities. Bizarrely, Mr. Hecht considers this disregard for ethical decorum as a marketing tool.  Plaintiff's Counsel and Plaintiff's actions have not only misrepresented facts in certain filings, they have also been the source of misrepresentations that are now in the public domain and cannot be recaptured. *See* **Exhibit B**.  Thus, terminating sanctions are warranted against Plaintiff, especially to deter the conduct that Mr. Hecht and his firm considers a marketing tool.

### B. In The Unlikely Event Plaintiff Tries To Excuse Its Actions To Avoid Terminating Sanctions, Plaintiff and Its Counsel Must Be Held Accountable Via Other Sanctions and Penalties.

As discussed above (*see* Section III.A.), this Court has the inherent authority to impose a variety of sanctions against a party for its (and its counsel's) malfeasance if it determines that lesser sanctions are warranted at this point.  Defendants respectfully request that the following sanctions and penalties be imposed on Plaintiff and Plaintiff's Counsel:

### 1. *The Court should impose issue sanctions on Plaintiff in the form of Striking Its Motion to Withdraw Deemed Admissions and Strike Its Late-Disclosed Experts.*

A plaintiff is responsible for the actions of its counsel and is cautioned to choose wisely to avoid the dire consequences of its counsel's failings.  *See Am. Cash Card Corp. v. AT&T Corp.*, No. 99–7894, 2000 WL 357670, at *5 (2d Cir. Apr. 6, 2000) (unpublished) (citing *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir.1979)). Sanctions are appropriate when one party tries to weaponize the press to gain an unfair advantage in civil litigation.  *See, e.g., Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, 606 F. Supp. 2d 617, 625-

26 (E.D. Va. 2008) (awarding sanctions for a misleading press release and recognizing "[t]he Supreme Court has held that civil litigants have a constitutional right to an impartial jury [and] [c]ourts may disallow prejudicial extra judicial statements by litigants that risk tainting or biasing the jury pool.") (internal citations omitted).

Sanctions are certainly justified when issued as a result of a parties' false statements made in bad faith to the court or opposing counsel. *See S.E.C. v. Smith,* 710 F.3d 87, 97 (2d Cir. 2013) (noting that "sanctions are appropriate when an individual has made a false statement to the court and has done so in bad faith"); *Margo v. Weiss,* No. 96 CIV. 3842 (MBM), 1998 WL 765185, at *3 (S.D.N.Y. Nov. 3, 1998), *aff'd,* 213 F.3d 55 (2d Cir. 2000) (sanctions warranted when "parties and lawyers make false statements to their adversaries").

Here, Plaintiff contends in its Motion to Withdraw Deemed Admissions (Dkt. No. 120) that it should be excused from its failure to participate in discovery. Similarly, Plaintiff alleges that it should not be faulted for its failure to properly designate experts. *See* Dkt. No. 105. However, as noted above, it is now apparent that Plaintiff's alleged excuses—premised on the failures of prior counsel and the alleged absence of Mr. Hecht as lead counsel—are <u>false</u>. Mr. Hecht's own declaration submitted in the Texas litigation proves this point. *See* **Exhibit J**. Plaintiff was surely on notice of these facts, because Mr. Hecht represented Plaintiff then and continues to do so today. It is telling that Plaintiff remained silent in that briefing and failed to submit any declaration alleging any hardship (relying on counsel to do its bidding). Plaintiff cannot use its counsel as a tool to permit a fraud on this Court with untrue assertions. Thus, issue sanctions are certainly warranted, and the Court should impose issue sanctions by [1] striking Plaintiff's Motion to Withdraw its Deemed Admissions (Dkt. No. 120) and [2] excluding Plaintiff's late-disclosed experts (Dkt. No. 105).

### 2. *The Court should disqualify Hecht Partners as Counsel for Plaintiff in this Litigation.*

Attempts to litigate a case through the press, particularly where the attorney has a history of improper conduct, violates Connecticut RPC 3.6 and is sanctionable.  Under Connecticut RPC 3.6(a), "[a] lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."  *See also Kramer v. Tribe*, 156 F.R.D. 96, 109-110 (D.N.J. 1994).  The *Kramer* Court:

> note[d] with dismay that Kramer's apparent approach to litigating this case and negotiating its settlement, not in the court room, but the media, is not an isolated incident in his career, nor, by and large, in the legal profession…This must stop if the integrity of the judicial enterprise is to be preserved.  Not only is it disruptive, wasteful and inherently prejudicial, but it is also a clear violation of the Rules of Professional Conduct.  *See e.g.* RPC 3.6(a) and RPC 8.4.

156 F.R.D. at 109-110 (citing the New Jersey Rules of Professional Conduct, which mirror Connecticut and New York's respective Rules).

In addition, Connecticut State courts have held that "a misrepresentation that induce[s] the court to take action it otherwise would not have taken[] constitutes conduct that is prejudicial to the administration of justice and is thus sufficient to form the basis of a violation of rule 8.4(4)." *Henry v. Statewide Grievance Committee*, 111 Conn. App. 12, 24, 957 A.2d 547, 555 (2008). Connecticut RPC Rule 8.4(4) broadly states that a lawyer shall not "[e]ngage in conduct that is prejudicial to the administration of justice."  Similarly, subsection three of this rule forbids any lawyer from "engag[ing] in conduct involving dishonestly, fraud, deceit, or misrepresentation." *See* Conn. RPC 8.4(3).  "Unquestionably, the trial court has a 'continuing obligation to see that no falsehood or fraud was perpetrated on the court.'" *See O'Brien v. Superior Ct.*, 105 Conn. App.

774, 792 (2008) (*quoting LaBow v. LaBow*, 13 Conn.App. 330, 339, *cert. denied*, 207 Conn. 806, 540 A.2d 374 (1988)).

Connecticut's Rules of Professional Conduct also demand that counsel display an appropriate level of decorum and candor throughout the proceedings.  For instance, a "lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.  *See* Conn. RPC 3.3(a)(1). In addition, a lawyer must not "offer evidence that the lawyer knows to be false."  *See* Conn. RPC 3.3(a)(3).  Connecticut courts have held that submitting "inconsistent" statements run afoul ethical rule RPC 3.3.  *See Cohen v. Statewide Grievance Comm.*, 189 Conn. App. 643, 665 (2019). These prohibitions follow the principal that a lawyer must display a level of decorum, which extends to all aspects of a litigation.  *See e.g.*, Conn. RPC 3.5(4) (noting that "a lawyer shall not engage in conduct intended to disrupt a tribunal or ancillary proceedings such as depositions and mediations.").

Here, Mr. Hecht and his firm have ran afoul of multiple ethical rules on multiple instances. As detailed above, Mr. Hecht and his firm have submitted false and misleading affidavits to excuse their failures to prosecute these claims and engage in discovery.  Mr. Hecht and his firm have claimed ignorance of certain facts that we now know to be false based on Mr. Hecht's unsealed declaration in the Texas litigation.  *See* **Exhibit J**.  Moreover, the fact that "Hecht Partners" was the source of the defamatory release runs afoul of multiple ethical rules in this forum—as well as those other forms where Mr. Hecht maintains a bar membership.  *See* **Exhibit C**.  And, Mr. Hecht and his firm's attempt to hide their ethical violations and actively deceive Judge Richardson's clerk by disclaiming involvement with the offending release is further evidence that Hecht Partners will do whatever it takes to "win" in violation of Connecticut's ethical rules.  *See* **Exhibit D;** *see also*

**Exhibit A** at Ex. 3.  The fact that Mr. Hecht considers his lack of a moral compass as somehow being a marketable asset illustrates the concern that this behavior will repeat itself unless dealt with now.  *See* **Exhibit A** at Ex. 3 (Mr. Hecht's LinkedIn post bragging about the S.D.N.Y. District Court finding that he violated ethical rules in an S.D.N.Y matter).  Finally, the timing of the release—sent right after the parties were ordered to a settlement conference—runs afoul of RPC 3.5(4).

This Court cannot countenance these ethical abuses, especially in light of the fact that it is now clear that Hecht Partners, and its namesake David Hecht, routinely engages in this improper behavior that runs afoul of the guiding principles of this forum's ethical rules.

> **3.   The Court should revoke David Hecht's pro hac vice application in this Litigation.**

"Admission *pro hac vice* is not a right but a privilege, the granting of which rests in the sound discretion of the presiding judge." *United States v. Gutierrez*, No. 94 Cr. 565(LAK), 1994 WL 593773, at *2 (S.D.N.Y. Oct. 28, 1994) (quoting *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957) (internal quotation marks omitted); *see also Leis v. Flynt*, 439 U.S. 438, 441–42, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). "Revocation of pro hac vice admission is [therefore] a recognized sanction. . . ." *Data Systems Analysts, Inc. v. Netplex Group, Inc.*, 187 F.R.D. 181, 183 (D. N.J. Apr. 20, 1999) (citing *Johnson v. Trueblood*, 629 F.2d 302, 304 (3d Cir. 1980) ("At a minimum, a violation of any disciplinary standard applicable to members of the bar of the court would justify revocation of pro hac vice status."); *see also MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 138 F.3d 33, 37 (2d Cir. 1998) (revoking attorneys' *pro hac vice* status as sanction for attorney misconduct).  Simply put, violations of ethical rules warrant the revocation of *pro hac vice* admission.

Here, Mr. Hecht's repeated ethical violations committed in this forum and others warrants his *pro hac vice* admission be revoked.  In his affidavit in support of his Motion for Admission *Pro Hac Vice*, Mr. Hecht affirmed that he "ha[s] fully reviewed and is familiar with. . . the Connecticut Rules of Professional Conduct."  *See* Dkt. No. 111-1 ¶ 9.  Yet, as noted above, Mr. Hecht and his firm violated a number of ethical rules, including RPC 3.3, 3.5, 3.6, and 8.4. For example, the dissemination of the false and misleading release—and serving as the source for that release—is a direct violation of RPC 3.6(a).  Moreover, once Mr. Hecht was caught violating RPC 3.6(a) and attempted to cover his tracks demonstrates that this behavior is unlikely to cease. Finally, the fact that his ethical failings continue without remorse further demonstrates why his *pro hac vice* admission should be revoked.  Mr. Hecht should not be rewarded for his misdeeds.

> **4.      *The Court Should Make A Referral to the State Bars to which David Hecht is a Member and the State Bar of Connecticut to put them on notice of these ethical and professional violations.***

The Court also has inherent disciplinary authority to supervise and monitor the conduct of attorneys admitted to practice. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-46 (1991).   In Connecticut, "[a] lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct." *See* Conn. RPC Rule 8.5(a).  The Connecticut Rules of Judicial Conduct also indicate that a referral to other State bars in which an attorney practices is appropriate.  *See* Conn. Code of Judicial Conduct, Rule 2.15.

In light of the severe misconduct by Mr. Hecht and his firm, the Court should also refer Mr. Hecht to the appropriate disciplinary authorities in Connecticut and refer the matter to the State Bars to which Mr. Hecht belongs (*e.g.*, New York and New Jersey) so that they are on notice

of his unethical behavior, which appears to be his *modus operandi* in civil litigation.  This behavior

cannot go unchecked.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully requests that the Court grant Defendants'

motion and issue terminating sanctions against Plaintiff or alternative relief sought herein.

Dated: June 2, 2021                                    Respectfully submitted,

                                                       GORDON REES SCULLY MANSUKHANI, LLP

                                                       By   */s/ Craig J. Mariam*
                                                            Thomas C. Blatchley (ct25892)
                                                            Craig J. Mariam (*pro hac vice*)
                                                            Gordon Rees Scully Mansukhani, LLP
                                                            95 Glastonbury Blvd., Ste. 206
                                                            Glastonbury, CT 06033
                                                            Phone: (860) 494-7525
                                                            Fax: (860) 560-0185
                                                            Email: tblatchley@grsm.com
                                                            Attorneys for Defendants and
                                                            Counterclaimants Breitling U.S.A., Inc.;
                                                            Breitling SA (a/k/a Breitling AG)

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on June 2, 2021, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.

By  <u>*/s/ Craig J. Mariam*</u>
Craig J. Mariam