UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOLID 21, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>BREITLING U.S.A., INC.; BREITLING SA;<br>AND BREITLING AG,<br><br>    Defendants. | Civil Action No. 19-cv-00514-MPS |

**PLAINTIFF SOLID 21, INC.'S MOTION FOR
<u>AN EMERGENCY HEARING AND SANCTIONS</u>**

**Emergency Oral Hearing Requested**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 2

II.  LEGAL STANDARD ........................................................................................ 4

III. ARGUMENT ..................................................................................................... 7

   A.   BREITLING FAILED TO COMPLY WITH RULE 11'S SAFE HARBOR PROVISION,
        DENYING COUNSEL THE OPPORTUNITY TO ADDRESS BREITLING'S
        ALLEGATIONS AND RESULTING IN WIDESPREAD REPUTATIONAL DAMAGE ............ 7

   B.   BREITLING'S CLAIMS ARE WHOLLY BASELESS AND OBJECTIVELY FALSE .............. 9

        1.   Breitling Fails to Show Public Disclosure of Confidential
             Information ................................................................................. 9

        2.   Breitling's Claims Regarding the EURweb Article are False and
             Misleading ................................................................................. 11

        3.   Breitling Misrepresents Mr. Hecht's Professional Affiliations ................ 14

   C.   BREITLING'S *AD HOMINEM* ATTACKS ARE IMPROPER AS A MATTER OF COURSE
        AND HARMFUL TO COUNSEL ................................................................... 16

   D.   THE COURT SHOULD STRIKE BREITLING'S FRIVOLOUS MOTIONS, ORDER
        THAT BREITLING'S COUNSEL CEASE AD HOMINEM ATTACKS, AND AWARD
        ATTORNEYS' FEES AND COSTS ............................................................... 17

IV.  CONCLUSION ................................................................................................ 22

## **TABLE OF AUTHORITIES**

**Cases**  **Page(s)**

*Agee v. Paramount Comms., Inc.*,
114 F.3d 395 (2d Cir. 1997)..................................................................................20

*Danping Li v. Gelormino*,
No. 3:18-cv-442 (MPS), 2019 WL 1957539 (D. Conn. May 2, 2019)....................................4

*Dickey's Barbecue Pit, Inc. v. Neighbors*,
No. 4:14-CV-484, 2015 WL 13466613 (E.D. Tex. June 5, 2015) ..........................................21

*Gortat v. Capala Bros., Inc.*,
No. 07 CV 3629 (ILG), 2009 WL 10706564 (E.D.N.Y. June 3, 2009) .......................6, 17, 21

*Hannah v. Wal-Mart Stores, Inc.*,
No. 3:12-cv-01361 (VAB), 2017 WL 6462546 (D. Conn. Dec. 18, 2017) ..................6, 18, 21

*In re Pennie & Edmonds LLP*,
323 F.3d 86 (2d Cir.2003)..................................................................................5, 8

*Jones v. Annucci*,
124 F. Supp. 3d 103 (N.D.N.Y. 2015) ....................................................................17

*Kaye v. New York City Health and Hosps. Corp.*,
18CV12137JPCJLC, 2020 WL 7237901 (S.D.N.Y. Dec. 9, 2020)....................................6, 16

*Lawrence v. Richman Group of CT LLC*,
620 F.3d 153 (2d Cir. 2010)..................................................................................5

*Morrison v. Walker*,
No. 1:13-CV-327, 2014 WL 11512240 (E.D. Tex. Dec. 2, 2014) ..........................................21

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*,
No. 09-CIV-2669 (LAP), 2015 WL 4757601 (S.D.N.Y. Aug. 12, 2015) ................................5

*People of State of N.Y. by Vacco v. Operation Rescue Nat.*,
80 F.3d 64 (2d Cir. 1996)..................................................................................6, 18, 21

*Perpetual Secs., Inc. v. Tang*,
290 F.3d 132 (2d Cir.2002)..................................................................................8

*Powell v. Dallas Morning News L.P.*,
776 F.Supp.2d 240 (N.D. Tex. 2011) ....................................................................6

*Rodriguez v. Weprin*,
116 F.3d 62 (2d Cir. 1997)..................................................................................5

*Shafii v. British Airways, PLC*,
  83 F.3d 566, 571 (2d Cir. 1996)........................................................................................6

*Schlaifer Nance & Co., Inc. v. Est. of Warhol*,
  194 F.3d 323 (2d Cir. 1999)........................................................................................5, 7, 8

*Travelers Indem. Co. v. Excalibur Reinsurance Corp.*,
  No. 3:11-CV-1209 (CSH), 2013 WL 4012772 (D. Conn. Aug. 5, 2013).........................10

*Tucker v. Am. Int'l Grp., Inc.*,
  936 F. Supp. 2d 1 (D. Conn. 2013).................................................................................16

*United States v. Biasucci*,
  786 F.2d 504 (2d Cir. 1986).............................................................................................17

*Vicks v. Packnett*,
  No. CV 18-556-BAJ-EWD, 2020 WL 2616398 (M.D. La. May 22, 2020) ....................6, 21

*Waterville Inv., Inc. v. Homeland Sec. Network, Inc. (NV Corp.)*,
  No. 08-CV-3433 (JFB)(WDW), 2010 WL 2695287 (E.D.N.Y. July 2, 2010).................10

*Watkins v. Smith*,
  561 F. App'x 46 (2d Cir. 2014).........................................................................................17

*Zep Inc. v. Midwest Motor Supply Co.*,
  726 F.Supp.2d 818 (S.D. Ohio 2010) ...........................................................................6, 21

**Statutes**

28 U.S.C. § 1927....................................................................................................................4, 6

**Rules**

Cal. R. Prof'l Conduct 3.10 ...................................................................................................2

Fed. R. Civ. P. 5 ....................................................................................................................5

Fed. R. Civ. P. 11 .......................................................................................................... *passim*

L.R. 7(a)(6) ............................................................................................................................1

RPC 3.6(a)..............................................................................................................................2

Plaintiff Solid 21, Inc. ("Plaintiff" or "Solid 21") requests an in-person[1] emergency hearing for this Court to address and dispose of Defendants Breitling SA and Breitling USA, Inc.'s ("Breitling" or "Defendants") recent improper filings at Dkt. Nos. 163-166, which contain vicious and highly misleading personal attacks aimed at harming Plaintiff's counsel's reputation.  These filings have already caused such harm.  On June 3, 2021, Law360, a legal industry publication, published an article highlighting, for example, Breitling's baseless and scandalous accusation that "Mr. Hecht and his firm are willing to also breach confidentiality orders of this court when the firm feeds information to the press."[2]  Breitling's filings are not only frivolous and littered with demonstrably false assertions, but also procedurally improper, as Breitling failed to comply with the safe harbor provision mandated by Rule 11(b)(2).

None of the alleged conduct that Breitling has raised in its motion, even if true (which it is not), rises to the level of sanctions, much less terminating sanctions. On the other hand, Breitling's bad faith filing in blatant violation of Rule 11's safe harbor provision *is* sanctionable.  Plaintiff's counsel not only warned Breitling before it filed its frivolous sanctions motion, but also requested that it withdraw its motions.  They refused.  Hecht Decl., ¶ 43-45; Ex. M; Ex. N at 1.

Breitling's motions have been assigned to Magistrate Judge Vatti.  Dkt. No. 168.  Pursuant to Local Rule L.R. 7(a)(6), Plaintiff seeks an emergency hearing with His Honor to address Breitling's conduct and dispose of its improper and baseless motions.  Plaintiff respectfully

---

[1] Plaintiff's priority is for a hearing to be scheduled as soon as possible, whether in person or remote, via Zoom or otherwise.  However, given the seriousness of the allegations set forth in Breitling's sanctions motion, which strike at the heart of counsel's reputation and ability to practice law, counsel prefers an in-person hearing if possible.

[2] A link to the same article was also distributed in Law360's Intellectual Property email newsletter the next day.  See Declaration of David L. Hecht ("Hecht Decl."), ¶ 42.  All citations to exhibits herein are to those attached to the Hecht Declaration.

requests that these motions be denied in their entirety, stricken from the docket,[3] and for Breitling's counsel to cease the *ad hominem* attacks that form the core of its motion.  Plaintiff also respectfully requests that the Court award fees and costs associated with responding to these flagrantly inappropriate and unethical[4] filings.

## I.    INTRODUCTION

Breitling's sanctions motion is the latest chapter in its counsel's openly hostile behavior ever since Plaintiff's counsel, Hecht Partners, appeared in this case.  *See* Hecht Decl., ¶¶ 10-18. The motion centers around an alleged Hecht Partners "press release," which it turns out is an *article* published by the Electronic Urban Report ("EURweb") on May 8, 2021, with authorship credited to Fisher Jack (the "EURweb Article").  *See* Ex. D.

After learning of an erroneous "source" credit at the bottom of this article to Hecht Partners, Plaintiff's counsel immediately took steps on a Sunday morning to have the publisher correct the issue.  *See* Hecht Decl., ¶¶ 22-24.  This took place more than twenty-four hours *before* Breitling vaguely mentioned an unidentified "press release" allegedly put out by counsel.  *Id*.  Accordingly, there was never any "cover-up" as Breitling baldly alleges.  Memorandum of Law in Support of Defendants' Motion for Terminating Sanctions (Dkt. No. 163-1) ("Mot.") at 23 (falsely stating that "Mr. Hecht was caught violating RPC 3.6(a) and attempted to cover his tracks").  Breitling's "cover-up" argument also belies its categorization of the EURweb Article as a press release, which would be an *official* statement from an entity released to news organizations (typically through a

---

[3] At least the docket entry for the sanctions motion, Dkt. No. 163, should be completely stricken from the docket given the inflammatory and personal nature of the text description of that entry.

[4] Breitling's lead counsel, Mr. Craig Mariam, and most of its team, are barred in the State of California, where the threat of referral to disciplinary authorities to gain an advantage in civil litigation is forbidden by the California State Rules of Professional Conduct.  *See* Rule 3.10.  Hecht Partners sent Mr. Mariam a letter regarding his unethical conduct on June 4, 2021.  *See* Ex. M.

newswire).  If the article were a firm press release, as Breitling contends, Hecht Partners could not have "covered it up."  And even a cursory review of the EURweb Article reveals it is clearly *not* an official statement from Hecht Partners; it does not even contain a quote from counsel (or Solid 21).  *See generally* Ex. D.  Indeed, Hecht Partners had no control over the article's content or publication.  Hecht Decl., Ex. ¶¶ 22, 24-15.  It was also never released to the newswire, as are all Hecht Partners press releases.  *Id*.

The EUR Article appears to be the result of outreach by counsel's public relations firm. *See* Hecht Decl., Exs. ¶¶ 19-20.  Indeed, Hecht Partners provided publicly available materials to its public relations firm, including the April 27, 2021 public hearing transcript (Dkt. No. 155) and several articles published on the Internet.  *Id*.  But since Breitling refused to talk with counsel about its vague reference to a "press release" that it believed was "completely improper," it could not have known the extent of Hecht Partners involvement (or lack thereof) and should have never filed its sanctions motion, which completely blindsided counsel in violation of Rule 11's twenty-one-day safe harbor.  *See id*. ¶¶ 26-34.  Importantly, counsel was never provided the required notice and opportunity to cure (though there was likely nothing to cure, given that somebody else authored the article), thus rendering Breitling's submission untimely and fatally defective.

Further, Breitling's claim that Plaintiff disclosed confidential information is nonsensical as the EURweb article *only* contains publicly available information.  Breitling falsely contends that a *public* statement by Thierry Prissert to *Hombre* magazine in 2014 was somehow rendered confidential by virtue of a line of questioning about the statement at deposition in this case.  Mot. at 7-8.  Not only is this innocuous statement (Breitling likes to "take risks") not confidential on its face, the EURweb Article itself hyperlinks to the source of Mr. Prissert's statement: the 2014 *Hombre* article.  Hecht Decl., ¶ 23; Ex. D at 2 (attorney's note indicating the hyperlink to the

Hombre Article); Ex. F at 2 (2014 Hombre Article containing Mr. Prissert's "take risks" statement). Breitling's contention that this public statement is covered by this Court's Protective Order is a purposeful misrepresentation.

The remaining arguments Breitling makes in support of sanctions are false. Undersigned counsel made no misrepresentation to this, or any, Court regarding counsel's limited affiliation with his prior firm or his lack of any responsibility for and authorization with respect to *this case* after withdrawing from it in April 2020. Other, unrelated allegations from other cases are wholly irrelevant to the instant action, including the allegations from a contentious class action where co-counsel was jockeying for lead status. Accordingly, Breitling's sanctions motion is not only procedurally defective, it is a sham. It is also a callous, below-the-belt attack against counsel, containing vicious *ad hominem* attacks, which has already caused reputational damages to counsel vis-a-vis the near-immediate coverage of the motion by Law360. *See* Hecht Decl., ¶ 42; Ex. K; Ex. L at 2. Breitling's motions should be disposed of, and stricken, as soon as possible given the continuing risk of reputational harm to counsel and Solid 21. If anyone should be sanctioned here, it is Breitling, which brought its sanctions motion in bad faith and in blatant disregard of Rule 11's safe harbor provision.

## II.   LEGAL STANDARD

A district court has the authority to impose sanctions under its inherent authority, Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1927. *Danping Li v. Gelormino*, No. 3:18-cv-442 (MPS), 2019 WL 1957539, at *10 (D. Conn. May 2, 2019) (citations omitted).

Rule 11 provides that an attorney presenting a written motion or other paper to the court certifies that to the best of the person's knowledge, information and belief, that "it is not being presented for any improper purpose, such as to harass" and the "legal contentions are warranted

by ... a nonfrivolous argument." Fed R. Civ. P. 11(b)(1)-(2). Rule 11 further provides for sanctions, including on the Court's initiative. Fed R. Civ. P. 11(c)(3). If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion. Fed R. Civ. P. 11(c)(2).

A motion for sanctions alleging violation of Rule 11(b) must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within twenty-one days after service or within another time the court sets. *Id; see also Lawrence v. Richman Group of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010) ("a Rule 11(c)(2) motion not only must specify the conduct for which sanctions are sought but must not be presented to the court until the alleged violator is afforded twenty-one days to withdraw or correct the offending document"); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir.2003) (observing that "safe harbor" provision "functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission"); *see also Schlaifer Nance & Co., Inc. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) ("At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.").

With regard to bad faith filings that do not relate to any claim or defense, the Court has the inherent power to control its docket. *See Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). That power includes the ability to "strike any filed paper which it determines to be abusive or otherwise improper." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09-

CIV-2669 (LAP), 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015); *see also Vicks v. Packnett*, No. CV 18-556-BAJ-EWD, 2020 WL 2616398, at *1 (M.D. La. May 22, 2020) (striking a filing that did "not relate to any claim or defense" in the case); *Powell v. Dallas Morning News L.P.*, 776 F.Supp.2d 240, 246 (N.D. Tex. 2011) ("Pursuant to the Court's inherent power to control its docket and prevent undue delay, Defendants['] Motion to Strike is GRANTED.") (internal citation and emphasis omitted); *Zep Inc. v. Midwest Motor Supply Co*., 726 F.Supp.2d 818, 822 (S.D. Ohio 2010) ("trial courts make use of their inherent power to control their dockets ... when determining whether to strike documents or portions of documents.") (internal citations omitted).

Under 18 U.S.C. § 1927, an "attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this statute are warranted where "there is a clear showing of bad faith on the part of the attorney." *Hannah v. Wal-Mart Stores, Inc.*, No. 3:12-cv-01361 (VAB), 2017 WL 6462546, at *2 (D. Conn. Dec. 18, 2017) (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)). Bad faith can be inferred when an attorneys' actions are taken without merit. *People of State of N.Y. by Vacco v. Operation Rescue Nat.*, 80 F.3d 64, (2d Cir. 1996), *Hannah*, 2017 WL 6462546, at *2.

Finally, needlessly attacking fellow counsel is highly disfavored in this district, as in most courts, as it has a "deleterious effect on a district court's ability to orderly and expeditiously manage litigation." *See, e.g.*, *Gortat v. Capala Bros., Inc.*, No. 07 CV 3629 (ILG), 2009 WL 10706564, at *13-15 (E.D.N.Y. June 3, 2009).

## III.    ARGUMENT

### A.    Breitling Failed to Comply with Rule 11's Safe Harbor Provision, Denying Counsel the Opportunity to Address Breitling's Allegations and Resulting in Widespread Reputational Damage

Breitling's inflammatory motion for sanctions (Dkt. No. 163) invokes Rule 11(b) as it alleges that counsel made a false statement to a Court.  *See* Mot. at II.B ("When Defendants Informed the Court About The Offending Release, Mr. Hecht And His Firm Lied About Their Direct Involvement").  However, prior to filing, Breitling provided no notice whatsoever of its specific allegation, in violation of the safe harbor provision specified in Rule 11(c)(2).  *See Schlaifer*, 194 F.3d at 334.  As such, counsel was not provided any opportunity to cure the allegedly offending statement, as he was completely unaware as to what Breitling's specific issue might be.[5]

The only related (and exceedingly brief) correspondence, demonstrating Breitling's failure to comply with the safe harbor, is laid out in the May 10, 2021 e-mail chain (Ex. G).  There, Breitling's counsel, in correspondence that included Judge Richardson's law clerk, vaguely described that "[c]ounsel for plaintiff put out a press release … that is completely improper" and then alleged that "we now have a breach of a stipulated protective order in this case, among other concerns."  Upon counsel's correction that Breitling's statement about the alleged "press release" was not accurate, and that the firm had not put out a press release, Breitling only responded that it "will address it appropriately" and that "[w]e don't need to argue about it."  Ex. G at 1-2.  Breitling did not even bother to specify what alleged "press release" it was even referring to. And when

---

[5] By contrast, counsel for Breitling was advised on May 10 that, in light of the complete lack of any basis on which they could file a motion regarding a non-existent event (like the alleged breach of the Protective Order vaguely articulated by Mr. Mariam, who refused to provide any specificity), Solid 21 reserved the right to seeks attorneys' fees and costs associated with responding in the event Breitling filed any baseless motion.  *See* Hecht Decl., ¶¶ 26-34; Ex. G at 1.  Therefore, Breitling's counsel was on notice under the safe harbor provision.

questioned as to how the protective order was allegedly breached, counsel did not respond. *Id.* Breitling failed to provide any notice whatsoever that it would file a *sanctions* motion at any point prior to filing or the grounds upon which it would be based. Accordingly, there is no question that Breitling failed to provide "(1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Schlaifer*, 194 F.3d at 334.

Instead, Breitling engaged in a surprise attack on counsel with its sanctions motion, in direct violation of Rule 11's safe harbor provision and basic decorum.[6] *See In re Pennie & Edmonds LLP*, 323 F.3d at 89 (observing that "safe harbor" provision "functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission"). Rule 11's safe harbor provision exists to reduce, if not eliminate, the unnecessary expenditure of judicial time and adversary resources by providing the party alleged of wrongdoing to correct or withdraw its submission. *See, e.g.*, *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 141 (2d Cir.2002). In ignoring this provision and failing to permit counsel the opportunity to address its statement, Breitling has wasted this Court's time and Solid 21's resources.

In light of its complete disregard for the safe harbor, Breitling's filing must be considered fatally defective as untimely and stricken from the docket. The timing of its submission also reeks of bad faith and gamesmanship, in what appears to be an attempt to flout this Court's order for it

---

[6] Breitling also never met and conferred regarding its emergency motion to stay this case (Dkt. No. 166), which is premised on its sanctions motion.

to produce relevant emails by June 11, 2021. *See* Dkt. No. 166 (Breitling's "emergency" motion to stay discovery premised on its sanctions motion).

Indeed, the fallout from Breitling's filings has been far-reaching. Breitling's sanctions motion was covered by Law360 less than 24 hours after it was filed and included in its Intellectual Property newsletter the next morning; Law360 describes that its newsletters are distributed to "[m]ore than 1.5 million readers."[7] Hecht. Decl., ¶ 42. Rule 11 specifically contemplates that "the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Here, failure to comply with Rule 11's notice provisions indicate bad faith on Breitling's part as it clearly indicates their desire was not to right any alleged wrongs, but to inflict harm on Plaintiff's counsel and attempt to delay Breitling's discovery obligations.

### B.      Breitling's Claims are Wholly Baseless and Objectively False

That Breitling failed to give notice of its sanctions motion or even attempt to meet and confer prior to its filing is not surprising given that the motion is based on demonstrably false statements and incorrect assumptions. First, Breitling claims that Solid 21 violated the Protective Order. Mot. at 8. Second, Breitling accuses Plaintiff's counsel of lying to the Court regarding its role in the publication of the EURweb Article. Mot. at 6-9. Third, Defendants assert that Plaintiff's counsel misled the Court regarding David Hecht's affiliation with his former firm and his involvement with the present case. Mot. at 10-13. Each of these are disproven below.

#### 1.      Breitling Fails to Show Public Disclosure of Confidential Information

The first false assertion upon which Defendants' Motion is premised is that Plaintiff breached the Protective Order in this case. *See* Mot. at 8 ("this information was obtained during Mr. Prissert's *confidential* deposition") (emphasis added). According to Defendants, Mr. Prissert's

---

[7] *See* https://www.law360.com/Law360-Fact-Sheet.pdf.

statement that Breitling is a brand that "takes risks," as stated in the EURweb Article, is confidential information that must have been obtained Mr. Prissert's deposition. *See id.* at 7-8. This is absurd on its face – in fact, the statement discussed at this deposition was made by Mr. Prissert to a men's magazine and published back in 2014.

Initially, the statement itself (Breitling "takes risks") cannot possibly be confidential even viewing it without any context. And when viewed in context, the EURweb Article itself cites (via hyperlink) the source of this statement: a 2014 article published by *Hombre: For Men of Passion* (the "Hombre Article"). *See* Ex. D at 2 (EURweb Article providing a hyperlink citation to Hombre Article). In this publicly available article dated February 24, 2014, Mr. Prissert is quoted as saying "[Breitling] is also a brand that likes to have fun and take risks ...." Ex. F at 2 (2014 Hombre Article).

It goes without saying that publicly available information cannot possibly be confidential. Indeed, Mr. Prissert's statement fails to meet the Court's definition of "confidential" information: it is public, and it cannot reasonably and in good faith constitute a trade secret, proprietary business information, or implicates an individual's legitimate expectation of privacy. *See* Dkt. No. 5, Standing Protective Order ("Protective Order") ¶ 3; *see also Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209 (CSH), 2013 WL 4012772, at *17 (D. Conn. Aug. 5, 2013) ("a protective order is designed to protect information that is *not* publicly available") (citations omitted, emphasis in original); *Waterville Inv., Inc. v. Homeland Sec. Network, Inc. (NV Corp.)*, No. 08-CV-3433 (JFB)(WDW), 2010 WL 2695287, at *3 (E.D.N.Y. July 2, 2010) ("publicly available information cannot, as a matter of law, constitute a trade secret") (citations omitted). Accordingly, no violation of the Protective Order occurred.

Again, prior to filing its motion, Breitling never informed Solid 21 that it believed Mr. Prissert's statement was improperly disclosed in violation of the Protective Order.  Nor did Breitling detail *any* particular confidential information that it believed was improperly disclosed, after baldly alleging on May 10, 2021 that there was "a breach of [the] stipulated protective order in this case."  Solid 21 specifically asked Breitling: "[w]hat breach of the stipulated order do you contend has occurred—and by whom?"  Ex. G at 2.  Breitling did not respond.  To Plaintiff's knowledge, Breitling has also not taken any steps to have the statement removed from the EURweb Article (nor could it, really, in light of the fact that the quote publicly given by Mr. Prissert to *Hombre*).  Breitling's course of conduct does not suggest that it was at all concerned about the statement it alleges was improperly disclosed.  The EURweb Article remains up to this day, with the quote and the hyperlink.  Accordingly, Breitling's argument that there was a violation of the protective order is belied by its own conduct in failing to attempt to remove the alleged "confidential" statement.  It is a sham.

### 2.    Breitling's Claims Regarding the EURweb Article are False and Misleading

As it and countless other law firms have done in the course of litigation, Hecht Partners *did* provide publicly available materials regarding this litigation to its public relations firm, namely, the transcript of the April 27, 2021 hearing.  That is hardly controversial.  That public relations firm apparently found receptive media outlets (beginning with Radar Online, an celebrity/entertainment gossip and news site), including EURweb which then published the article which Breitling complains of.  Hecht Partners did not, however, control the content or publication of these articles -- none of which are Hecht Partners press releases as Breitling claims the EURweb Article is.  Hecht Decl., ¶¶ 19-20.

When communicating with court personnel on May 10, 2021 (regarding the scheduling of a potential mediation), counsel for Breitling made the false accusation that "[c]ounsel for plaintiff put out a press release this weekend that was completely improper …." Ex. G at 4. Breitling's counsel offered no further explanation of *what* he was referring to or *why* it might have improper. In the context of that correspondence with the court personnel, undersigned counsel explained, correctly, that Breitling's categorization of the EURweb Article was not accurate and Hecht Partners had not, in fact, put out a press release over that weekend. *Id.* at 3. Rather than explain the accusation, or ask for clarification regarding the inaccuracy raised, Breitling's counsel's response said only: "[w]e will address it appropriately. We don't need to argue about it." *Id.* at 3. Breitling's only step to "address it" was to improperly file a sanctions motion in violation of Rule 11's safe harbor.

As an initial matter, Breitling's claim that Plaintiff's counsel misled the Court is nonsensical as Plaintiff's counsel did not even make *any* statement to the Court. The e-mail correspondence discussed above was directed to Breitling's counsel, not the Court. But more to the point, the article that Breitling argues is a "press release" is unquestionably *not* a Hecht Partners "press release." It was not an official statement provided by Hecht Partners to the news media. It was not distributed to newswires. It does not even contain a quote from Hecht Partners. Hecht Partners did not control the content or publication of the article, either. Breitling fails to mention that the "press release" (*i.e.*, the EURweb Article) was authored by Fisher Jack—not Solid 21 or anyone affiliated with Hecht Partners. Hecht Decl., ¶¶ 19-25. The top of the article appears as follows, with the authorship credit below the title:

**BUSINESS**

# Jeweler to the Stars Chris Aire Scores Victory over Breitling in Infringement Case

By **Fisher Jack**   May 8, 2021

Ex. D at 1.  Despite this clear text, Breitling misleadingly states that "the sole source of the release was attributed to 'Hecht Partners.'"  Mot. at 6.

Veering into conspiracy theory territory, Breitling stitches together innocuous facts to concoct a false narrative.  According to Breitling, that the EURweb Article changed its "source" from "Hecht Partners" to "Elevate Strategic" is somehow indicative of a massive coverup effort.  Mot. at 9-10.  What *actually* happened was that "Hecht Partners" was, for a short time, erroneously listed as a "source" at the bottom of the article when it was first published on May 8, 2021.  Upon reviewing the article, on the morning of May 9, 2021, Hecht Partners requested that its public relations firm reach out to the publisher to correct the error.  Hecht Decl., ¶ 24.  Far from the nefarious plot described in Breitling's papers, this was an anodyne act of diligent correction.  And undermining Breitling's conspiratorial claims even further, the correction was undertaken *the day before* Breitling purported to raise any concerns about the article, which occurred in correspondence on May 10, 2021.  Accordingly, the notion that this was an "attempt[] to cover their tracks" after being accused of bad acts is demonstrably false.

Had Breitling followed up via correspondence, phone call, or other means of communication with an explanation that it was actually referring to the EURweb Article, so as to clarify its vague reference to a "press release," Hecht Partners could and would have discussed the matter.  But rather than raise the issue at the time, Breitling instead created a false narrative from

whole cloth for its motions more than three weeks later. Breitling failed to do a stitch of diligence before running to the Court with its allegation regarding a "cover up," which was used as the basis of its improper sanctions motion. This is a textbook example of a motion that could have and should have been avoided had Breitling met and conferred about the issue before filing. Instead, Breitling chose to burden the Court and Plaintiff with needless and improper motion practice denigrating undersigned counsel.

### 3.  Breitling Misrepresents Mr. Hecht's Professional Affiliations

Failing yet again to conduct proper diligence, Breitling alleges another unfounded "severe ethical infraction" in a desperate attempt to relitigate a discovery motion already decided by this Court. At the core of its arguments are alleged "recently unsealed papers in another litigation" in another case. Mot. at 3. There is nothing "recent" about this, as the declaration cited by counsel explains and expounds on statements made at a public hearing on May 13, 2020 in the Eastern District of Texas that were available since last spring after it was transcribed. Ex. J at 4. (stating that undersigned counsel "remain[ed] affiliated [with the prior firm] in connection with *certain cases*...") (emphasis added). At that time, undersigned counsel had already withdrawn from this matter. Hecht Decl., ¶ 9. Breitling quotes undersigned counsel's accurate words from his declaration in the Texas case, but then misleadingly characterizes those words in a shameless attempt to create a false narrative. Specifically, undersigned counsel indicated that he resigned from the partnership of his prior firm on March 11, 2020, but had, at the time of that filing, "remained of counsel since [March 11, 2020] in order to, *inter alia*, fulfill *ongoing duties to clients* and to transition certain matters from [Pierce Bainbridge] to Hecht Partners LLP." Dkt. No. 163-12, ¶ 13 (emphasis added). This was accurate and Solid 21 was not one of the clients to which undersigned counsel was referring.

-14-

Indeed, Solid 21's President, Christopher Aire, stated under penalty of perjury that undersigned counsel was not authorized to represent Solid 21 "[f]rom the time of his withdrawal [in April 2020] until being engaged at his new firm in December 2020." Dkt. No. 105-2 (Declaration of Christopher Aire). Nonetheless, Breitling falsely characterizes undersigned counsel's statement in his declaration in the Texas case as evidencing that he was "actively engaged in *all matters* [at the former firm] as of counsel." Mot. at 13 (emphasis added). Undersigned counsel was *not* engaged in all matters (of which there were many) at his prior firm as of counsel (and never made such a representation). Hecht Decl., ¶¶ 9. Nor was this matter one of the cases on which undersigned counsel had any "ongoing duties," as this Court has observed. Dkt. No. 155 at 23:17-24 (noting that in early 2020, "Mr. Hecht left [Pierce Bainbridge] and an attorney from Pierce Bainbridge assumed the representation of the Plaintiff"). Prior counsel, Mr. John Pierce, had full responsibility for this case from April 2020 to December 2020, and undersigned counsel was not at all involved during that time. *See* Hecht Decl., ¶¶ 8-9; *see also* Ex. B at 1 (letter from Mr. Hecht on January 22, 2021 stating that he had only been recently re-engaged by Solid 21 after a nine-month absence). Thus, Breitling's characterization of the unsealed declaration is categorically false, as are its numerous representations that counsel has made false statements to this Court.

Accordingly, Breitling is once again attempting to relitigate issues relating to previous counsel's failure to advance discovery -- they are using the same theory that undersigned counsel for Plaintiff had knowledge of and/or the ability to remedy such failures of previous counsel prior to re-appearing in this matter. *See, e.g.*, Dkt. No. 118 at 1 (describing the same issues). Breitling's inaccurate and misleading categorization of undersigned counsel's limited role at his prior firm

following his withdrawal from its partnership in March 2020 does not even support its wild conspiracy theory.

### C.   Breitling's *Ad Hominem* Attacks Are Improper as a Matter of Course and Harmful to Counsel

In addition to presenting outright falsehoods,[8] Defendants' papers are based on *ad hominem* attacks that falsely impugn undersigned counsel's professionalism and integrity. Use of inflammatory and openly insulting terms such as "moral failings" (Mot. at 6), "weak moral compass (or lack thereof)" (Mot. at 4), and "repeatedly engaged in [] ethical violations" (Mot. at 5) have no place in this, or any, court. *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013) (noting that "'a scandalous allegation' has been described as 'one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court'"). It is improper as a matter of both state and federal law for an attorney to impugn fellow counsel's integrity or make *ad hominem* attacks on counsel. As one court in this circuit observed:

> Setting advocacy aside, civility is a worthy end in itself. "The lawyer ... who tramples on civility undercuts belief in the law. The litigator need not hug an adversary. But to treat an adversary with advertent discourtesy – let alone with calumny or derision – is a form of incivility that rends the fabric of the law." Louis H. Pollack, Professional Attitude, 84 A.B.A. J. 66, 66-67 (Aug. 1998). All attorneys are engaged in the administration of justice, and civility to one's adversary is recognition of this common undertaking.

---

[8] In addition to the false statements presented above, Breitling also misleads the Court in several other of its representations. For example, Breitling misrepresents counsel's LinkedIn post about a disqualification motion in another case as an "openly lie[] about the motion as being somehow 'frivolous'"--when, in truth, the post said no such things. *See* Mot. at 4-5. Breitling also misrepresents the status of a lawsuit brought by a former employee alleging discrimination based on his sexual orientation, describing it as an "adjudicated prior lawsuit" that was "dismissed on summary judgment." Breitling attaches a judgment filed September 29, 2016 -- but the case is actually still active *after being revived* by the Second Circuit. *See Cargian v. Breitling USA, Inc.* (S.D.N.Y.) Case No. 16-3592-cv; *see also* Jack Newsham, *Breitling Must Face Suit Over 'Macho' Culture: 2nd Cir.*, Law360 (September 10, 2018), available at https://www.law360.com/articles/1081133.

*Gortat*, 2009 WL 10706564, at *15 (sanctioning attorney for continued *ad hominem* attacks against opposing counsel in violation of court's order); *see also Jones v. Annucci*, 124 F. Supp. 3d 103, 126 (N.D.N.Y. 2015); *United States v. Biasucci,* 786 F.2d 504, 513–14 & n. 9 (2d Cir. 1986) (characterizing as "clearly ... inappropriate" the prosecutor's "needless and unwarranted *ad hominem* attacks" against counsel); *Watkins v. Smith*, 561 F. App'x. 46, 48 (2d Cir. 2014) (weighing as a factor in support of sanctions attorney's "troubling practice of supporting their arguments with unsubstantiated ad hominem attacks against other members of the bar ... rather than legal authority or facts."). Plaintiff notes that from Hecht Partners' appearance in this matter in December 2020, the tenor of communications from Defendants' counsel, and their filings, have often included needless hostility directed toward impugning Plaintiff's counsel. Hecht Decl., ¶¶ 8-18.

### D.   The Court Should Strike Breitling's Frivolous Motions, Order That Breitling's Counsel Cease Ad Hominem Attacks, and Award Attorneys' Fees and Costs

From the foregoing, it is clear that Breitling's motion is a thinly veiled excuse to directly attack and demean Plaintiff's counsel. Breitling's bad faith is evidenced by its refusal to perform even a basic inquiry into the issues of which it complains of, or even to meet and confer with Plaintiff – as it is required to do – prior to filing its motion.

As discussed previously, on May 10, 2021, Breitling's counsel first sent an e-mail to Plaintiff's counsel accusing the latter of violating the Protective Order and raising issues about an unidentified "press release" (which Plaintiff now knows refers to the EURweb Article). *See supra* Part III.A. Plaintiff's inquiries into the nature of these allegations were ignored. Had Defendants bothered to meet and confer with Plaintiff or responded to their inquiries in any way, they would have been informed of what should have already been obvious: that there was no confidential

information disclosed and that the EUR Article was authored by someone other than Plaintiff or its counsel. *See supra* Part III.B.1, III.B.2.

Further, even a basic inquiry would have revealed the hollowness of Defendants' claims. Not only was the purported "confidential information" not even confidential to begin with (Mr. Prissert's statement that Breitling "takes risks"), a cursory examination of the EURweb Article would have also revealed that. The article itself provides a hyperlink citation supporting Mr. Prissert's "takes risks" statement, which is a publicly available 2014 article. *See supra* Part III.B.1. The citation hyperlink itself is conspicuous, with different-colored font from the rest of the text and allowing a user to "click" on that link to the 2014 article. Ex. D at 2 (showing conspicuous hyperlink to the article in Ex. F). To the extent that Defendants somehow believed that Mr. Prissert's statement was confidential, this simple inquiry would have put that to bed. As for the EURweb Article itself, it identifies its author: Fisher Jack. This is neither Plaintiff nor its counsel.

It is crystal clear that the only way for Defendants to have filed their motion was to ignore reality and twist facts to their liking. The relief they seek – terminating sanctions, withdrawal from the case, and bar disciplinary action, among others – is so extraordinary that it only serves to underscore this. Breitling should not have filed its inflammatory motion without actually having the goods to back it up. That they did so only proves that their intent was not to right some wrong, but a bad faith effort to attack Plaintiff's counsel.[9] *See People of State of N.Y. by Vacco*, 80 F.3d at 72-73 (attorney actions were so meritless as to constitute bad faith conduct that unreasonably and vexatiously multiplied proceedings); *Hannah*, 2017 WL 6462546, at *3-4 (court ordered

---

[9] It is notable that Breitling's other attorneys of record in this case -- namely Hazel Pangan, Julia Whitelock, Raymond Muro, and Samuel Laughlin – did not sign on to Breitling's sanctions motion or the related motion to stay.

sanctions where premature appeal was deemed so meritless that it had to be undertaken for some improper purpose such as delay).

Unfortunately, leveling baseless accusations without any basis, evidence, or inquiry has been the calling card of Breitling's counsel in this litigation, who have consistently adopted an approach of *shoot from the hip and don't bother asking questions*.  For example, Breitling's counsel showed that not even a person's death is sacrosanct.  During the April 27, 2021 court hearing regarding their failure to comply with discovery, they baselessly insinuated that Plaintiff's counsel somehow had advanced knowledge of Dr. Butters' untimely passing during the pendency of this litigation and benefiting from it.  *See* Dkt. No. 155 at 36:22 – 37:14.  And in e-mail correspondence between counsel in which Judge Richardson's clerk was carbon copied, Plaintiff's counsel inadvertently failed to remove court personnel from the e-mail chain when it became clear that Breitling's counsel was going to use that correspondence to level accusations at Plaintiff's counsel. But even for such an innocuous mistake, Breitling's counsel leapt at the opportunity to crassly accuse Plaintiff's counsel of intentionally leaving court personnel on the e-mail exchange.  *See* Ex. G at 1-2 (Mr. Mariam baselessly stating "[n]otwithstanding his email below, we do not believe you were actually intended to have been removed [from the email chain]").  This is but several examples of such egregious conduct.  *See* Hecht Decl., ¶¶ 10-18.

Breitling's bad faith is further evidenced by its inclusion of irrelevant material from other cases that are *entirely unrelated* to this case or any of the issues they complain of.  *See* Mot. at 14-15.  For example, Breitling included in its motions unsupported and salacious accusations that

resulted from jockeying for lead counsel status in a highly contentious class action case.[10]  *See id.*

Not only have Defendants not bothered to confirm the veracity of any of these materials (many of

which themselves are baseless accusations), none of them speak to the issues Defendants raised:

whether Plaintiff's counsel publicly disclosed confidential information, or whether they made false

statements.[11]  The impropriety of these materials is further underscored by how voluminous they

are: including exhibits that are more than one hundred pages each (Exs. A (Dkt. No. 163-3) and K

(Dkt. No. 163-13)).

 Finally, in addition to lacking merit and weaponized to attack Plaintiff's counsel, Breitling

admits that their motion is designed to relitigate Plaintiff's motion to compel discovery.  *See* Dkt.

No. 170 at 1.  Not only should Breitling have sought a motion for reconsideration if this was their

goal, this also lays bare Breitling's attempt to delay court-ordered discovery with a motion that has

no bearing on that obligation.  Indeed, they have intimated that they will not comply with the court-

ordered production deadline of June 11 despite receiving no permission from this Court or

agreement by Plaintiff to do so.  *See id.* at 2 (stating that had Plaintiff and its counsel "not engage[d]

in these shenanigans, Defendants would have been ready to produce the ESI on June 11, 2021").

 The facts presented in Breitling's sanctions motion are false or highly misleading and

missing all context.  Their motion unfairly and publicly smear Hecht Partners and its attorneys as

"unethical," which will injure the firm and its professionals. *See Agee v. Paramount Comms., Inc.*,

---

[10] Defendants largely crib off of a rambling declaration from a disgraced former partner of
undersigned counsel who has been accused of sexual assault.  Coincidentally, that person used to
work at Gordon Rees, Breitling's law firm.  The partner has, to date, sued two of his former
employers, a board of directors, multiple law firms alleged to have conspired with their client, and
thirty-some-odd individuals across five lawsuits and six appeals.  That partner's declaration is
Breitling's Exhibit A (Dkt. No. 163-3).

[11] For the sake of completeness, Plaintiff's counsel addresses Breitling's completely unrelated
allegations separately in the Hecht Declaration.  Hecht Decl., ¶¶ 35-41.

114 F.3d 395, 398 (2d Cir. 1997) (noting that a "sanctions award implicates the reputational interests of the attorney—his primary asset").  This is evidenced by the near immediate coverage by Law360, which published an article on Breitling's sanctions motion on June 3rd, 2021 and quoted Breitling's false assertion that Hecht Partners willingly violated the Court's Protective Order.  Hecht Decl., ¶ 42.  Where the basis for Breitling's papers is nothing beyond a series of unsupported *ad hominem* attacks, this Court is well within its authority to reject them outright. Further, Breitling's motion has no bearing on any of the underlying claims in this litigation and are precisely the sort of attack that ought to be stricken by the Court under its power to control its docket.  *See Morrison v. Walker*, No. 1:13-CV-327, 2014 WL 11512240, at *2 (E.D. Tex. Dec. 2, 2014) (striking motion to dismiss due to *ad hominem* attacks on counsel contained therein); *see also Vicks*, 2020 WL 2616398, at *1; *Zep*, 726 F.Supp.2d at 822.

Considering the prejudice and harm to Hecht Partners and its professionals, the Court should expunge Breitling's motions and order them to cease these needless *ad hominem* attacks. *See Dickey's Barbecue Pit, Inc. v. Neighbors*, No. 4:14-CV-484, 2015 WL 13466613, at *5 (E.D. Tex. June 5, 2015) (sealing documents whose release could be harmful); *Gortat*, 2009 WL 10706564, at *15 (*ad hominem* attacks by attorneys sanctionable).  Breitling's bad faith in filing its meritless motion is also a proper basis for awarding attorneys' fees and costs.  *See People of State of N.Y. by Vacco*, 80 F.3d at 72-73 (attorney actions were so meritless as to constitute bad faith conduct that unreasonably and vexatiously multiplied proceedings); *Hannah*, 2017 WL 6462546, at *4 (monetary and attorneys' fees for abusive, bad faith motions).; *Gortat*, 2009 WL 10706564, at *15 (awarding fees and costs for *ad hominem* attacks).

## IV.     CONCLUSION

For the reasons stated above, Breitling's sanctions motion and its related motion to stay are meritless, frivolous, and clearly filed for improper purposes.  Thus, Plaintiff respectfully requests that the Court order that these be sealed, redacted, and/or stricken.  Plaintiff also seek fees and costs in connection with Breitling's frivolous motions, including for the time and expense that Plaintiff's counsel expended in addressing these.  Finally, Plaintiff requests an order for Breitling's counsel to cease its *ad hominem* attacks against Plaintiff and its counsel.

Dated: June 7, 2021

 */s/ David L. Hecht*
David L. Hecht (*pro hac vice*)
Conor McDonough (*pro hac vice*)
Yi Wen Wu (*pro hac vice*)
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
P: (212) 851-6821
dhecht@hechtpartners.com
cmcdonough@hechtpartners.com
wwu@hechtpartners.com

Jeffrey W. Kennedy
Milano & Wanat LLC
471 East Main Street
Branford, CT 06405
P: (203) 315-7000
jkennedy@mwllc.us

*Counsel for Plaintiff Solid 21, Inc.*

## **CERTIFICATE OF SERVICE**

I, David L. Hecht, hereby certify that on June 7, 2021, I served a true and correct copy of the foregoing **PLAINTIFF SOLID 21, INC.'S MOTION FOR AN EMERGENCY HEARING AND SANCTIONS** to counsel of record via electronic filing.

 */s/ David L. Hecht*
David L. Hecht