# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| SOLID 21, INC., | |
| Plaintiff, | C.A. NO. 3:19-CV-00514-MPS |
| v. | |
| BREITLING U.S.A., INC.; BREITLING SA; AND BREITLING AG, | JUNE 10, 2021 |
| Defendants. | |

---

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR AN EMERGENCY HEARING AND SANCTIONS

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. RELEVANT BACKGROUND ..............................................................................3

III. LEGAL ARGUMENT ..........................................................................................10

    A. Defendants' Motion for Sanctions Is Premised Upon the Court's Inherent Authority, Not Rule 11 of the Federal Rules of Civil Procedure.......................... 10

    B. Defendants' Motion for Sanctions Is Not A Threat Of Disciplinary Action Under California's Ethical Rules. ....................................................................... 10

    C. Plaintiff Created This Situation and Defendants' Collection of Mr. Hecht's and His Firm's Pattern and Practice Misconduct Are Not *Ad Hominem* Attacks—They Are the Proper Basis For a Sanctions Motion. ........................... 11

    D. Mr. Hecht's False Narrative Provided to the Press Violates The Protective Order And Also Violates His Ethical Duty of Candor. ........................................ 14

IV. CONCLUSION .....................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .................................................................................................................. 10

*Daily Mirror, Inc. v. N.Y. News, Inc.*,
  533 F.2d 53 (2d Cir.1976) ....................................................................................................... 12

*Errant Gene Therapeutics, LLC v. Sloan-kettering Inst. for Cancer Rsch.*,
  No. 15CV2044AJNRLE, 2017 WL 2418742 (S.D.N.Y. June 5, 2017) .................................. 14

*Feldberg v. Quechee Lakes Corp.*,
  463 F.3d 195 (2d Cir. 2006) .................................................................................................... 12

*Lyell Theatre Corp. v. Loews Corp.*,
  682 F.2d 371 (2d Cir.1982) ..................................................................................................... 12

*Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*,
  663 F.2d 371 (2d Cir. 1981) .................................................................................................... 10

*United States v. Dixon*,
  No. 09-CR-6046L, 2011 WL 4829718 (W.D.N.Y. Oct. 12, 2011),
  *aff'd*, 511 F. App'x 48 (2d Cir. 2013) ..................................................................................... 12

**Rules**

California Rules of Professional Conduct
  Rule 3.10 .................................................................................................................................. 11

Connecticut Rules of Professional Conduct
  Rule 3.3 ........................................................................................................................... 2, 3, 13

Connecticut Rules of Professional Conduct
  Rule 3.6 ................................................................................................................................ 7, 13

Connecticut Rules of Professional Conduct
  Rule 4.1 ......................................................................................................................... 3, 14, 15

Federal Rules of Civil Procedure
  Rule 11 .............................................................................................................................. 10, 11

Federal Rules of Civil Procedure
  Rule 7 ....................................................................................................................................... 11

Defendants Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG) (collectively, "Breitling" or "Defendants"), through counsel, hereby respectfully oppose Plaintiff Solid 21, Inc.'s ("Plaintiff") Motion for an Emergency Hearing and Sanctions (Dkt. No. 172) (the "Motion") and state as follows:

## I.   INTRODUCTION

David Hecht and his namesake firm, Hecht Partners LLP, are not victims, as they characterize themselves repeatedly in their emergency Motion in opposition to Defendants' Motion for Sanctions (Dkt. No. 163) and during the June 8, 2021 status conference. *Breitling* is the victim. This Court is the victim. Defense counsel are the victims. In fact, this is at least the *third* recent time and the third recent case, wherein Mr. Hecht was accused by opposing counsel of misconduct and certain misrepresentations. That this happened *once* is shocking. That it happened *at least* three times—in matters unrelated to each other—is remarkably telling.

Mr. Hecht will apparently never "get it," as he has now opposed the instant motion with **more misrepresentations to this Court**. As the evidence reveals, Mr. Hecht's June 8, 2021 oral commentary to this Court was not true. He stated at the status conference that he had to rush the press release (*or article – it does not matter what one calls it – which is another red herring presented by Mr. Hecht*) because, according to him, Breitling (through unknown counsel) had first contacted some publication itself, and Mr. Hecht allegedly had to beat them to the punch. As far as the undersigned counsel is aware, "Breitling's counsel" did not reach out to a third party (or any party) to publish an article or press release. In any event, and putting such collateral issue aside, Mr. Hecht **again** falsely told this Court that he was uninvolved in this case during the timeframe he allegedly left his former firm, Pierce Bainbridge. The evidence shows otherwise. What the evidence shows is that Mr. Hecht remained at Pierce Bainbridge for much of 2020, worked on client matters for Pierce Bainbridge (as he himself declares in his Texas declaration), had access

to the entirety of his Pierce Bainbridge files and system, and slowly transitioned matters to his new namesake firm in or about December 2020.  During the period he allegedly had no contact with his client concerning this case, he seems to have worked on a fast track matter (as he calls it) in Florida for the same client, and was clearly involved in strategies and decisions in *this* case.  Yet, unsure of which firm to utilize for communications in *this* case, he used both of his firm's emails until approximately late November 2020, when he finally told counsel that his Pierce Bainbridge email should not be used given a "present"[1] non-involvement in this case, only to re-appear almost immediately thereafter, in early December 2020, using his new firm's name.  The evidence supports all of this; it does not support Mr. Hecht's storyline.  And, he certainly does not deserve the benefit of the doubt were there any (which there is not) given his history.

This situation is not enticing or desirable for defense counsel, and the situation remains atypical and uncomfortable.  But, these concerns are required to have been addressed, as counsel has an obligation to so advise this Court under Rule 3.3(b) of the Connecticut Rules of Professional Conduct.

As is the case, here, Mr. Hecht seemingly has a *modus operandi* to play the victim in these situations (as he did in the similar New York and Texas cases), manipulate facts, and aggressively attack the party and counsel who placed his (mis)conduct at issue.  Breitling and its counsel must be protected.  It is clear that Mr. Hecht intends to multiply his vexatious conduct through frivolous State Bar proceedings and defamation proceedings, as he has already (1) threatened twice in writing and incorrectly—a purported violation of the California State Bar as against defense counsel for allegedly making a "threat" to gain a civil advantage (which actually never happened, and never will happen); and (2) sent a litigation hold letter to defense counsel relating to alleged

---

[1] He apparently was finally ready to fully transition to Hecht Partners LLC in late November 2020.

(but legally non-existent) defamation in these related filings.  This Court therefore must protect the defense and address Mr. Hecht's actions before he is allowed to carry on further, as a failure to squarely address his misconduct will assuredly result in additional, immediate misconduct given his (and his colleagues') foregoing threats.

At least three opposing counsel have now accused Mr. Hecht of abusive litigation tactics, and at least one court—the Honorable Judge Hellerstein of the U.S. District Court for the Southern District of New York—has held that Mr. Hecht "acted inconsistently with professional ethics" and committed "misrepresentations" in violation of New York's professional rules of conduct.

The pattern and practice of unethical behavior is now on full display; and they are now emboldened by the prior slaps on the wrist, including that of Judge Hellerstein who specifically found that Mr. Hecht "acted inconsistently with professional ethics," but did not personally address the situation; and Mr. Hecht took the opportunity to brag about it on LinkedIn.  Indeed, as discussed below, Mr. Hecht's declaration submitted in support of Plaintiff's instant Motion (Dkt. No. 172) continues to advance lies to the Court that try to downplay his involvement during the period when he allegedly "withdrew" from this case and mask his true intentions related to the recent attempt to smear Defendants in the press.  And, Plaintiff cannot continue to use Mr. Hecht and his firm to gain a litigation advantage borne out of deceit and blatant disregard for this Court's ethical rules.

## II.     RELEVANT BACKGROUND

Mr. Hecht has violated ethical rules that prohibit lawyers from engaging in fraud and deceit in violation of a lawyer's duty of candor.  Among other things, RPC 4.1 prohibits a lawyer from knowingly making false statements to third parties, and RPC 3.3 prohibits a lawyer from making false statements or offering evidence that it knows to be false.  In this case, Mr. Hecht has run afoul of these ethical rules in a variety of ways.  Most recently, Plaintiff's Emergency Motion and Mr. Hecht's supporting declaration submit more falsities about his alleged lack of involvement

with this case after withdrawing in March of 2020. *See* Dkt No. 172-1 at ¶ 15.[2]  Mr. Hecht was consistently involved in this litigation until he asked that his Pierce Bainbridge email be taken off the distribution list on November 24, 2020 (long after he claims to have withdrawn)—only to be replaced by his current firm literally the following week based on his own admission. *See* Hecht Decl. (Dkt. No. 172-1) at ¶ 9 (noting that he was "re-engaged by Solid 21" in December of 2020); *see also* **Exhibit A**[3] (Nov. 24, 2020 Email from D. Hecht informing Breitling's counsel that he is "not counsel of record on this case and not presently involved. Please remove me from any further communications.").

Yet, before such time, the record is clear that Mr. Hecht had been participating in this litigation throughout the entire summer and fall of 2020. His former colleagues at Pierce Bainbridge actively and affirmatively included him on communications throughout this time period, he participated in discovery, and he never objected (but for a week in late November 2020) to his inclusion in the case communications. *See, e.g.*, **Exhibit B** at 2-3 (July 23, 2021 Email that records Mr. Hecht as one of the call participants concerning discovery issues on behalf of Plaintiff).

---

[2] This Court, on June 8, 2021, inferred that it did not necessarily consider Mr. Hecht's internal status within Pierce Bainbridge as a material factor, versus his actual participation as counsel for Solid 21 in this case in making an earlier decision relative to discovery. The problem with such analysis is three-fold. First, the distinction was never actually considered by *anybody* at such time, because Mr. Hecht had led this Court to believe this was a rather normal situation wherein he had simply parted ways with his prior firm – an inference he made to support his argument that he had no participation in this case during the at-issue time period. Nobody had reason at the time to inquire about semantics, as his statements were taken at face value. Second, regardless of whether his internal relationship with his prior firm was or was not material, the fact of the matter is that he lied to this Court about it (as he admitted in the Texas case) – and the misrepresentation or misleading of this Court *itself* is improper. And, third and regardless of the foregoing, he is *still* lying about his involvement in this case for most of 2020, as the evidence herein reveals.

[3] All references to "Exhibit __" herein refer to those exhibits attached to, and properly authenticated by, the declaration of Craig J. Mariam (the "Mariam Decl.") submitted contemporaneously herewith.

At this time, the parties were even using Mr. Hecht's email address at his current firm, Hecht Partners. *See id.* Tellingly, Mr. Hecht now tries to couch this July 23 meet-and-confer as an isolated incident in his recent declaration (*see* Dkt. No. 172-1, fn. 2), but this, too, is not true.[4]

Mr. Hecht's repeated involvement in discovery and the fact that his former colleagues actively added him to outgoing email threads to keep him in the loop demonstrate that Mr. Hecht is trying to obscure the record. For example, Mr. Hecht's former colleague at Pierce Bainbridge actively added him to a discussion concerning discovery issues in this case. *See* **Exhibit C** (Sept. 29, 2020 Email from V. Mesropyan to R. Muro, where Mr. Mesropyan added Mr. Hecht and others to the email thread, in response to a discovery inquiry). And, when Mr. Mesropyan departed Pierce Bainbridge in October of 2020, he made sure to include Mr. Hecht on his email to Breitling's counsel. *See* **Exhibit D** (October 1, 2020 Email from V. Mesropyan to R. Muro, copying D. Hecht and others at Pierce Bainbridge, to inform the group of his departure). There is no other explanation for Mr. Hecht's email addition other than to ensure that he had knowledge of relevant issues because he had oversight for the matter and Solid 21 was his client. Tellingly, Mr. Hecht did not object or ask anyone to remove him from these emails—nor did he proclaim his lack of involvement. This is nowhere close to an isolated incident.

Mr. Hecht was also purposefully included in emails when Pierce Bainbridge and its local counsel announced that they were going to be withdrawing from the case (rather than address pending discovery issues raised by Breitling's counsel). *See* **Exhibit E** (October 6, 2020 Email from A. Calderon informing Breitling's counsel of its intention to withdraw, which included Mr.

---

[4] There is nothing to suggest that Mr. Hecht ever indicated to anyone that he was attending the call in some "historical" role, as evidenced by the summary of this July 2020 meet-and-confer session—which Plaintiff's counsel confirmed was accurate. *See* **Exhibit G** (July 23, 2020 email from A. Calderon to Breitling's counsel and Mr. Hecht, copying others, indicating that Mr. Muro's summary of the call "looks accurate").

Hecht); *see also* **Exhibit F** (October 7, 2020 Email from Plaintiff's local counsel informing Breitling's counsel of their decision to withdraw, which also copied Mr. Hecht).

Mr. Hecht was involved with dozens of email exchanges between March and November 2020 while he was still "Of Counsel" at Pierce Bainbridge, concerning various issues, including the following (in addition to the below email exchanges):

- Various emails on July 27, 2020, involving the parties' counsel attaching a letter from Plaintiff regarding the scheduling of various fact depositions and amended disclosures, and Defendants' response thereto (*see* **Exhibits H** and **I**);

- A July 27, 2020 Email from Plaintiff's counsel regarding the timing of forthcoming amended disclosures and related correspondence (*see* **Exhibit J**);

- A September 4, 2020 Email from Defendants' counsel serving the Notice of Deposition of Plaintiff's corporate representative (*see* **Exhibit K**);

- A September 17, 2020 Email from Defendants' counsel serving the Notice of Deposition of Chris Aire (*see* **Exhibit L**);

- Various emails on September 28, 2020, from Defendants' counsel seeking to confirm Mr. Aire's deposition (*see* **Exhibits M** and **N**) and Plaintiff's counsel's response confirming the deposition (*see* **Exhibit O**);

- Various emails on September 28 and 29, 2020, regarding Mr. Aire's deposition, including the set of exhibits to be used during the deposition and the sequencing of Plaintiff's deposition (*see* **Exhibits P**, **R**, **S**, **T**, and **U**);

- An October 7, 2020 Email regarding Pierce Bainbridge's withdrawal and various discovery issues that surfaced as a result of Mr. Aire's deposition (*see* **Exhibit V**);

- An October 8, 2020 Email update regarding the timing of Pierce Bainbridge's motion to withdraw from the case (*see* **Exhibit W**); and

- Multiple emails on November 17, 2020 from Defendants' counsel regarding notices of subpoenas, which corrected a typographical error with Mr. Hecht's email at Pierce Bainbridge (*see* **Exhibit X**).

It is also still unclear when Mr. Hecht actually separated from Pierce Bainbridge—but it certainly was not around the time he withdrew from this case. On or around October 6, 2020, it appears that Mr. Hecht set up an "automatic reply" email, to inform senders that "David Hecht

- 6 -

[was] no longer affiliated with Pierce Bainbridge. He may be contacted at dhecht@hechtpartners.com."). *See* **Exhibit Q**. However, that was also not true because Mr. Hecht used his Pierce Bainbridge email as late as November 24, 2020, to communicate with defense counsel in this case. *See* **Exhibit A** (Mr. Hecht's email from Nov. 24 asking to be removed from the case). Thus, he was affiliated with the firm until that time and received all of these emails despite his misleading automatic reply suggesting otherwise.

It is also undisputed that Mr. Hecht and his firm violated RPC 3.6(a), which prohibits a lawyer from making any extrajudicial statements that they know will be disseminated to the public and have a substantial likelihood of materially prejudicing an adjudicative proceeding. Here, Mr. Hecht freely admits that he assembled a variety of defamatory documents, including press clippings, along with a transcript and supplied them to his public relations contact to blast to various media outlets. *See* Hecht Decl. (Dkt No. 172-1) at ¶ 20. Based on the content of the reporting, it is obvious that his "press pack" included articles meant to defame and prejudice Breitling, and the timing is also relevant—right after the parties were referred to a settlement conference. *See id.* (Hecht noting that he transmitted these materials on May 5, 2021); *see also* Dkt. No. 158 (indicating that Judge Richardson was referred the case at 9:13 AM EDT on May 5, 2021). In other words, Mr. Hecht was trying to weaponize the press, which is exactly the type of conduct that Defendants' Motion for Sanctions seeks to address.

Plaintiff's Motion further evidences that the motivations alleged in Defendants' Motion for Sanctions were accurate. For example, Defendants allege that Mr. Hecht and his firm were involved with the offending release that appeared on EurWeb's site on May 8. *See* Dkt. No. 163-1 at 2. This is true. Indeed, now we know that Mr. Hecht was ***personally*** involved with the substance of the offending release, and he lied to the Court about his direct involvement when

exposed. Mr. Hecht readily admits that he assembled a package of materials for the press, which included a court transcript as well as "other public [sic] available material, including links to articles about Breitling" to serve as the basis for these alleged "facts." *See* Dkt. No. 172-1, ¶ 20. Mr. Hecht also explains that he sent these materials to his public relations "firm"[5] to then feed case materials to the press. *See id.* It is also likely that if the Court were to order Hecht Partners' communications with this public relations "firm" be produced, then the points raised in Mr. Hecht's "press pack" would mirror his lines of deposition questioning in this case. The similarities between his deposition questioning and the points raised in the EurWeb release cannot be denied—and the topics referenced in the EurWeb release are so obscure and unrelated to the issues in this litigation that it is more than a mere coincidence that they were simply stumbled upon.

Defendants also allege in their Motion for Sanctions that Hecht Partners actively tried to conceal their involvement with the offending release that appeared on EurWeb's site. *See* Dkt. No. 163-1 at 2. We now know that Mr. Hecht did just that. Mr. Hecht explained that he went so far as to "contact[] the public relations firm on the morning of Sunday, May 9" to ensure that the source credit was changed from "Hecht Partners" to the name of the public relations firm, "Elevate Strategic" to achieve a singular goal—to distance his firm from the offending content. *See* Dkt. No. 172-1, ¶ 24.[6] Of course, the uncontroverted fact remains that Mr. Hecht and his firm were the

---

[5] Mr. Hecht does not name the public relations firm in his supporting declaration or the individual to whom he sent materials; he infers it was quite a chore to change the source attribution from "Hecht Partners" to "Elevate Strategic." Yet review of publicly available sources concerning "Elevate Strategies" indicates that this "firm" is run by a single person based out of Texas. *See* **Exhibit Y** (LinkedIn biography for Felicity Pereyra, which indicates she is the "Founder" of the public relations entity "Elevate Strategies, LLC"). There is no indication that any firm goes by "Elevate Strategic."

[6] In his declaration, Mr. Hecht claims that the source credit in favor of his firm was somehow "erroneous" on the one hand, but on the other hand, he admits that his firm fed the information to

- 8 -

source of these materials per his own admission, and the alleged public relations firm was merely the conduit to reach the press (and an attempt to construct a shield around his firm).  Indeed, if the EurWeb website did not reveal Hecht Partners as the true, original source of the offending materials, it is likely that Mr. Hecht and his firm would have been successful in their efforts.

In addition, Defendants assert that Mr. Hecht's actions violated the standing protective order (Dkt. No. 5) in this case when he distributed his press pack via his public relations contact—again, to gain a strategic advantage once the matter was referred to a settlement conference.  The fact of the matter is that the press release follows the same outline that Mr. Hecht used in a recent deposition, wherein Mr. Hecht learned of certain facts during the deposition designated "highly confidential" pursuant to the parties' agreement, and then proceeded to exploit those facts and misconstrue the testimony that directly contradict the made-up narrative that he blasted to the press.  In short, he obtained confidential information, mischaracterized it, and knowingly blasted to the public this mischaracterized information.  This is a certain violation of the spirit of this Court's protective order, and an ethical violation through purposefully misconstruing the points that were discussed during the confidential deposition – a breach by omission, as it might be best characterized.  Mr. Hecht cannot rest on technicalities to explain away his unethical behavior because, as discussed below (*see* Section III.C below), it is sanctionable to "use" this information outside the litigation regardless of whether it is actually disclosed.

///

---

the press via the public relations firm.  *See id*.  This is nothing more than an attempt to dance on the head of a pin now that his deliberate actions have been uncovered.

### III. LEGAL ARGUMENT

#### A. Defendants' Motion for Sanctions Is Premised Upon the Court's Inherent Authority, Not Rule 11 of the Federal Rules of Civil Procedure

Plaintiff's Motion cannot simply recast Defendants' Motion for Sanctions to avoid addressing its merits. Defendants' Motion for Sanctions makes it clear that the relief being sought stems from the Court's inherent authority. *See* Motion for Sanctions at 16-18 (collecting case law). The case law is clear that "[a] federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 386 (2d Cir. 1981); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) ("A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

Here, Defendants' Motion for Sanctions is premised upon the Court's inherent authority to curb Mr. Hecht and his firm's abuse of the judicial process, including the blatant disregard for ethical rules and decorum. The fact that this pattern and practice continues with the filing of Plaintiff's instant Motion that feigns an emergency, misconstrues and misrepresents the record, and takes cheap shots against defense counsel without ever addressing the substance of the ethical violations—opting instead to try and dance around them. Indeed, Mr. Hecht's primary concerns appear to be whether his misconduct laid out in Defendants' Motion for Sanctions is picked up by the press. *See* Dkt. No. 172 at 21. This odd because last time Mr. Hecht was found to have acted inconsistent with ethical rules (in another matter), he celebrated it as a "win." *See* 163-3 at Ex. 3 (Mr. Hecht's LinkedIn advertisement linking to a Law360 article that outlines his misconduct).

#### B. Defendants' Motion for Sanctions Is Not A Threat Of Disciplinary Action Under California's Ethical Rules.

Plaintiff also alleges that Defendants' noticed motion for sanctions—based on a demonstrable pattern and practice of continued misconduct in this case *and other cases*—somehow

- 10 -

a "threat." Plaintiff alleges that Defendants' Motion for Sanctions is somehow actionable under California's Rules of Professional Conduct, which state, in part, that "A lawyer shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." *See* Cal. RPC 3.10(a). That is simply not true. If this were the case, every motion for sanctions or any request that the Court refer the matter to disciplinary authorities would run afoul of this rule (and they do not).

In this case, the exact opposite is true. Defendants' counsel purposefully refrained from engaging in any meet-and-confer regarding these abusive practices to avoid even the appearance of any impropriety or (baseless) allegations of gamesmanship. *See* Dkt. No. 170 at 2-3. It is unfortunate that Mr. Hecht is yet again trying to silence Defendants for trying to alert the Court to this misconduct and evidence that it is a (rather unfortunate) pattern based on past transgressions.[7]

### C. Plaintiff Created This Situation and Defendants' Collection of Mr. Hecht's and His Firm's Pattern and Practice Misconduct Are Not *Ad Hominem* Attacks—They Are the Proper Basis For a Sanctions Motion.

Plaintiff also asserts that Defendants should have refrained from laying out and documenting the various misrepresentations, falsities, and half-truths committed by Mr. Hecht and his firm in their Motion for Sanctions. *See* Plaintiff's Motion (Dkt. No. 172) at 16-17. This is absurd. Mr. Hecht and his firm's tactics (and Plaintiff's approval of those tactics) created the very basis for Defendants' Motion for Sanctions. Indeed, Rule 7 of the Federal Rules of Civil Procedure demands that a motion must "state with particularity the grounds or seeking the order." *See* Fed. R. Civ. Proc. 7(b)(1)(B). It must "apprise the court and the opposing party of the grounds upon which reconsideration is sought." *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir.

---

[7] What is also suspect is the fact that Mr. Hecht contends that Defendants' Motion for Sanctions should be brought under Rule 11, but his motion—which seeks the specific withdrawal of Defendants' Motion for Sanctions is somehow immune from the rule.

2006) (citing *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 41 (2d Cir.1982); *Daily Mirror, Inc. v. N.Y. News, Inc.,* 533 F.2d 53, 56 n. 4 (2d Cir.1976)).  And, although an unfortunate realty of certain motions that concern the truthfulness of someone's statements—or lack thereof, it is certainly not an *ad hominem* attack.  *See United States v. Dixon*, No. 09-CR-6046L, 2011 WL 4829718, at *3 (W.D.N.Y. Oct. 12, 2011), *aff'd*, 511 F. App'x 48 (2d Cir. 2013).  In *Dixon*, the court held that:

> [t]he Government's statements regarding [a witness's] truthfulness or lack thereof **were not** an *ad hominem* attack on a witness, an instance of inflammatory name-calling or an attempt to testify directly about her credibility: in each instance, the Government was suggesting or arguing that an inference of untruthfulness should be drawn from testimony and other evidence that conflicted with what [that witness] had said, or from [the witness's] own testimony that she had "lied" on prior occasions about matters relating to the case.

*See id.* (emphasis added).  In other words, when the argument pertains to a person's candor (or lack thereof), it cannot be dismissed as a mere *ad hominem* attack.

Here, Mr. Hecht and his firm contend that Defendants' Motion for Sanctions—which outlines the grounds for the various sanctions being requested in specific detail—should be discarded because it harms their reputations.  However, neither Mr. Hecht nor his firm are the victims here.  Breitling is the victim, and the Court is the victim.  Mr. Hecht and his firm perpetrated this conduct, emboldened by past scoldings that did not adequately hold them accountable for their prior misrepresentations, ethical infractions, and outright lies.  And, the fact that Plaintiff and Mr. Hecht is trying to quell Defendants from bringing this conduct to the Court's attention is purposeful—and meant to have a chilling effect.  Defendants do not want to be in this position having to raise these ethical violations with the Court, but this behavior cannot continue and Defendants have a duty to raise it with the Court.

As discussed above (*see* Section II), Mr. Hecht and his firm committed a number of ethical violations that form the basis for Defendants' Motion for Sanctions. Defendants have now demonstrated that even Plaintiff's instant Motion and Mr. Hecht's supporting declaration contains misrepresentations and falsehoods, which violate Connecticut's ethical rules. *See* Conn. RPC 3.3 (prohibiting, among other things, a lawyer from making false statements or offering evidence that it knows to be false). Mr. Hecht told this Court on numerous occasions that he was completely uninvolved with this litigation once he withdrew in March of 2020. That is false. **Exhibits A** through **X** demonstrate that Mr. Hecht was active at Pierce Bainbridge and in the loop—often at the request of his former colleagues who actively added him to correspondence concerning discovery. Mr. Hecht cannot feign ignorance of this litigation when he continued receiving emails until the last week of November 2020, and then again the following week when he was allegedly "re-engaged by Solid 21." *See* Hecht Decl. (Dkt. No. 172-1) at ¶ 9.

In addition, it is now obvious that Mr. Hecht violated Connecticut RPC 3.6(a) when he personally supplied the materials to the press (albeit through his public relations contact, which he purposefully declines to name in his supporting declaration). "The Rule sets forth a basic ***general prohibition*** against a lawyer making statements that the lawyer knows or should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding." *See* Commentary No. 3 to RPC 3.6(a) (emphasis added). In this case, Mr. Hecht was also personally responsible for trying to get the source attribution on the offending EurWeb site changed from his firm *to distance himself and his firm from the offending conduct* despite the fact it was the source per his own admission. In other words, he was trying to mask his involvement.

There is little doubt that Mr. Hecht meant to use the information that he fed to the press—based on his own deposition outline—to prejudice a court proceeding, especially because the

substance of his "press pack" included defamatory allegations and falsehoods blasted to the press *as soon as the matter was referred to a settlement conference*. Tellingly, Plaintiff's Motion fails to address all of the ethical violations that are raised in the Defendants' Motion for Sanctions—instead resorting to cheap shots at Defendants' counsel throughout in an attempt to draw a false equivalence where none exists.

### D. Mr. Hecht's False Narrative Provided to the Press Violates The Protective Order And Also Violates His Ethical Duty of Candor.

Mr. Hecht also alleges that he did not violate the Protective Order when he supplied the press with his slanted, one-sided views of the case and attacks on Defendants—including those that he tried to advance during a confidential deposition. This is incorrect as a matter of law. *See Errant Gene Therapeutics, LLC v. Sloan-kettering Inst. for Cancer Rsch.*, No. 15CV2044AJNRLE, 2017 WL 2418742, at *3 (S.D.N.Y. June 5, 2017) (awarding monetary sanctions and holding that "use of protected information alone, even without disclosure, is a violation of the Protective Order") (emphasis added).

The fundamental problem here is that Mr. Hecht purposefully misconstrued facts and mischaracterized prior statements, including those that knew to be false based on the prior deposition of Breitling USA's president in this case, which is discussed in Defendants' Motion for Sanctions. *See* Dkt. No. 163-1 at 7-8. In sum, Mr. Hecht used confidential information learned through the deposition, and tried to inject a false, parallel narrative using the press *despite knowing that the statements were false and/or prejudicial.* This is worthy of sanctions in this Circuit.

Not only does Mr. Hecht and his firm's conduct violate the spirit of the Protective Order, it also raises the question as to whether Mr. Hecht and his firm violated Conn. RPC 4.1 ("In the course of representing a client a lawyer shall not knowingly: (1) Make a false statement of material fact or law to a third person."). Mr. Hecht cannot hide behind his public relations firm to do his

- 14 -

bidding (assuming his self-serving statements are accurate), especially in light of Rule 4.1, which prohibits such conduct.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's purported Emergency Motion.

Dated: June 10, 2021

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By  */s/ Craig J. Mariam*
    Thomas C. Blatchley (ct25892)
    Craig J. Mariam (*pro hac vice*)
    Gordon Rees Scully Mansukhani, LLP
    95 Glastonbury Blvd., Ste. 206
    Glastonbury, CT 06033
    Phone: (860) 494-7525
    Fax: (860) 560-0185
    Email: tblatchley@grsm.com
    Attorneys for Defendants and
    Counterclaimants Breitling U.S.A., Inc.;
    Breitling SA (a/k/a Breitling AG)

**CERTIFICATION OF SERVICE**

I hereby certify that on June 10, 2021, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this document through the court's CM/ECF System.

By  */s/ Craig J. Mariam*
   Craig J. Mariam