**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

```
------------------------------------------------------------  x
SOLID 21, INC.,                                               :
                                                             :
        Plaintiff,                                           :   C.A. NO. 3:19-CV-00514-MPS
                                                             :
        v.                                                   :
                                                             :
BREITLING U.S.A., INC.; BREITLING SA;                        :
AND BREITLING AG,                                            :   JUNE 13, 2021
                                                             :
        Defendants.                                          :
------------------------------------------------------------  x
```

**DEFENDANTS' SUPPLEMENTAL SUBMISSION OF EVIDENCE
IN SUPPORT OF DEFENDANTS' MOTION FOR TERMINATING SANCTIONS
<u>AGAINST PLAINTIFF, ET SEQ.</u>**

Defendants and Counterclaimants Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG) (collectively, "Defendants" or "Breitling") hereby respectfully submit this supplemental submission of evidence in support of Defendants' Motion for Terminating Sanctions against Plaintiff, et seq. (the "Motion") (Dkt. No. 163).

Plaintiff and its counsel continue to explain away the mountain of circumstantial and direct evidence filed in support of the Motion by repeatedly claiming that the relevant correspondence and/or filings were "erroneous" by former colleagues (which, by the way, is the same excuse Mr. Hecht used in the Texas case).  Or, when faced with Mr. Hecht's participation over the summer of 2020 at a July discovery conference, Mr. Hecht claims to be a professor, educating his colleagues as to the facts of the case because, allegedly, they needed help; this, of course, took place a whopping four (4) months after the purported withdrawal.  Why counsel would not know the facts of the case at such point is a mystery (the true reason is that the offered explanations are fantasy).  In any event, it will be extremely interesting how both plaintiff and Mr. Hecht attempt to explain away the ***additional*** direct evidence below which, again, directly

contradicts **both** plaintiff Solid 21's and Mr. Hecht's statements to this Court.

First, a reminder as to the statements made under Rule 11 and penalty of perjury:

Plaintiff continues to assert in its recently filed reply brief (Dkt. No. 179) that Mr. Hecht "was not representing Solid 21 in the relevant time frame" (late April through November 2020), and Solid 21 asserted that "Mr. Hecht was not authorized to work on the case during the relevant time frame." *See* Dkt. No. 179, at p. 2. Plaintiff refers to the previously submitted Declaration of Christopher Aire[1] (Dkt. No. 150-2), which largely formed the basis for asking that this Court modify the scheduling order again. Mr. Aire, Solid 21's principal, declared, under penalty of perjury, that:

> Hecht Partners LLP is the current law firm of David L. Hecht, whom I previously worked with ***from approximately June 2018 to March 2020***. Mr. Hecht has been hired in connection with this and other cases for Solid 21. I understand that Mr. Hecht is seeking to appear in this case, again, pro hac vice. ***I had not been in communication with Mr. Hecht from about March 2020, just before he withdrew from this case, after leaving the partnership of Pierce Bainbridge, until December 2020. From the time of his withdrawal until being engaged at his new firm in December 2020, Mr. Hecht was not authorized to represent Solid 21 in this or any matter***.

*See* Dkt. No. 150-2, ¶ 12 (emphasis added).

Mr. Hecht mirrored his client's statements in his own Declaration, which was also signed under penalty of perjury:

> 9. ***After I withdrew from this case in the spring of 2020, I had no authorization from Solid 21 to represent it in this or any matter. I was not in touch with Solid 21 for many months, until approximately December of 2020*** when I was re-engaged by Solid 21 and requested to represent it in this and other matters.
> …
> 12. As described above, I worked with Solid 21 from the summer of 2018 to the spring of 2020, and was re-engaged in December 2020.

*See* Dkt. No. 172-1, ¶¶ 9, 12; *see also* Dkt. No. 172-3 (letter from David Hecht to Gordon Rees,

---

[1] Mr. Aire is the founder and CEO of Solid 21.

dated Jan. 22, 2021, wherein he alleges that he has "only recently been re-engaged by Solid 21 after an approximately nine-month absence from representing it.").

Second, the direct evidence illustrating the falsity of both individual's statements to this Court:

Mr. Hecht continued to represent and communicate with Solid 21 after he withdrew from this case on April 24, 2020.[2]   For example, Mr. Hecht led discovery efforts on behalf of Solid 21 in the *Solid 21, Inc. v. Movado Retail Group, Inc., et al.*, District Court of New Jersey Case No. 2:19-cv-08093 (SDW)(SCM) (hereafter "*Solid 21 v. Movado*") litigation after the time both he and plaintiff claimed to have ceased communications.   *See* **Exhibit A** (Joint Discovery Plan dated May 7, 2020, signed by David Hecht under Pierce Bainbridge letterhead).   In that same case, it was Mr. Hecht who informed the court that the parties were on the verge of settling their dispute.   *See* **Exhibit B** (May 14, 2020 letter to the court from David Hecht on Pierce Bainbridge letterhead).   Thus, not only did Mr. Hecht continue to represent Plaintiff in *Solid 21 v. Movado* after withdrawing from this case, he appears to have ***personally*** settled that matter on behalf of Solid 21—during the time when he alleges that he stopped communicating with Solid 21.   Then, on July 2, 2020, Mr. Hecht executed a Stipulation of Voluntary Dismissal in *Solid 21 v. Movado*. *See* **Exhibit C** (Stipulation of Voluntary Dismissal, dated July 1, 2020, and signed by David Hecht on behalf of Solid 21, which dismissed Solid 21's claims with prejudice the next day).   Of particular note, Mr. Hecht executed this stipulation on behalf of Plaintiff and identified his newly formed firm, Hecht Partners LLP, as representing Plaintiff in addition to Pierce Bainbridge.   *See id.* at 2 (Mr. Hecht signing for Hecht Partners LLP, and Mr. Pierce signing for Pierce Bainbridge).   In other words, contrary to Mr. Hecht's and Plaintiff's statements, Mr. Hecht was already in the process of transferring the Solid 21 relationship over to his new firm in the summer of 2020.

Also, Mr. Hecht was actively using and monitoring his Pierce Bainbridge email on behalf

---

[2] Mr. Hecht filed his motion to withdraw in this case on April 21, 2020 (Dkt. No. 82), and the Court granted the motion on April 24, 2020 (Dkt. No. 83).

of Plaintiff during almost all of 2020.  For example, Mr. Hecht's email address was the primary email address that Pierce Bainbridge used to communicate with the U.S. Patent and Trademark Office ("USPTO") concerning Plaintiff's trademark *even after* Mr. Hecht allegedly withdrew as counsel there.  *See* **Exhibit D** (Change of Attorney Notice that continues to use Mr. Hecht's email at Pierce Bainbridge as the "primary email address for correspondence" related to Solid 21's trademark application).  Indeed, that **same day** Mr. Hecht filed a petition to revive Solid 21's trademark application—listing himself as both current and proposed counsel for Plaintiff. *See* **Exhibit E** (Solid 21's petition to Revive Application, dated Apr. 23, 2020, listing David Hecht as current and proposed counsel).  Mr. Pierce was relegated to a supporting role.  *See* **Exhibit F** (notice of revival, dated April 24, 2020, sent to dhecht@piercebainbridge.com with a copy to jpierce@piercebainbridge.com).  And, when the USPTO issued an Official Office Action on July 2, 2020, the government sent it to Solid 21 via Mr. Hecht's email at Pierce Bainbridge because Mr. Hecht was still representing Solid 21.  *See* **Exhibit G** (Office Action, dated July 2, 2020, sent "To: Solid 21 Incorporated (dhecht@piercebainbridge.com)" [exhibits omitted]).

The foregoing—and the emails attached to Brietling's previously-filed reply in connection with plaintiff's "emergency" motion—reflect the reality of Mr. Hecht's ongoing participation in this litigation and representation of Plaintiff.  Plaintiff's argument—that Mr. Hecht was not involved because he did not send some of the emails attached to Defendants' submission—is absurd.  Mr. Hecht was the supervising partner during this time, which is why his junior team continued to add him to correspondence.[3]  Mr. Hecht was continually kept informed of this litigation long after he withdrew, and his team took active steps to ensure he was involved.  Mr. Hecht does not deny this (nor can he).[4]  It is also telling that neither Plaintiff nor

---

[3] The same (incorrect) argument could be used to assert that Mr. Mariam is not involved because he did not send these emails on behalf of Defendants, but that is clearly not the case.

[4] Defendants also note that they do not have any of the internal communications amongst Mr. Hecht and his team during this time period, so it is unfair for Mr. Hecht to frame these emails in a slanted way without providing the full picture.

Mr. Hecht submit any supporting declarations from other individuals at Pierce Bainbridge confirming that Mr. Hecht was uninvolved in this litigation despite being on all of the case emails amongst counsel.

## <u>CONCLUSION</u>

Even if the Court were not previously convinced of Mr. Hecht's and his client's deceptions, these newly submitted materials should make it unquestionably clear that they have been lying to the Court.

Dated: June 13, 2021

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By _ /s/ Craig Mariam_
      Thomas C. Blatchley (ct25892)
      Craig J. Mariam (*pro hac vice*)
      Gordon Rees Scully Mansukhani, LLP
      95 Glastonbury Blvd., Ste. 206
      Glastonbury, CT 06033
      Phone:   (860) 494-7525
      Fax:     (860) 560-0185
      Email:   tblatchley@grsm.com
      Attorneys for Defendants and
      Counterclaimants Breitling U.S.A., Inc.;
      Breitling SA (a/k/a Breitling AG)

# **EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No. 9:19-cv-08093-SDW-SCM
District Judge Susan D. Wigenton, Magistrate Judge Steven C. Mannion

SOLID 21, INC.,

    Plaintiff,

    v.

MOVADO RETAIL GROUP, INC.;
MOVADO GROUP INC.; MGI
LUXURY GROUP, S.A.; EBEL
WATCHES SA; CONCORD WATCH
COMPANY, S.A.; and MVMT
WATCHES INC.,

    Defendants.

## JOINT DISCOVERY PLAN

The Parties submit this Joint Discovery Plan in accordance with this Court's March 16, 2020 Order Scheduling R16 Conference (Dkt. No. 52).

**(1)    Factual description of the case**

    **a.  Claims of Plaintiff**

Plaintiff Solid 21 is a luxury jewelry and watch company that owns the federally registered and incontestable trademark RED GOLD®, U.S., which it uses in connection with the design, manufacture, marketing, and advertising of, *inter alia*, luxury watches and related goods and services.  Trademark Registration No. 2,793,987.  Solid 21 claims that Defendants are liable for trademark infringement, unfair competition, false description, and dilution under the Lanham Act and New Jersey law due to the sale, marketing, advertising, and promotion of Defendants' products (including luxury watches) that use the RED GOLD® mark.

1

### b. Defenses and claims of Defendant

Defendants deny all of Plaintiff's allegations as far as they relate to any of Plaintiff's claims and any other claims of infringement, unfair competition or wrongful conduct by the Defendants. Defendants' use of the phrase "red gold" is non-infringing. Defendants have asserted the affirmative defenses of (1) trademark invalidity with respect to Plaintiff's alleged mark RED GOLD on the basis of genericness; (2) trademark invalidity with respect to Plaintiff's alleged mark RED GOLD on the basis of a lack of secondary meaning in "red gold"; (3) fair use; (4) statute of limitations; (5) laches; (6) contract/estoppel/waiver/acquiescence; and 7) unclean hands. Defendants have further asserted counterclaims against Plaintiff (1) for declaratory judgment of the invalidity of Plaintiff's alleged mark RED GOLD on the basis that such mark is generic; and (2) for cancellation, pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, of Plaintiff's U.S. Trademark Registration No. 2,793,987 for the alleged mark RED GOLD on the basis that such mark is generic.

**(2)      Settlement discussions**

The parties are actively engaged in settlement discussions.

**(3)      Date for exchanging Rule 26(a)(1) initial disclosures**

The parties have not exchanged initial disclosures.  The Parties propose June 15, 2020 to exchange initial disclosures.

**(4)      Other discovery conducted**

No discovery has been conducted as of the submission of this joint discovery plan.

**(5)      Motions any party may seek to make prior to the completion of discovery**

The parties do not currently anticipate making any motions prior to the completion of discovery.  If a party needs to compel discovery the parties will follow the applicable local rules

and confer in good faith to attempt to resolve any discovery dispute informally prior to seeking the intervention of the Court.

**(6)** **The parties propose the following:**

**a.  Discovery is needed on the following subjects:**

Plaintiff submits the following subjects on which discovery is needed:

- Information on the marketing, promotion, or advertising of "Red Gold" products, including their type, nature, channels, and amount spent.

- Information on sales of "Red Gold" products or products marketed, promoted, or advertised using "Red Gold," including revenue, profit, and unit volume of such sales.

- Information on any market studies, analyses, etc. that involve "Red Gold."

- Information on any royalty, license, or other agreements entered into by Defendants that involve "Red Gold."

- Information on the design, manufacture, or distribution of "Red Gold" products, including the composition of gold alloy within such products.

- Information on Defendants' knowledge of the RED GOLD® mark, including any analyses of this trademark and the claims set forth in this action.

- Information on Defendants' trademark clearance searches.

- Information on Defendants' knowledge of prior litigations and administrative actions involving the RED GOLD® mark.

- Information on Defendants' document retention policies, document hold notices, and any applicable insurance coverage.

- Information on Defendants' assertion that they do not infringe on Plaintiff's RED GOLD® mark.

3

- Information on Defendants' assertion that the RED GOLD® mark is invalid.

Defendants

Without prejudice to its rights to seek discovery on any relevant issue, Defendants contemplate that they will need and seek discovery concerning: (1) the general business of Plaintiff; (2) Plaintiff's marketing, advertising, promotion and sale of jewelry and watches under the alleged mark RED GOLD; (3) Plaintiff's marketing, advertising, promotion and sale of jewelry and watches that incorporate a type of gold that has a reddish tint; (4) Plaintiff's target and actual customers for the offering and sale of jewelry and watches under the alleged mark RED GOLD and of jewelry and watches that incorporate a type of gold that has a reddish tint; (5) the marketing and trade channels for Plaintiff's goods; (6) the retail prices of Plaintiff's goods; (7) Plaintiff's adoption and use of the alleged mark RED GOLD in connection with jewelry and watches, including but not limited to any trademark searches and market research conducted by Plaintiff or on Plaintiff's behalf before adopting the alleged mark RED GOLD; (8) Plaintiff's adoption and use of a type of gold that has a reddish tint in connection with jewelry and watches; (9) Plaintiff's method for making jewelry sold under the alleged mark RED GOLD, and any products that are made of a type of gold that has a reddish tint; (10) the functional nature of the type of gold with a reddish tint, which results from the mixture of gold with copper, in connection with Plaintiff's jewelry and watches; (11) the nature of the jewelry and watches provided under the alleged mark RED GOLD; (12) Plaintiff's trademark application and registration for the alleged mark RED GOLD, including but not limited to any trademark searches and market research conducted by Plaintiff or on Plaintiff's behalf before applying to register RED GOLD as a mark; (13) Plaintiff's alleged intellectual property rights in the alleged mark RED GOLD; (14) Plaintiff's enforcement of its alleged intellectual property rights in the

alleged mark RED GOLD; (15) Plaintiff's knowledge of third-party uses of the term "red gold" to refer to jewelry and watches that incorporate a type of gold that has a reddish tint; (16) Plaintiff's knowledge of third-party distribution of jewelry and watches that incorporate a type of gold that has a reddish tint; (17) the date on which Plaintiff first learned of Defendants' use of the term "red gold" to refer to a type of gold that has a reddish tint; (18) alleged injuries to Plaintiff caused by Defendants' use of the term "red gold"; (19) lack of actual confusion among consumers and in the trade between products and companies at issue; (20) third parties' uses of the phrase "red gold" as a generic term to identify a type of gold that has a reddish tint and products incorporating same, and Plaintiff's knowledge thereof; (21) lack of consumer and trade recognition of the phrase "red gold" as functioning as a trademark; (22) market research relating to consumer perceptions of the term "red gold" as identifying a type of gold that has a reddish tint; (23) trade and industry usage of the term "red gold" to identify a type of gold with a reddish tint; (24) the definition and/or meaning of "red gold," including in the jewelry and watch industries; and (25) Plaintiff's revenues from sales of jewelry and watches under the alleged mark "red gold."

### b. Discovery should be conducted in phases.

The parties respectfully request that discovery be conducted in phases: first, a period of fact discovery; and second, a period of expert discovery. The parties anticipate that at least some expert opinions will depend on information and documents disclosed during fact discovery. For example, Plaintiff anticipates that its damages expert(s) will rely on documents produced and deposition testimony taken relating to Defendants' sales and advertising of accused products.

**c. Number of Interrogatories by each party to each other party: 35**

The parties presumptively shall serve no more than thirty-five (35) interrogatories, but each party shall have the ability to use a supplemental declaration to justify an increased number of interrogatories. Each party also preserves the ability to seek leave for additional interrogatories.

**d. Number of requests for admission by each party to each other party: 25**

Except as to the authentication of documents or other evidence, each side (i.e., Plaintiff and Defendants) shall be limited to a maximum of twenty-five (25) requests for admission to the other side, unless the parties later agree to increase the number. There is no limit on the number of requests for admission the parties may serve to establish the authenticity of documents. Requests for admission directed to document authentication shall be clearly denoted as such, and shall be served separately from any requests for admission subject to the numerical limitations stated above.

**e. Number of depositions to be taken by each party: 10**

The parties presumptively shall be entitled to no more than 10 depositions per party, unless otherwise agreed to by the parties. Each party also preserves the ability to seek leave for additional depositions.

Depositions of fact witnesses who require an interpreter shall be limited to a maximum of fourteen (14) hours, to be taken over a maximum of two consecutive days. In such a case, the party who seeks an interpreter shall disclose to the opposing side that an interpreter is needed at least ten (10) days prior to the date of the scheduled deposition.

  **f. Proposed schedule:**

   **i. Opening expert reports due on March 23, 2021.**

   **ii. Rebuttal expert report due on April 23, 2021.**

   **iii. Motions to amend or to add parties to be filed by June 22, 2020.**

   **iv. Factual discovery to be completed by March 15, 2021.**

   **v. Expert discovery to be completed by May 23, 2021.**

   **vi. Dispositive motions to be served within 45 days of completion of discovery.**

   **vii. Trial date: July 19, 2021.**

  **g. Special discovery mechanisms or procedures requested:**

   i. The parties will provide the Court with a joint proposed confidentiality order within 30 days from the Rule 16 conference.

   ii. The parties will provide the Court with a joint proposed e-discovery order within 30 days from the Rule 16 conference.

   iii. The parties will provide the Court with a joint proposed Rule 502(d) order within 30 days from the Rule 16 conference.

   iv. The Parties agree that all correspondence, written discovery requests, responses to written discovery requests, and all other documents not filed through the Court's CM/ECF filing system will be provided or served by electronic mail, and such service shall satisfy the requirements of Fed. R. Civ. P. 5(b)(2)(E).  To the extent that electronic service is not available to a party, service is acceptable if made by hand delivery, facsimile or overnight mail.

 **(7) Trial by jury**

  The parties request a trial by jury.

**(8)     The Parties do not anticipate discovery problems**

Should a discovery dispute arise, the parties shall confer in good faith and attempt to resolve any dispute informally before seeking the Court's intervention in accordance with Local Civil Rule 37.1(a).

**(9)     The parties anticipate special discovery needs.**

Some discovery collection and depositions may be impacted by the effects of COVID-19. The parties may need to take video depositions due to travel and health restrictions.  Discovery will also include out-of-state depositions that will require coordination of travel or video depositions.  The parties agree to confer in good faith regarding any logistical discovery challenges.

**(10)    Alternative dispute resolution**

Plaintiff is amendable to mediation.  Mediation would be appropriate at the close of fact discovery.

**(11)    The case is not appropriate for bifurcation.**

**(12)    The parties do not consent to the trial or dispositive motions being conducted by a Magistrate Judge.**

[SIGNATURE  NEXT PAGE]

Respectfully submitted,

Dated: May 7, 2020

**ROBINSON MILLER LLC**

By: /s/ Keith J. Miller
Keith J. Miller
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
Tel.: (973) 690-5400
Email: kmiller@rwmlegal.com

**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**

John P. Margiotta (admitted pro hac vice)
Emily Weiss (admitted pro hac vice)
Sydney Kipen (admitted pro hac vice)
151 West 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
Email: jmargiotta@fzlz.com
eweiss@fzlz.com
skipen@fzlz.com

*Attorneys for Defendants*
*Movado Retail Group, Inc., Movado Group Inc.,*
*MGI Luxury Group, S.A., Ebel Watches SA,*
*Concord Watch Company, S.A., and MVMT*
*Watches Inc.*

Dated: May 7, 2020

**PIERCE BAINBRIDGE BECK PRICE & HECHT LLP**

By: /s/ David L. Hecht
David L. Hecht
277 Park Avenue, 45th Floor
New York, NY 10172
Tel: (212) 484-9866
Email: dhecht@piercebainbridge.com

9

**PIERCE BAINBRIDGE BECK PRICE &
HECHT LLP**

John M. Pierce (*pro hac vice* pending)
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel:  (213) 262-9333
Email:  jpierce@piercebainbridge.com

*Counsel for Plaintiff Solid 21, Inc.*

# **EXHIBIT B**

# PIERCE BAINBRIDGE

David L. Hecht
Of Counsel
255 Park Avenue, 45th Floor
New York, NY 10172
dhecht@piercebainbridge.com
(212) 484-9866

—

**VIA ECF**

May 14, 2020

The Honorable Steven C. Mannion, U.S.D.J.
U.S. District Court
District Court of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07102

  RE: *Solid 21, Inc. v. Movado Retail Group, Inc., et al*
    Case No. 2:19-cv-08093 (SDW)(SCM)

Dear Magistrate Judge Mannion:

  We write jointly on behalf of all parties in the above-captioned matter to request an adjournment of the May 15, 2020 Initial Pretrial Schedule Conference as set forth in this Court's March 24, 2020 Order (Dkt. 54). The parties have reached terms for a settlement and are currently negotiating a stipulation that should result in a dismissal of this action.

  Thus, the parties respectfully request that they be allowed to file either a stipulation or dismissal, or in the alternative, a status report, no later than May 29, 2020.

Respectfully Submitted,


*/s/ David L. Hecht*
David L. Hecht
*Counsel for Plaintiff*


*/s/ John P. Margiotta*
John P. Margiotta
*Counsel for Defendants*


**Pierce Bainbridge Beck Price & Hecht LLP**
BOS | CLE | DC | LA | NY

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No. 9:19-cv-08093-SDW-SCM
District Judge Susan D. Wigenton, Magistrate Judge Steven C. Mannion

|  |
|---|
| SOLID 21, INC., <br><br> Plaintiff, <br><br> v. <br><br> MOVADO RETAIL GROUP, INC.; MOVADO GROUP INC.; MGI LUXURY GROUP, S.A.; EBEL WATCHES SA; CONCORD WATCH COMPANY, S.A.; and MVMT WATCHES INC., <br><br> Defendants. |

**STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO
FED. R. CIV. P. 41(a)(1)(A)(ii)**

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), Plaintiff Solid 21, Inc. ("Solid 21") and Defendants Movado Retail Group, Inc., Movado Group Inc., MGI Luxury Group, S.A., Ebel Watches SA, Concord Watch Company, S.A., and MVMT Watches Inc. (collectively, the "Defendants"), by and through the undersigned counsel, hereby stipulate that this Action, including all claims and counterclaims, be dismissed with prejudice, with all parties bearing their own costs and attorneys' fees.

Respectfully submitted,

Dated: July 1, 2020

**ROBINSON MILLER LLC**

By: ___/s /Keith J. Miller_____
Keith J. Miller
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
Tel.: (973) 690-5400
Email: kmiller@rwmlegal.com

**HECHT PARTNERS LLP**

By: ___/s/ David L. Hecht_____
David L. Hecht
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (212) 851-6821
Email: dhecht@hechtpartners.com

**PIERCE BAINBRIDGE BECK PRICE &
HECHT LLP**

___/s/ John M. Pierce_____
John M. Pierce (*phv pending*)
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel:  (213) 262-9333
Email:  jpierce@piercebainbridge.com

*Counsel for Plaintiff Solid 21, Inc.*

Dated: July 1, 2020

**FROSS ZELNICK LEHRMAN & ZISSU, P.C.**

  /s/ John P. Margiotta             

John P. Margiotta (admitted *pro hac vice*)
Emily Weiss (admitted *pro hac vice*)
Sydney Kipen (admitted *pro hac vice*)
151 West 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
Email: jmargiotta@fzlz.com
eweiss@fzlz.com
skipen@fzlz.com

*Attorneys for Defendants Movado Retail Group, Inc., Movado Group Inc., MGI Luxury Group, S.A., Ebel Watches SA, Concord Watch Company, S.A., and MVMT Watches Inc.*

# EXHIBIT D

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTO Form 2300 (Rev 02/2020)
OMB No. 0651-0051 (Exp 11/30/2020)

# Change Address or Representation Form

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 88263031 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 113 |
| **MARK SECTION** | |
| **MARK** | SIGNATURE RED GOLD (standard characters, see https://tmng-al.uspto.gov /resting2/api/img/8826303 1/large) |
| **OWNER SECTION(current)** | |
| **NAME** | Solid 21 Incorporated |
| **MAILING ADDRESS** | 22287 Muholland Highway |
| **CITY** | Calabasas |
| **STATE** | California |
| **STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **ZIP/POSTAL CODE** | 91302 |
| **PHONE** | 212-484-9866 |
| **ATTORNEY SECTION(current)** | |
| **NAME** | David L Hecht |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | NOT SPECIFIED |
| **YEAR OF ADMISSION** | NOT SPECIFIED |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | NOT SPECIFIED |
| **FIRM NAME** | PIERCE BAINBRIDGE BECK PRICE & HECHT LLP |
| **STREET** | 20 WEST 23RD STREET, FIFTH FLOOR |
| **CITY** | NEW YORK |
| **STATE** | New York |
| **STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **POSTAL/ZIP CODE** | 10010 |
| **PHONE** | 212-484-9866 x101 |
| **EMAIL** | dhecht@piercebainbridge.com |
| **CORRESPONDENCE SECTION(current)** | |
| **NAME** | DAVID L HECHT |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | dhecht@piercebainbridge.com |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | NOT PROVIDED |

## OWNER SECTION(proposed)

| | |
|---|---|
| **STATEMENT TEXT** | By submission of this request, the undersigned requests that the following be made of record for the owner/holder: |
| **NAME** | Solid 21 Incorporated |
| **MAILING ADDRESS** | 22287 Muholland Highway |
| **CITY** | Calabasas |
| **STATE** | California |
| **STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **ZIP/POSTAL CODE** | 91302 |
| **PHONE** | 212-484-9866 |
| **EMAIL** | XXXX |

## STATEMENT OF THE REASON FOR REPLACEMENT

Original attorney of record leaving law firm.

## ATTORNEY SECTION (proposed)

| | |
|---|---|
| **STATEMENT TEXT** | By submission of this request, the undersigned confirms that (1) representation is ongoing and (2) that the individual listed below should now be identified as the attorney of record: |
| **NAME** | John M. Pierce |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **FIRM NAME** | PIERCE BAINBRIDGE BECK PRICE & HECHT LLP |
| **STREET** | 355 S Grand Ave 44th floor |
| **CITY** | Los Angeles |
| **STATE** | California |
| **STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **POSTAL/ZIP CODE** | 90071 |
| **PHONE** | (213) 262-9333 |
| **EMAIL** | dhecht@piercebainbridge.com |

## CORRESPONDENCE SECTION (proposed)

| | |
|---|---|
| **NAME** | John M. Pierce |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | dhecht@piercebainbridge.com |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | jpierce@piercebainbridge.com |

## SIGNATURE SECTION

| | |
|---|---|
| **SIGNATURE** | /John M. Pierce/ |
| **SIGNATORY NAME** | John M. Pierce |
| **SIGNATORY DATE** | 04/23/2020 |

| **SIGNATORY POSITION** | Attorney of record |
|---|---|
| **SIGNATORY PHONE NUMBER** | 2132629333 |
| **AUTHORIZED SIGNATORY** | YES |
| **FILING INFORMATION SECTION** | |
| **SUBMIT DATE** | Thu Apr 23 23:26:52 ET 2020 |
| **TEAS STAMP** | USPTO/CAR-XX.XXX.XXX.XX-2 0200423232652766061-88263 031-710b9edcd6440f2a41f53 75e248de839e5f7fcfb9e9cbe c8e251b12165ef2fc7-N/A-N/ A-20200423231951387131 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 2300 (Rev 02/2020)
OMB No. 0651-0051 (Exp 11/30/2020)

# Change Address or Representation Form

To the Commissioner for Trademarks:

**MARK:** SIGNATURE RED GOLD (standard characters, see https://tmng-al.uspto.gov /resting2/api/img/8826303 1/large)
**SERIAL NUMBER:** 88263031

**Owner Section (Current) :**
Solid 21 Incorporated
22287 Muholland Highway
Calabasas, California 91302
United States
212-484-9866

**Attorney Section (Current):**
David L Hecht of PIERCE BAINBRIDGE BECK PRICE & HECHT LLP
is located at
20 WEST 23RD STREET, FIFTH FLOOR
NEW YORK, New York 10010
United States
212-484-9866 x101
Email Address: dhecht@piercebainbridge.com

**Correspondence Section (Current):**
DAVID L HECHT
PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE: dhecht@piercebainbridge.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): NOT PROVIDED

By submission of this request, the undersigned requests that the following be made of record for the owner/holder:

**Owner Section (proposed):**
Solid 21 Incorporated
22287 Muholland Highway
Calabasas, California 91302
United States
212-484-9866
XXXX

**STATEMENT OF THE REASON FOR REPLACEMENT**
Original attorney of record leaving law firm.

By submission of this request, the undersigned confirms that (1) representation is ongoing and (2) that the individual listed below should now be identified as the attorney of record:

**Attorney Section (proposed):**
John M. Pierce of PIERCE BAINBRIDGE BECK PRICE & HECHT LLP
XX bar, admitted in XXXX, bar membership no. XXX, is located at
355 S Grand Ave 44th floor
Los Angeles, California 90071
United States
(213) 262-9333
dhecht@piercebainbridge.com

John M. Pierce submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of

a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

**Correspondence Section (proposed):**
John M. Pierce
PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE: dhecht@piercebainbridge.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): jpierce@piercebainbridge.com


Signature: /John M. Pierce/      Date: 04/23/2020
Signatory's Name: John M. PIerce
Signatory's Position: Attorney of record
Signatory's Phone Number: 2132629333

Serial Number: 88263031
Internet Transmission Date: Thu Apr 23 23:26:52 ET 2020
TEAS Stamp: USPTO/CAR-XX.XXX.XXX.XX-2020042323265276
6061-88263031-710b9edcd6440f2a41f5375e24
8de839e5f7fcfb9e9cbec8e251b12165ef2fc7-N
/A-N/A-20200423231951387131

# EXHIBIT E

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 2194 (Rev 03/2012)
OMB No. 0651-0054 (Exp 12/31/2020)

# Petition To Revive Abandoned Application - Failure To Respond Timely To Office Action

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 88263031 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 113 |
| **DATE OF NOTICE OF ABANDONMENT** | 10/29/2019 |
| **PETITION** | |
| **NOTICE OF ABANDONMENT** | I did not receive the Notice of Abandonment. |
| **Is the petition being filed within two months of actual knowledge of the abandonment of the application?** | The petition is being filed within two months of actual knowledge of the abandonment of the application. |
| **PETITION STATEMENT** | Applicant has firsthand knowledge that the failure to respond to the Office Action by the specified deadline was unintentional. The signatory did not receive the Office action prior to the expiration of the six-month response period, and requests the USPTO to revive the abandoned application and reissue the Office Action. |
| **RESPONSE TO OFFICE ACTION** | |
| **MARK SECTION** | |
| **MARK** | [mark](mark) |
| **LITERAL ELEMENT** | SIGNATURE RED GOLD |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **OWNER SECTION (current)** | |
| **NAME** | Solid 21 Incorporated |
| **DBA/AKA/TA/Formerly** | DBA Chris Aire Fine Jewelry & Timepieces |
| **MAILING ADDRESS** | 22287 Muholland Highway |
| **CITY** | Calabasas |
| **STATE** | California |
| **ZIP/POSTAL CODE** | 91302 |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **PHONE** | 212-484-9866 |
| **OWNER SECTION (proposed)** | |
| **NAME** | Solid 21 Incorporated |
| **DBA/AKA/TA/Formerly** | DBA Chris Aire Fine Jewelry & Timepieces |
| **MAILING ADDRESS** | 22287 Muholland Highway |
| **CITY** | Calabasas |

| STATE | California |
|---|---|
| ZIP/POSTAL CODE | 91302 |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| PHONE | 212-484-9866 |
| EMAIL | XXXX |

**ATTORNEY INFORMATION (current)**

| NAME | David L Hecht |
|---|---|
| ATTORNEY BAR MEMBERSHIP NUMBER | NOT SPECIFIED |
| YEAR OF ADMISSION | NOT SPECIFIED |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | NOT SPECIFIED |
| FIRM NAME | PIERCE BAINBRIDGE BECK PRICE & HECHT LLP |
| STREET | 20 WEST 23RD STREET, FIFTH FLOOR |
| CITY | NEW YORK |
| STATE | New York |
| POSTAL CODE | 10010 |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| PHONE | 212-484-9866 x101 |
| EMAIL | dhecht@piercebainbridge.com |

**ATTORNEY INFORMATION (proposed)**

| NAME | David L Hecht |
|---|---|
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| FIRM NAME | PIERCE BAINBRIDGE BECK PRICE & HECHT LLP |
| STREET | 277 Park Avenue, 45th Floor |
| CITY | NEW YORK |
| STATE | New York |
| POSTAL CODE | 10172 |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| PHONE | 212-484-9866 x101 |
| EMAIL | dhecht@piercebainbridge.com |

**CORRESPONDENCE INFORMATION (current)**

| NAME | DAVID L HECHT |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | dhecht@piercebainbridge.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | NOT PROVIDED |

**CORRESPONDENCE INFORMATION (proposed)**

| NAME | David L Hecht |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | dhecht@piercebainbridge.com |

| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | jpierce@piercebainbridge.com |
|---|---|
| **PAYMENT SECTION** | |
| APPLICATION FOR REGISTRATION PER CLASS | 225 |
| NUMBER OF CLASSES | 1 |
| TOTAL FEES DUE | 325 |
| **SIGNATURE SECTION** | |
| DECLARATION SIGNATURE | I elect not to submit a signed declaration because I believe one is not required by the Trademark Rules of Practice. I understand that I still may be required to submit a signed declaration. |
| PETITION SIGNATURE | /John M. Pierce/ |
| SIGNATORY'S NAME | John M. Pierce |
| SIGNATORY'S POSITION | Attorney of record |
| DATE SIGNED | 04/23/2020 |
| **FILING INFORMATION SECTION** | |
| SUBMIT DATE | Thu Apr 23 23:31:15 ET 2020 |
| TEAS STAMP | USPTO/POA-XX.XXX.XXX.XX-2 0200423233115619305-88263 031-71075474bc96ce7313692 ca427322ef11e543721c52a4d 3c2f0708737b30d114a2-CC-3 1139359-20200423231406953 096 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 2194 (Rev 03/2012)
OMB No. 0651-0054 (Exp 12/31/2020)

### Petition To Revive Abandoned Application - Failure To Respond Timely To Office Action
## To the Commissioner for Trademarks:

Application serial no. **88263031** SIGNATURE RED GOLD(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/88263031/large) has been amended as follows:

## PETITION

**NOTICE OF ABANDONMENT**
I did not receive the Notice of Abandonment.

**Is the petition being filed within two months of actual knowledge of the abandonment of the application?**
The petition is being filed within two months of actual knowledge of the abandonment of the application.
**Petition Statement**
Applicant has firsthand knowledge that the failure to respond to the Office Action by the specified deadline was unintentional. The signatory did not receive the Office action prior to the expiration of the six-month response period, and requests the USPTO to revive the abandoned application and reissue the Office Action.

## RESPONSE TO OFFICE ACTION

**OWNER AND/OR ENTITY INFORMATION**
**Applicant proposes to amend the following:**

**Current:** Solid 21 Incorporated, DBA Chris Aire Fine Jewelry & Timepieces, a corporation of Nevada, having an address of
    22287 Muholland Highway
    Calabasas, California 91302
    United States
    212-484-9866
**Proposed:** Solid 21 Incorporated, DBA Chris Aire Fine Jewelry & Timepieces, a corporation of Nevada, having an address of
    22287 Muholland Highway
    Calabasas, California 91302
    United States
    Email Address: XXXX
    212-484-9866

The owner's/holder's current attorney information: David L Hecht. David L Hecht of PIERCE BAINBRIDGE BECK PRICE & HECHT LLP, is located at

    20 WEST 23RD STREET, FIFTH FLOOR
    NEW YORK, New York 10010
    United States
    The phone number is 212-484-9866 x101.
    The email address is dhecht@piercebainbridge.com

The owner's/holder's proposed attorney information: David L Hecht. David L Hecht of PIERCE BAINBRIDGE BECK PRICE & HECHT LLP, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

    277 Park Avenue, 45th Floor
    NEW YORK, New York 10172
    United States
    The phone number is 212-484-9866 x101.
    The email address is dhecht@piercebainbridge.com

David L Hecht submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

**Correspondence Information (current):**
    DAVID L HECHT
    PRIMARY EMAIL FOR CORRESPONDENCE: dhecht@piercebainbridge.com
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): NOT PROVIDED

**Correspondence Information (proposed):**
    David L Hecht
    PRIMARY EMAIL FOR CORRESPONDENCE: dhecht@piercebainbridge.com
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): jpierce@piercebainbridge.com

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the owner/holder and the owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

**FEE(S)**
Fee(s) in the amount of $325 is being submitted.

**SIGNATURE(S)**

Signature: /John M. Pierce/     Date: 04/23/2020
Signatory's Name: John M. Pierce
Signatory's Position: Attorney of record

**Declaration Signature**
The filing Attorney has elected not to submit the signed declaration, believing no supporting declaration is required under the *Trademark Rules of Practice.*

Mailing Address:   DAVID L HECHT

PIERCE BAINBRIDGE BECK PRICE & HECHT LLP

20 WEST 23RD STREET, FIFTH FLOOR
NEW YORK, New York 10010
Mailing Address:    David L Hecht
PIERCE BAINBRIDGE BECK PRICE & HECHT LLP
277 Park Avenue, 45th Floor
NEW YORK, New York 10172

RAM Sale Number: 88263031
RAM Accounting Date: 04/23/2020

Serial Number: 88263031
Internet Transmission Date: Thu Apr 23 23:31:15 ET 2020
TEAS Stamp: USPTO/POA-XX.XXX.XXX.XX-2020042323311561
9305-88263031-71075474bc96ce7313692ca427
322ef11e543721c52a4d3c2f0708737b30d114a2
-CC-31139359-20200423231406953096

RAM SALE NUMBER:  88263031
RAM ACCOUNTING DATE:  20200423

INTERNET TRANSMISSION DATE:

2020/04/23

SERIAL NUMBER:

88/263031

| Description | Fee Code | Transaction | Total Fees Paid |
|---|---|---|---|
| POA | 7005 | 2020/04/23 | 100 |
| POA | 7007 | 2020/04/23 | 225 |

# EXHIBIT F

| | |
|---|---|
| **From:** | TMOfficialNotices@USPTO.GOV |
| **Sent:** | Friday, April 24, 2020 11:03 PM |
| **To:** | dhecht@piercebainbridge.com |
| **Cc:** | jpierce@piercebainbridge.com |
| **Subject:** | Official USPTO Notice of Revival: U.S. Trademark SN 88263031: SIGNATURE RED GOLD |

Apr 24, 2020

**NOTICE OF REVIVAL**

**U.S. Serial Number:**  88263031
**Mark:**  SIGNATURE RED GOLD
**Owner:**  Solid 21 Incorporated
**Docket/Reference Number:**

**Revival Date:**  Apr 24, 2020

The above-referenced application has been **REVIVED** and will be forwarded to the appropriate section of the Office for further action.

*   If the application was abandoned for failure to file a timely response to an Office action, the application will be forwarded to the examining attorney; or

*   If a notice of appeal was submitted with the petition, the application will be forwarded to the Trademark Trial and Appeal Board to institute the appeal; or

*   If the application was abandoned for failure to file a timely statement of use or a request for extension of time to file a statement of use, the application will be forwarded to the intent to use unit.

To check the current status of your application, please wait approximately three (3) weeks and then either go to http://tsdr.uspto.gov/#caseNumber=88263031&caseType=SERIAL_NO&searchType=statusSearch or contact the Trademark Assistance Center at 1-800-786-9199.  Please check the status of the application at least every three (3) months after the application filing date.

To view this notice and other documents for this application on-line, go to http://tsdr.uspto.gov/#caseNumber=88263031&caseType=SERIAL_NO&searchType=documentSearch.  NOTE: This notice will only become available on-line the next business day after receipt of this e-mail.

For further information, including information on filing and maintenance requirements for U.S. trademark applications and registrations and required fees, please consult the USPTO website at http://www.uspto.gov/trademarks/ or contact the Trademark Assistance Center at 1-800-786-9199.

# **EXHIBIT G**

| **To:** | Solid 21 Incorporated (dhecht@piercebainbridge.com) |
|---|---|
| **Subject:** | U.S. Trademark Application Serial No. 88263031 - SIGNATURE RED GOLD - N/A |
| **Sent:** | July 02, 2020 10:54:47 AM |
| **Sent As:** | ecom113@uspto.gov |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |
| | Attachment - 30 |
| | Attachment - 31 |
| | Attachment - 32 |
| | Attachment - 33 |
| | Attachment - 34 |
| | Attachment - 35 |
| | Attachment - 36 |
| | Attachment - 37 |
| | Attachment - 38 |
| | Attachment - 39 |
| | Attachment - 40 |
| | Attachment - 41 |
| | Attachment - 42 |
| | Attachment - 43 |
| | Attachment - 44 |

Attachment - 45
Attachment - 46
Attachment - 47
Attachment - 48
Attachment - 49
Attachment - 50
Attachment - 51

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.**
88263031

**Mark:**  SIGNATURE RED
GOLD

**Correspondence Address:**
John M. Pierce
PIERCE BAINBRIDGE
BECK PRICE & HECHT
LLP
355 S Grand Ave 44th floor
Los Angeles CA 90071

**Applicant:**  Solid 21
Incorporated

**Reference/Docket No.** N/A

**Correspondence Email
Address:**

dhecht@piercebainbridge.com

# NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within  six months  of the issue date below or the application will be **abandoned**.
Respond using the Trademark Electronic Application System (TEAS).  A link to the appropriate TEAS response form appears at the end of this
Office action.

**Issue date:  July 02, 2020**

This Office action is in response to applicant's communication filed on June 23, 2020.

The Section 2(d) refusal is continued.  The disclaimer requirement is continued.

The requirement to amend the identification to avoid deceptiveness is satisfied.  The information request is withdrawn.

Applicant's proposed amendment to the identification is not acceptable because it exceeds the scope of the identification in the application.  As
such, the identification requirement is continued.

SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 4685006.  Trademark
Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the previously attached registration.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties.  *See* 15 U.S.C. §1052(d).  Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours& Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors").   *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017).  Only those factors that are "relevant and of record" need be considered.   *M2 Software, Inc. v. M2 Commc'ns, Inc.* , 450 F.3d 1378, 1382, 78 USPQ2d 1944, 1947 (Fed. Cir. 2006) (citing *Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1241, 73 USPQ2d 1350, 1353 (Fed. Cir. 2004)); *see In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1744 (TTAB 2018).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis:  (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services.  *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks.");  TMEP §1207.01.

Comparison of the Marks

In the present case, applicant's mark is SIGNATURE RED GOLD and registrant's mark is SIGNATURE GOLD.

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.  *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v).  "Similarity in any one of these elements may be sufficient to find the marks confusingly similar."  *In re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)); TMEP §1207.01(b).

Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression.  *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce* , 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom.  Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

Applying the above analysis, the marks are substantially similar in appearance, sound, connotation, and commercial impression.  The first part and recognizable and dominant portion of applicant's mark is the word "SIGNATURE" which is identical in appearance, sound, connotation to the first part and recognizable and dominant portion of the registered mark, namely, the word "SIGNATURE".  The word "SIGNATURE" in both marks is followed by descriptive wording relating to the goods and the last word in both marks is identical, namely, the word "GOLD".

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression.  *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.* , 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii).  Matter that is descriptive of or generic for an applicant's goods and/or services is typically less significant or less dominant in relation to other wording in a mark.  *See In re Chatam Int'l Inc.* , 380 F.3d 1340, 1342-43, 71 USPQ2d 1944, 1946 (Fed. Cir. 2004); *In re Binion*, 93 USPQ2d 1531, 1534 (TTAB 2009).

In the present case, the newly and previously attached evidence shows that the wording "RED GOLD" in the applied-for mark is merely descriptive of or generic for applicant's goods (see disclaimer requirement section regarding the descriptiveness of the wording).   Thus, this wording is less significant in terms of affecting the mark's commercial impression, and renders the wording "SIGNATURE" the more dominant element of the mark.

Similarly, disclaimed matter that is descriptive of or generic for a party's goods and/or services is also typically less significant or less dominant when comparing marks.  *In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii).

As such, here, the disclaimed wording "GOLD" in registrant's mark is given less weight and is less significant in terms of creating the mark's commercial impression and renders the wording SIGNATURE the more dominant element of the mark.

Even if potential purchasers realize the apparent differences between the marks, they could still reasonably assume, due to the overall similarities in sound, appearance, connotation, and commercial impression in the respective marks, that applicant's goods sold under the proposed mark constitute a new or additional product line from the same source as the goods sold under the registered mark with which they are acquainted or familiar, and that applicant's mark is merely a variation of, or derivative of, the registrant's mark.  *See, e.g., SMS, Inc. v. Byn-Mar Inc.* 228

USPQ 219, 220 (TTAB 1985) (applicant's marks ALSO ANDREA and ANDREA SPORT were "likely to evoke an association by consumers with opposer's preexisting mark [ANDREA SIMONE] for its established line of clothing."); *In re Comexa Ltda.*, 60 USPQ2d 1118 (TTAB 2001) (applicant's use of term "AMAZON" and parrot design for chili sauce and pepper sauce is likely to cause confusion with registrant's "AMAZON" mark for restaurant services).

Applicant argues that it is the owner of RED GOLD [Reg. No. 2793987] since December 16, 2003 and it has marketed its mark since that time. However, in the context of the proposed mark "SIGNATURE RED GOLD", the evidence indicates that the wording "RED GOLD" is generic or at least highly descriptive of the material composition of the goods. As such, consumers would view "SIGNATURE RED GOLD" as a variation of "SIGNATURE GOLD" in light of the fact that the goods are, in part, legally identical.

Applicant submitted an expert report asserting that the wording is not descriptive of the goods. It is noted that the author is not a gold or jewelry expert as to the wording "red gold" but a linguistics expert. The report concedes that the wording "red gold" has a technical meaning as a precious alloy of various proportions of gold and copper as used in metallurgy and watch designers and jewelry.

The report states that the wording is most frequently used as a figurative expression that describes a wide variety of physical objects and is evocative of those usages and not the technical definitions used by jewelers and watchmakers.

However, whether a term or phrase is merely descriptive, however, is determined *not in the abstract* but in relation to the identified goods or services, the context in which it is being used on or in connection with those goods and/or services and the possible significance that the term or phrase would have to the average purchaser of the goods or services because of the manner of its use.

*See DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1254, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012). "That a term may have other meanings in different contexts is not controlling." *Robinson v. Hot Grabba Leaf, LLC*, 2019 USPQ2d 149089, at *5 (TTAB 2019) (citing *In re Canine Caviar Pet Foods, Inc.*, 126 USPQ2d 1590, 1598 (TTAB 2018)); TMEP §1209.03(e). "It is well settled that so long as any one of the meanings of a term is descriptive, the term may be considered to be merely descriptive." *In re Mueller Sports Med., Inc.*, 126 USPQ2d 1584, 1590 (TTAB 2018) (quoting *In re Chopper Indus.*, 222 USPQ 258, 259 (TTAB 1984)).

In other words, the examining attorney must consider the potential significance the wording would have, in context, to the average purchasers of the goods or services in the marketplace. *In re Omaha National Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); *In re Abcor Development Corp.*, 588 F.2d 811, 200 USPQ 215 (CCPA 1978); *In re Omaha National Corp.*, *supra*; *In re Abcor Development Corp.*, *supra*; *In re Venture Lending Associates*, 226 USPQ 285 (TTAB 1985).

The attached excerpts from various websites indicate that the wording "red gold" is often used by jewelry companies to refer to the material composition of the jewelry:

- https://www.1stdibs.com/jewelry/rings/cocktail-rings/1-magnificent-tourmaline-set-18-karat-red-gold-ring/id-j_7461591/ ("1 Magnificent Tourmaline Set in a 18 Karat Red Gold Ring")
- https://www.net-a-porter.com/en-us/shop/product/iwc-schaffhausen/portofino-automatic-40-alligator-18-karat-red-gold-and-diamond-watch/1035650 ("Portofino Automatic 40 alligator, 18-karat red gold and diamond watch")
- https://www.sidneythomas.com/panerai-radiomir-3-days-gmt-oro-rosso-mens-watch-in-18-karat-red-gold-WPAN+RADR02.html ("Panerai Radiomir 3 Days Gmt Oro Rosso Men's Watch in 18-Karat Red Gold")
- https://www.baunat.com/en/2-50-carat-solitaire-diamond-ring-in-red-gold-with-side-diamonds3 ("Alloy 18 Kt red gold")
- https://www.etsy.com/listing/214120010/14-kt-red-gold-parure-old-of-1800-with ("14 kt Red gold parure old of 1800 with 12 sapphires and 70 pearls composed of bracelet, brooch and earrings in an elegant vintage box")
- https://artjewelryforum.org/rebel-metal-red-gold
- https://artmastersjewelry.com/product-category/shop-by-metal-black-gold-white-gold-yellow-gold-rose-gold-blue-gold-red-gold-green-gold-platinum/red-gold-rings/
- https://jewelryinfoplace.com/gold/#11
- https://www.jennaclifford.com/blogs/jc-journal/red-gold-vs-rose-gold-vs-pink-gold-differences-explained

This type of evidence shows that consumers understand the phrase "RED GOLD" to identify the type of gold in the jewelry. As such, in the context of the proposed mark, the wording is less significant.

Comparison of the Goods

The goods and/or services of the parties need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods."); TMEP §1207.01(a)(i).

The respective goods and/or services need only be "related in some manner and/or if the circumstances surrounding their marketing [be] such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source."  *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

In the present case, applicant's goods, as amended, are "watches and jewelry made of gold, namely, watches, necklaces, bracelets, rings, anklets, cuff links, ornamental hair pins, belt buckles of precious metal, tie clips and pegs, and earrings" and registrant's goods are "jewelry made primarily of gold, namely, rings, bracelets, charms, pendants, earrings, necklaces, brooches, pins and cufflinks".

In the present case, applicant's goods are in part legally identical to registrant's goods as to necklaces, bracelets, rings, cuff links and earrings because applicant's goods would encompass registrant's goods.

Where the goods and/or services of an applicant and registrant are identical or virtually identical, the degree of similarity between the marks required to support a finding of confusion is likely declines.  *See Cai v. Diamond Hong, Inc.*, __ F.3d __, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(b).

In addition, applicant's watches, anklets, ornamental hair pins, belt buckles of precious metal, tie clips and pegs are closely related to registrant's jewelry because these types of goods are often sold by the same companies and marketed in the same channels of trade to the same class of purchasers.

The previously attached Internet evidence, consisting of excerpts from the websites of CARTIER and CHOPARD regarding companies offering both jewelry and watches under the same marks, establishes that the same entity commonly manufactures or produces the relevant goods and markets the goods under the same mark, the relevant goods are sold or provided through the same trade channels and used by the same classes of consumers in the same fields of use and/or the goods are similar or complementary in terms of purpose or function.  Thus, applicant's and registrant's goods are considered related for likelihood of confusion purposes.  *See, e.g.*, *In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202-04 (TTAB 2009); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).

The overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer.  *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993).  Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant.  TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).

## AMENDED IDENTIFICATION BEYOND THE SCOPE OF ORIGNAL IDENTIFICATION

The proposed amendment to the identification is not acceptable because it exceeds the scope of the identification in the application.  *See* 37 C.F.R. §§2.32(a)(6), 2.71(a); TMEP §§805, 1402.06 *et seq.*, 1402.07.  Applicant's goods and/or services may be clarified or limited, but may not be expanded beyond those originally itemized in the application or as acceptably amended.  *See* 37 C.F.R. §2.71(a); TMEP §1402.06.  Therefore, the original identification in the application, and any previously accepted amendments, remain operative for purposes of future amendment.  *See* 37 C.F.R. §2.71(a); TMEP §1402.07(d).

In this case, the application originally identified the goods as follows:  "watches and jewelry."

However, the proposed amendment identifies the following goods:  "ornamental hair pins, belt buckles of precious metal, tie . . . pegs."

This proposed amendment is beyond the scope of the original identification because the referenced goods are not jewelry items in International Class 14 but hair accessories and home accessories properly in other classes.

It is noted that ornamental hair pins and belt buckles of precious metal are properly in International Class 26 and the wording "tie pegs" is indefinite and appears to refer to tie rack wooden pegs properly in International Class 20.

For assistance with identifying and classifying goods and services in trademark applications, please see the USPTO's online searchable *U.S. Acceptable Identification of Goods and Services Manual*.  *See* TMEP §1402.04.

## DISCLAIMER REQUIRED

Applicant must provide a disclaimer of the unregistrable part(s) of the applied-for mark even though the mark as a whole appears to be registrable.  *See* 15 U.S.C. §1056(a); TMEP §§1213, 1213.03(a).  A disclaimer of an unregistrable part of a mark will not affect the mark's appearance.  *See Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 979-80, 144 USPQ 433, 433 (C.C.P.A. 1965).

In this case, applicant must disclaim the wording "red gold" because it is not inherently distinctive. These unregistrable term(s) at best are merely descriptive of an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services. *See* 15 U.S.C. §1052(e)(1); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012); TMEP §§1213, 1213.03(a).

The previously attached evidence from www.thefreedictionary.com shows the wording "gold" means "a soft, yellow, corrosion-resistant element, the most malleable and ductile metal, occurring in veins and alluvial deposits and recovered by mining, panning, or sluicing". The previously attached website excerpts from https://en.wikipedia.org/wiki/Red_gold and http://www.la-joaillerie-par-mazlo.fr/en/red-gold-rose-gold-dont-get-fooled-by-their-softness/ indicate that the wording "red gold" refers to gold that is red or rose in color.

See the following excerpt from https://en.wikipedia.org/wiki/Red_gold:

> Rose gold is a gold-copper alloy[7] widely used for specialized jewelry. Rose gold, also known as pink gold and red gold, was popular in Russia at the beginning of the nineteenth century, and was also known as Russian gold, although this term is now obsolete. Rose gold jewelry is becoming more popular in the 21st century, and is commonly used for wedding rings, bracelets, and other jewelry.
>
> Although the names are often used interchangeably, the difference between red, rose, and pink gold is the copper content: the higher the copper content, the stronger the red coloration. Pink gold uses the least copper, followed by rose gold, with red gold having the highest copper content.

See also previously attached website excerpt from the website of NEIMAN MARCUS regarding jewelry made in significant part of red gold .

Applicant argues that it has an incontestable registration for RED GOLD [Reg. No. 2793987] and a disclaimer is not needed.

In *In re Am. Sail Training Ass'n*, 230 USPQ 879 (TTAB 1986), the Trademark Trial and Appeal Board held that an examining attorney could not require a disclaimer of "TALL SHIPS" in an application for registration of the mark RETURN OF THE TALL SHIPS, where the applicant owned an incontestable registration for the mark TALL SHIPS for the identical services. This would be a collateral attack on an incontestable registration. However, this applies only where both the marks and the goods or services are identical, and the identical part of the applied-for mark would not be considered *generic*. *See* TMEP §1216.02.

Here, as discussed above in the Section 2(d) refusal, based on the evidence of record, the wording appears to be generic as to the material composition of applicant's goods namely, goods made in significant part of gold including red gold. As such, despite applicant's previous incontestable registration for the mark "RED GOLD", a disclaimer of the wording is required because the wording appears to be generic for the goods, namely, a reference to the material composition of the goods.

"Trademark rights are not static." *In re Thunderbird Prods. Corp.*, 406 F.2d 1389, 1391, 160 USPQ 730, 732 (C.C.P.A. 1969). A term that might not have been considered merely descriptive or generic in the past may now be considered so due to the frequency of its use over time. *See In re Virtual Indep. Paralegals, LLC*, 2019 USPQ2d 111512, at *9 (TTAB 2019) (citing *In re Thunderbird Prods. Corp.*, 406 F.2d at 1391, 160 USPQ at 732). Eligibility for registration must be determined on the basis of the facts and evidence in the record at the time registration is sought, which includes during examination and any related appeal. *In re Chippendales USA Inc.*, 622 F.3d 1346, 1354, 96 USPQ2d 1681, 1686 (Fed. Cir. 2010); *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1344, 213 USPQ 9, 18 (C.C.P.A. 1982); *In re Thunderbird Prods. Corp.*, 406 F.2d at 1391, 160 USPQ at 732.

Applicant also submitted an expert report asserting that the wording is not descriptive of the goods. As noted, the author is not a gold or jewelry expert as to the descriptiveness of the wording "red gold" in the jewelry industry but a linguistics expert.

The report states that the wording "red gold" is an oxymoron because gold that is red is a self-contradictory term. However, the evidence of record indicates and the report also concludes that the wording "red gold" also has a technical meaning as a precious alloy of various proportions of gold and copper as used in metallurgy and watch designers and jewelry. As such, the wording "red gold" appears to be a term of art in the jewelry industry.

As noted above, the report states that the wording is most frequently used as a figurative expression that describes a wide variety of physical objects and is evocative of those usages and not the technical definitions used by jewelers and watchmakers.

However, as noted, whether a term or phrase is merely descriptive, however, is determined *not in the abstract* but in relation to the identified goods or services, the context in which it is being used on or in connection with those goods and/or services and the possible significance that the term or phrase would have to the average purchaser of the goods or services because of the manner of its use.

As noted, the attached excerpts from various websites indicate that the wording "red gold" is often used by jewelry companies to refer to the material composition of the jewelry.

Applicant may respond to this issue by submitting a disclaimer in the following format:

**No claim is made to the exclusive right to use "RED GOLD" apart from the mark as shown.**

For an overview of disclaimers and instructions on how to satisfy this issue using the Trademark Electronic Application System (TEAS), see the Disclaimer webpage.

<u>CLOSING</u>

Please call or email the assigned trademark examining attorney with questions about this Office action.  Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action.  *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record.  *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**How to respond.  Click to file a response to this nonfinal Office action.**


/Douglas M. Lee/
Trademark Examining Attorney
Law Office 113
U.S. Patent and Trademark Office
571-272-9343
douglas.lee4@uspto.gov


## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.**  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period.  TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.**  If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant.  If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

| | |
|---|---|
| **To:** | Solid 21 Incorporated (dhecht@piercebainbridge.com) |
| **Subject:** | U.S. Trademark Application Serial No. 88263031 - SIGNATURE RED GOLD - N/A |
| **Sent:** | July 02, 2020 10:54:48 AM |
| **Sent As:** | ecom113@uspto.gov |
| **Attachments:** | |

### United States Patent and Trademark Office (USPTO)

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **July 02, 2020** for
### U.S. Trademark Application Serial No. 88263031

Your trademark application has been reviewed by a trademark examining attorney.  As part of that review, the assigned attorney has issued an official letter that you must respond to by the specified deadline or your application will be abandoned.  Please follow the steps below.

**(1)  Read the official letter.**

**(2)  Direct questions** about the contents of the Office action to the assigned attorney below.


/Douglas M. Lee/
Trademark Examining Attorney
Law Office 113
U.S. Patent and Trademark Office
571-272-9343
douglas.lee4@uspto.gov

Direct questions about navigating USPTO electronic forms, the USPTO website, the application process, the status of your application, and/or whether there are outstanding deadlines or documents related to your file to the Trademark Assistance Center (TAC).

**(3)  Respond within 6 months** (or earlier, if required in the Office action) from **July 02, 2020**, using the Trademark Electronic Application System (TEAS).  The response must be received by the USPTO before midnight **Eastern Time** of the last day of the response period.  See the Office action for more information about how to respond


## GENERAL GUIDANCE

·   **Check the status** **of your application periodically** in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

·   **Update your correspondence email address**, if needed, to ensure you receive important USPTO notices about your application.

·   **Beware of misleading notices sent by private companies about your application.**  Private companies not associated with the USPTO use public information available in trademark registrations to mail and email trademark-related offers and notices – most of which require fees.  All **official USPTO correspondence** will only be **emailed from the domain "@uspto.gov."**

**CERTIFICATION OF SERVICE**

I hereby certify that on June 13, 2021, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.

By  */s/ Craig J. Mariam*
     Craig J. Mariam