UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOLID 21, INC. | : |
| *Plaintiff*, | : |
| v. | : No. 3:19-cv-0514 (MPS) |
| BREITLING U.S.A., INC., BREITLING SA, AND BREITLING AG, | : |
| *Defendants*. | : |

RULING

The defendants' Motion for Terminating Sanctions Against Plaintiff, or in the Alternative, For Issue Sanctions Against Plaintiff, the Disqualification of Hecht Partners, Revocation of David Hecht's *Pro Hac Vice* Admission and a Referral to Various State Bar Disciplinary Authorities (ECF No. 163) is **DENIED.** Plaintiff's Motion for an Emergency Hearing and Sanctions (ECF No. 172) is **DENIED** as moot with the respect to the request for an emergency hearing and **DENIED** as to the request for sanctions.

I.   The Factual and Procedural Background

By way of background, on April 5, 2019, plaintiff brought this action alleging, among other things, trademark infringement under the Lanham Act against the defendants. ECF No. 1. On April 5, 2021, the undersigned received a referral of this matter for the resolution of discovery-related disputes. ECF No. 136.  On April 19, 2021, pursuant to this referral, the Court held a discovery conference via Zoom and heard argument from the parties regarding pending discovery issues.  On April 27, 2021, the Court conducted a follow-up telephonic discovery conference on the record, heard additional argument and articulated its ruling at the conclusion

1

of the conference.[1]  Specifically, the Court re-opened the discovery period to require production by defendants of electronically stored information responsive to a previous production request served by plaintiff, to permit plaintiff to designate a replacement expert in lieu of their previously disclosed expert linguist and to allow defendants to take the deposition of any such replacement expert designated by plaintiff.  Shortly thereafter, on May 4, 2021, the Court held a telephonic status conference with the parties, all of whom agreed to a referral to another magistrate judge for a settlement conference. ECF No. 157.  The matter was referred to Hon. Robert A. Richardson for a settlement conference, but the parties did not successfully schedule the conference. ECF No. 158. On June 2, 2021, defendants filed their motion for sanctions. ECF No. 163.  On June 7, 2021, the plaintiff cross-moved for sanctions, on the primary ground that defendants did not comply with Rule 11's safe harbor provision. ECF No. 172.

In seeking the imposition of sanctions against plaintiff and plaintiff's counsel, defendants make two principal arguments.  First, defendants claim that, following the Court's ruling extending the discovery period for certain limited purposes, plaintiff's counsel authored or caused to be issued a press release which contained false and defamatory information about defendants and/or one of defendants' corporate executives that violated various rules of professional conduct, though plaintiff principally invokes Rule 3.6 of the Connecticut Rules of Professional Conduct.  Second, defendants allege that plaintiff's counsel made misrepresentations to the Court regarding the circumstances of his departure from his former firm which were material to, and upon which the Court relied, in its April 27, 2021, ruling extending the discovery period.

---

[1] The Court articulated its ruling during the April 27, 2021, hearing and then entered a formal Order on the docket on April 28, 2021 (ECF No. 153) summarizing its ruling.

On June 15, 2021, the Court heard oral argument on the pending motions for sanctions and all related motions. For the reasons set forth below, the Court concludes that defendants have not established any violation of the rules of professional conduct by plaintiff's counsel, that plaintiff's counsel did not engage in any material misrepresentations in connection with the Court's prior discovery ruling and that sanctions are not warranted.

A court's "authority to impose sanctions is grounded, first and foremost, in [its] inherent power to control the proceedings that take place before [it]." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991)). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id* (internal quotation marks and citation omitted). In addition, Connecticut Rule of Professional Conduct 3.6., titled "Trial Publicity," reads in pertinent part: "[a] lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

II. The Eurweb.com Article

Here, upon a careful and detailed review of the parties' filings, the Court concludes that the defendants have not met their burden of demonstrating that plaintiff's counsel violated Rule 3.6. Defendants moved for sanctions against plaintiff claiming that plaintiff's counsel engaged in and directly caused to be published on a website a false, defamatory article about Breitling and one of its corporate executives. The web article, which was published on Eurweb.com shortly after the Court's April 27, 2021, discovery ruling, touted that "Jeweler to the Stars Chris Aire

Scores Victory over Breitling in Infringement Case." ECF No. 163-5.  The article briefly summarizes aspects of the Court's discovery ruling, generally describes the nature of the pending lawsuit that plaintiff brought against Breitling and also contains two hyperlinks to articles regarding one of defendants' corporate executives, Breitling USA CEO Thierry Prissert, that had been published in 2014 and 2015, and accordingly, had already been in the public realm for a considerable period of time.

     As a threshold matter, the defendant has not established that the publication of this article constitutes an extrajudicial statement made by plaintiff's counsel within the meaning of Rule 3.6.  There is no concrete evidence before this Court that plaintiff's counsel authored this article or specifically directed the content of this article.  While an initial version of the article suggested that plaintiff's counsel was a source for the article and this was later corrected to reference plaintiff's counsel's public relations strategist, this does not necessitate a finding that plaintiff's counsel wrote the article or is responsible for the entirety of its content.  Rather, the initial reference to plaintiff's counsel as a "source" for the article is entirely consistent with plaintiff's counsel's admission that he provided a transcript of the discovery conference, a public proceeding, and the hyperlinks to articles previously published to his public relations strategist.  Attorney Hecht's declaration (ECF. No. 172-1, ¶20) states, and the Court concludes, that he did not disseminate any information that was marked as confidential.  Indeed, the April 27, 2021, hearing was open to the public and the transcript is available to anyone who seeks to order a copy.  Further, the source material did not involve the disclosure of any information that violated a protective order of this Court or otherwise revealed any other information designated as confidential or "attorney-eyes only."  While Attorney Hecht did depose the Breitling executive named in the hyper-linked articles and questioned him about the material in the articles, there is

no evidence that any specific content from the deposition designated as confidential was provided to the author of the Eurweb.com article.  The only information that appears to have been provided is hyperlinks to articles that had already been published years earlier along with a very brief description as to the subject of each article, which accurately set forth either the title or some content of the articles.  While Attorney Hecht may have learned of the existence of the articles or some information relating to the articles in Mr. Prissert's deposition, provision of links to articles that already existed in public forums for several years did not in and of itself violate any confidentiality or protective orders of the Court.  With respect to the Eurweb.com article, Attorney Hecht also affirms that "[a]t no time did [he] or anyone at [his] firm, have control over the content or publication." ECF. No. 172-1, ¶25.  Defendants have not produced any evidence to prove otherwise – such as, for example, a declaration from the author of the article indicating that Attorney Hecht ghost-wrote the article, directed any of its specific content,  caused or requested it to be published or that the author is somehow employed by Attorney Hecht in some capacity.  In short, on the evidentiary record presented, the Court concludes that the provision of publicly available source material to a journalist whether by Attorney Hecht or through a third party public relations professional does not transform the Eurweb.com article as a whole into an extrajudicial statement attributable to Attorney Hecht.

  However, even if plaintiff's counsel's provision of publicly available source material or his conduct in initiating a process that ultimately resulted in the publication of this article can be deemed an extrajudicial statement attributable to him, the defendants have not established a substantial likelihood of material prejudice to them in any adjudicative proceeding in this matter.  While the Court readily acknowledges that the article did not contain the full context of its discovery ruling and cherry-picked some words used by the Court in that ruling to create

dramatic effect, the Court has no basis to conclude that any content in the article was patently false. The article accurately describes the general nature of the pending action between Solid 21 and the Breitling defendants, correctly references some portions of the Court's discovery ruling, albeit without full context, and accurately describes some of the content of the hyperlinked articles. For instance, the hyperlink to the article regarding the civil claim against Mr. Prissert accurately sets forth the title of the article and the nature of the allegation that was made against Mr. Prissert. The second hyperlink accurately sets forth a historical statement made by Mr. Prissert. Further, given that the full April 27, 2021 ruling and the 2014 and 2015 articles are publicly available, it is difficult to see how this brief article in May 2021 has created any material prejudice, much less with respect to future proceedings in this Court or at a trial that might occur at some time in the future in the District of Connecticut. Defendant argues that the article might negatively influence the settlement judge in this matter or taint the jury pool. The assigned settlement judge is a seasoned trial lawyer, an experienced jurist and is highly unlikely to be influenced by law firm marketing antics and ploys for publicity. Moreover, on June 3, 2021, website Law360.com published an article in which defendants decry the Eurweb.com article as a false and defamatory "hit piece" and accuse plaintiff's counsel of "deceptive, unethical behavior." Therefore, this Court is satisfied that the settlement conference playing field, should the parties focus on reaching that point, is quite level.

The Court also finds it highly doubtful that any jury pool will be tainted by the content of the articles published in 2014 and 2015. The defendants address this concern raised by the Court by arguing that plaintiff's counsel has re-circulated and re-distributed allegations against one of Breitling's executives that are years old, in effect resurrecting those allegations in the public's eye at a critical juncture in this case. The Court is not persuaded by the defendants' theory of

material prejudice. This case is not yet scheduled for trial and it likely will not be for some time given the pendency of extensive summary judgment motions. Thus, whatever small degree of prejudice may have occurred has more than ample time to dissipate. In any event, the Court is not convinced that there has been any prejudice, let alone material prejudice. Defendants have not produced any specific evidence that this particular website article of which they complain is far more prevalent to the public through internet searches of Breitling than the prior articles from 2014 and 2015 and, therefore, has somehow reignited those old allegations. Indeed, from the Court's own cursory research, when Breitling is the subject of a general Google search, the Eurweb.com article does not even appear in the first five pages of search results. When Thierry Prissert, the named corporate executive in the hyperlink, is "googled" in a general search, a number of articles which contain the same subject matter of which the defendants complain came up in the first few pages, including an article from the New York Daily News, which may be more widely known than the site on which the article at issue was published. This disproves, or at least undercuts, any notion that the article at issue here has resurrected, and serves as the lynchpin to, these old allegations. The defendants also have not presented any specific evidence from which the Court can conclude that this website and the articles it has published has such a wide audience in Connecticut that there is a significant likelihood of any taint of potential jurors from this particular article. While a Google news search of "Thierry Prissert" does bring up the Eurweb.com article, it also brings up defendants' rebuttal in the Law360.com article referenced above, thus significantly mitigating any potential prejudice. Lastly, even if there was some potential taint of a jury pool, any such taint can be easily discerned in jury selection through the *voir dire* process and eliminated through subsequent cause and peremptory challenges. In short, while the Court might question the wisdom of initiating such an article that effectively and

7

proverbially poked the defendants in the eye and upended a potential settlement opportunity, the Court does not find that counsel's involvement in this article violated Rule 3.6 or any other rules of professional conduct.

### III. The Alleged Misrepresentations as to Plaintiff's Departure from his Former Firm

Next, defendants argue that, in an effort to persuade this Court to grant plaintiff's request to modify the discovery schedule, plaintiff's counsel misrepresented to this Court that he had withdrawn from the present case for a period of eight months, although he continued to perform work on this matter. Defendants allege that while Attorney Hecht was permitted by the court to withdraw from this case on April 24, 2020, because he "asserted that he had left Pierce Bainbridge," (ECF No. 163-1 at 11), he in fact continued his employment at that firm and asserted to other courts around the country that he was still employed with Pierce Bainbridge. For the reasons set forth below, the Court does not find any merit to the defendants' claims.

In his motion to withdraw from this case filed on April 21, 2020, Attorney Hecht stated that he was in the "process of separating" from the Pierce Bainbridge firm and that other attorneys from that firm would handle the matter going forward. ECF No. 82. On April 24, 2020, the Court granted the motion. ECF No. 83. This Court's April 27, 2021, decision to extend the discovery period for limited purposes hinged upon its finding that Attorney Hecht did not represent the plaintiff in this matter for eight months, successor counsel accomplished very little during that period and Attorney Hecht acted with diligence upon re-entry into the matter in January 2021. Upon review of the defendants' allegations, there is no basis to conclude that plaintiff's counsel made any misrepresentations to this Court.

First, following his withdrawal in this case, Attorney Hecht did not file any pleadings on the docket in this matter until he sought to re-appear in the case on December 23, 2020. Second, the Court reviewed the transcripts of the arguments held on April 19, 2021 and April 27, 2021, in connection with the motion to extend the discovery period and, in those hearings, Attorney Hecht never made any representations that he had fully departed from the Pierce Bainbridge firm and was not engaging in or completing any work for any Pierce Bainbridge clients. During the April 19, 2021, argument when the Court inquired as to Attorney Hecht's status with the Pierce Bainbridge firm in early 2020 and his status on this matter in the District of Connecticut, Attorney Hecht informed the Court that "[they] were just winding down" and "handing this [case] off" to other lawyers. ECF No. 185 at 19. This is entirely consistent with his prior representation to the Court that he was in the "process of separating" from Pierce Bainbridge and other attorneys from that firm would handle this matter in the District of Connecticut.

Even leaving aside the obvious fact that Attorney Hecht did not file any pleadings in this case after April 24, 2020 and until he re-entered this case, there is no evidence that Attorney Hecht performed substantive work on this case for plaintiff during the period his appearance had been withdrawn. Defendants' counsel did not claim in either the April 19 or April 27 arguments that Attorney Hecht continued to handle this matter despite withdrawing his formal appearance. While defendants have now produced in excess of fifty emails on which Attorney Hecht is copied, among many other attorneys, the Court's review of these emails shows that Attorney Hecht asked to be removed from the communications and did not engage in any substantive discussions about this matter in any of those emails. The Court's view of these emails is buttressed by the fact that defendants' counsel, who are also copied on these emails, did not even raise these emails in the April 19 and April 27 arguments. Further, defendants' counsel, who

were involved in this case during the period of Attorney Hecht's withdrawal, did not identify any substantive work engaged in by Attorney Hecht during that period either in oral argument held by the Court on the discovery issues or in submitted declarations. Nor have defendants submitted such declarations from any other lawyers involved in the matter. While defendant speculatively asserts that Attorney Hecht may have been overseeing this matter, they have not provided any specific evidence from which the Court can draw such a conclusion. While defendants point to, and Attorney Hecht admits, a single teleconference in which he participated to provide historical information that might be relevant to the new attorneys handling the matter (which defendants do not contradict), such limited participation is not unusual for withdrawn lawyers in ensuring a proper transition and is in keeping with professional duties of care to the client. Importantly, Attorney Hecht's participation in this conference was disclosed to the Court in a January 5, 2021, pleading upon his re-entry into this matter (ECF No. 105 at 3) and was a fact the Court considered when it issued its discovery ruling.

The Court's review of Attorney Hecht's June 2020 declaration in a matter in the Eastern District of Texas does not change its analysis. In that declaration, approximately two months after his withdrawal from this action, Attorney Hecht represented in the Eastern District of Texas that, although he resigned from the Pierce Bainbridge ("PB") partnership effective March 11, 2020, "[he] remained of counsel since that time in order to, *inter alia*, fulfill ongoing duties to clients and to transition certain matters from PB to Hecht Partners LLP." ECF No. 163-12 at 4. Attorney Hecht also averred that he continued to represent PB clients thereafter. While defendants would like the Court to conclude that these declarations automatically warrant a conclusion that Attorney Hecht continued to work on *this* matter after his withdrawal, the Court sees no basis for making such a large leap. These declarations do not contradict Attorney

Hecht's representations that he was in the "process of separating" from Pierce Bainbridge and was "winding down." It is not unusual for law firm partners to participate in matters in a transitional capacity as they prepare to depart. Attorney Hecht does not make any admissions in the declaration from which the Court can conclude that this matter was one upon which Attorney Hecht continued to work. Indeed, in a January 15, 2021, pleading, Attorney Hecht stated that following his withdrawal from the partnership of the Pierce Bainbridge law firm, he was not authorized to represent Solid 21 in this case, an assertion corroborated by the declaration of Christopher Aire, Solid 21's principal. ECF No. 115 at 2; ECF No. 105, ¶12. Attorney Hecht's declaration in the Eastern District of Texas does not directly contradict these assertions. Defendants have not offered any other specific evidence of work performed by Attorney Hecht on this matter after he withdrew his appearance that would render these statements untrue. In short, this declaration, even if it had been brought to the Court's attention at the time of the discovery dispute, would not have been consequential to the Court's decision extending the discovery period. The critical issue for the Court in extending the discovery period for limited purposes was whether Attorney Hecht continued to work on this matter in some capacity following the withdrawal of his appearance such that plaintiff's lack of diligence in the latter half of 2020 could be attributed to him. While his declaration supports the notion that Attorney Hecht may have continued to work on certain Pierce Bainbridge matters after he resigned, the Court does not see any specific evidence before it that <u>this</u> action was one of them.

     Lastly, the defendants also claim that Attorney Hecht engaged in misrepresentation by failing to correct the Court during its April 27 ruling when the Court stated that Attorney Hecht had left Pierce Bainbridge in April 2020. To be clear, during the lengthy articulation of its ruling, this was the Court's own imprecise summary of Attorney Hecht's status with Pierce

11

Bainbridge at the time of his withdrawal from this action. While Attorney Hecht could have reminded the Court that he was "in the process of separating," "winding down" and had only left the partnership by resigning, these facts would not have altered the Court's conclusion that there was no evidence that Attorney Hecht performed work on this matter following his withdrawal and that plaintiff's lack of diligence during that time could not be imputed to Attorney Hecht. Accordingly, the Court concludes that Attorney Hecht did not engage in any material misrepresentation to the Court in the April 19, 2021 or April 27, 2021, hearings.

### IV.     Plaintiff's Motion for Sanctions

Also before the Court is plaintiff's motion for sanctions where it claims that defendants failed to comply with Rule 11's safe harbor provision, and thus denied plaintiff the opportunity to address and remedy defendants' allegations. ECF No. 172. Plaintiff's reliance is misplaced. Rule 11 does not apply to defendant's motion because it deals exclusively with formal pleadings, documents, written motions, and other papers that are submitted to the Court.  By its explicit terms, it does not encompass news articles that are published on the internet. Fed. R. Civ. P. 11. Defendants' motion for sanctions does not fall under the purview of Rule 11 as it merely invokes the Court's inherent power to sanction the attorneys or parties in a case. "Every district court 'has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for ... disobeying the court's orders.' " *Mitchell v. Lyons Prof'l Servs., Inc.,* 708 F.3d 463, 467 (2d Cir. 2013), quoting *Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2002). The defendants never moved for sanctions pursuant to Rule 11 and thus the safe harbor provision is inapplicable. Lastly, while the Court has found no merit to defendants' claims and denied their motion for sanctions, the Court does not conclude that their motions were so frivolous that plaintiff should

be awarded its attorneys' fees and costs.  For all of these reasons, plaintiff's Motion for Sanctions (ECF. No. 172) is **DENIED**.

Further, defendants' Emergency Motion to Stay Discovery (ECF. No. 166) is **DENIED** as moot as the defendants represented that they have complied with this Court's April 28, 2021, Discovery Order (ECF. No. 153).

This is not a recommended ruling.  This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.  As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

**SO ORDERED**, on this 27th day of July, 2021, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
Hon. S. Dave Vatti
United States Magistrate Judge