UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOLID 21, INC., <br><br>     *Plaintiff*, <br>     v. <br><br> BREITLING U.S.A., INC.; BREITLING SA; AND BREITLING AG, <br><br>     *Defendant*. | No. 3:19-cv-00514 (MPS) |

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

   Plaintiff, Solid 21, Inc. ("Solid 21"), is a jewelry company that owns the trademark for RED GOLD® and sells various jewelry items, most notably watches, under its RED GOLD® brand.  Solid 21 sued Defendants, Breitling U.S.A., Inc., Breitling S.A., and Breitling A.G. ("Breitling") alleging claims of trademark infringement under 15 U.S.C.§ 1114, unfair competition under Conn. Gen. Stat. §§ 42-110a, *et. seq.*, trademark dilution under Conn. Gen. Stat. § 35-11i, and false description under common law and 15 U.S.C. §§ 1114(1), 1125(a), (c). Solid 21 alleges that Breitling, which also makes and sells watches, improperly used the "Red Gold" mark in advertising its watches.  Breitling has filed a motion for summary judgment as to the trademark infringement and trademark dilution claims, arguing, among other things, that (1) the "Red Gold" trademark is generic and thus invalid, or (2) if the mark is valid, Breitling's use qualifies as fair use.  Solid 21 has filed its own motion for summary judgment, arguing that Breitling's genericness defense and related counterclaims fail because they target descriptive features of "Red Gold" and do not show that the term relates to an entire genus of products.  As

1

explained below, I grant in part and deny in part Breitling's motion for summary judgment, and deny Solid 21's motion for summary judgment.

## II.    FACTS

The following facts are taken from the parties' Local Rule 56(a) Statements and are undisputed unless otherwise indicated.  Many of the responses made by Solid 21 were non-compliant with Local Rule 56 because they failed to cite specific evidence in the record or address all of the statements to which they purported to respond.  In addition, some responses disputed the probative value of the evidence but did not deny the truth of the statement.  In all such cases, those statements are deemed admitted and treated as undisputed facts below.  *See* Local Rule 56(a)2 (stating that a party opposing summary judgment must respond to each paragraph in moving party's Local Rule 56(a) statement by "admitting or denying the facts and/or objecting to the fact as permitted by the Federal Rule of Civil Procedure 56(c) [allowing objections to inadmissible evidence] …. All denials must meet the [specific citation] requirements of Local Rule 56(a)3."); Local Rule 56(a)(3) (stating that the "[f]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence").

### A.  The Parties

Solid 21 is a jewelry company that "sells watches, bracelets, necklaces, rings, and the like."  ECF No. 127-13 ¶ 1; ECF No. 123-2 ¶ 1.  Christopher Aire is the founder and CEO of Solid 21.  ECF No. 123-2 at 1.  In 2002, Solid 21 filed an application with the United States Patent and Trademark Office ("USPTO") to register "Red Gold" in "Goods and Services," specifically for "[f]ine [j]ewelry made of special alloying of gold with a distinct color made into fine jewelry, namely, watches, necklaces, bracelets, rings, anklets, cuff links, hair pins, belt

buckles, tie clips and pegs, and earrings." ECF No. 123-1 ¶ 13; ECF No. 127-13 ¶ 2; ECF No. 107-19 at 2. Solid 21 claimed that it first used "Red Gold" in 1989. ECF No. 123-1 ¶ 16; ECF No. 1 at 4. The USPTO granted the application on December 16, 2003. ECF No. 123-1 ¶ 13. "Red Gold" became an incontestable mark in 2009 pursuant to 15 U.S.C. § 1065.[1] ECF No. 127-13 ¶ 2.

"Breitling SA is a luxury watch company that manufactures and sells watches under the brand BREITLING," and "Breitling U.S.A., Inc. … is the exclusive United States distributor of its parent company." ECF No. 123-1 ¶ 28. According to Aire, Breitling is a competitor of Solid 21, but Breitling disputes this. ECF No. 127-13 ¶ 31. Solid 21 alleges that "Breitling began advertising [and] using the RED GOLD® trademark in many of the same publications as did Solid 21 as well as in other publications" in the late 2000s,[2] ECF No. 127-13 ¶ 12, and continues to use "red gold" to advertise watches on its website, ECF No. 127-13 ¶ 13. On Breitling's website, "red gold" appears "in smaller text beneath a watch model's name when identifying the case material and dial color."[3] ECF No. 123-1 ¶ 29. Examples of the usage of "red gold" from Breitling's website are below:

---

[1] Breitling asserts that this mark is generic, making it incapable of becoming incontestable. ECF No. 127-13 ¶ 2. I do not understand Breitling's argument to mean that Solid 21 has not registered its trademark with the USPTO or that the trademark has not otherwise achieved this "incontestable" status according to the statute. *See* 15 U.S.C. § 1065 (subject to exceptions not applicable here, an owner's right to use a mark becomes incontestable after five years of use if certain conditions, including non-genericness, are met).

[2] Breitling disputes the accuracy of these statements because Solid 21 failed to attach any advertisements from Breitling from the late 2000s. Solid 21 only provides an advertisement from 2013. ECF No. 123-30.

[3] Solid 21 disputes the use of "Red Gold" as a descriptor of material but does not otherwise cite any evidence that rebuts the statement.



ECF No. 107-22.  Breitling has also used "red gold" in its social media posts:





ECF No. 123-33; ECF No. 127-13 ¶ 16.  Breitling's President, Thiery Prissert, attests that Breitling "used the term 'red gold' only to identify a particular type of material—namely, a reddish-colored gold that is high in copper content—from which various component parts of a watch (the watch case, bezel, crown, band/bracelet, etc.) can be fabricated."  ECF No. 123-1 ¶ 30; ECF No. 107-40 ¶ 6.

Solid 21 has previously filed actions against other watch and jewelry retailers alleging trademark infringement of "Red Gold."  *See* ECF No. 127-13 ¶ 33.  After one of those lawsuits was filed against Jomashop, a luxury watch and jewelry retailer, it stopped using "red gold" and switched to "rose gold" or "pink gold" instead.  *Solid 21, Inc. v. Jomashop Inc.*, No. 19-1179, 2020 WL 9816843, at *1 (E.D.N.Y. Nov. 30, 2020).  Aire states that Ulysse Nardin and Hublot have also stopped using "Red Gold," although Breitling challenges his personal knowledge on this point.  ECF No. 127-13 ¶ 32–33; ECF No 123-2 ¶ 9.

### B.  Solid 21's Use of Red Gold

On Solid 21's website, "Red Gold" appears in the following ways:

- "Heart in Red Gold and Full Pave Round Brilliant Diamonds on 16" Red Gold Chain;"
- "Heart in Red Gold with Solitaire Diamond on 16" chain;"
- "Presented in Red Gold on 16" chain;"
- "Dog Tags White Gold with Blue Sapphires and Red Gold with Rubies;"
- "Plain Marquise Earrings in Red Gold;" and
- "Platinum and Red Gold Stackable Diamond Bangles."[4]

ECF No. 123-1 ¶ 33; *see* ECF No. 107-38.  Aire testified that "all jewelry pieces and watches under the Chris Aire Signature Red Gold Collection contain a part that is made of amber hue gold."  ECF No. 123-1 ¶ 23.  Further, Solid 21's internal documents list "red gold" as a type of "metal type" and "metals to be made."[5]  ECF No. 123-1 ¶ 21; *see* ECF No. 107-32.  Breitling alleges that in Solid 21's invoices, the use of "Red Gold" in front of various jewelry indicated the products' material.[6]  ECF No. 123-1 ¶ 20; *see* ECF No. 109-4.  In a previous trademark infringement lawsuit, Solid 21 described "Red Gold" as a "metal alloy gold derivative with an amber hue" in the complaint.  ECF No. 123-1 ¶ 22; *see* ECF No. 107-39 at 11.

### C.  USPTO's Dealings with "Red Gold"

On January 15, 2019, Solid 21 attempted to register "Signature Red Gold" as a trademark for "watches and jewelry."  ECF No. 123-1 ¶ 14; ECF No. 107-20 at 5.  The USPTO issued a "Nonfinal Office Action" in response to the application.  ECF No. 123-1 ¶ 15; ECF No. 107-21.  In the Action, the USPTO states that Solid 21 "must provide a disclaimer of the unregistrable part(s) of the applied-for mark even though the mark as a whole appears to be registrable."  *Id.* at 6.  The USPTO stated that Solid 21 must "disclaim the wording 'red gold' because it is not

---

[4] Solid 21 disputes this statement but offers no explanation or supporting evidence for its dispute.  ECF No. 123-1 ¶ 33.

[5] Solid 21 disputes this statement with additional testimony from Aire but the testimony cited is not in the record.  *See* ECF No. 123-17 at 1–5.

[6] Solid 21 disputes this statement with additional testimony from Aire but the testimony cited is not in the record.  *See* ECF No. 123-17 at 1–5.

inherently distinctive" and "appears to be generic as to the material composition of applicant's goods namely, goods made in significant part of gold including red gold." *Id.* at 7. The USPTO rejected Solid 21's argument "that it has an incontestable registration for RED GOLD … and a disclaimer is not needed." *Id.*

Numerous patents "between 1975 and 2019 refer to 'red gold' as a gold alloy or material." ECF No. 123-1 ¶ 8. The patents are classified in patent classes including metal treatment, electrolysis, jewelry production, stock material or miscellaneous articles, horology (time measuring systems or devices), and specialized metallurgical processes. [7] ECF No. 123-1 ¶ 8; ECF No. 107-18.

### D.  Different Colors of Gold Alloys

Due to the soft nature of gold, "the jewelry industry only uses [it] in its pure (i.e., unalloyed) form for special functions." ECF No. 123-1 ¶ 1. Gold is sometimes combined with other elements, such as copper and silver, to change its physical characteristics.[8] *Id.* The addition of different elements to gold changes the color of the gold alloy, to create "yellow, white, and red gold." [9] *Id.* ¶ 2; ECF No. 107-4 ¶¶ 7–10. According to Breitling's expert, Gary Smith, "red gold is an alloy of gold and copper, which may include small amounts of silver,"

---

[7] Solid 21 disputes the significance of the patents in demonstrating consumers' understanding but does not cite evidence or state that the patents do not contain the term "red gold."

[8] Solid 21 disputes that gold is "'commonly' combined with copper and silver in the United States," but fails to cite any evidence to the contrary. ECF No. 123-1 ¶ 1. Solid 21 also argues that the International Standards Organization ("ISO") published a standard, ISO 8654, describing the different types of gold alloys but the standard was never adopted in the United States. This argument does not rebut the facts asserted by Breitling nor is Breitling discussing the ISO standards as it relates to gold alloys in this statement. Solid 21 cites a report by the National Institute of Standards and Technology of the United States Department of Commerce in support. ECF No. 123-10. The page to which Solid 21 cites does not necessarily support its assertion that the United States has never adopted ISO 8654. The document states only that as of 2012, only 15.5% of the ISO standards were adopted. *Id.* at 34.

[9] Solid 21 disputes this fact as vague but I do not find that it is vague. Solid 21 also makes the same unsupported point about ISO standards (*see* footnote 8, supra), which is not responsive to the statement.

producing a "reddish hue." [10]  ECF No. 123-1 ¶ 3; *see* ECF No. 107-4 ¶¶ 5, 8.  A "higher copper content yield[s] a darker reddish-brown color, and a lower copper content yield[s] a lighter red gold alloy with more of a pink hue, … commonly [] known as 'pink gold' or 'rose gold.'"  ECF No. 123-1 ¶ 3; ECF No. 107-4 ¶¶ 12–14.

To help define different kinds of gold alloys, the International Standards Organization ("ISO") published International Standard 8654 ("ISO 8654") titled "Jewellery – Colours of gold alloys – Definition, range of colours and designation."  ECF No. 127-13 ¶ 34, 36; ECF No. 123-9.  ISO 8654 provides a "numbered scheme" based on color for seven gold alloys including "4N" for pink and "5N" for red. [11]  ECF No. 123-1 ¶ 5.  The standard specifies the chemical composition of silver, gold, and copper required for each gold alloy.  ECF No. 127-13 ¶ 37; ECF No. 123-9 at 15.  While the words "red" and "gold" do not appear next to each other in the ISO 8654 designations, the standard applies to "objects made of gold alloys or coated by gold alloys."  ECF No. 123-9 at 8; *see* ECF No. 127-13 ¶ 17.  Solid 21 alleges that "ISO 8654 was never adopted in the United States."[12]  ECF No. 127-13 ¶ 35.

Aire testified that "for all the products that [Aire] sell[s] that use the term 'red gold,' each of those products has some element in it that is comprised of the 5N alloy."  107-28 at 10; ECF No. 123-1 ¶ 24.  He also testified that the "red gold" for his jewelry is composed of "gold … copper, could be palladium, could be silver, could be nickel."  ECF No. 107-25 at 7; ECF No. 123-1 ¶ 24.

---

[10] Solid 21 states that it owns an incontestable trademark for "RED GOLD," disputing Breitling's characterization of red gold as a mere descriptor for a metal alloy.  However, Solid 21 does not dispute that Smith makes those findings in his report and does not point to any evidence to rebut those findings.

[11] Solid 21 disputes this statement and alleges that the United States has not adopted ISO 8654 but does not provide evidence to contradict that ISO 8654 creates such a scheme.

[12] Solid 21 cites in support the same report from the National Institution of Standards of Technology, which, as noted, does not provide clear support for its assertion that the United States has never adopted ISO 8654.  *See* footnote 8, supra.

### E.  Texts Using "Red Gold"

In the United States, since the 19th century, dictionaries, encyclopedias, and textbooks describe "red gold" as a gold alloy and often detail the percentages of gold and copper needed to create such an alloy. [13]   ECF No. 123-1 ¶¶ 6, 7.  Multiple media publications have also referenced "red gold."  "From 2001 to 2017," *The Wristwatch Annual* "contains over 1,300 references to 'red gold' watch components by fifty-three watchmakers to describe the kind of gold used in their products."[14]  ECF No. 123-1 ¶ 9; *see* ECF No. 107-7 at 133–208.  Other publications, "such as *Rolling Stone Magazine*, *In Touch Magazine*, *Modern Jeweler*, and *ESPN Magazine* … have use[d] 'red gold' to describe alloy, material, metal, or feature of jewelry when referring to [Solid 21's] own products from as early as 2003 to the present." [15]  ECF No. 123-1 ¶ 10; ECF No. 107-44 ¶ 16; ECF No. 107-34.  *Billboard* wrote that "Aire says that among his hottest-selling items are his … Red Gold jewelry."  ECF No. 123-22 at 3; ECF No. 127-13 ¶ 4.

### F.  Expert Evidence

Breitling disclosed Dr. David Neal as a survey expert.  ECF No. 123-1 ¶ 11.  Dr. Neal concludes that "the results of [his] survey clearly and strongly support a conclusion that purchasers and likely purchasers in the United States of jewelry and watches made with precious metals perceive the name RED GOLD to be a generic term, or a common name, used to describe

---

[13] Solid 21 disputes the literature cited because it argues that the texts are largely technical and "do not demonstrate that the relevant consuming public … understood 'red gold' to be an alloy or a color."  ECF No. 123-1 ¶¶ 6,7.  While Solid 21 disputes the importance or weight of the evidence, it does not dispute Breitling's statement as false.  The literature cited by Breitling does discuss and define "red gold."

[14] Solid 21 disputes the importance of the publication to the relevant consuming public but does not provide evidence that the publication does not contain references to "red gold" from other watchmakers.

[15] Solid 21 disputes this statement, citing testimony by Aire that "the error could have spun from some other write-up, … [b]ut we don't - - we don't use Red Gold to refer to anything made by anybody else but us."  ECF No. 123-17 at 4–5.  Solid 21 claims that this statement refers to press articles that use "red gold."  ECF No. 123-1 ¶ 10.  However, it is not clear from the sections of the deposition provided that Aire is in fact referring to press articles when making this statement.  Before the quoted section, Aire is asked about "Aire Traveler" and whether the availability in steel, 18 karat red gold, and platinum referred to the "three materials that this watch is made out of."  ECF No. 123-17 at 4.

a category of products, rather than a brand name for the products of one company." ECF No. 107-16 ¶ 2.2. Out of the 218 respondents in the survey, 67% of them "indicated that RED GOLD is a common name," 17% had no opinion or did not know, and 16.1% "indicated that RED GOLD is a brand name." *Id.* ¶ 2.2.3. Solid 21 argues that Dr. Neal's survey is rebutted by the work of its own expert, discussed below. ECF No. 123-1 ¶ 11.

Mark Keegan is another Breitling expert who "executed a study of 396 current and prospective luxury watch purchasers to measure consumer awareness of red gold as a luxury watch material, consumer recognition of 'red gold' as a brand when it appears in … Breitling marketing communications, and the extent to which, if at all, the term 'red gold' impacts the consumer purchase decision with regard to luxury watches."[16] ECF No. 107-17 at 4; ECF No. 123-1 ¶ 34. Mr. Keegan concluded that "[r]elevant consumers do not identify 'red gold' as a brand when it appears in an advertisement for … Breitling" and "[w]hen discussing luxury watch attributes and materials in their own words, consumers do not use the term red gold as a brand name." ECF No. 107-17 at 4.

Solid 21 disclosed Dr. Eugene Ericksen to rebut Breitling's survey experts.[17] ECF No. 127-13 ¶ 18. Dr. Ericksen concludes that "'red gold' is not a term that is common or familiar to consumers in the jewelry and watch industry." ECF 123-4 ¶ 4.

---

[16] Solid 21 disputes the accuracy of Mr. Keegan's survey.

[17] Dr. Ericksen has prepared expert reports for Solid 21 in two other "Red Gold" lawsuits against Hublot and Ulysse Nardin. ECF No. 123-4 a¶ 2. He provided the report from the Ulysse Nardin lawsuit that "evaluated surveys conducted by Dr. David Neal and Mr. Mark Keegan." *Id.*; ECF No. 123-5. In this case, the deadline for Dr. Ericksen's rebuttal report was February 10, 2021. ECF No. 123-4 ¶ 3; *see* ECF No. 105 at 8 (stating that the deadline to designate trial experts on which the designating party does not bear the burden of proof is February 10, 2021 by party agreement). Because Breitling filed its motion for summary judgment on January 5, 2021, Dr. Ericksen was not able to complete his report in time for Solid 21's opposition to Breitling's motion. ECF No. 123-4 ¶ 3. Since Dr. Neal and Mr. Keegan set forth similar surveys and results as the ones in the previous litigation, Dr. Ericksen anticipates that his conclusions of their surveys will be "substantially the same as those [he] set forth in [his] earlier report." *Id.* ¶ 4. Breitling disputes Dr. Ericksen's methodology.

Dr. Ronald Butters, Solid 21's linguistic expert, "researched dictionaries and authoritative sources and concluded that, in ordinary English, 'Red Gold' does not refer to a type of precious metal in common usage."  ECF No. 127-13 ¶ 17.[18]  According to his findings, while "red gold" has a "specialized assigned meaning in the technical jargon of metallurgists and jewelry experts" as a gold alloy, this does not suggest that this technical jargon is "common knowledge for ordinary speakers," such as consumers of Solid 21 products.  ECF No. 123-3 ¶ 58(B).  Dr. Butters also finds that "red gold" is absent from "authoritative American dictionaries," except for the New Oxford American Dictionary.  *Id.* ¶ 58(D).

### G.  Consumer and Industry Evidence

Solid 21 submits declarations from watch consumers, such as Dr. Michael K. Obeng, Shadrach Okoebor, and Samuel Appiah,[19] who "understand RED GOLD® to be [a] brand associated with Solid 21, and not as an alloy for watches and jewelry."  ECF No. 127-13 ¶ 19; *see* ECF Nos. 127-25, 127-36, 127-37.  Breitling alleges that these consumers have a relationship with Aire or have themselves previously used "red gold" to describe the material of a watch.  ECF No. 127-13 ¶ 19.  Aire is a friend and mentor to Dr. Obeng.  *Id.*; *see* ECF No. 127-5 at 7–8.  Dr. Obeng, in a deposition, testified that "people will probably know more about Red Gold [than Aire] because of the fact that a lot of watchmakers are using the term."  *Id.* at 9.  Okoebor is a former Solid 21 employee, ECF No. 123-36 ¶ 6, and has ordered a wedding ring made of "Red Gold," ECF No. 127-6 at 9.  Appiah previously introduced Aire to his employer, Extra TV, to

---

[18] Dr. Butters submitted a declaration instead of a report because the motion for summary judgment was filed before the deadline for his report.  ECF No. 123-3 at 1.

[19] Breitling argues that Solid 21 did not properly disclose Appiah.  ECF No. 127-13 ¶ 19.  I address the disclosure issue in Section III.B.

film a segment, ECF No. 127-4 at 7–8, and testified that "red gold" is a material in a "Chris Aire watch," ECF No. 127-4 at 14.

Solid 21 also submits declarations from people in the watch and jewelry industry, such as Duvall O'Steen,[20] Lucille Belyayev,[21] and Robert Filotei, who view "red gold" as a brand rather than an alloy.  ECF No. 127-13 ¶ 21–22, 24.  Belyayev and Filotei are also consumers of luxury watches.  *Id.* ¶ 23.  Breitling alleges that these witnesses also have a relationship with Aire or have previously used "red gold" to describe the material of a watch.  ECF No. 127-13 ¶ 19.  O'Steen described Aire as a business acquaintance, ECF No.  127-3 at 10, and has previously stated in a Los Angeles Times interview that "[a]lloy metal suppliers will vary the copper, but whether you call it red, pink or rose gold, it's all the same process," *id.* at 13.  Belyayev "bumped into [Aire] … several times."  ECF No. 127-8 at 13.  Filotei considered Aire as a "good friend" and mentor, ECF No. 127-7 at 9–11, and received a "red gold watch" from Aire, *id.* at 14.[22]

## III.   Evidentiary Disputes

Breitling and Solid 21 have multiple disputes over the evidence the Court may consider in this ruling.  I will address each of them in turn.

---

[20] Breitling argues that Solid 21 did not properly disclose O'Steen.  ECF No. 127-13 ¶ 24.  I address the disclosure issue in Section III.B.

[21] Breitling claims that Belyayev did not execute her declaration as required under 28 U.S.C. § 1746.  ECF No. 127-13 ¶ 21.  Belyayev did properly execute her declaration.  ECF No. 123-29 at 4.

[22] Breitling argues that the declarations from Okoebor, Appiah, Filotei, Obeng, and Belyayev should be disregarded under the sham affidavit rule.  ECF No. 127 at 11–12.  "Under the sham affidavit doctrine, a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Fed. Deposit Ins. Co. v. Murex LLC*, 500 F.Supp.3d 76, 94 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).  However, "[i]f a declarant's prior testimony and summary judgment declaration are not in direct contradiction, [then the] mere tensions or inconsistencies go to credibility, not admissibility, and credibility determinations are not proper at summary judgment."  *Id.* at 95.  None of the evidence offered by Breitling is in "direct contradiction" with the witnesses' alleged perception of "Red Gold" as a brand.  Further, the evidence concerning the relationship between Aire and the declarants goes to credibility.  I reject Breitling's sham affidavit argument and will consider Solid 21's submitted declarations in this ruling.

### A.  Judicial Notice

Breitling asks this Court to take judicial notice of USPTO-issued patents containing the term "red gold" (requests 1–11), Solid 21's trademark applications (requests 12–13), the USPTO's Nonfinal Office Action on "Signature Red Gold" (request 14), and Solid 21's complaint filed in a previous lawsuit (request 15).  ECF No. 107-45.  Solid 21 argues that this Court should deny the request except as to Solid 21's previous complaint (request 15).  ECF No. 122 at 1.  Solid 21 disagrees with Breitling on the scope of judicial notice and argues that courts have not used "the contents of judicially noticed records to prove … that a trademark lacks distinctiveness" and that courts should not "accept [the] contents [of the records] as true."  *Id.*

Generally, courts "may properly take judicial notice of official records of the [USPTO]." *Telebrands Corp. v. Del Laboratories, Inc.*, 719 F.Supp.2d 283, 287 n.3 (S.D.N.Y. 2010).  First, Breitling asks for judicial notice of patent applications that use the term "Red Gold" and Solid 21's own trademark application for "Red Gold."  It is well-established that courts may take notice of USPTO records when analyzing trademark claims.  *See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F.Supp.2d 288, 323 (S.D.N.Y. 2012) (conducting a search on the USPTO Trademark Electronic Search System that "reveal[ed] 138 live trademark registrations and applications that include the term 'Northeast'"); *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F.Supp.2d 185, 204 (S.D.N.Y. 2000) (using a trademark search that showed that "Big Star" was registered as a trademark to various other companies in other markets); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) (crediting "a trademark search [that] revealed the extensive use of the words 'street' and 'wise,'" and finding that the extensive use "weakens the strength of Streetwise's mark"); *Am. Lecithin Co. v. Rebmann*, No. 12-929, 2020 WL 4260989, at *9 (S.D.N.Y. July 24, 2020) (taking judicial notice

of the plaintiff's trademark registrations which showed "that the Domain Names [were] URL version of trademarks registered by [p]laintiffs").   Contrary to Solid 21's assertions, considering these records as indicators of distinctiveness does not require the Court to consider the statements in the records as true.

Breitling also asks the Court to take judicial notice of the USPTO's "Nonfinal Office Action," ECF No.107-21, in response to Solid 21's trademark application to register "Signature Red Gold."   Again, these are part of the USPTO records of which a court may take judicial notice.   While the "decisions of the USPTO are given a degree of deference," a court is not bound by "an initial determination and is obligated to render its own decision on the merits." *Lebewohl v. Heart Attack Grill LLC*, 890 F.Supp.2d 278, 292 (S.D.N.Y. 2012).   Further, the "deference due to the USPTO's decision … is limited [where]," as in this case, "it [is] not a final decision of the USPTO …." *Id.*

Therefore, I grant each of Breitling's requests for judicial notice as to items 1–15.

## B.  Disclosure of Experts

Breitling objects to the consideration of declarations and reports from multiple Solid 21 witnesses: Dr. Ronald Butters, Duvall O'Steen, and Samuel Appiah.   ECF No. 127-13 ¶¶ 17, 19, 24.   According to Breitling, Solid 21 failed to serve its Rule 26(a)(2) expert disclosures and reports by the December 18, 2020 deadline, and failed to disclose Appiah (a lay witness).   ECF No. 127-1 ¶ 8; ECF No. 127-13 ¶ 19.   Solid 21 emailed Breitling on January 2, 2021 with a list of the names of its experts and then, on January 5, 2021, served its "formal expert disclosures pursuant to FRCP 26(a)(2)." *Id.*   Breitling alleges that these disclosures failed to provide all the information required by Rule 26(a)(B)(i)–(iii), and that Appiah was not disclosed.   Thus,

Breitling asserts that the evidence provided by these witnesses should be excluded.  ECF No. 127-13 ¶¶ 17, 19, 24.

Under Federal Rule of Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, *unless* the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).  The purpose of the rule is "to prevent the 'sandbagging' of an opposing party with new evidence." *Nosal v. Granite Park LLC*, 269 F.R.D. 284, 289 (S.D.N.Y. 2010).  "Despite the mandatory language of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" *Id.* (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)). In determining whether to impose the sanction of preclusion, "a court should consider '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" *Id.* (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

Solid 21 does not give a reason for its failure to comply with the disclosure deadline, but it appears that the deadline coincided with Solid 21's change of counsel.  *See* ECF Nos. 97–101. The importance of the testimony to Solid 21 is substantial.  Solid 21 relies on Dr. Butters for his linguistic expertise and his conclusion that "Red Gold" is not generic.  *See* ECF No. 127-13 ¶ 17. O'Steen, as a person in the watch and jewelry industry, states that she understands "Red Gold" to be a brand.  *See id.* ¶ 20–21.  Further, Appiah, a watch consumer, states that he also understands "Red Gold" to be a brand.  *See id.* at ¶ 19.  Solid 21 relies on this testimony in its opposition to

Breitling's motion for summary judgment.  *See* ECF No. 123.  As for Breitling, it is difficult to see how it was prejudiced because there were still close to two months of discovery left when it filed its motion for summary judgment.  The expert witness disclosures were eighteen days late, but there was still enough time left in the discovery period for Breitling to obtain supplemental information about the witnesses.  Indeed, the late disclosure became a significant issue only because Breitling chose to file its motion for summary judgment two months before the close of discovery.  Under the circumstances, I decline to exclude the evidence from the witnesses under Rule 37(c)(1).[23]  *See Nosal*, 269 F.R.D. at 289 ("[P]reclusion of a witness' testimony is a harsh sanction, to be imposed with caution.").

## IV.    PROCEDURAL HISTORY

Solid 21 filed suit against Breitling on April 4, 2019, alleging claims of trademark infringement under 15 U.S.C. § 1114, unfair competition under Conn. Gen. Stat. §§ 42-110a, *et. seq.*, trademark dilution under Conn. Gen. Stat. § 35-11i, and false description under the common law and 15 U.S.C. §§ 1114(1), 1125(a), (c).  ECF No. 1 ¶ 1.  On January 5, 2021, Breitling filed a motion of summary judgment on the trademark infringement claim based on its two affirmative defenses: (1) that the term "Red Gold" is generic, or (2) in the alternative, if the mark is valid, that Breitling's use qualifies as fair use.  Breitling also argued that the trademark dilution claim failed as a matter of law.  ECF No. 107.   On April 21, 2021, Solid 21 filed its own motion for summary judgment, arguing that Breitling's genericness argument actually targets descriptiveness and is precluded because "Red Gold" is an incontestable trademark.  ECF No. 147.

---

[23] Solid 21 omitted Appiah from its Amended Initial Disclosures that it submitted on July 28, 2020.  ECF No. 127-12.  Nonetheless, because Appiah is one of three consumer witnesses, I do not find that Breitling is prejudiced by this nondisclosure.  Thus, I decline to exclude Appiah's declaration under Rule 37(c)(1).

## V.     LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted).  In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## VI.    DISCUSSION

### A.  Genericness

To prove trademark infringement under the Lanham Act, a plaintiff must demonstrate that "(1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (international quotations and alterations omitted).  The court must first "determine whether the plaintiff has a protected mark." *K-5 Arms Exch., Inc. v. Arms Exch. of Conn., LLC*, No. 10-1831, 2011 WL 13234050, at *2 (D. Conn. May 26, 2011).  "Marks are

classified, in ascending order of strength, as (1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary or fanciful." *Stars Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384–85 (2d Cir. 2005) (internal quotations and citation omitted). "Generic marks are … words identifying the relevant category of goods or services … [and] are not at all distinctive[,] [] thus are not protectable under any circumstances." *Id.* at 385. "Descriptive marks are … words identifying qualities of the product … [and] are not inherently distinctive, but are protectable provided they have acquired secondary meaning." *Id.* "Suggestive marks are [inherently distinctive]" and though "not directly descriptive, … do suggest a quality or qualities of the product through the use of imagination, thought and perception." *Id.* (internal quotations and citations omitted). "Arbitrary or fanciful marks are [also inherently distinctive and] … do not communicate any information about the product either directly or by suggestion." *Id.*

"Once a plaintiff shows that a trademark has a valid registration, the burden of production … shifts to Defendant to proffer evidence that the mark is not valid, *i.e.,* that it is generic." *Tiffany & Co. v. Costco Wholesale Corp.*, 994 F.Supp.2d 474, 480 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). "[M]arks that have been registered with the USPTO are afforded a presumption of validity." *Am. Ort, Inc. v. Israel*, No. 07-2332, 2007 WL 2049733, at *4 (S.D.N.Y. July 17, 2007). Further, "[a] registered mark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993); *see also* 15 U.S.C. § 1065. An incontestable mark is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). However, "[e]ven a statutorily incontestable mark

18

can … be rendered invalid and cancelled if it has come to be 'the generic name for the goods or services, or a portion thereof, for which it is registered.'"  *Tiffany & Co.*, 994 F.Supp.2d at 480 (quoting 15 U.S.C. § 1064(3)).  Generic marks "are not at all distinctive and thus not protectable under any circumstances."  *Star Indus., Inc.*, 412 F.3d at 385.

A generic term describes the "nature or class" of a product, rather than indicating its "origin."  *Feathercombs Inc. v. Solo Prods. Corp.*, 306 F.2d 251, 256 (2d Cir. 1962).  "When considering whether a mark is generic, the key determination to be made is the primary significance of the registered mark to the relevant public."  *Tiffany & Co.*, 994 F.Supp.2d at 480. Thus, whether a term is generic "depends on whether consumers in fact perceive that term as the name of a class or, instead, as a term capable of distinguishing among members of the class." *U.S. Pat. & Trademark Off. v. Booking.com B.V.*, 140 S.Ct. 2298, 2307 (2020).  Genericness is a "fact-specific" analysis, *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F.Supp.2d 328, 330 (E.D.N.Y. 2009), that requires courts to consider evidence including "(1) dictionary definitions; (2) generic use of the term by competitors and other persons in the trade; (3) plaintiff's own generic use; (4) generic use in the media; and (5) consumer surveys," *Pilates, Inc. v. Current Concepts, Inc.*, 120 F.Supp.2d 286, 297 (S.D.N.Y. 2000); *see also, Booking.com B.V.*, 140 S.Ct. at 2307 n.6; *In re Reed Elsevier Prop. Inc.,* 482 F.3d 1376, 1378 (Fed. Cir. 2007) (stating that a court may also examine "purchaser testimony, consumer surveys, dictionary definitions, trade journals, newspapers, and other publications").  Courts may also consider whether there are any alternative terms to describe the product because the lack of a "commonly used alternative [that] effectively communicates the same functional information" suggests that the term at issue is generic.  *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 145 (2d Cir. 1997) (quoting *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 306 (3d Cir. 1986)).

Breitling argues that the undisputed facts show that "red gold" is generic. (ECF No. 107-1 at 19). In support, Breitling presents evidence from encyclopedias, dictionaries, and textbooks describing "red gold" as a metal alloy. ECF No. 123-1 ¶ 7. Breitling also offers evidence of Solid 21's using "Red Gold" to describe its jewelry in invoices and internal documents, and on its website. ECF Nos. 109-4, 107-32, 107-38. Breitling also points to the USPTO's Nonfinal Office Action indicating that Solid 21 cannot trademark "Signature Red Gold" unless it includes the following disclaimer: "No claim is made to the exclusive right to use 'RED GOLD' apart from the mark as shown." ECF No. 107-21 at 8. Breitling also presents evidence of patent applications, ECF No. 123-1 ¶ 8, other watchmakers' usage of "red gold" in *The Wristwatch Annual*, ECF No. 123-1 ¶ 9, and the appearance of the term in other media publications, such as *Rolling Stone*, as a description of the jewelry's features, ECF No. 123-1 ¶ 10. Finally, Breitling offers survey evidence from two experts indicating that most consumers view "red gold" as a generic term describing a metal alloy and do not associate it with a brand. ECF No. 123-1 ¶¶ 11, 34.

Solid 21 disputes the methodology of Breitling's experts and offers its own rebuttal expert, who concludes that "Red Gold" is not a generic term for consumers in the watch and jewelry market. ECF No. 123-4 ¶ 4. Solid 21 also disputes the relevance to the issue of consumer perception of the "technical texts" on which it says Breitling relies, ECF No. 123-1 ¶ 7, and provides its own evidence that "red gold" is not found in any "authoritative American dictionaries" except for the New Oxford American Dictionary, ECF No. 123-3 ¶ 58(D). Solid 21 also provides declarations from consumers and those in the watch and jewelry industry who understand "Red Gold" to be a brand rather than a generic term. ECF No. 127-13 ¶ 19, 21–22, 24. Solid 21 argues that "rose gold" is an alternative term for "Red Gold," which, if true, would

weigh against a finding of genericness, ECF No. 123 at 32–33; Breitling argues that "rose gold"

denotes a different hue with lower copper content than "red gold," and cites the different ISO

classifications for these alloys as evidence, ECF No. 127 at 10–11.  Other jewelry retailers,

Ulysse Nardin, Jomashop, and Hublot, stopped using "Red Gold" and switched to "rose gold."

ECF No. 123 at 32–33.

      All this evidence makes clear that a trial is necessary to resolve the issue of genericness.

Breitling and Solid 21 have submitted conflicting expert evidence as well as conflicting evidence

from media publications, dictionaries, other texts, and consumers of jewelry.  These conflicts

cannot be resolved on a motion for summary judgment.

      In its own motion for summary judgment, ECF No. 147, and in its opposition to

Breitling's motion for summary judgment, ECF No. 123 at 26–28, Solid 21 also argues that

Breitling's genericness challenge fails as a matter of law, because it concerns "descriptiveness"

rather than "genericness."  If anything, Solid 21 contends, "'RED GOLD®' describes a quality,

characteristic, or ingredient of these products, not the genus of products themselves."  ECF No.

123 at 26.  If this were so, Breitling's challenge would fail, because, in the case of an

incontestable mark, like "RED GOLD®," a defendant "may not succeed in a defense that

declares the mark is entitled to no protection because it is *descriptive*."  *Gruner + Jahr*, 991 F.2d

at 1077 (emphasis added).  A "[g]eneric mark[] give[s] the general name of the product" while a

"[d]escriptive mark[] define[s] qualities or characteristics of a product."  *Kendall-Jackson*

*Winery, Ltd. V. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).

      Breitling's focus on the material or ingredients in the jewelry, however, does not

necessarily bar it from challenging the mark as generic.  "The lines of demarcation" between

categories of marks—such as generic and descriptive—"are not always bright," and "a term that

is in one category for a particular product may be in quite a different one for another."

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Here, I

understand Breitling's argument to be that "Red Gold" is describing a "genus" of watches or

jewelry made of a particular metal alloy principally of gold and copper. ECF No. 127 at 8. Even

though Breitling argues that "Red Gold" describes a component of jewelry, this does not

automatically make the term descriptive rather than generic. *See In re Wickerware, Inc.*, 227

U.S.P.Q. 970 (BNA) (T.T.A.B. Nov. 8, 1985) (finding that "'wickerware' is the generic name of

the products made of wicker"); *Genesee Brewing Co.*, 124 F.3d at 145–46 (stating that "although

'Honey Brown' is clearly descriptive of [plaintiff's] product … it still might, of necessity, signify

a generic category (or subcategory) of beer"). Further, as noted above, there is a factual dispute

about whether "rose gold" is a satisfactory alternative descriptor to "red gold," which means

there is also a factual dispute about whether Breitling can use any alternative to describe its

products accurately. *See Genesee Brewing Co.*, 124 F.3d at 146 n.7 (noting that whether the

"LA" mark is merely descriptive of lower alcoholic content for beer or generic depends in part

on a brewer's ability to "indicate the lower alcohol content of his or her beer without using the

mark, 'LA'"). On this record, then, I cannot determine whether "red gold" is a generic or

descriptive term without a trial. I find only that a reasonable juror could find in favor of

Breitling on the genericness defense based on the evidence in the record.

Because the evidence in the record raises a genuine dispute of fact concerning

genericness, and not just "descriptiveness," I deny Breitling's motion for summary judgment

based on genericness and deny Solid 21's motion for summary judgment in its entirety.

**B. Fair Use**

An "owner's rights in a mark extend only to its significance as an identifying source, not to the original descriptive meanings of a mark, and so where another person uses the words constituting that mark in a purely descriptive sense, this use may qualify as permissible fair use." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (internal quotation marks and citation omitted).  Thus, "[e]ven if a party's conduct would otherwise constitute infringement of another's trademark, fair use provides an absolute defense to liability."  *Dessert Beauty, Inc. v. Fox*, 568 F.Supp.2d 416, 423 (S.D.N.Y. 2008).  To establish fair use, "the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  *Kelly-Brown*, 717 F.3d at 308.

First, Breitling argues that it used "Red Gold" other than as a mark because it used the term "diminutively and within a list of other watch specifications" and "as part of a larger phrase."  ECF No. 127 at 14.  Breitling alleges that it did not highlight "Red Gold" but used it alongside the BREITLING mark.  *Id.*  Solid 21 argues that because Breitling has failed to show that "Red Gold" describes a metal alloy, it is using the term as a mark.  ECF No. 123 at 34.  "A defendant uses a term as a mark when it employs it 'as a symbol to attract public attention.'" *Tiffany & Co.*, 971 F.3d at 92 (quoting *Kelly-Brown*, 717 F.3d at 306).  A term is also used as a mark when it is employed to identify and distinguish goods and to indicate their source.  *Id.* (citing 15 U.S.C. § 1127).  A court may look to "whether the challenged material appeared on the product itself, on its packaging, or in any other advertising or promotional materials related to [the] product, and the degree to which defendants were trying to create, through repetition … a[n] association between [themselves] and the [mark]."  *Id.* (international quotation marks and citation omitted).  It is undisputed that in the advertisements produced, Breitling uses "red gold" alongside other descriptions of the material of the watch.  For example, on Breitling's website,

"Red Gold" is used in a line under the watch's name and inserted between two descriptors of the watch material.  For the Navitimer Automatic 35, the line underneath states "18K Red Gold – Mother-Of-Pearl."  *See* ECF No. 107-22.  The term "Red Gold" is capitalized but so is "Mother-Of-Pearl," which also refers to the material making up the watch or its components.  Similarly, for the social media posts, "red gold" is used in a series of hashtags alongside other descriptors of the watch.  *See* ECF No. 123-33.  This evidence does not suggest that the term was used to "attract public attention."

Second, Breitling argues that its use of "Red Gold" is descriptive.  ECF No. 107-1 at 24.  "A use of a mark is descriptive if the words [are] used to describe the ingredients, quality or composition of a product, not the source of the product."  *Dessert Beauty, Inc.*, 568 F.Supp.2d at 425 (internal quotations marks and citation omitted).  In determining whether the use is descriptive, courts may look at the "physical nature of the use [of the mark] in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks."  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 65 (2d Cir. 2000) (quoting Restatement (Third) of Unfair Competition § 28 cmt. c. (1995)).  In addition, courts may consider "whether there are other terms available to describe the pertinent characteristic."  *Id.* (citing Restatement (Third) of Unfair Competition § 28 cmt. c. (1995)).  In the advertisements in the record, Breitling's use of "Red Gold" is, again, small and usually between other descriptors of the watch or the material used.  Breitling also generally does not use "Red Gold" on its own and the advertisements also include its own BREITLING mark.  These factors all indicate that Breitling's use is descriptive.  As noted above, however, Solid 21 raises a genuine dispute of material fact concerning the alternative terms available for "Red Gold."  Solid 21 argues that "rose gold" can be used instead as evidenced by the switching of

24

other watchmakers to "rose gold."  ECF No. 123-37 at 37.  As noted, Breitling counters that "ISO 8654 and other industry publications specify [] 'red gold,' 'pink gold,' and 'rose gold,'" as "distinct alloys with varying and specific amounts of copper."  ECF No. 107-1 at 28.

Finally, Breitling argues "[Solid 21] has no evidence that Breitling used the term 'red gold' to mislead or confuse consumers … or to otherwise capitalize on [Solid 21's] alleged goodwill."  ECF No. 107-1 at 28.   Solid 21 counters that Breitling's use of its own mark alongside "Red Gold" does not necessarily prove good faith and cites cases that support that proposition.  ECF No. 123 at 36; *see Frito-Lay v. Bachman Co.*, 704 F. Supp. 432, 436 (S.D.N.Y. 1989) (finding that the defendant's use of its name alongside the mark at issue did not "necessarily negate the possibility that [the mark] is also being used in a trademark sense, especially since it appears on the package as prominently as the housemark"); *Sands, Taylor & Wood Co. v. Quaker Oats, Inc.*, 978 F.2d 947, 954 (7th Cir. 1992) (rejecting the notion that "a defendant's use of a term in conjunction with its own trademark [is] *per se* a use other than as a trademark" (internal quotations and citation omitted); *Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 840 (4th Cir. 1990) (finding that the "mere inclusion of [corporate] logo on the product is not sufficient to establish the defense of fair use"); *Woodroast Sys., Inc. v. Restaurants Unlimited, Inc.*, 793 F. Supp. 906, 914 (D. Minn. 1992) (concluding that the use of the marks "with the phrase 'wood roasted' … [did] not necessarily preclude denial of [] motion for summary judgment on issue of fair use because all of those marks are prominent elements of the menus").  Lack of good faith is indicated by "the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship."  *Kelly-Brown*, 717 F.3d at 312 (citation omitted).  "Even where there is no direct evidence of intent, 'if there is additional evidence that supports the inference that the defendant sought to confuse

consumers as to the source of the product, … the inference of bad faith may fairly be drawn.'"
*Id.* (quoting *EMI Catalogue P'ship*, 228 F.3d at 66 (internal quotation marks omitted)).  Cases
have previously found good faith when the defendant "prominently stated its own marks in a
way that overshadows the plaintiff's mark … [b]ut a plaintiff may [] show absence of good faith
where a junior user had knowledge or constructive knowledge of the senior user's mark and
chose to adopt a similar mark."  *Kelly-Brown*, 717 F.3d at 312–13 (citation omitted).  "Because
the [good faith] issue goes to defendants' intent, it 'is best left in the hands of the trier of fact.'"
*EMI Catalogue P'ship*, 228 F.3d at 68 (quoting *Sports Auth., Inc. v. Prime Hospitality Corp.*, 89
F.3d 955, 964 (2d Cir. 1996)); *see Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 583 (2d
Cir. 1991) (stating that "issues of good faith are generally ill-suited for disposition on summary
judgment" (alterations and citation omitted)).  Here, although Breitling's advertisements do not
use "Red Gold" in a way that overshadows the BREITLING mark, Solid 21 can show the
absence of good faith if Breitling had "knowledge or constructive knowledge" of Solid 21's use
of "Red Gold" and "chose to adopt a similar mark."  Solid 21 has submitted evidence suggesting
that Breitling began advertising in the same publications as Solid 21 using the "Red Gold" mark.
ECF No. 127-13 ¶ 12.  Although it is a close call, I find that Solid 21 has submitted enough
evidence suggestive of bad faith that summary judgment is inappropriate.

There are disputes of material fact as to fair use.  Thus, I deny the motion for summary
judgment based on the fair use defense.

### C.  Dilution Claim

Because Solid 21 fails to respond to Breitling's argument on the dilution claim, ECF No.
123, I conclude that Solid 21 has abandoned this claim.  *See Jackson v. Federal Exp.*, 766 F.3d
189, 198 (2d Cir. 2014) (stating that "a court may, when appropriate, infer from a party's partial

opposition that relevant claims or defenses that are not defended have been abandoned"). I grant Breitling's motion for summary judgment on the trademark dilution claim.

## VII.    CONCLUSION

For the reasons set forth above, I GRANT IN PART and DENY IN PART Breitling's motion for summary judgment, and DENY Solid 21's motion for summary judgment.

IT IS SO ORDERED.

_____
/s/
Michael P. Shea, U.S.D.J.

Dated:         Hartford, Connecticut
               September 27, 2021