**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SOLID 21, INC.,<br>        Plaintiff,<br><br>v.<br><br>BREITLING U.S.A., INC.; BREITLING SA;<br>AND BREITLING AG;<br>        Defendants. | C.A. NO. 3:19-CV-00514-MPS<br><br><br><br>October 4, 2021 |

<u>**DEFENDANTS AND COUNTER-CLAIMANTS BREITLING U.S.A., INC., AND BREITLING SA'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND/OR FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**</u>

Pursuant to D. Conn. L. Civ. R. 7(c), Defendants and Counterclaimants Breitling U.S.A., Inc., and Breitling SA (a/k/a Breitling AG) (collectively, "Breitling"), by and through counsel, respectfully move this Honorable Court to reconsider its Ruling dated September 27, 2021 (ECF No. 191), as to Breitling's Motion for Summary Judgment (ECF No. 127). In the alternative, Breitling respectfully moves this Court for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In support, Breitling states as follows:

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 5

II.   APPLICABLE LEGAL STANDARD ................................................................ 7

III.  ARGUMENT ....................................................................................................... 7

   A.    This Court Should Reconsider Its Ruling and Hold that No Triable Issue of Material Fact Exists as to the Second Element of Fair Use, "Descriptive Sense" ................................... 7

      1.    The Court erroneously used a single discretionary factor, whether an "alternative term" exists, to raise an issue of triable material fact as to the descriptive sense element. .... 7

      2.    There is no requirement that an alternative term be lacking in order to find fair use. . 9

      3.    Following controlling authority, as a matter of law, Breitling's use was in a "descriptive sense." ...................................................................................................... 11

   B.    This Court Should Reconsider Its Ruling and Hold that No Triable Issue of Material Fact Exists as to the Third Element of Fair Use, Good Faith ................................... 13

      1.    The Court's grounds for its ruling regarding the good faith element. ........................ 13

      2.    There is insufficient evidence of bad faith, as a matter of law. .................................. 13

      3.    Following controlling authority, as a matter of law, Breitling's use was in good faith. 17

IV.  ALTERNATIVE REQUEST FOR CERTIFICATION FOR INTERLOCUTORY APPEAL ........................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 15

*Andy Warhol Enterprises, Inc. v. Time, Inc.*, 700 F. Supp. 760 (S.D.N.Y. 1988) ........................ 10

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267 (2d Cir. 1995) ............................ 12

*Charles of Ritz Group, Ltd. v. Marcon, Ltd.*, 635 F. Supp. 158 (S.D.N.Y. 1986) ........................ 10

*Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416 (S.D.N.Y. 2008), aff'd, 329 F. App'x 333 (2d
    Cir. 2009) .............................................................................................................. 8, 9, 11, 19

*Duplan Corp. v. Slaner*, 591 F.2d 139, 148 n. 11 (2d Cir.1978) .................................................. 20

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56 (2d Cir. 2000)5,
    8, 9, 10, 17, 18

*JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294 (S.D.N.Y. 2010) .......................................... 12

*James v. Otis Elevator Co.*, 854 F.2d 429 (11th Cir. 1988) .......................................................... 15

*Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013) ................................................... 5, 7, 16, 17

*Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350 (S.D.N.Y. 2015), aff'd on other grounds, 659 F.
    App'x 55 (2d Cir. 2016) ...................................................................................... 10, 12, 17, 18

*Klinghoffer v. S.N.C. Achille Lauro Ed AltriGestione Motonave Achille Lauro in Ammistrazione
    Straordinaria*, 921 F.2d 21 (2d Cir. 1990) ......................................................................... 19

*New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992) ............. 9

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010)
    ................................................................................................................................. 16

*Nieves v. New York City Police Dep't*, 716 F. Supp. 2d 299 (S.D.N.Y. 2010) ............................. 7

*Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002) ................................................ 14

*Patou, Inc. v. Jacqueline Cochran, Inc.*, 201 F. Supp. 861 (S.D.N.Y. 1962), aff'd, 312 F.2d 125
    (2d Cir. 1963) ....................................................................................................................... 10

*S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223 (S.D.N.Y. 2000) .................................. 19, 20

*Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19 CIV. 1262 (LGS), 2020 WL 3050970 (S.D.N.Y. June 8, 2020) ........................................................................................................................ 11

*Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373 (2d Cir. 2005) ................................... 14

*Western Pub. Co., Inc. v. Rose Art Industries, Inc.*, 733 F. Supp. 698 (S.D. N.Y. 1990), order aff'd on other grounds, 910 F.2d 57 (2d Cir. 1990) .................................................................. 10

*Western Publishing Co. v. Rose Art Industries, Inc.*, 733 F. Supp. 698 (S.D.N.Y. 1990), aff'd on other grounds, 910 F.2d 57 (2d Cir. 1990) ............................................................................ 10

*Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. 1058 (S.D.N.Y. 1990) ............... 10, 11

**Statutes**

28 U.S.C. § 1292 ........................................................................................................................ 18

**Rules**

Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 5(c)(4) ............................................. 14

D. Conn. L. Civ. R. 7 ................................................................................................................... 7

**Treatises**

1 McCarthy on Trademarks & Unfair Competition § 4:17 (5th ed.) ............................................. 9

16 Charles Alan Wright, *et al.*, Federal Practice & Procedure § 3929 (3d ed. 2017) .................. 19

## I.        INTRODUCTION

This Court denied Breitling's motion for summary judgment ("MSJ") as it relates to the genericness inquiry, and with regard to the fair use defense.  It is the latter which is the focus of the present motion.

The Ruling evaluated whether a triable issue of material fact existed as to the three elements of fair use: "that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  ECF 191 at 23, quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).  On the first element, the Court correctly concluded that the "evidence does not suggest that the term was used to 'attract public attention,'" and thus, Breitling's use of "red gold" was other than as a mark.  ECF 191 at 24.

As to the "descriptive sense" element of fair use, the Ruling examined various factors – such as the physical nature of use in terms of size and location on Breitling's advertisements in comparison with the appearance of other descriptive matter or Breitling's own mark – and concluded that "these factors all indicate that Breitling's use is descriptive."  ECF 191 at 24.  Nonetheless, the Court held that an issue of material fact existed as to the descriptive sense element, solely based on Solid 21's argument that an alternative term, "rose gold," can be used instead of "red gold."  *Id*.  This is a misapplication of law.  The case relied on by the Court, *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, did not require that the challenged term be the only one available – which is the reading advanced by the Ruling.  228 F.3d 56, 65 (2d Cir. 2000).  Rather, *Catalogue P'ship* held that where a term is the only one available, its use is "usually" fair use.  *Id*.  Indeed, if the rule in the Second Circuit was that no fair use can ever occur if there is an alternative term available, then there could never be a finding of descriptive fair use, given the plethora of synonyms available in the English language.  That the application of the

alternative term factor is flawed is evidenced by the plethora of cases in this Circuit that have granted summary judgment to a defendant based on descriptive fair use, even where there were alternative terms or synonyms for the asserted mark.[1]

The analysis of the good faith element also misapplied the law and is based on insufficient evidence.  The Court held that a triable issue of material fact on the good faith element existed only by finding that "Solid 21 has submitted evidence suggesting that Breitling began advertising in the same publications as Solid 21."  ECF No. 191 at 26.  However, as detailed below, the only publication for which there is evidence for that proposition is *International Watch*, and as to that, Solid 21's first advertisement was in 2011.  The timing is vital, as Breitling submitted evidence that it had used the term to describe the material of its watches as early as 2010 – necessarily before Solid 21's first advertisement in *International Watch*.  Further, there is no evidence that Breitling and Solid 21 advertised in the same issue of *International Watch*, much less in the same year.  In fact, Breitling's first advertisement in the publication did not occur until years later, in 2013.  These facts, in addition to the plethora of evidence of descriptive uses by various third-parties of the term "red gold" that the Court recognized (ECF No. 191 at 9), demonstrates as a matter of law that Breitling (along with others in the industry) used the term in a non-trademark sense, to specifically refer to gold alloy of watches, and in good faith.

As such, Breitling respectfully requests the Court reconsider its Ruling, to correct clear error and prevent manifest injustice.

/ / /

/ / /

---

[1] As outlined in the its MSJ papers, Breitling does not concede that "rose gold" is a synonym for "red gold" to identify and describe the metal alloy consisting of the specified parts of gold and copper under metallurgical and industry standards.  ECF No. 107-1 at 28-29.

## II.     APPLICABLE LEGAL STANDARD

A party seeking reconsideration of a court's order must timely file a motion accompanied by "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c). "A motion for reconsideration is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" [cite omitted] A motion for reconsideration may also be granted to "'correct a clear error or prevent manifest injustice.'" *Nieves v. New York City Police Dep't*, 716 F. Supp. 2d 299, 303 (S.D.N.Y. 2010).

Breitling is not advancing new facts, issues or arguments.  Breitling instead asserts that this motion must be granted for the reason that the Court overlooked the matters argued below, which might reasonably be expected to alter the conclusion reached by the Court regarding Breitling's fair use defense, and to correct clear error and prevent manifest injustice.

## III.     ARGUMENT

To establish the affirmative defense of descriptive fair use, a defendants must show "that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly-Brown*, 717 F.3d at 308.  The Court ruled in Breitling's favor on the first element, but denied summary judgment based on the second and third elements.  ECF No. 191 at 23-26.  As shown below, the denial was based on the misapplication of controlling authority.

### A.     This Court Should Reconsider Its Ruling and Hold that No Triable Issue of Material Fact Exists as to the Second Element of Fair Use, "Descriptive Sense"

#### 1.     *The Court erroneously used a single discretionary factor, whether an "alternative term" exists, to raise an issue of triable material fact as to the descriptive sense element.*

In its analysis of the second element of fair use, whether the use as "in a descriptive sense,"

the Court looked to several factors.  For instance, the Court examined whether Breitling's use of the words "red gold" was to "describe the ingredients, quality or composition of a product, not the source of the product."  ECF No. 191 at 24, quoting *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 425 (S.D.N.Y. 2008), aff'd, 329 F. App'x 333 (2d Cir. 2009).  The Court also looked to the "physical nature of the use [of the mark] in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks."  ECF No. 191 at 24, quoting *EMI Catalogue P'ship*, 228 F.3d at 65.  The Court examined the evidence on the record, that Breitling's use "is, again, small and usually between other descriptors of the watch or the material used.  Breitling also generally does not use 'Red Gold' on its own and the advertisements also include its own BREITLING mark."  ECF No. 191 at 24.

Thus, the Court held that "[t]hese factors all indicate that Breitling's use is descriptive." *Id*.

However, and despite already holding that the relevant "factors all indicate that Breitling's use is descriptive," the Court applied another, discretionary factor which the Court misconstrued as dispositive.  Citing *EMI Catalogue P'ship*, the Court added that "courts *may* consider 'whether there are other terms available to describe the pertinent characteristic.'"  ECF No. 191 at 24 (emphasis added), quoting *EMI Catalogue P'ship*, 228 F.3d at 65.  As to this "alternative term" factor, the Court held that "Solid 21 raises a genuine dispute of material fact concerning the alternative terms available for 'Red Gold'" since "Solid 21 argues that 'rose gold' can be used instead as evidenced by the switching of other watchmakers to 'rose gold.'"  ECF No. 191 at 24-25.  Based on this factor alone, the Court ruled against Breitling on the "descriptive sense" element of fair use.

/ / /

8

### 2. *There is no requirement that an alternative term be lacking in order to find fair use.*

As the Ruling itself noted, "courts *may* consider 'whether there are other terms available to describe the pertinent characteristic.'"  ECF No. 191 at 24 (emphasis added).  Despite already finding that Breitling's use of "red gold" was in the descriptive sense – *i.e.*, to describe a type of gold alloy – the Court erroneously converted the discretionary factor of the existence of alternative terms into a dispositive element.  In other words, the Court treated the absence of alternative terms as an element of the fair use defense – which it is not.  This was error, because Second Circuit law has never required the absence of alternative terms for a finding of descriptiveness as a matter of law.  At best, the absence of alternative terms is a *discretionary* consideration at the outer limit for the clearest cases of fair use.

The case relied on by the Court, *EMI Catalogue P'ship*, 228 F.3d at 56, stated that "[w]here a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods, the other's use of that term in a descriptive sense is *usually* protected by the fair use doctrine."  *Id.* (emphasis added).  *EMI Catalogue P'ship* in turn quoted *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992), for that proposition, but *New Kids* discussed nominative fair use, not descriptive fair use.  *Id.*  Nominative fair use is "quite different ... and bear[s] little resemblance" to descriptive fair use – the former relates to the use of plaintiff's trademark to identity plaintiff's mark, whereas the latter relates to the use of a descriptive term or device to identify defendant's product or its characteristics.  1 McCarthy on Trademarks & Unfair Competition § 4:17 (5th ed.); *see also Dessert Beauty*, 568 F. Supp. 2d at 425 ("A use of a mark is descriptive if the words were used to describe the ingredients, quality or composition of a product, not the source of the product.").

Further, *EMI Catalogue P'ship* does not require that a descriptive term be the only one available; it merely stated that where a term is the only one available, its use "usually" constitutes fair use. *EMI Catalogue P'ship*, 228 F.3d at 65. The English language is replete with numerous descriptive synonyms. For instance, applying the Ruling's analysis and Solid 21's position, even "red apple" for that fruit would not be descriptive, as other terms like "gala," "Fuji," or "Washington" could be used. Another example would be "red car" for vehicles with bodies painted that color, which under the Ruling's analysis would not be descriptive because other terms like "scarlet," "candy apple red," or "maroon" could be used. That would be the result of this Court's Ruling, which erroneously imposes a requirement that no alternative term exist before a finding of fair use can be made. Barring a fair use defense in every instance where an alternative term is available is nonsensical, and contradicts and would overturn virtually every descriptive fair use decision.[2]

---

[2] Numerous courts in the Second Circuit have upheld fair use. *See*, *e.g.*, *Western Pub. Co., Inc. v. Rose Art Industries, Inc.*, 733 F. Supp. 698 (S.D. N.Y. 1990), order aff'd on other grounds, 910 F.2d 57 (2d Cir. 1990) (descriptive use was not a trademark use even where defendant put a "TM" after use of the composite MAGNETIC GOLDEN SLATE containing the descriptive term GOLDEN); *Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 364 (S.D.N.Y. 2015), aff'd on other grounds, 659 F. App'x 55 (2d Cir. 2016) (dismissing all claims on summary judgment, in part based on fair use defense); *Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. 1058 (S.D.N.Y. 1990) (summary judgment for defendant; fair use of plaintiff's trademark DENTIST's CHOICE for toothbrushes); *Western Publishing Co. v. Rose Art Industries, Inc.*, 733 F. Supp. 698 (S.D.N.Y. 1990), aff'd on other grounds, 910 F.2d 57 (2d Cir. 1990) (no infringement of plaintiff's mark GOLDEN for children's books and toys); *Andy Warhol Enterprises, Inc. v. Time, Inc.*, 700 F. Supp. 760 (S.D.N.Y. 1988) (no infringement of the title mark INTERVIEW for a magazine); *Patou, Inc. v. Jacqueline Cochran, Inc.*, 201 F. Supp. 861 (S.D.N.Y. 1962), aff'd, 312 F.2d 125 (2d Cir. 1963) (held to be a use in a descriptive, primary sense, not in a trademark, secondary sense, and hence not an infringement of the "descriptive" mark JOY for perfume); *Charles of Ritz Group, Ltd. v. Marcon, Ltd.*, 635 F. Supp. 158 (S.D.N.Y. 1986) ("Silken Rose" held not an infringement on cosmetic trademark SILK. "The word "silk," however, appears in ordinary print, [in the junior user's uses] and the word never appears by itself. It is always used as one of several words designating color, *e.g.*, "Watersilk Pink" or "Silken Rose."").

Thus, in another "red gold" case brought by Solid 21 against another watchmaker in the Second Circuit, the court ruled (on a motion to dismiss) that as a matter of law, advertisements using the word "red gold" to identify and describe a type of metal alloy – as Breitling does here – was used in a "descriptive sense." *Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19 CIV. 1262 (LGS), 2020 WL 3050970, at *6 (S.D.N.Y. June 8, 2020) ("The uses in the IWC advertisement are descriptive.  The term appears in the following phrase only: 'Limited edition of 500 watches each in platinum and 18-carat red gold.'  In this context, the only plausible reading of the term is 'red-colored gold,' even if 'red gold' may not be known to consumers as a type of metal alloy."). Of note, the court in *Richemont* was aware of Solid 21's claim that "rose gold" and "pink gold" could be used instead. *Id*., at * 6 ("…alleges that 'Red Gold' is not the only 'reasonably available' description:  … they would have used the 'well-known' terms: 'rose gold' or 'pink gold.'").  Yet, the *Richemont* court still held that use of the term "red gold" in an advertisement to describe the materials of a watch is, as a matter of law, in a descriptive sense.  *Id*.  Because the Second Circuit does not require that no alternative term exist, the Court should reconsider its Ruling and find that as in *Richemont*, Breitling's use was in a descriptive sense.

### 3. *Following controlling authority, as a matter of law, Breitling's use was in a "descriptive sense."*

The relevant question is whether Breitling used the term "red gold" to "describe the ingredient, quality or composition of a product, not the source of the product." *Dessert Beauty*, 568 F. Supp. 2d at 425 (quotation marks omitted).  Moreover, "[m]ost indicative of descriptive use is that 'red gold'] was used with other words to form a phrase describing the products."  *Id*., at 426; *see also Wonder Labs, Inc. v. Proctor & Gamble Co.*, 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990) (holding that defendant's use of phrase was descriptive because it was often followed by explanatory phrases and always displayed in conjunction with other text).  The analysis should

look to the context in which the term appears.  *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 313 (S.D.N.Y. 2010) (descriptive non-trademark use where allegedly infringing use of a name appears "in significantly smaller font" than the defendant's own brand and is "placed in the lower left-hand corner of the ad" and in context of a complete sentence).  Accordingly, "fair use permits others to use a protected mark to describe aspects of their own goods, provided the use is in good faith and not as a mark."  *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995).

By looking at how Breitling used the term "red gold," as controlling authority mandates, the Court already answered the question – of whether Breitling's use was in a descriptive sense – in the affirmative.  ECF No. 191 at 24 ("These factors all indicate that Breitling's use is descriptive.").  The analysis should have ended there, as there is no requirement that there be a finding that no alternative term exists.  *See also Kelly-Brown*, 95 F. Supp. 3d at 365, aff'd on other grounds, 659 F. App'x 55 (2d Cir. 2016) (finding fair use, and regarding the descriptive sense element, examining factors such as the historical use of the phrase by others, and "numerous recent examples of the phrase's use in the media,"[3] along with how defendant "uses the phrase descriptively," – but making no mention of whether an alternative term could be used).

/ / /

/ / /

---

[3] In this case, the Ruling even noted – but did not consider in its descriptive sense or good faith analyses – that "red gold" has been used to describe a gold alloy since the 19th century – well before the date of Plaintiff's trademark application and registration; that "[m]ultiple media publications have also referenced 'red gold;'" that between 2001 and 2017, *The Wristwatch Annual* referenced "red gold" watch components 1,300 times; and that multiple other media publications used 'red gold' to describe an alloy material, metal, or feature of jewelry when referring to Solid 21's own products, from as early as 2003 to the present.  ECF No. 191 at 9.

**B.      This Court Should Reconsider Its Ruling and Hold that No Triable Issue of Material Fact Exists as to the Third Element of Fair Use, Good Faith**

*1.      The Court's grounds for its ruling regarding the good faith element.*

As to the third and final element of descriptive fair use – whether the use was in good faith – the Court held that "although Breitling's advertisements do not use 'Red Gold' in a way that overshadows the BREITLING mark, Solid 21 can show the absence of good faith if Breitling had 'knowledge or constructive knowledge' of Solid 21's use of 'Red Gold' and 'chose to adopt a similar mark.'  Solid 21 has submitted evidence suggesting that Breitling began advertising in the same publications as Solid 21 using the 'Red Gold' mark."  ECF No. 191 at 26.  "Although it is a close call, [the Court found] that Solid 21 has submitted enough evidence suggestive of bad faith that summary judgment is inappropriate."  *Id*.

*2.      There is insufficient evidence of bad faith, as a matter of law.*

As noted by the Court, Solid 21 "can show the absence of good faith if Breitling had 'knowledge or constructive knowledge' of Solid 21's use of 'Red Gold' and 'chose to adopt a similar mark.'"  ECF No. 191 at 26.  Plaintiff failed to show that Breitling had actual or constructive knowledge of Plaintiff's assertion of trademark rights in the term "red gold" before Breitling first used the term to identify and describe the red gold metal alloy.  Indeed, the only reason the Court ruled against the good faith element was because it believed "Solid 21 has submitted evidence suggesting that Breitling began advertising in the same publications as Solid 21 using the 'Red Gold' mark."  *Id*.  This is an erroneous application of law and is unsupported by the evidence.

The only magazine that Solid 21 can specifically point to in which both Solid 21 and

Breitling advertised was *International Watch*.[4]   As to *International Watch*, Solid 21's earliest

advertisement was in 2011 (ECF No. 123-6 at 1, ¶ 2; ECF No. 194 at 39, ¶ 81; ECF No. 194 at

50), and Breitling's earliest was in 2013 (ECF No. 107-40 at 5, ¶ 5(p); ECF No. 107-41 at 1, ¶ 2;

ECF No. 107-15 at 113-14; ECF No. 107-15 at 114; ECF No. 123-30 at 2-3).   However, as shown

in its MSJ papers, Breitling used the term "red gold" as a descriptor of the material of Breitling

watches at least as early as *2010* (ECF No. ECF 107-9 at 2-100; ECF No. 107-9 at 100; ECF No.

107-4 at 34) – necessarily *before* Solid 21's advertisement in *International Watch* in 2011.   As

noted in *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, the "Second Circuit

'has never held adoption of a mark with no knowledge of a prior similar mark to be in bad faith,

even in the total absence of a trademark search.'"   *De Beers LV Trademark Ltd. v. DeBeers

Diamond Syndicate, Inc.*, 440 F. Supp. 2d 249, 278 (S.D.N.Y. 2006) (citing *Star Industries, Inc.

v. Bacardi & Co. Ltd.*, 412 F.3d 373, 389 (2d Cir. 2005)).

        Critically, to require the lack of constructive knowledge in order for the fair use doctrine

to apply would eviscerate the defense altogether: fair use necessarily means that the term is not

being used as a trademark, but only in a descriptive sense.   Therefore, a defendant whose use

constitutes "fair use" has no need to conduct a trademark clearance search because the disputed

---

[4] Solid 21 alleges that "Breitling began advertising [and] using the RED GOLD® trademark in
many of the same publications as did Solid 21 as well as in other publications" in the late 2000s.
ECF No. 127-13 ¶ 12.   However, and despite the reference to "many of the same publications,"
the only documented evidence of advertising by both parties was in one magazine, *International
Watch*.   ECF No. 123-6 at 1, ¶ 2; ECF No. 194 at 39, ¶ 81; ECF No. 194 at 50; ECF No. 107-40
at 5, ¶ 5(p); ECF No. 107-41 at 1, ¶ 2; ECF No. 107-15 at 113-14; ECF No. 107-15 at 114; ECF
No. 123-30 at 2-3.   On summary judgment, any document or evidence referred to in an affidavit
or declaration must be part of the record and properly authenticated.   *See* Adv. Comm. Note to
2010 Amendments to Fed. R. Civ. P. 5(c)(4); *Orr v. Bank of America, NT & SA*, 285 F.3d 764,
777 (9th Cir. 2002).   Solid 21 failed to properly introduce or support evidence of the alleged
"many of the same publications" in the summary judgment record.

term is not being used as a trademark.  Because this Court found that Breitling's use was not as a trademark but rather was descriptive of the red gold metal alloy of which the watches were made, constructive knowledge – which Plaintiff has not shown – by virtue of the mere existence of Plaintiff's trademark application and registration is of no moment.  The "total absence of a trademark search" is not probative of bad faith, especially here where there is no evidence that Breitling ever used the term "red gold" as a trademark.  *Star Industries, Inc.*, 412 F.3d at 289.

Even disregarding the fact that Breitling used "red gold" in 2010, before Solid 21 advertised in *International Watch* in 2011, there is no evidence that Solid 21 and Breitling advertised in the same issue of *International Watch*, much less in the same year.  Thus, the evidence of advertising in the same publication (two years apart at that) – which the Court relies on – is not probative, much less "suggestive[,] of bad faith."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (if opposing party presents only circumstantial evidence, the inferences arising therefrom must support the opposing party's case, and summary judgment may be granted if opposing party's evidence "is not significantly probative"); *James v. Otis Elevator Co.*, 854 F.2d 429, 432, fn. 3 (11th Cir. 1988) (summary judgment proper because "the circumstantial evidence was in equipoise":  *i.e.*, inference raised that a defect existed at the time of the last elevator inspection was no more likely than the inference it did not; and there was no other evidence allowing a jury to find one inference more probably true than the other, therefore, this would not satisfy plaintiff's burden of proving this fact at trial by a preponderance of the evidence).

Further, even if there was evidence (there is not[5]) that Breitling knew of Solid 21's trademark before Breitling first used the term "red gold" either in its 2010 catalog (ECF No. ECF

---

[5] Notably, Solid 21 does *not* argue that Breitling had actual knowledge of Solid 21's trademark prior to Solid 21's lawsuit against it.  *See* ECF No. 123 at 33-38.

107-9 at 2-100; ECF No. 107-9 at 100; ECF No. 107-4 at 34)  or when it advertised in *International Watch* in 2013 (ECF No. 107-40 at 5, ¶ 5(p); ECF No. 107-41 at 1, ¶ 2; ECF No. 107-15 at 113-14; ECF No. 107-15 at 114; ECF No. 123-30 at 2-3), being aware of another's trademark is not, without more, evidence of bad faith.  *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 339 (S.D.N.Y. 2010) ("…the mere fact that a defendant was aware of a plaintiff's mark is not necessarily inconsistent with a defendant's good faith.")  In the case relied on by the Court in its bad faith analysis, *Kelly-Brown*, 717 F.3d at 313,[6] there was much more to actually suggest bad faith:

> Kelly–Brown argues that she has pleaded facts sufficient to plausibly suggest that the defendants had knowledge of her mark and chose to go forward with the "Own Your Power" campaign anyway.  Indeed, she alleges that prior to the rollout of Oprah's new Oprah Winfrey Network, to be known as "OWN," the defendants bought the rights to use the acronym "OWN" from a woman who had previously registered it as an acronym for the "Onyx Woman Network." Kelly–Brown argues that this transaction plausibly suggests that the defendants conducted a trademark registration search for the word "Own," and that such a search would have turned up her then-pending service mark in the phrase "Own Your Power."  We agree that these allegations do plausibly suggest that the defendants had knowledge of Kelly–Brown's mark, liked it, and decided to use it as their own.

In our case, there is absolutely no evidence upon which an inference can be drawn that Breitling conducted or should have conducted a trademark registration search for "red gold," and can therefore be charged with knowledge of the mark.  This is because Breitling would not have had any reason to conduct a trademark clearance search in the first place, because, as the Court

---

[6] Though the Court cited *Kelly-Brown* throughout its Ruling, the standard there was for a motion to dismiss, which "accept[s] all factual allegations in the complaint as true."  717 F.3d at 304. Thus, the Second Circuit in that opinion did not look to any actual evidence.  Two years later, the trial court actually did grant summary judgment in favor of the defendant after reviewing the available evidence, and found that the fair use defense applied.  *Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 365 (S.D.N.Y. 2015), aff'd on other grounds, 659 F. App'x 55 (2d Cir. 2016).

noted, Breitling was not using "red gold" as a source identifier but as a way of describing watch materials (ECF No. 191 at 24), and Breitling was not attempting to register the term as a trademark. Breitling's use of the term "red gold" was consistent with published third party uses of the term for its meaning, well before Plaintiff asserted trademark rights in the term.

### 3. Following controlling authority, as a matter of law, Breitling's use was in good faith.

The Ruling asserts that "Because the [good faith] issue goes to defendants' intent, it 'is best left in the hands of the trier of fact.'"  ECF No. 191 at 26, citing *EMI Catalogue P'ship*, 228 F.3d at 68.  That grossly overstates *EMI Catalogue P'ship*'s case-specific reasoning as a general principle of law.  Indeed, in *Kelly-Brown*, 717 F.3d at 295, which the Ruling cites extensively, summary judgment was eventually granted because of the application of the fair use defense, among other reasons.  *Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 365 (S.D.N.Y. 2015), aff'd on other grounds, 659 F. App'x 55 (2d Cir. 2016) ("…even if Defendants' use created a likelihood of consumer confusion, Defendants' non-trademark, descriptive, and good faith use is protected by the fair use defense.  Since the fair use defense applies, Defendants' motion for summary judgment is GRANTED.")

In it its analysis of the good faith element of fair use, the *Kelly-Brown* court held that even though "Defendants are charged with knowing Plaintiffs' registered mark," based on the facts of that case, their use was not in bad faith.  95 F. Supp. 3d at 365.  This was because:

> Plaintiffs provide no evidence indicating Defendants' intent to generate confusion regarding the phrase's origin.  *See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000) (equating bad faith with "the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship").  Nor do Plaintiffs provide any evidence of Defendants' plan to appropriate the phrase and create their own sub-brand.  Instead, Defendants' use of the phrase alongside their own marks, coupled

> with Plaintiffs' registration of a stylized, special mark that in no way resembles Defendants' use, gives rise to a finding of good faith use.

*Id*. Like the plaintiff in *Kelly-Brown*, Solid 21 has no evidence of Breitling's intent to generate confusion, or other evidence of bad faith (as discussed above). And, like the defendant in *Kelly-Brown*, Breitling used the contested term alongside its own marks, and in a purely descriptive sense to describe its own watches. *See also EMI Catalogue*, 228 F.3d at 66 ("display of defendant's own name or trademark in conjunction with the mark it allegedly infringes," indicates good faith). The same result as *Kelly-Brown* should therefore ensue here – that a finding of good faith be made on summary judgment.

Breitling's use of "red gold" is clearly not intended "to trade on the goodwill of the trademark holder by creating confusion as to source or sponsorship." *EMI Catalogue*, 228 F.3d at 66. As already observed by the Court, the term was used to describe one of the materials used in Breitling's watches (ECF No. 191 at 24), thus establishing good faith. Breitling only used "red gold" truthfully in reference to products made with red gold. Breitling never used the term on products not made with red gold alloy. In doing so, Breitling was just following industry custom, as Plaintiff's litigation record asserting the same trademark claims against prominent watch makers shows. There is no evidence or argument that Defendants acted in bad faith, and Breitling therefore respectfully requests the Court reconsider its Ruling.

## IV. ALTERNATIVE REQUEST FOR CERTIFICATION FOR INTERLOCUTORY APPEAL

Alternatively, Breitling seeks certification of the Ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Interlocutory appeal from a non-final order may be taken only after the district court's certification of the order. 28 U.S.C. § 1292(b). Under section 1292(b), the district court's order must certify that the order: (1) "involves a controlling question of law"; (2) "as to

which there is a substantial ground for difference of opinion"; and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id*. Section 1292(b) "is not limited by its language to 'exceptional' cases," but rather is characterized by its flexibility. 16 Charles Alan Wright, *et al.*, Federal Practice & Procedure § 3929 (3d ed. 2017). The September 27, 2021, Ruling easily satisfies all three factors here.

First, the Ruling with regard to fair use decides questions that are "controlling" within the meaning of Section 1292(b). "[T]he resolution of an issue need not necessarily terminate an action to be controlling." *Klinghoffer v. S.N.C. Achille Lauro Ed AltriGestione Motonave Achille Lauro in Ammistrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (internal quotation marks omitted). It is enough that the Court's determination "could significantly affect the conduct of the action." *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000). That is the case here, as a fair use defense is a bar to Plaintiff's action in its entirety. *Dessert Beauty*, 568 F. Supp. 2d at 423 ("fair use provides an absolute defense to liability").

Specifically, the issues of law are:

1) whether the existence of an alternative term precludes application of the fair use defense;

2) whether the mere existence of the plaintiff's trademark registration constitutes constructive knowledge of the plaintiff's mark that bars application of the fair use defense; and

2) whether publication of advertisements using the same mark in the same magazine, but years apart, constitutes *per se* evidence of bad faith to negate the application of fair use.

Second, there "is a substantial ground for difference of opinion" on the issues above.

Breitling has asserted throughout this motion its reasoned position on these issues.  To the extent that the Court does not agree with Breitling's analysis of the law as applied to these issues, there would necessarily be a substantial ground for the Court's difference in opinion.

Finally, an interlocutory appeal would substantially advance the litigation.  "Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected."  *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) (citing *Duplan Corp. v. Slaner*, 591 F.2d 139, 148 n. 11 (2d Cir.1978)). The third factor is therefore satisfied for the same reasons as the first.  In addition, immediate appeal serves the interests of judicial economy, because resolving the fair use defense in Breitling's favor would terminate this case outright and there would be no need for further litigation.

## IV.    CONCLUSION

Based on the foregoing, Breitling respectfully requests that the Court grant the present motion, and reconsider its Ruling in light of the above.

Dated: October 4, 2021

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By:    */s/ Thomas C. Blatchley*
      Thomas C. Blatchley (ct25892)
      Craig J. Mariam (*pro hac vice*)
      Hazel Mae B. Pangan (*pro hac vice*)
      Raymond J. Muro (*pro hac vice*)
      Gordon Rees Scully Mansukhani, LLP
      95 Glastonbury Blvd., Ste. 206
      Glastonbury, CT 06033
      Phone:    (860) 494-7525
      Fax:        (860) 560-0185
      Email:    tblatchley@grsm.com
      Attorneys for Defendants and
      Counterclaimants Breitling U.S.A., Inc.;
      Breitling SA (a/k/a Breitling AG)

## CERTIFICATION OF SERVICE

I hereby certify that on October 4, 2021, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.

BY  */s/ Thomas C. Blatchley*
       Thomas C. Blatchley (ct25892)
       Craig J. Mariam (*pro hac vice*)
       Hazel Mae B. Pangan (*pro hac vice*)
       Raymond J. Muro (*pro hac vice*)
       Attorneys for Defendants and
       Counterclaimants Breitling U.S.A., Inc.;
       Breitling SA (a/k/a Breitling AG)