UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOLID 21, INC.,<br><br>　　　*Plaintiff*,<br>　　　v.<br><br>BREITLING U.S.A., INC.; BREITLING SA; AND BREITLING AG,<br><br>　　　*Defendants*. | No. 3:19-cv-00514 (MPS) |

**RULING ON MOTION FOR RECONSIDERATION**

Plaintiff Solid 21, Inc. ("Solid 21") sued Defendants Breitling U.S.A., Breitling S.A., and Breitling A.G. ("Breitling"), alleging trademark infringement under 15 U.S.C.§ 1114, unfair competition under Conn. Gen. Stat. §§ 42-110a, *et. seq.*, trademark dilution under Conn. Gen. Stat. § 35-11i, and false description under common law and 15 U.S.C. §§ 1114(1), 1125(a), (c). I denied in part Breitling's motion for summary judgment, ECF No. 191, and Breitling now seeks reconsideration of the portion of my ruling denying summary judgment as to its fair use defense, ECF No. 195-1 at 5–6. In the alternative, Breitling requests that the Court certify the ruling for interlocutory appeal. Because I agree with Breitling that I overlooked portions of the record and misapprehended applicable law in finding triable issues of fact as to fair use, I GRANT Breitling's motion for reconsideration, VACATE the portion of my earlier ruling denying the motion as to the fair use defense, specifically Section IV.B, ECF No. 191 at 22–26, GRANT summary judgment to Breitling on the trademark infringement claim based on its fair use defense, and DENY as moot the request for an interlocutory appeal.

**I.　　LEGAL STANDARD**

1

The standard on a motion for reconsideration is "strict," and the motion may be granted only if "the moving party can point to controlling decisions or data that the court overlooked," *Lewis v. Guardian Loan Co.*, No. 3:19-CV-704 (CSH), 2019 WL 7882488, at *1 (D. Conn. Oct. 28, 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)), i.e., data or controlling decisions that would "reasonably be expected to alter the conclusion reached by the court." *Id.* The Second Circuit has further indicated that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## II.   DISCUSSION

I incorporate by reference and assume familiarity with my ruling on the motions for summary judgment. ECF No. 191; *see Solid 21, Inc. v. Breitling U.S.A., Inc.*, No. 19-cv-514, 2021 WL 4430755 (D. Conn. Sept. 27, 2021). The discussion of fair use appears in Part VI.B of that ruling. *See Solid 21*, 2021 WL 4430755 *11–12.

Breitling argues that I erred in finding genuine disputes of material fact as to the "use in a descriptive sense" and good faith elements of its fair use defense. *See id.* For the descriptive use element, Breitling argues that I "erroneously used a single discretionary factor, whether an 'alternative term' exists, to raise an issue of triable material fact." *Id.* For the good faith

element, Breitling argues that I misconstrued evidence in the record and misapplied law regarding the defendant's knowledge of the plaintiff's trademark. *Id.* at 13–14.

The legal principles governing the fair use defense to trademark infringement are set forth in the summary judgment ruling, and so here I identify only the elements of the defense for context. To establish fair use, "the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). In the summary judgment ruling, I found in favor of Breitling on the first element, agreeing with it that the undisputed evidence in the record showed that it had used "red gold" other than as a mark. *Solid 21*, 2021 WL 4430755 *11. I concluded, however that there were genuine disputes of material facts as to the second and third elements.

### A. Use in A Descriptive Sense

In the summary judgment ruling, I found that Breitling's use of the phrase "red gold" in advertisements—specifically, the small size of the phrase, its placement between other descriptors of the watch or descriptors of the watch material, and Breitling's inclusion of its own mark in the same advertisements—"all indicated that Breitling's use is descriptive." *Id.* I then stated that there was a genuine dispute of material fact as to whether Breitling could have used an alternative term, such as "rose gold," to describe its products. *Id.* at 24–25. Breitling argues that under Second Circuit law, "the absence of alternative terms is a *discretionary* consideration," and that "Second Circuit law has never required the absence of alternative terms for a finding of descriptiveness as a matter of law." ECF No. 195-1 at 9 (emphasis in original). Although I do not agree with Breitling's characterization that consideration of alternative terms is "discretionary" in the sense that I may decline to take account of such terms when they exist, I do agree that, at least in the circumstances of this case, I erred in treating the potential

availability of alternative terms as dispositive of whether Breitling had satisfied the second element of its fair use defense.

In analyzing whether a use is descriptive, the Second Circuit has "looked at whether the mark used describes certain aspects of the alleged infringer's own goods, … whether the mark as used describes an action the alleged infringer hopes consumers will make of its product[,]" and "the physical nature of the use in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64–65 (2d Cir. 2000) (internal quotation marks and citations omitted). In addition, "the scope of the fair use should be related to the degree to which the descriptive meaning is relevant to the goods with which it is associated in the alleged infringement, and whether there are other terms available to describe the pertinent characteristic." *Id.* at 65. As the availability of "other terms," the Second Circuit in *EMI* went on to state as follows: "Where a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods, the other's use of that term in a descriptive sense is usually protected by the fair use doctrine." *Id.* This language does not suggest that in a case where the term is *not* "the only reasonably available means of describing a characteristic of another's goods," the failure to use an alternative term, by itself, prevents the defendant from satisfying the "use in a descriptive sense" element of the fair use defense. The above-quoted analytical framework from *EMI* is phrased in holistic terms ("we have looked at" and "related to the degree to which") and does not suggest that a single factor is dispositive.

Further, most cases within the Second Circuit that address the availability of alternative terms in the context of a discussion of the descriptive use element of the fair use defense do not treat that factor as dispositive. Instead, most find either (1) descriptive use when there is no

4

alternative term *and* other evidence supports descriptive use, or (2) a genuine dispute of material fact when there is an alternative term *and* other evidence that supports non-descriptive use.

In *Dessert Beauty, Inc. v. Fox*, 568 F.Supp.2d 416, 419 (S.D.N.Y. 2008), the plaintiff, which sought a declaratory judgment that its use of the phrase, "love potion," on perfume did not violate the defendant's registered trademark "LOVE POTION" for perfumed essential oils, won summary judgment based on fair use. There, the court relied on multiple factors to find that the plaintiff's use of "love potion" was descriptive, including that (1) the words were descriptive, (2) the phrase was a common term evidenced by dictionary entries and the eighty cease and desist letters sent by the defendant, (3) "there [was] no other reasonably available word to describe the meaning captured by the term 'love potion,'" and (4) the physical appearance of the term supported descriptive use. *Id.* at 425–26.

Similarly, in *JA Apparel Corp. v. Abboud*, 682 F.Supp.2d 294, 300 (S.D.N.Y. 2010), where the designer, Joseph Abboud, had sold certain rights in the use of his name, the court found that the defendant's use of the name in ads containing the phrase "JAZ IS A NEW LUXURY COLLECTION CREATED BY THE AWARD-WINNING DESIGNER JOSEPH ABBOUD," was descriptive because the name described the designer of the clothing line, appeared as part of a sentence that was in smaller font than the defendant's trademark, and was the "only reasonably available means" to inform consumers of the identity of the designer. *Id.* at 313.

In *Something Old, Something New, Inc. v. QVC, Inc.*, No. 98-CV-7450 (SAS), 1999 WL 1125063, at *2 (S.D.N.Y. Dec. 8, 1999), plaintiff alleged that defendants infringed its trademarks for "MIZPAH" and "DEAREST" for jewelry by selling jewelry incorporating acrostics or inscribed with these terms. *Id.* at *3. To determine whether the use was descriptive, the court

examined the physical placement of the terms on the defendants' products and also noted that the terms "describe[d] some element of the jewelry they [were] naming" and that "the lexicon available to describe the jewelry in question [was] limited; to expect defendants to use unwieldy or long terms would be contrary to the purpose of the fair use defense." *Id.* at *6–7.  The court observed that the defendants did not "place any special emphasis on the allegedly infringing terms," and concluded that the defendants' uses of the terms were descriptive. *Id.; but see id.* at *8 (finding triable issue as to good faith where there was question of fact about whether alternative terms were "equally useful or appropriate" but also noting that "defendants did not conduct a trademark search or consult with counsel prior to using the terms").

Also instructive is another case in which Solid 21 sued for alleged infringement of the same "RED GOLD" trademark at issue in this case. *Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19-CV1262 (LGS), 2020 WL 3050970, at *1 (S.D.N.Y. June 8, 2020).  There, on a motion to dismiss and in the face of Solid 21's arguments about alternative terms such as "rose gold" and "pink gold," the court sustained a fair use defense as to an advertisement that featured the phrase "Limited edition of 500 watches each in platinum and 18-carat red gold."  The court stated that "the only plausible reading of the term [was] 'red-colored gold,' even if 'red gold' may not be known to consumers as a type of metal alloy." *Id.* at *6.  As to three other advertisements at issue, however, the Court refused to dismiss based on fair use, reasoning that "it [was] not evident [in those three ads] that all uses of 'Red Gold' are descriptive," because the term appeared in the product headings, not just (as in the first ad) the product descriptions, and because the court accepted as true Solid 21's allegations about consumer perceptions of the term and the reasonable availability of "rose gold" and "pink gold." *Id.*

Although all of these cases mention the existence or non-existence of alternative terms, none suggests that that this factor was essential to the court's finding regarding the descriptive use element.

In *Kensington Pub. Corp. v. Gutierrez*, No. 05-CV-10529 (LTS) (AJP), 2009 WL 4277080 (S.D.N.Y. Nov. 10, 2009), however, the court arguably relied solely only on the existence of alternative terms in finding a genuine dispute of material fact about descriptive use, although the analysis was so brief that it is difficult to be sure. In *Kensington*, where the plaintiff alleged that the defendants' use of the term "Bad Boys" in book titles constituted trademark infringement, the court denied summary judgment on fair use because "a genuine issue of material fact exist[ed] as to whether Defendants acted in good faith," and "the record, construed in the light most favorable to Plaintiff, does not compel the conclusion that use of the term 'Bad Boys' is the only reasonably available means of describing a characteristic of Defendants' work." *Id.* at *8. The entire analysis of fair use, however, consists of two short paragraphs, neither of which sets forth or discusses separately the elements of the defense. *Id.* at *8. This case thus offers little guidance here.[1]

---

[1] Solid 21 cites *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos*, 228 F.3d 56 (2d Cir. 2000) and *Edible Arrangements, LLC v. Provide Commerce, Inc.*, No. 14-CV-00250 (VLB), 2016 WL 4074121 (D. Conn. July 29, 2016) as cases denying summary judgment where alternative terms were available, but both cases involved ample other evidence of non-descriptive use as well. In *EMI*, the principal factor weighing against descriptive use was the repetition of the word 'swing" in ads for the defendant's golf clubs—as in, "Swing Swing Swing"—and the close resemblance of that pattern to "Sing, Sing, Sing", a Benny Goodman tune to which the plaintiff held the rights. 228 F.3d at 65 ("'Swing' undoubtedly describes both the action of using a golf club and the style of music used in the soundtrack. Had the single word 'Swing' appeared in the commercial, it could not be doubted that defendants' use was descriptive," but "it was error to rule that the alliterative phrase actually used [i.e., "Swing, Swing, Swing"] was necessarily identical to the single descriptive word," because "[w]hile 'swing' is descriptive, 'swing, swing, swing is not necessarily so."). While the court also mentioned that the term "hit it!" was an alternative, that was not the primary basis for its ruling. In *Edible Arrangements*, the court cited the availability of alternative terms as one of two bases for concluding there was a genuine dispute of material fact about the *third* element of fair use – good faith. *Edible Arrangements*, 2016 WL 4074121 at *14. The court relied on other considerations to find a genuine dispute about descriptive use. Specifically, it pointed to consumer perceptions of the word "arrangement" as connoting a creative presentation in finding that its use by the defendant in the phrase "edible fruit arrangements"— when the defendant was simply presenting fruit pieces equally spaced apart—was "descriptively misleading." *Id.* at *14. The court also found the defendant's use of the term "edible" to be redundant of the word "fruit," and concluded that there was a material issue of fact "as to whether [the defendant's] use of the phrase 'edible fruit

7

Apart from the absence of binding or persuasive authority treating the availability of alternative terms as dispositive of the descriptive use element, there is good reason in this case not to treat it as dispositive. In a portion of the record that the parties and I overlooked when considering this issue—and yet one that stares out from the opening pages of the summary judgment ruling—there is evidence that Breitling has used both "red gold" and one of the terms Solid 21 identifies as an alternative— "rose gold" —in a descriptive manner, while at the same time reasonably distinguishing between the two phrases by applying them to watches of different hues. Set forth below are two images reproduced at the outset of the summary judgment ruling and shown side-by-side on the same webpage of Breitling's website:



---

arrangements' relies upon the ordinary meanings of those words to describe a product containing a box of 'deliberately placed' strawberries." *Id.*

*Solid 21*, 2021 WL 4430755 *2 (citing ECF No. 107-22).  Even a casual viewer notices that the colors of the watchbands in these two images are not the same, with the one on the left a darker, "red gold" shade and the one on the right a lighter "pink gold" or "rose gold" hue.  *See, e.g.,* Wikipedia entry for "Rose (color)" ("Rose is the color halfway between red and magenta on the HSV color wheel."); *Everything About the Color Rose Red*, Canva, https://www.canva.com/colors/color-meanings/rose-red/ ("Rose is a shade of red, not a pink.  Because it sits between red and pink on the color wheel, rose looks like a mix of both colors – but it's actually closer to red than it is pink.") (both last visited on December 10, 2021).  When I found in the summary judgment ruling that "there [was] a factual dispute about whether 'rose gold' is a satisfactory descriptor to 'red gold,'" I likely overlooked these images (prominently displayed in the opinion though they were); but in any event, these side-by-side images from the same webpage of Breitling's website make clear that it was using "red gold" to describe a different hue from "rose gold."  Indeed, the juxtaposition of the images reinforces the conclusion that Breitling was using "red gold" in a descriptive sense to reflect the nuance of that particular color offering of its product.

To issue a ruling that denies a fair use finding because Breitling declined to use the same color-connoting phrase—"rose gold," the alternative term proposed by Solid 21—to describe the two differently colored watches pictured above would turn the descriptive use element of the fair use defense on its head and prevent Breitling from distinguishing between two of its own products.  I therefore erred when I determined that there was a genuine dispute of material fact as to the descriptive use element simply because "Solid 21 raises a genuine dispute of material fact concerning the alternative terms available for 'Red Gold,'" *Solid 21*, 2021 WL 4430755 *11; and at least with respect to the two images above, I erred in finding that Solid 21 had raised a

9

genuine dispute of material fact about whether "rose gold" was an adequate substitute for "red gold." There is no triable issue on the descriptive use element. For the reasons set forth above and in the summary judgment ruling, Breitling has established that its use of "Red Gold" was descriptive.

### B. Good Faith

In the summary judgment ruling, I found that although the good faith element presented a "close call" and "although Breitling's advertisements do not use 'Red Gold' in a way that overshadows the Breitling mark," there was a genuine dispute of material fact as to Breitling's good faith because "Solid 21 [had] submitted evidence suggesting that Breitling began advertising in the same publications as Solid 21 using the 'Red Gold' mark," and this suggested that Breitling had "knowledge or constructive knowledge" of Solid 21's mark. *Id.* at *12. Breitling challenges this finding because (1) Solid 21's evidence showed only that the parties both advertised in a single magazine, *International Watch*, and years apart, and (2) Breitling need not prove a lack of knowledge or constructive knowledge. ECF No. 195-1 at 14–15. I agree with Breitling that I overlooked data in the record and that controlling Second Circuit law states that knowledge alone is insufficient for a finding of bad faith.

Breitling correctly points out that my statement that "Solid 21 has submitted evidence suggesting that Breitling began advertising in the same publications as Solid 21 using the 'Red Gold' mark" was erroneous. The evidence submitted by Solid 21 shows only that the parties both advertised in a *single* publication, *International Watch*, and any implication that the advertisements of the parties appeared in the same issue—thereby raising the possibility of consumer confusion—is not supported by the record, because the ads in the record appeared two years apart from each other. ECF No. 127-13 ¶ 12; *see* ECF No. 123-30 (showing a Breitling advertisement in an *International Watch* issue from 2013); ECF No. 126-1 at 38 ¶ 81, 40, 51

(showing a Solid 21 advertisement in *International Watch* issue from 2011). Further, Breitling used the term "red gold" to describe its watches as early as 2010, which preceded Solid 21's first advertisement in *International Watch*. *See* ECF No. 107-9 at 22, 24, 65, 100 (showing a Breitling catalog from 2010 (*see* ECF No. 107-9 at 100) with multiple uses of "red gold"). Neither the statement in my summary judgment ruling, then, nor the evidence in the record supports a finding that Breitling had knowledge or constructive knowledge of Solid 21's mark due to "advertising in the same publications."

In any event, as Breitling points out, knowledge alone is insufficient for a finding of bad faith. In *Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 268 (2d Cir. 1995), the Second Circuit found no obstacle to fair use in the fact that the defendant adopted a tree shape for its air freshener "with knowledge of [the plaintiff's] use of the tree shape and without consulting counsel." *Id.* at 270. "As [the defendant] was fully entitled to use a pine-tree shape descriptively notwithstanding [the plaintiff's] use of a tree shape as a mark, the fact that it did so without consulting counsel has no tendency to show bad faith." *Id*; *see also Something Old, Something New, Inc.*, 1999 WL 1125063, at *7 (finding that the "[k]nowledge of plaintiff's mark is not sufficient to show bad faith, especially where defendant believed the use was descriptive"); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 339 (S.D.N.Y. 2010) (stating that the "mere fact that a defendant was aware of a plaintiff's mark is not necessarily inconsistent with a defendant's good faith").

In ruling on the summary judgment motion, I found no other evidence of bad faith. Because I misconstrued the evidence on which I relied and overlooked controlling Second Circuit law, I conclude that I erred in finding that Solid 21 raised a genuine dispute of material fact as to good faith. It did not, and I now find, after further consideration of the summary

11

judgment record, that Breitling has satisfied its burden of establishing, as a matter of law, this third and final element of its good faith defense.

### III. CONCLUSION

For the reasons set forth above, Breitling's motion for reconsideration (ECF No. 195) is GRANTED, I VACATE the portion of my ruling regarding descriptive use and good faith, ECF No. 191 at 22–26, and I GRANT summary judgment to Breitling on its fair use defense. I DENY as moot the request for an interlocutory appeal.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            December 10, 2021