UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SOLID 21, INC.,

     Plaintiff,

     v.

BREITLING U.S.A., INC.; BREITLING SA;
AND BREITLING AG,

     Defendants.

Civil Action No. 3:19-cv-00514-MPS

**PLAINTIFF SOLID 21, INC.'S MOTION FOR RECONSIDERATION**

**Oral Argument Requested**

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  STANDARD FOR RECONSIDERATION ........................................................................ 2

III.  TIMELINE OF BREITLING'S SUMMARY JUDGMENT MOTION AND
     DISCOVERY .......................................................................................................... 3

IV.  WITH ADDITIONAL EVIDENCE IN MIND, THERE EXIST GENUINE DISPUTES
     OF MATERIAL FACT FOR FAIR USE ............................................................................ 4

     A.  DESCRIPTIVE USE .............................................................................................. 5

     B.  EVIDENCE OF BAD FAITH ................................................................................ 13

     C.  USE OTHER THAN AS A MARK ........................................................................ 15

V.  RECONSIDERATION IS WARRANTED TO PREVENT MANIFEST INJUSTICE ... 16

VI.  ALTERNATIVE RELIEF ............................................................................................... 16

VII.  CONCLUSION ........................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Appel v. Spiridon*,
   No. 3:06-cv-1177 (SRU), 2008 WL 11377645 (D. Conn. Dec. 16, 2008) ..............................2

*D'Amico Dry D.A.C. v. Primera Maritime (Hellas) Ltd.*,
   437 F. Supp. 3d 312 (S.D.N.Y. 2019) ......................................................................................2

*Edible Arrangements, LLC v. Provide Commerce, Inc.*,
   No. 14-CV-00250 (VLB), 2016 WL 4074121 (D. Conn. July 29, 2016) ..................12, 13, 15

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos*,
   228 F.3d 56 (2d Cir. 2000) ......................................................................................................14

*Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*,
   104 F. Supp. 3d 371  (S.D.N.Y. 2015) ....................................................................................14

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d. Cir. 2013) .....................................................................................................4

*Kensington Pub. Corp. v. Gutierrez*,
   No. 05-CV-10529 (LTS) (AJP), 2009 WL 4277080 (S.D.N.Y. Nov. 10, 2009) .....................5

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
   739 F.2d 1415 (9th Cir. 1984) .................................................................................................14

*Solid 21, Inc. v. Richemont N. Am., Inc.,*,
   No. 19-CV1262 (LGS), 2020 WL 3050970 (S.D.N.Y. June 8, 2020) .....................................15

*Solid 21, Inc. v. Breitling U.S.A., Inc.*,
   No. 19-cv-514, 2021 WL 4430755 (D. Conn. Sept. 27, 2021) ..................................................1

*United States Patent and Trademark Office v. Booking.com B. V.*,
   140 S. Ct. 2298  (2020)  ..........................................................................................................13

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) ....................................................................................................2

**Statutes**

15 U.S.C. § 1072 ............................................................................................................................13

**Rules**

L.R 7.1 ....................................................................................................................................*passim*

## I.      INTRODUCTION

Pursuant to Local Civil Rule 7(c), Plaintiff Solid 21, Inc. ("Plaintiff" or "Solid 21") respectfully moves this Court to reconsider its ruling on Defendants Breitling U.S.A., Inc., and Breitling SA's (collectively, "Defendants" or "Breitling") Motion for Reconsideration (Dkt. No. 204-05) (hereinafter "Reconsideration Ruling").  In the alternative, Solid 21 respectfully requests that this Court reconsider its denial due to mootness (Dkt. No. 191) of Solid 21's Motion for an Emergency Extension of Time (Dkt. No. 114).

Procedurally, this is clearly unusual.  But Breitling's summary judgment motion (Dkt. No. 107) has been unusual from the start.  Breitling filed this motion on January 5, 2021, long before most of the discovery had been conducted and documents were produced in this action. But it did come mere days after Solid 21's current counsel made an appearance in this case, and the timing makes clear that Breitling was hoping to sandbag Solid 21's replacement counsel with a dispositive motion before any significant evidence could come to light.  While Solid 21 diligently worked to oppose this ill-timed motion, it also concurrently filed a motion seeking to extend the time to respond until after discovery had closed (Dkt. No. 114).  This Court would eventually rule that triable issues of material fact existed, including on the issue of fair use.  *See generally* Dkt. No. 191; *see also Solid 21, Inc. v. Breitling U.S.A., Inc.*, No. 19-cv-514, 2021 WL 4430755 (D. Conn. Sept. 27, 2021) (hereinafter "Initial Ruling").  It accordingly denied Solid 21's motion for extension of time as moot.  Dkt. No. 191.  The motion is no longer moot; This Court has ruled in Breitling's favor on the fair use issue on an incomplete record.  *See generally* Dkt. No. 204.

Reconsideration is warranted because this Court not only made its decision on Breitling's motion on a nearly nonexistent factual record – but it has been bamboozled by Breitling, which hid highly pertinent information until it was compelled to finally produce its internal

communications *a half year* after submitting its motion.  At the time of Breitling's filing, none of its witnesses were deposed, the parties had not completed exchanging expert reports, and Breitling had barely produced any documents.  As discovery progressed, Solid 21 discovered that Breitling had intentionally withheld large swaths of documents, including the omission of its internal communications.  Solid 21 had no choice but to move to compel such production, and this Court found that Breitling failed to meet its discovery obligations and accordingly compelled production.  Dkt. No. 153.  In June 2021, Breitling finally produced a horde of documents that far exceeded anything it produced prior, six months after it filed its summary judgment motion.

Relevant evidence has come to light in the documents that Breitling produced after its summary judgment motion which completely undermine the Court's factual conclusions in its recent opinion finding fair use and demonstrate Breitling's bad faith.  The Court should reconsider at least as a result of this additional evidence.  This Court should not reward Breitling's gamesmanship and, in the interest of fairness, should make its decision on the full record.

## II.    STANDARD FOR RECONSIDERATION

In order to justify a motion for reconsideration, a movant should point to controlling decisions or data that the court overlooked and that would reasonably be expected to alter the court's decision.  LR 7(c)(1).  The three grounds generally justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Appel v. Spiridon*, No. 3:06-cv-1177 (SRU), 2008 WL 11377645, at *1 (D. Conn. Dec. 16, 2008) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  Whether to grant or deny such a motion "rests within the sound discretion of the district court."  *D'Amico Dry D.A.C. v. Primera Maritime (Hellas) Ltd.*, 437 F. Supp. 3d 312, 314 (S.D.N.Y. 2019).

As discussed further below, ample grounds for reconsideration exist, including new evidence, a need to correct clear error, and prevent manifest injustice.

## III.   TIMELINE OF BREITLING'S SUMMARY JUDGMENT MOTION AND DISCOVERY

In late December 2020, Solid 21 changed counsel in this case.  *See, e.g.*, Dkt. Nos. 97-101.  The scheduling order in place at that time set the close of discovery for March 21, 2021 and the deadline for dispositive motions for April 21, 2021.  Dkt. No. 89.  Inexplicably, Breitling filed its summary judgment motion on January 5, 2021, long before either of these deadlines and even before any of its witnesses had been deposed.[1]  Dkt. No. 107.  While Solid 21's replacement counsel preliminarily responded to this early motion, it also concurrently filed an emergency motion for an extension of time to respond to Breitling's summary judgment motion until after close of discovery, reasoning that briefing summary judgment at that time was premature in light of ongoing discovery and Solid 21's recent change of counsel.  *See generally* Dkt. Nos. 114-15.  This Court would later deny Solid 21's emergency motion as moot in light of its initial summary judgment decision ruling in Solid 21's favor on September 27, 2021.  *See* Dkt. No. 191.

As discovery came to a close, it became clear why Breitling filed its summary judgment motion prematurely: it had impermissibly withheld documents in discovery.  On April 2, 2021, Solid 21 submitted a letter to this Court raising Breitling's discovery deficiencies, including its complete withholding of internal communications such as e-mails.  *See* Ex. 1.[2]  On April 19 and 27, 2021, Magistrate Judge Vatti[3] held conferences with the parties to address these discovery

---

[1] Breitling's witnesses were first deposed in this case on March 9, 2021.

[2] All exhibits cited herein are to those included with the Hecht Declaration filed concurrently.

[3] This Court referred the discovery dispute to Magistrate Judge Vatti. Dkt. No. 136.

deficiencies, among other issues.  *See* Dkt. Nos. 141-42, 151-52.  Magistrate Judge Vatti issued

his ruling on April 28, 2021, where he held that Breitling failed to comply with its discovery

obligations and ordered Breitling to produce documents responsive to Solid 21's discovery

requests by June 11, 2021.  Dkt. No. 153.

      Pursuant to Magistrate Judge Vatti's order, on June 11, 2021, Breitling produced 46,683

documents totaling 518,073 pages.  Hecht Decl., ¶ 1.  Prior to this, Breitling had produced only

3,891 documents totaling 18,569 pages since this case began in 2019.  *Id.*, ¶ 2.  In other words,

97% of Breitling's production came after the Court ordered them to produce relevant documents.

Further, nothing from this late production could have been used by Solid 21 in responding to

Breitling's early summary judgment motion, which was filed six months earlier, in January 2021.

As discussed further below, these new documents are highly pertinent to this Court's

determination on fair use.

## IV.   WITH ADDITIONAL EVIDENCE IN MIND, THERE EXIST GENUINE DISPUTES OF MATERIAL FACT FOR FAIR USE

      In order to avail itself of the fair use defense to infringement, a "defendant must prove

three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3)

in good faith."  *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d. Cir. 2013).  In its initial

summary judgment decision, this Court found in favor of Breitling on one element (use other

than as a mark) and in favor of Solid 21 on two elements (use in a descriptive sense and good

faith).  Initial Ruling at 11-12.  Upon Breitling's motion for reconsideration, this Court reversed

course and found in Breitling's favor on all three elements.  However, this Court did so without

the benefit of a fulsome record, as Breitling's summary judgment motion was filed and briefed

long before the close of discovery.  *See supra* Part III.

### A.     DESCRIPTIVE USE

In its Reconsideration Ruling, this Court expressed hesitancy in using the existence of alternative terms as the only factor in its initial decision that there was a genuine issue of material fact with respect to whether Breitling's use of RED GOLD® was descriptive.  *See* Reconsideration Ruling at 4-5 (noting that most cases within this Circuit have found a genuine dispute of material fact when there exists alternative terms along with other evidence).  While the Court identified at least one decision in this Circuit in which this was arguably the case,[4] this Court need not base a decision on the "descriptive use" element of the fair use defense on this one factor alone.  Additional discovery that post-dates Breitling's summary judgment motion provides even more disputed matters of material fact with respect to the fair use defense.



---

[4] In its Reconsideration Ruling, this Court identified *Kensington Pub. Corp. v. Gutierrez*, No. 05-CV-10529 (LTS) (AJP), 2009 WL 4277080 (S.D.N.Y. Nov. 10, 2009), as such a case, but noted that it found little guidance from it.  Reconsideration Ruling at 7.









Ex. 6.



Breitling's clever designations appear to have mislead the Court.  In this Court's

Reconsideration Ruling, it made a factual finding that Breitling distinguished between these two

7

terms "by applying them to watches of different hues." Reconsideration Ruling at 8. In other words, the Court was under the impression that Breitling used "red gold" to describe a different hue from "rose gold." *Id.* at 9. This is demonstrably false.

First, the color of the bezel and golden parts of the band are not different – they are the exact same color. Breitling's reliance on the silver portions of the band was deceptive. At the very least, the sufficiency of the difference in hues between the watches' gold colors is a disputed question of fact. Moreover, even the words used in the cherry-picked example that Breitling submitted, and that this Court relied upon (Reconsideration Ruling at 8, citing Dkt. No. 107-22), paints a skewed picture. In that proffered example (Dkt. No. 107-22), Breitling presented a Navitimer watch that was described as "rose gold" based on a website capture from October 2020. The reference number, uniquely identifying this product, can be seen as "U17395211A1U1," reproduced below:



U17395211A1U1

## NAVITIMER AUTOMATIC 35

Stainless Steel & 18k Rose Gold - Mother-Of-Pearl
USD 8,800.00  ⓘ

Dkt. No. 107-22.

However, this same product with the same reference number (U17395211A1U1) is described now as "red gold" in a Breitling catalog that it produced in the course of discovery, dated October 2020:



_____

**U17395211A1U1**
**Stainless Steel, 18k Red Gold,**
**and Mother-of-Pearl**

Ex. 7 at B0016612.  This is the **same exact watch**, but now it is labeled as "Red Gold."  Thus, the "Red Gold" version of the watch is exactly the same (with the same model number) as the "rose gold" watch the Court concluded was a different version/color.

In this last example, this same watch with the same reference number (U17395211A1U1) was pulled from Breitling's website today (December 17, 2021) and appears as such:



U17395211A1U1

## NAVITIMER AUTOMATIC 35

Stainless Steel & 18k Red Gold - Mother-O...
USD 9,250   ⓘ

Ex 8.  Now, that same watch is labeled as "Red Gold."[5]

Thus, this Court's finding that Breitling only used "Red Gold" to refer to particular hues while exclusively using "rose gold" to refer to different hues cannot stand, as Breitling has used both terms to describe *the very same product* at different times.

---

[5] In Breitling's submission to the Court (Dkt. No. 107-22), the watch model that the Court viewed in its Reconsideration Ruling was labeled as a "rose gold" watch.  However, that submission contains a still-functional hyperlink to Breitling's website, which Solid 21's counsel verified as of December 17, 2021.  Clicking on the image of the watch with this same reference number (U17395211A1U1) takes a visitor to a website showing that that same watch is now labeled as "red gold."

The upshot of all this is that if Breitling's witnesses are to be believed, "red gold" cannot be used to describe something that is "rose gold." When Breitling has a product that is "rose gold," such as the examples above, labeling them "red gold" cannot be descriptive as they are two different things. It is labeled "red gold" to gain additional attention.

*Edible Arrangements, LLC v. Provide Commerce, Inc.*, No. 14-CV-00250 (VLB), 2016 WL 4074121 (D. Conn. July 29, 2016), a case which this Court analyzed (Reconsideration Ruling at 7 n.1), illustrates this principle precisely. That court found that there was a material issue of fact as to whether the defendant's use of the term "edible fruit arrangements" was descriptive of a box of "deliberately placed" strawberries. *Edible Arrangements*, 2016 WL 4074121, at *14. In so holding, the court based its decision on two factors: 1) the use of the word "edible" in front of fruit may have been unnecessary as it was unlikely that consumers would seek "inedible fruit," and 2) there was a question of fact as to whether the use of the word "arrangement" was appropriately descriptive or descriptively misleading. *Id.*

Here, there is more than enough evidence to lead a reasonable juror to conclude that the use of the term "red gold" in Breitling's "rose gold" products is descriptively misleading. As the evidence shows, Breitling is not using "Red Gold" (or #redgold) to describe products because they are made of something called "red gold." They are using "red gold" to boost products that Breitling actually identifies as "rose gold." And, when it suits them (such as when they were briefing their summary judgment motion), Breitling flip-flops between the two terms on the very same product. Thus, here there is not only the existence of alternative terms – "rose gold" being among them – that would preclude a finding that there is no dispute of material fact with respect to descriptive use. There is also another consideration – whether Breitling's use of "red gold" accurately or misleadingly describes its products. As this Court noted, there is ample precedent

within this Circuit to find a genuine dispute of material fact where there is the existence of alternative terms along with other evidence that supports non-descriptive use.  *See* Reconsideration Ruling at 4-5; *see also Edible Arrangements*, 2016 WL 4074121, at *14 (as this Court noted (Reconsideration Ruling at 7 n.1), the existence of available alternative terms was one of two factors in which the *Edible Arrangements* court based its decision on).

### B.    EVIDENCE OF BAD FAITH

As with descriptive use, the benefit of additional discovery bore additional evidence of bad faith that the Court was not previously aware of.  Breitling had actual or constructive knowledge of Solid 21's RED GOLD® mark; this is not premised merely on the fact that Solid 21 and Breitling both advertised in the *International Watch* publication.  *See* Reconsideration Ruling at 10.  ████████████████████████████████████████████ ████████████████████████████████████  Indeed, the RED GOLD® mark has been a federally registered trademark since 2003 and is on the Principal Register[6] (Dkt. No. 1-1), and a mark's place on the Principal Register constitutes constructive notice of the register's ownership.  15 U.S.C. § 1072.  ██████████████████████████████████ ████████████ █████████████████████████████████████████████████ █████████████████████████████████

Further, as described in the previous section, other terms (such as "rose gold") were available to describe products that Breitling marketed as "Red Gold," yet they continued using

---

[6] The Principal Register is reserved for the most distinctive marks – those that are considered arbitrary, fanciful, or suggestive.  *United States Patent and Trademark Office v. Booking.com B. V.*, 140 S. Ct. 2298, 2302 (2020).

[7] Solid 21's previous lawsuit with Breitling proceeded as far as the Ninth Circuit Court of Appeals.  *Solid 21, Inc. v. Breitling USA, Inc.*, 512 Fed. App'x. 685 (9th Cir. 2013) (reversing the district court's dismissal and remanding the case).

the "Red Gold" label.  A reasonable juror could find that Breitling used "Red Gold" on its products that it itself acknowledged as "rose gold" in order to generate consumer confusion.  *See Edible Arrangements*, 2016 WL 4074121, at *14 (evidence of bad faith where defendant used the asserted mark instead of other terms that would have better described its products); *see also EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos*, 228 F.3d 56 (2d Cir. 2000) (citing *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984)) ("The availability of other descriptive terms and a decision not to use one of those terms is also evidence suggesting bad faith.").  Indeed, a reasonable juror could easily find that "rose gold" was a better descriptor for Breitling's products, as Breitling itself acknowledged that its "red gold" products were really "rose gold."  *See supra* Part IV.A.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

One additional point bears mentioning in that Breitling's use of the hastags "red gold" (or "redgold") on social media posts is still pertinent.  Though the Court did not give it much weight because it was used in a group of hashtags, consumers do not search for a group of hashtags together; rather, hashtags are keywords used to direct consumer traffic to particular items of interest, including trademarked brands like RED GOLD®.  Ex. 9 (O'Steen Expert Report) at 31, 38 (*citing generally* Ex. 10).  A user searching for a particular hashtag on Instagram, for

example, typically looks for one or a few particular keywords and is directed to social media posts that have those hashtags assigned to them (regardless of any other hashtags they may have).  A reasonable juror could easily find that Breitling use of the "#redgold" hashtag (despite identifying their own products as "rose gold") is additional evidence of bad faith in attempting to redirect consumer traffic for those consumers looking for the "Red Gold" keyword.  *See Edible Arrangements*, 2016 WL 4074121, at *14 (dispute of material fact on the good faith issue existed as to whether defendant chose to use the phrase "edible fruit arrangements" in order to misdirect consumer traffic through the use of, among other things, keywords).

With this additional evidence in mind, a reasonable juror could find that Breitling's use of "Red Gold" was not done in good faith.

### C.     USE OTHER THAN AS A MARK

While this Court did not address the fair use element of "use other than as a mark" in its Reconsideration Ruling, it did address it in its Initial Ruling and decided in Breitling's favor. Initial Ruling at 11.  However, at that time this decision was also made in the absence of evidence that has since been turned over by Breitling.  This additional evidence demonstrates that Breitling's use of RED GOLD® was not merely a few isolated incidents.  Breitling systematically and continuously used the mark for more than a decade, even after Solid 21 first sued it in California in 2011.  Ex. 11  (Breitling USA Interrogatory Responses) at 13-14 (Breitling produced at least 2,341 pages of documents showing its infringing use of "Red Gold" over the course of a decade).  Where a few isolated incidents might not constitute use as a mark, continuous and repetitive use is more likely to be such.  *Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19-CV1262 (LGS), 2020 WL 3050970, at *5 (S.D.N.Y. June 8, 2020) (numerous examples of infringing uses lead to an inference that they were "repetitive for the purpose of creating an association with Plaintiff's brand"); *see also* 2 McCarthy on Trademarks and Unfair Competition

§ 11:48.50 (5th ed. 2020) ("Overuse of another's trademark, even in a descriptive sense, may not be a fair use.").

And as discussed in the previous section, the use of the "#redgold" hashtag is more significant than merely placing it in a list of other keywords. See Ex. 10.  Further, Breitling's uses of "Red Gold" on its website evidence use as a mark, considering it consistently capitalizes the first letters of "Red Gold" to indicate its enhanced significance.  *See supra* Part IV.A.

This additional evidence, along with that which the Court considered in its Initial Ruling, creates a triable issue of material fact with respect to the "use other than as a mark" element of the fair use defense.

## V.        RECONSIDERATION IS WARRANTED TO PREVENT MANIFEST INJUSTICE

Aside from new evidence and the need to correct error, reconsideration is warranted in order to prevent manifest injustice.  Breitling filed is summary judgment motion prematurely with full knowledge that Solid 21 had recently changed counsel, that little discovery had occurred, and that it was withholding most of its documents that it only produced upon court compulsion.  *See supra* Part III.  Denying Solid 21 the bulk of its case (trademark infringement) on a sparse record would encourage exactly the type of gamesmanship Breitling performed here and creative perverse incentives for future litigants to sneak in a dispositive motion in the hope that damaging evidence would only come out after it ceased to matter.

## VI.       ALTERNATIVE RELIEF

In the alternative, Solid 21 requests that the Court consider Solid 21's emergency motion to extend the time to respond to Breitling's summary judgment until after the close of discovery (Dkt. Nos. 114-15), which this Court previously denied as moot.  Dkt. No. 191.  Having reversed its initial ruling on the fair use defense on summary judgment, that motion is clearly no longer moot.  As that motion and the foregoing illustrate, Breitling's summary judgment motion was

premature and timed to exploit Solid 21's change of counsel in this case.  *See* Dkt. No. 115 at 2-3.  As Solid 21 discovered after that motion, Breitling had also withheld scores of relevant documents, which it did not produce until compelled to do so and which Breitling ensured were unavailable to Solid 21 in its summary judgment opposition.  *See supra* Part III.  Indeed, as Solid 21 noted in its emergency motion, Breitling's summary judgment motion was "more akin to an early-stage motion to dismiss with judicially noticeable facts."  Dkt. No. 115 at 1.  Breitling's premature motion was clearly timed to deprive Solid 21 of a fair opportunity to respond and ensure that the Court's decision is based on a sparse record.  Solid 21 seeks to level the playing field and respond to a summary judgment motion on the actual full record.

## VII.   CONCLUSION

For the foregoing reasons, Solid 21 moves this Court to reconsider its decision on fair use (Dkt. Nos. 204-05) or, in the alternative, consider Solid 21's emergency motion (Dkt. Nos. 114-15) which the Court previously denied as moot.  A number of factors weigh in favor of reconsideration, including:

1)  the availability of new evidence – indeed, most of discovery, including all but one deposition and most of Breitling's document production, was conducted *after* Breitling's summary judgment motion was briefed;

2)  to correct a clear error, including this Court's finding that Breitling distinguishes between "red gold" and "rose gold" by applying them to watches of different hues (Reconsideration Ruling at 8), which is contradicted by Breitling's flip-flopping between using these terms to *apply to the same watch at different times*; and

3)  to prevent a manifest injustice, namely, rewarding Breitling's sandbagging and denying Solid 21's day in court by deciding a summary judgment motion that was deliberately filed long before most of discovery had been conducted.

With the benefit of a more fulsome record, a reasonable juror can easily find that Breitling's infringement of Solid 21's RED GOLD® mark was not fair use.  Solid 21 respectfully requests oral argument.

Dated: December 17, 2021

 _/s/ David L. Hecht_
David L. Hecht (*pro hac vice*)
Conor McDonough (*pro hac vice*)
Yi Wen Wu (*pro hac vice*)
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
P: (212) 851-6821
dhecht@hechtpartners.com
cmcdonough@hechtpartners.com
wwu@hechtpartners.com

Jeffrey W. Kennedy
Milano & Wanat LLC
471 East Main Street
Branford, CT 06405
P: (203) 315-7000
jkennedy@mwllc.us

*Counsel for Plaintiff Solid 21, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, David L. Hecht, hereby certify that on December 17, 2021, I served a true and correct copy of the foregoing **PLAINTIFF SOLID 21, INC.'S MOTION FOR RECONSIDERATION** to counsel of record via electronic filing.

*/s/ David L. Hecht*
David L. Hecht
