**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

SOLID 21, INC.,                                    :
    Plaintiff,                              :
                                            :
v.                                                  :   C.A. NO. 3:19-CV-00514-MPS
                                            :
BREITLING U.S.A., INC.; BREITLING SA;              :
AND BREITLING AG;                                   :
    Defendants.                             :
                                            :

## <u>DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION</u>

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................... 1

II.    RELEVANT FACTUAL BACKGROUND........................................................ 4

     A.    Plaintiff's Counsel is not "New"........................................................ 4

     B.    Breitling's Motion for Summary Judgment and Plaintiff's Opposition Are Unaffected By Breitling's Supplemental Production ............................................ 6

     C.    The Evidence Plaintiff Proffers in Support of Its Reconsideration Motion was in Its Possession Well in Advance of the Court's Ruling on Summary Judgment........................................................................................ 7

     D.    The History of the Court's Summary Judgment Rulings and Its Reconsideration Order ........................................................................ 8

III.   RECONSIDERATION AUTHORITY AND STANDARDS ........................................... 9

IV.   ARGUMENT ........................................................................................ 10

     A.    Plaintiff Cannot Assert Any Misapplication of or Change in Controlling Law .............................................................................................. 10

           1.    No Misapplication of Controlling Law Regarding "Descriptive Use".................................................................................... 11

           2.    No Misapplication of Controlling Law Regarding "Use in Good Faith"................................................................................... 12

     B.    Plaintiff's Motion is Based on Evidence That Has Been in Its Possession For Several Months to Up to a Year Before the Court Ruled on Summary Judgment and Breitling's Reconsideration Motion ............................................. 13

     C.    There is No Manifest Injustice and the Court Has Never Precluded or Restricted Plaintiff's Presentation of Evidence Produced on June 11, 2021........ 15

           1.    Use in a Descriptive Sense..................................................... 17

           2.    Use in Good Faith ................................................................ 19

           3.    Use Other Than as a Mark ...................................................... 20

V.    CONCLUSION...................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012) ................................................................................................ 9, 10

*Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co.*,
  125 F.3d 28 (2d Cir.1997) ....................................................................................................... 18

*Dessert Beauty, Inc. v. Fox*,
  568 F. Supp. 2d 416 (S.D.N.Y. 2008),
  *aff'd*, 329 F. App'x 333 (2d Cir. 2009) ..................................................................................... 18

*Edible Arrangements, LLC v. Provide Commerce, Inc.*,
  No. 14-CV-00250 (VLB), 2016 WL 4074121 (D. Conn. July 29, 2016) ............................... 11

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
  228 F.3d 56 (2d Cir. 2000) ...................................................................................................... 11

*Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*,
  104 F. Supp. 3d 371 (S.D.N.Y. 2015) ..................................................................................... 12

*In Re Colonial Stores Inc.*,
  55 C.C.P.A. 1049, 394 F.2d 549 (C.C.P.A.1968) ..................................................................... 18

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
  681 F. Supp. 2d 141 (D. Conn. 2009) ................................................................................. 10, 15

*JA Apparel Corp. v. Abboud*,
  No. 07 Civ. 7787(THK), 2008 WL 2329533 (S.D.N.Y. Jun.5, 2008) ...................................... 18

*Kopperl v. Bain*,
  No. 3:09-CV-01754 (CSH), 2016 WL 310719 (D. Conn. Jan. 26, 2016) ............................... 10

*Lewis v. Guardian Loan Co.*,
  No. 3:19-CV-704 (CSH), 2019 WL 7882488 (D. Conn. Oct. 28, 2019) ............................. 9, 16

*Lopez v. Smiley*,
  375 F. Supp. 2d 19 (D. Conn. 2005) .......................................................................................... 9

*Palmer v. Sena*,
  474 F. Supp. 2d 353 (D. Conn. 2007) ...................................................................................... 10

*Prestige Jewelry Int'l v. BK Jewellery HK*,
  No. 11-CV-2930 (LAP), 2015 WL 8481873 (S.D.N.Y. Oct. 14, 2015) ................................... 13

*Sequa Corp. v. GBJ Corp.*,
  156 F.3d 136 (2d Cir. 1998) ................................................................................... 9

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ............................................................................... 9, 16

*Smith v. Cingular Wireless*,
  579 F. Supp. 2d 231 (D. Conn. 2008) ................................................................ 10

*Star Indus., Inc. v. Bacardi & Co. Ltd.*,
  412 F.3d 373 (2d Cir. 2005) ................................................................................ 12

*United States v. Bohannon*,
  247 F. Supp. 3d 189 (D. Conn. 2017) ................................................................ 13

*United States v. Posada*,
  206 F. Supp. 3d 866 (S.D.N.Y. 2016) ................................................................ 13

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ................................................................................ 9

*Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ.*,
  No. 3:15-CV-911 (VLB), 2017 WL 945019 (D. Conn. Mar. 9, 2017) ................... 13

**Rules**

Local Rule 56(a)(1) ..................................................................................................... 6

Local Rule 56(a)(2) ................................................................................................. 2, 15

Defendants and counterclaimants Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG) (collectively "Breitling"), through counsel, respectfully submit this opposition to Plaintiff Solid 21, Inc.'s ("Plaintiff") Motion for Reconsideration, ECF No. 206 ("Mot."), because it is procedurally improper and also lacks substantive merit.  In support thereof, Breitling states as follows:

## I.    INTRODUCTION

Addressing herein the exhaustive mischaracterizations of fact and record, and disregarding the *ad hominem* character assassination that has plagued this case, it is clear that Plaintiff's motion is simply an improper attempted "redo" that does not meet the strict standard for reconsideration.  Plaintiff's motion is vastly different than was Breitling's.  Breitling, in its prior motion, addressed a misapplication of law as to the facts already on record.  Plaintiff, in contrast, fails to point to any change or misapplication of law, wrongly attempts to introduce additional facts that are not anywhere close to newly discovered—and, in any event would not alter the outcome of this Court's analysis, and asserts arguments that it could have but failed to previously raise.

In seeking the introduction of what it calls "new" facts, Plaintiff makes various rather incredible excuses, attempting the aforementioned character assassination of Breitling with glaring omissions and pure falsities in what Plaintiff presents to this Court.  First, Plaintiff claims, repeatedly, that Breitling's summary judgment motion was filed after Plaintiff had hired "new counsel."  Yet, this is a misleading claim.  Plaintiff conspicuously omits that supposed "new counsel" is the exact same "old counsel" who has represented Plaintiff since the outset of this case and actually filed the case (and, in the interim, filed and handled other cases against other watch makers utilizing the same theories as in this case).  Counselors David L. Hecht, Esq. and Yi Wen Wu, Esq. simply changed law firms as a result of rather widespread publicity regarding their old

1

law firm.  Specifically, Counselors Hecht himself filed this case on April 5, 2019, Counselors

Hecht and Wu withdrew over a year later, on April 24, 2020, and associated back into this case on

January 14, 2021 and April 8, 2021, respectively.  Counsel had significant time to conduct

whatever discovery was desired before their withdrawal, and, following their substitution of

counsel back into the case, had even more significant time to undertake whatever further discovery

desired.

Second, Breitling's June 11, 2021, supplemental production following the Magistrate's

Order arose out of Plaintiff's objections to Breitling's responses and documents that were produced

sixteen months earlier—in October 2019—while these exact same counsel were counsel of record.

For sixteen months (including time well prior to counsel's intermittent withdrawal, and including

significant time after they substituted back in), Plaintiff failed to confer regarding its objections

and waited to raise the dispute with the Court until four months after Breitling's summary

judgment motion had been filed.  Compare ECF No. 107 with ECF No. 135.  Breitling had firm

basis to do so, but, instead of objecting to the Magistrate's order, Breitling simply complied and

produced additional documents, which largely consisted of what Breitling believes to be irrelevant

emails spanning a fourteen-year time period (as ordered by the Magistrate (*see* Dkt. No. 153)) and

comprised of daily sales and inventory lists and in-store customer traffic reports from U.S.-based

Breitling stores and distributors.

In any event, and even after such supplemental production, Plaintiff has had the documents

of which it now complains (again, irrelevant to the outcome of this case), for almost seven entire

months, since June 11, 2021.  Rather than exercise diligence and move for leave to supplement its

Local Rule 56(a)(2) Statement of Additional Material Facts with the recently produced information

while summary judgment was pending, Plaintiff simply sat on its heels and waited.  And, rather

than request leave to present the information produced on June 11, 2021, to buttress its opposition

to Breitling's prior motion for reconsideration (an expansion of the summary judgment record), Plaintiff simply sat on its heels and waited.

Third, Plaintiff's assertion that the Court did not grant it any scheduling accommodations is directly contradicted by the record.  In its September 20, 2021 Order, the Court noted "[J]udge Vatti's April 28, 2021 order modifying the scheduling order in several key respects to give the parties more time to complete the discovery process," which "has now been completed[,]" culminating in "[t]he fact that both parties apparently concluded that the record was sufficiently factually developed to file motions for summary judgment (ECF Nos. 107 and 147)[.]"  ECF No. 189 (Order denying further modification of scheduling order).  Plaintiff did nothing in response to this September 20 Order, and again, simply sat on its heels and waited.

Now, almost seven months after these (irrelevant) supplemental documents were produced, Plaintiff flatly misleads this Court by submitting documents having nothing to do with the supplemental production--but rather documents disclosed long prior, including deposition transcripts from March 2021, Plaintiff's own expert report dated February 10, 2021, and pages from Breitling's website that reflect information contained in the records Breitling produced in December 2020.  Based on these materials, long in its possession, Plaintiff requests that this Court allow it a mulligan on both its opposition to Breitling's motion for summary judgment and its opposition to Breitling's motion for reconsideration.  This is exactly the sort of conduct that courts reject on a reconsideration motion.

Even if this Court were to deem the June 11, 2021 production "new evidence," which it should not (and which it explicitly asked the parties not to attempt to do in ECF No. 205 ("any evidence cited in the briefs must be from the existing summary judgment record")), the arguments directed to this supposed new evidence are inapposite.  First, the Court has already correctly stated the controlling law regarding use in a descriptive sense—there is no "binding or persuasive

authority treating the availability of alternative terms as dispositive." ECF No. 204 at 8; *See also id.* at 4-7 (analyzing controlling authorities). The additional analysis by way of example on pages 8 through 9 of this Court's December 10, 2021 Order, wherein the Court discusses the visual differences between rose and red gold, while appreciated, is not necessary or in any way outcome determinative of the fair use analysis. *See Id.* at 4-5 (rather than treating alternative terms as dispositive, "most [courts] find either (1) descriptive use when there is no alternative term <u>and</u> other evidence supports descriptive use….") (emphasis in original). Basically, if the entirety of that section of the Court's December 10, 2021 Order were omitted, the Court's conclusion would stand because even accepting Plaintiff's own proposition that "rose gold" is an alternative term for "red gold," then use of either term by Breitling is nevertheless non-infringing descriptive use on watches made of those alloys. Indeed, Plaintiff has never produced evidence that either term was ever used by Breitling regarding watches that did not have those gold and copper metal alloy components.

Second, the Court has already correctly stated the controlling law regarding good faith use: "knowledge [of plaintiff's mark] alone is insufficient for a finding of bad faith[,]" particularly where, as here, Breitling began using the term "red gold" in reference to the gold-copper alloy as early as 2010, before Plaintiff filed suit asserting trademark rights in this term. *Id.* at 10-11. Plaintiff fails to provide record evidence or controlling law that establishes any bad faith. Finally, Plaintiff failed to timely raise a motion to reconsider the Court's ruling on the first factor—*i.e.*, use of the term other than as a mark—of the fair use analysis (but even a substantive review would not alter the Court's conclusion).

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Plaintiff's Counsel is not "New"

Upon filing the Complaint, on April 5, 2019, Mr. Hecht immediately moved for admission

*pro hac vice* as counsel for Plaintiff.  Mr. Wu moved for admission *pro hac vice* as counsel for

Plaintiff on June 13, 2019.  On October 11, 2019, Breitling served their respective responses to

Plaintiff's requests for production and their document production.  On April 24, 2020, the Court

granted Messrs. Hecht and Wu's motions to withdraw.  ECF No. 83.  Plaintiff raised no dispute

with Breitling's discovery responses in the six months between Breitling's production and Messrs.

Hecht and Wu's withdrawal as counsel for Plaintiff.  On December 23, 2020, Mr. Hecht reappeared

as counsel for Plaintiff.  ECF No. 101.  On March 23, 2021, Mr. Wu reappeared as counsel for

Plaintiff as well.  ECF No. 131.  Plaintiff (with its "new" old counsel) first raised its dispute over

alleged deficiencies in Breitling's October 11, 2019 responses and production on April 2, 2021.

*See* ECF No. 206-2.  On April 28, 2021, the Magistrate ordered that Breitling supplement its

production by June 11, 2021.  ECF No. 153.  Breitling did not believe the order appropriate, and

had a strong basis to object, but nonetheless complied without objection.  *See* Pl.'s Mot. at 4 ("on

June 11, 2021, Breitling produced 46,683 documents totaling 518,073 pages").  The production

contained documents that largely consisted of approximately fourteen years (pursuant to the

Magistrate's order of production defining the relevant time period as 2006 to the filing of the

Complaint in this case in 2019 (*see* Dkt. No. 153)) of daily internal emails comprised of daily sales

and inventory lists and in-store customer traffic reports from U.S.-based Breitling stores and

distributors.  Declaration of Hazel Mae B. Pangan ("Pangan Decl.") ¶ 3.  Out of this production,

Plaintiff's present motion references only three lines selectively and deceptively excerpted,

without column headers for context, from two large spreadsheets produced.  Pl.'s Mot. at Exs. 3-

5.  But none of these exhibits are relevant, when taken in full context: Exhibit 5 conveniently omits

that the call is to a store in the United Kingdom, and that the entry simply logs the caller's question

about a watch model described by the caller, not any non-descriptive use of the term "red gold,"

which does not even appear in the entry.  *See* Pangan Decl. ¶ 4.  Similarly, Exhibits 3 and 4 (a log

entry for a call by a customer from Sweden) do nothing to diminish Breitling's descriptive use of the term "red gold" simply because the answers given to the callers compared red gold as similar or related to rose gold. As the Court recognized in its Reconsideration Order, rose and red are different but related shades on the color spectrum. ECF No. 204 at 9.[1]

### B.   Breitling's Motion for Summary Judgment and Plaintiff's Opposition Are Unaffected By Breitling's Supplemental Production

On January 5, 2021, Breitling moved for summary judgment. ECF No. 107. In its memorandum of law, Breitling included a screenshot of Breitling's website depicting the Navitimer Automatic 35 in "Steel & 18k red gold – Mother-Of-Pearl Diamond," Product number U17395211A1U1. ECF No. 107-1 at 14 (Memo. p. 8). Exhibit H to Breitling's motion for summary judgment, a printout of Breitling's website showing the descriptive use of the term "red gold," contains a live hyperlink to Breitling's website. Pl.'s Mot. at 11 n.5 (citing ECF No. 107-22). On January 26, 2021, Plaintiff filed its opposition, which included a screenshot of Breitling's December 21, 2020 Instagram advertisement of the Navitimer Automatic 35 with hashtags "#steel #redgold #motherofpearl" as an example of Breitling's use of "Red Gold" in its marketing. ECF No. 123 at 12 (Memo. p.4), ECF No. 123-1 (Statement of Additional Fact ¶ 16), ECF No. 123-33 (screenshot of ads).

In seeking the additional discovery in April 2021, Plaintiff repeatedly asserted that the

---

[1] *See also* Breitling's Local Rule 56(a)(1) Statement of Undisputed Material Facts in Support of Motion Summary Judgment, ECF No. 107-2 at 1-2, Undisputed Material Fact No. 3:
"'Red gold' is an alloy of gold with copper and a smaller amount of silver, featuring a reddish hue due to the addition of copper. Smith Report, ¶¶ 5, 8. Jewelers and watchmakers make 18-karat red gold from three-quarters pure gold while the copper content commonly varies between a fifth and a quarter with silver making up the balance. Smith Report, ¶ 8. There are variations of red gold, with higher copper content yielding a darker reddish-brown color, and lower copper content yielding a lighter red gold alloy with more of a pink hue, i.e., what has commonly become known as 'pink gold' or 'rose gold.' *Id.* at ¶¶ 12-14. A change in the copper content of 'red gold' can be discerned from the relative redness of the material. *Id.* at ¶¶ 8, 9."

documents it sought had nothing to do with its pending motion to modify the scheduling order and

would have no impact on the case schedule with regards to motions for summary judgment.

> THE COURT: … does the discovery issue that's raised in the letter briefs also dovetail with the motions to modify the scheduling order, which has yet to be ruled upon?

> MR. WU: …It does not dovetail… our position that this production will not affect the case schedule in any way.  Summary judgment is -- dispositive motions are due this Wednesday.  Defense have already filed their motion.

> As far as plaintiffs, go, we do not believe that -- we were going to file our motion regardless of whether any production is made.  So we don't believe that this will affect the case schedule in any way.

Pangan Decl., **Exhibit A:** April 19, 2021 Hrg. Tr. 2:7-24.

> THE COURT: … if I were to rule in plaintiff's favor on the discovery dispute and order Breitling USA and the Breitling entities to engage in determining what responsive documents exist and in what form and -- that an ESI protocol has to be formulated, search terms need to be formulated, and I -- and we find out what responsive documents exist, do I not effectively have to extend the discovery deadlines in order for the plaintiff to evaluate whatever responsive documents are produced, evaluate whether that necessitates any further fact discovery, and evaluate whether that, in some way, is going to affect whatever reports the experts have prepared or are going to prepare and how that might also affect summary judgment issues? …

> MR. WU: … As far as summary judgment goes, we also don't think that would indicate issues.  As we've discussed earlier, Defense have already filed their summary judgment motion many months ago.  And Plaintiffs are prepared to file our motion regarding [sic] any such production, because we don't believe our motion will be affected by any production of this -- these types of emails or internal communications.

*Id.* at 4:16-5:24.

### C.   The Evidence Plaintiff Proffers in Support of Its Reconsideration Motion was in Its Possession Well in Advance of the Court's Ruling on Summary Judgment

Plaintiff was in possession of the supposed "new" evidence long before this Court's

September 27, 2021 ruling.  On October 19, 2019, Breitling served its answers to interrogatories,

an excerpt of which is included as Exhibit 11 to Plaintiff's reconsideration motion.  Pangan Decl.

¶ 6.   On December 7, 2020, Breitling produced its customer-facing October 2020 Chronolog catalog, an excerpt of which is included as Exhibit 7 to Plaintiff's motion.   *Id*. at ¶ 7.   On approximately February 10, 2021, Plaintiff served the expert report of Duvall O'Steen, an excerpt of which is included as Exhibit 9 to Plaintiff's motion.   *Id.* at ¶ 8.   On March 2, 2021, Plaintiff produced an article on hashtag marketing dated June 25, 2020, which is included as Exhibit 10 to Plaintiff's motion.   *Id.* at ¶ 9.   On March 9, 2021, Plaintiff took the deposition of Tim Sayler, Breitling SA's corporate designee, a transcript excerpts is included as Exhibit 12 to Plaintiff's motion.   *See* Pl.'s Mot. Ex. 12.   On March 11, 2021, Plaintiff took the deposition of Lionel Hofstetter, Breitling SA's additional corporate designee, a transcript excerpt is included as Exhibit 13 to Plaintiff's motion.   *See* Pl.'s Mot. Ex. 13.   On March 16, 2021, Plaintiff took the deposition of Thierry Prissert, Breitling USA's President, whose transcript excerpt is included as Exhibit 2 to Plaintiff's motion.   *See* Pl.'s Mot. Ex. 2.   On June 11, 2021, Breitling produced supplemental emails for the period of January 14, 2006 to August 20, 2019 containing the term "red gold;" excerpts of two spreadsheets from that production are included as Exhibits 3, 4, and 5 to Plaintiff's motion.   *See* Pangan Decl. ¶¶ 3-4.   Therefore, Plaintiff had all of the information about Breitling's use of the term "red gold" in connection with the Navitimer Automatic 35 watch in steel, red gold, and mother of pearl for months and in some cases, nearly a year, before the Court ruled on summary judgment motions.

### D.   The History of the Court's Summary Judgment Rulings and Its Reconsideration Order

On September 27, 2021, the Court issued its Ruling on the parties' Motions for Summary Judgment.   ECF No. 191.   On October 4, 2021, Breitling filed its Motion for Reconsideration as to the specific issues of "descriptive use" and "good faith" elements of fair use.   ECF No. 195.   Plaintiff filed an opposition on October 20, 2021, which did not present the arguments or evidence

in its possession that Plaintiff now raises in its own motion for reconsideration.  ECF No. 199.

Breitling filed its reply on October 26, 2021, ECF No. 203.  The Court entered its order granting

Breitling's motion for reconsideration on December 10, 2021.  ECF No. 204.  In its corrected

docket entry regarding briefing on the remaining claims, the Court stated: "No replies may be filed,

and any evidence cited in the briefs must be from the existing summary judgment record."

ECF No. 205.  On December 18, 2021, Plaintiff filed its Motion for Reconsideration based on

depositions taken in March 2021, documents it has had in its possession for six months at a

minimum, and Plaintiff's expert report dated February 2021.  ECF No. 206.

## III.    RECONSIDERATION AUTHORITY AND STANDARDS

The standard on a motion for reconsideration is "strict," and the motion may be granted

only if "the moving party can point to controlling decisions or data that the court overlooked,"—

*i.e.*, data or controlling decisions that would "reasonably be expected to alter the conclusion

reached by the court."  *Lewis v. Guardian Loan Co.*, No. 3:19-CV-704 (CSH), 2019 WL 7882488,

at *1 (D. Conn. Oct. 28, 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.

1995)).  "The major grounds justifying reconsideration are an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under

new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July

13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).  "A motion for

reconsideration may not be used to plug gaps in an original argument or to argue in the alternative

once a decision has been made."  *Lopez v. Smiley*, 375 F. Supp. 2d 19, 21-22 (D. Conn. 2005).

Notably, reconsideration motions are properly denied where the moving party failed to

timely bring to the Court's attention the proffered "new" evidence or change in the law before the Court's issuance of the ruling or order being challenged.  *See Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (finding no abuse of discretion where court denied reconsideration when the purported intervening controlling law was decided five months before the district court granted summary judgment, and where defendants failed to bring the court's attention to the law before the order granting summary judgment); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 179 (D. Conn. 2009)  (denying reconsideration when "premised on evidence [movant] had in their possession at the time they filed their motion for summary judgment" and remaining arguments "pointed to no newly discovered evidence, intervening controlling law, or clear errors in [the] original ruling."); *Smith v. Cingular Wireless*, 579 F. Supp. 2d 231, 248 (D. Conn. 2008) (denying reconsideration when the court "did not overlook a material fact because the court did consider this fact in dismissing [plaintiff's] claim."); *Palmer v. Sena*, 474 F. Supp. 2d 353, 356 (D. Conn. 2007) (finding no basis for reconsideration despite "affidavit [itself which] was not available at the time of the Court's ruling" as plaintiff did not "exercise[] due diligence in order to obtain such a statement" and thus, was not "new" evidence not previously available.); *Kopperl v. Bain*, No. 3:09-CV-01754 (CSH), 2016 WL 310719, at *4 (D. Conn. Jan. 26, 2016) (denying motion for reconsideration because "newly discovered evidence was not in fact newly discovered and was available to [the moving party], if he had used due diligence, far before the final ruling in this case[,]" including materials available " . . . more than five months prior to the Ruling.")

## IV.   ARGUMENT

### A.   Plaintiff Cannot Assert Any Misapplication of or Change in Controlling Law

Plaintiff does not argue that controlling law on the defense of fair use has changed at all. Further, Plaintiff fails to establish that the Court misapplied controlling law in its analysis of the

"descriptive use" or "use in good faith" factors of the fair use defense.

### 1. No Misapplication of Controlling Law Regarding "Descriptive Use"

The Court, in its reconsideration order, correctly determined that controlling law does not suggest that a single factor is dispositive of the "descriptive use" analysis.  Reconsideration Order, ECF No. 204 at 4.  Rather, citing the Second Circuit's decision, *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 64–65 (2d Cir. 2000), the Court correctly concluded that controlling law "does not suggest that in a case where the term is *not* 'the only reasonably available means of describing a characteristic of another's goods,' the failure to use an alternative term, by itself, prevents the defendant from satisfying the 'use in a descriptive sense' element of the fair use defense."  Reconsideration Order, ECF No. 204, at 4.

The only case Plaintiff cites in its analysis of the "descriptive use" factor is *Edible Arrangements, LLC v. Provide Commerce, Inc.*, No. 14-CV-00250 (VLB), 2016 WL 4074121 (D. Conn. July 29, 2016).  First, Plaintiff does not assert that the authority the Court relies on in its Order is not controlling.   Second, Plaintiff does not—and cannot—assert that *Edible Arrangements*, an unreported district court opinion, controls over *EMI Catalogue P'ship*, the reported Second Circuit Court of Appeals opinion the Court did cite.  Third, Plaintiff mistakenly and without explanation asserts that *Edible Arrangements*' analysis of alternative terms is relative to the second factor—descriptive use—and therefore Plaintiff's "new" old evidence creates a genuine dispute of material fact as to descriptive use.  That is an incorrect statement of the law.  As the Court stated in its December 10, 2021 Order, "In *Edible Arrangements*, the court cited the availability of alternative terms as one of two bases for concluding there was a genuine dispute of material fact about the <u>third</u> element of fair use – good faith."  ECF No. 204 at 7 n.1 (emphasis in original).

### 2.       *No Misapplication of Controlling Law Regarding "Use in Good Faith"*

On reconsideration, the Court determined that controlling law "states that knowledge alone is insufficient for a finding of bad faith."  ECF No. 204 at 10.  Plaintiff asserts that the fact Breitling did not conduct a trademark clearance search "is evidence of a lack of good faith" and cites to *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 381 (S.D.N.Y. 2015). This is another misstatement—of the *Flat Rate Movers* analysis—and is also contrary to the controlling law in the Second Circuit.  The *Flat Rate Movers* court stated, "Good faith <u>can</u> be shown through performance of a trademark search or reliance on the advice of counsel prior to adopting a mark."  *Id.* (citing *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 389 (2d Cir. 2005)) (emphasis added).  In *Star Industries*, the Second Circuit Court of Appeals, the controlling authority for this Court, stated "This Court has never held adoption of a mark with no knowledge of a prior similar mark to be in bad faith <u>even in the total absence of a trademark search</u>."  *Star Indus.*, 412 F.3d at 388 (emphasis added).  And further, "in some cases even where a trademark search resulted in knowledge of the earlier mark, in the absence of additional evidence indicating an intent to promote confusion or exploit good will or reputation, this Court has found the junior user to be in good faith."  *Id.*  Thus, the *Flat Rate Movers* court's conclusion that the bad faith factor for infringement weighed in plaintiff's favor must be read in the context of *Star Industries*. Indeed, contrary to Plaintiff's simplistic and incorrect assertion, the *Flat Rate Movers* district court's conclusion was based on the plaintiff's presentation of evidence <u>beyond defendant's knowledge of plaintiff's marks</u> and on the fact that defendant had not responded with any facts showing good faith.  The record in this case shows no evidence supportive of bad faith by Breitling, who used the term "red gold" generically and descriptively in 2010 before any knowledge of Plaintiff, its alleged mark or lawsuit.  Reconsideration Order, ECF No. 204, at 10-11.

**B.** **Plaintiff's Motion is Based on Evidence That Has Been in Its Possession For Several Months to Up to a Year Before the Court Ruled on Summary Judgment and Breitling's Reconsideration Motion**

"A motion to reconsider is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." *United States v. Posada*, 206 F. Supp. 3d 866, 868 (S.D.N.Y. 2016).

> When a party asserts that new evidence requires reconsideration of a prior decision, the proponent must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered.  The party moving for reconsideration based on the newly discovered evidence must show that [] the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support.

*United States v. Bohannon*, 247 F. Supp. 3d 189, 194 (D. Conn. 2017) (quoting *Prestige Jewelry Int'l v. BK Jewellery HK*, No. 11-CV-2930 (LAP), 2015 WL 8481873, at *2 (S.D.N.Y. Oct. 14, 2015)).  "This rule also applies to motions to reconsider under the District of Connecticut local rules." *Bohannon*, 247 F. Supp. 3d at 194 (citing *Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ.*, No. 3:15-CV-911 (VLB), 2017 WL 945019, at *1 (D. Conn. Mar. 9, 2017)).

The Court issued its ruling on Breitling's motion for summary judgment on September 27, 2021.  The standard for "newly discovered evidence" does not limit the discovery of the evidence to the filing of the motion.  Instead, the discovery or reasonable diligence to discover is based on the date the decision is rendered.  *Bohannon*, 247 F. Supp. 3d at 194 ("the proponent must demonstrate that the newly discovered evidence was[n't] available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered").  Thus, evidence will only be considered "newly discovered evidence" warranting reconsideration if Plaintiff discovered or through reasonable diligence could have discovered it before the September 27, 2021 Order—not by Breitling's January 2021 motion filing.  Plaintiff fails to establish that any of the evidence presented in its motion constitutes "newly discovered evidence" warranting reconsideration of the

13

Court's December 10, 2021 Order.  Plaintiff seems to concede this point, never even characterizing it as "newly discovered evidence," and instead describing it as "additional evidence" that Plaintiff admits was produced many months earlier – at a minimum.

In support of its motion, Plaintiff attaches: excerpts from three deposition transcripts taken in March 2021 (Exhibits 2, 12, and 13); incomplete and misleading extracted information from documents produced on June 11, 2021 (Exhibits 3-5, discussed above); an excerpt from Breitling's Chronolog catalog dated October 2020 that was produced on December 7, 2020 (Exhibit 7); Plaintiff's own expert report dated February 10, 2021 (Exhibit 9); an article on hashtag marketing that Plaintiff produced on March 2, 2021 (Exhibit 10); Breitling's answers to interrogatories dated and served on October 11, 2019 (Exhibit 11); and printouts from Breitling's website accessed on December 17, 2021 (Exhibits 6, 8).  Of these Exhibits, Exhibits 2-5, 7, 9-13 were in Plaintiff's possession well before the Court issued its ruling on Breitling's motion for summary judgment, and well before the Court issued its order on Breitling's motion for reconsideration.

Neither do Exhibit 6 or 8 contain new information.  Plaintiff was aware that Breitling described one of the materials of its Navitimer Automatic 35 as "red gold" in advance of Plaintiff filing its opposition to Breitling's motion for summary judgment.  First, Breitling's memorandum of law in support of its motion for summary judgment included a screenshot of Breitling's website depicting the Navitimer Automatic 35 in "Steel & 18k red gold – Mother-Of-Pearl Diamond."  ECF No. 107-1 at 14 (Memo. p.8).  Plaintiff admits that Exhibit H to Breitling's motion for summary judgment, the printout of Breitling's website accessed on October 11, 2020, contains a live hyperlink, accessible at all times, to Breitling's website.  Pl.'s Mot. at 11 n.5.  Exhibit 7 to Plaintiff's motion includes a page from Breitling's product catalog produced on December 7, 2020, showing Breitling's Navitimer Automatic 35 product line, including product number U17395211A1U1, described as "Stainless Steel, 18k Red Gold, and Mother-of-

Pearl."  Pl.'s Mot. Ex. 7; Pangan Decl. ¶ 7.  Exhibit 9 is Plaintiff's expert's report, dated February 10, 2021, containing a screenshot of Breitling's Instagram advertisement for Breitling's Navitimer Automatic 35 dated December 21, 2020, with hashtags "#diamonds #steel #redgold #motherofpearl."  In fact, Plaintiff included this same screenshot in its January 26, 2021 opposition to Breitling's motion for summary judgment.  ECF No. 123 at 12 (Memo. p.4), ECF No. 123-1 (Statement of Additional Fact ¶ 16), ECF No. 123-33 (screenshot of ads).  As such, Plaintiff's "discovery" that Breitling included in the description of the watch the term "red gold" on Breitling's website on the date Plaintiff filed its reconsideration motion (Exhibits 6 and 8 to Plaintiff's motion), is nowhere close to "newly discovered evidence."

Plaintiff points to no case law or Court order that would have prevented it from supplementing its Local Rule 56(a)(2) Statement of Additional Material Facts.  Plaintiff could have, but chose not to, move for leave to supplement its briefing with the additional facts about which Plaintiff now, after two court orders, seeks consideration.  Because Plaintiff's motion is premised on evidence in its possession for months to a year prior to the Court's ruling on Breitling's motion for summary judgment (not to mention Breitling's motion for reconsideration), there is no newly discovered evidence warranting reconsideration.  *See In re Ethylene Propylene Diene Monomer Antitrust Litig.*, 681 F. Supp. 2d 141, 179 (D. Conn. 2009) (denying a motion for reconsideration for lack of newly discovered evidence where the movant had in its possession the evidence at the time it filed the motion for summary judgment).

## C.    There is No Manifest Injustice and the Court Has Never Precluded or Restricted Plaintiff's Presentation of Evidence Produced on June 11, 2021

The sole argument Plaintiff asserts in support of its "manifest injustice" argument is that Breitling filed its motion for summary judgment before the close of discovery and before the Court compelled additional document production.  Pl.'s Mot. at 16.  Yet, as discussed in detail herein,

Plaintiff previously raised or could have raised at numerous times throughout this litigation the arguments and evidence it now asserts—at the time it filed its opposition to Breitling's motion for summary judgment, and later its opposition to Breitling's motion for reconsideration.  Plaintiff's January 26, 2021 opposition included screenshots of the Navitimer Automatic 35 in steel, red gold, and mother of pearl.  As of at least as early as January 26, 2021 (and assuredly, well before then), Plaintiff was aware and had argued that Breitling was using Plaintiff's asserted mark "Red Gold" in connection with that specific watch.  Plaintiff's Opposition to Breitling's Motion for Summary Judgment, ECF No. 123 at 12 (Memo. p.4), ECF No. 123-1 (Statement of Additional Fact ¶ 16), ECF No. 123-33 (screenshot of ads).  Exhibits to Plaintiff's motion (Exhibits 2-5, 7, 9-13) were all in Plaintiff's possession for a <u>long</u> time prior to having filed this motion, or having opposed the prior motions.  And, Plaintiff admits that Exhibit H to Breitling's motion for summary judgment, the website printout, contains a live hyperlink to Breitling's website, clickable at any time.  Pl.'s Mot. at 11 n.5.

The Court did not issue its ruling on the Parties' cross-motions for summary judgment until September 27, 2021.  ECF No. 191.  In the more than three months between June 11, 2021 and September 26, 2021, Plaintiff had ample time to review the supplemental production and, if it had deemed it necessary, to seek leave of court to supplement its opposition to Breitling's motion for summary judgment.  Plaintiff did not.  Plaintiff also could have raised its arguments and supposed "new" evidence in opposition to Breitling's motion for reconsideration.  Plaintiff, again, did not. As set forth herein, the belatedly-raised evidence does not establish a manifest injustice because it would not alter the Court's December 10, 2021 Order, nor does the Plaintiff point to any law that the Court misapplied or overlooked.  *See Lewis*, 2019 WL 7882488, at *1 (citing *Shrader*, 70 F.3d at 257 (affirming reconsideration of prior ruling based on legislative history and other legal authority presented for the underlying ruling but overlooked by the trial court)).

### 1.     *Use in a Descriptive Sense*

The import of the Court's Ruling on Motion for Reconsideration is that it corrects an otherwise erroneous statement and application of controlling law.  Neither the summary judgment record nor Plaintiff's belatedly-raised evidence alters the outcome of the case under that controlling law.  The Court stated: "I erred in treating the availability of alternative terms as dispositive of whether Breitling had satisfied the second element of its fair use defense."  ECF No. 204 at 3-4.  The Court also noted:

> Further, most cases within the Second Circuit that address the availability of alternative terms in the context of a discussion of the descriptive use element of the fair use defense do not treat that factor as dispositive.  Instead, most find either (1) descriptive use when there is no alternative term <u>and</u> other evidence supports descriptive use, or (2) a genuine dispute of material fact when there is an alternative term <u>and</u> other evidence that supports non-descriptive use.

ECF No. 204 at 4-5 (emphasis in original).  Simply put, there is no "binding or persuasive authority treating the availability of alternative terms as dispositive of the descriptive use element."  *Id.* at 8.

Changing or even completely omitting the Court's example at pages 9 and 10 of the Order would not alter a decision under controlling law that Breitling's use of the term "red gold" is descriptive.  There is no evidence anywhere that would tend to support an argument that there exists non-descriptive use of the term "red gold."  And, Plaintiff's proffered facts were in existence and disclosed to Plaintiff at the time Breitling filed its motion for summary judgment.  *See* ECF Nos. 107-1 at 14, 107-22.  Plaintiff specifically pointed to the watch at issue as using the term "red gold" in its opposition brief.  Plaintiff's Opposition to Breitling's Motion for Summary Judgment, ECF No. 123 at 12; ECF Nos. 123-1, 123-33.

In short, at no time has Plaintiff presented evidence that Breitling has ever used the term "red gold" for a watch made of 4N gold (rose gold).  Nor is there any such evidence.  Exhibits 3,

4, and 5—Plaintiff's supposed but totally off-point "gotcha" exhibits (all of which have been in Plaintiff's possession for almost seven months)—do not in any way refer to the ISO Standard 8654 designation of the gold alloy inaccurately, *i.e.*, there is no representation anywhere that a watch made of 4N gold was described as "red gold." Exhibits 3, 4, and 5 do not show any non-descriptive use of the term "red gold" at all, so these exhibits do not even come close to moving the needle, much less showing that Breitling used the term "red gold" as a brand or in reference to Plaintiff. "A use of a mark is descriptive if 'the words were used to describe the 'ingredients, quality or composition' of a product, not the source of the product.' . . . the Second Circuit has explained that the [Lanham Act fair use defense] . . . 'has not been narrowly confined to words that describe a characteristic of the goods, such as size or quality. Instead, [the Second Circuit has] recognized that the phrase permits use of words or images that are used . . . in their 'descriptive sense.'" *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 425 (S.D.N.Y. 2008), *aff'd,* 329 F. App'x 333 (2d Cir. 2009) (citing *JA Apparel Corp. v. Abboud,* No. 07 Civ. 7787(THK), 2008 WL 2329533, at *19 (S.D.N.Y. Jun.5, 2008); *In Re Colonial Stores Inc.*, 55 C.C.P.A. 1049, 394 F.2d 549, 551 (C.C.P.A.1968); *Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir.1997)). Exhibits 3-5 show no source-indicating use whatsoever; Exhibits 3-4 merely reference the term "red gold" as the reddish-hued alloy of which the watches in question are made, and Exhibit 5 does not even reference the term "red gold" at all. Plaintiff argues that because other terms like "rose gold" are available, then Breitling's use of the term "red gold" meant that Breitling wished to exploit the "goodwill" and "cachet" of the "red gold" brand. Pl.'s Mot. at 7. This is a bridge too far, unmoored to any evidence that Breitling knew of and meant the Plaintiff and its brand whenever Breitling used the term "red gold" purely to discuss the metal alloy materials of which Breitling watches are made.

Contrary to Plaintiff's argument, Breitling did not "cherry pick" an example to establish a

18

difference in hues or even submit Exhibit H for the proposition for which it was used by the Court at all.  Rather, Breitling submitted Exhibit H to its Motion for Summary Judgment solely for the following proposition:

> On its website, Breitling states "red gold" in smaller text beneath a watch model's name when identifying the case material and dial color (e.g., "18K Red gold – Mother-Of-Pearl Diamonds," "Steel & 18k red gold – Black").  *See* Prissert Decl., ¶ 9, **Exh. H** to the Index, Breitling website https://www.breitling.com/us-en/find-your-breitling/gold-watches/ (last visited Dec. 31, 2020) (also showing "18K Red Gold – Silver," "18k Red Gold – Anthracite," "18k Red Gold – Blue").

ECF No. 107-2 ¶ 29 (in its entirety).

### 2.      Use in Good Faith

The Court's December 10, 2021, Order correctly addresses the controlling law and facts regarding the date of Breitling's use of the term "red gold," as well as the lack of knowledge of Plaintiff's mark before Breitling's first use of the term.  "[C]ontrolling Second Circuit law states that knowledge alone is insufficient for a finding of bad faith."  ECF No. 204 at 10.

The Court concluded that Breitling had established good faith as a matter of law because "Breitling used the term 'red gold' to describe its watches as early as 2010, which preceded Solid 21's first advertisement in *International Watch*."  *Id*.  The Court concluded that "[n]either the statement in my summary judgment ruling, then, nor the evidence in the record supports a finding that Breitling had knowledge or constructive knowledge of Solid 21's mark due to 'advertising in the same publications.'"  *Id.*  Plaintiff has never presented any evidence of Breitling's knowledge of Plaintiff's mark prior to Breitling's first use.

Plaintiff now instead seems to direct this Court to Breitling's supposed knowledge of Plaintiff's alleged mark in the context of Plaintiff's lawsuit in 2011.  *See* Pl.'s Mot. at 13 ("Breitling's witnesses testified that they knew of the RED GOLD trademark since at least 2011" and "Solid 21 sued Breitling in 2011 over this same mark… and they had to have known about the

mark at least since then, and continued to use it despite this knowledge."). But this argument is obviously something that is not newly-discovered, and does not seem to make any legitimate point, as even this Court acknowledged that Breitling has used the term even before such time.

### 3.    Use Other Than as a Mark

In its September 27, 2021 summary judgment ruling, the Court determined:

> The term "Red Gold" is capitalized but so is "Mother-Of-Pearl," which also refers to the material making up the watch or its components. Similarly, for the social media posts, "red gold" is used in a series of hashtags alongside other descriptors of the watch. *See* ECF No. 123-33. This evidence does not suggest that the term was used to "attract public attention."

ECF No. 191 at 24. Plaintiff presents no evidence that contradicts that already reviewed by the Court on summary judgment. Instead, Plaintiff summarily characterizes evidence that had not been presented to the Court, and that had been in Plaintiff's possession for a substantial amount of time, and before the Court's rulings on Breitling's motions for summary judgment and reconsideration. In any event, the Court has already addressed and rejected Plaintiff's assertion that Breitling's capitalization of the term "Red Gold" on its website and use of the hashtag #redgold reflected use of the term as a mark. ECF No. 191 at 24.

## V.    CONCLUSION

Plaintiff's motion for reconsideration is improper in light of the absence of a change or misapplication of controlling case law, purportedly based on: evidence that has actually been in Plaintiff's possession for months before the Court ruled on summary judgment and Breitling's reconsideration motion; arguments that could have been yet were not raised previously or that do nothing to alter the Court's December 10, 2021 decision; and objectively misleading recitations to the record of this case. For the foregoing reasons, Breitling respectfully requests that Plaintiff's Motion for Reconsideration be denied.

Respectfully submitted,

Dated: January 7, 2022        **GORDON REES SCULLY MANSUKHANI, LLP**

By:    */s/ Craig J. Mariam*
        Thomas C. Blatchley (ct25892)
        Craig J. Mariam (*pro hac vice*)
        Hazel Mae B. Pangan (*pro hac vice*)
        Julia K. Whitelock (*pro hac vice*)
        95 Glastonbury Boulevard, Suite 206
        Glastonbury, CT 06033
        Phone: (860) 494-7525
        Fax: (860) 560-0185
        Attorneys for Defendants and
        Counterclaimants
        Breitling U.S.A., Inc. and Breitling SA (a/k/a
        Breitling AG)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of January, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.

*/s/ Craig J. Mariam*
Craig J. Mariam