UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOLID 21, INC., <br><br> *Plaintiff*, <br> v. <br><br> BREITLING U.S.A., INC.; BREITLING SA; AND BREITLING AG, <br><br> *Defendants*. | No. 3:19-cv-00514 (MPS) |

**RULING ON MOTION FOR RECONSIDERATION**

In this heated trademark battle about watches and jewelry described with the words "red gold," the Plaintiff ("Solid 21") now moves for reconsideration (ECF No. 206) of my ruling granting an earlier motion for reconsideration sustaining the fair use defense asserted by the Defendants (collectively, "Breitling"). ECF Nos. 204, 205. On December 10, 2021, I granted Breitling's motion for reconsideration, finding that I had overlooked both applicable law and portions of the summary judgment record in determining that there were genuine disputes of material fact as to fair use in my September 27, 2021 summary judgment ruling; on reconsideration, I found that there were not and granted Breitling summary judgment. *See* ECF No. 204. Solid 21 now asks me to revisit that conclusion.

I assume familiarity with my September 27 and December 10 rulings; I incorporate by reference herein the legal standards set forth in those rulings; and I set forth below only so much reasoning as is necessary to explain my decision to DENY Solid 21's motion.

To begin with, Solid 21's motion does not satisfy the strict standard for motions for reconsideration. *See* D. Conn. L. R. 7. It could have raised in its January 26, 2021 opposition to summary judgment some of the arguments it now makes for the first time. Examples include its

1

argument about hashtags, which is based in part on an article from June 2020 (ECF No. 206-11), its argument about Breitling's purported notice of Solid 21's mark, which is based on a 2011 lawsuit and the 2003 registration of that mark (ECF No. 209 at 16), and its argument that Breitling used "rose gold" and "red gold" at different times to describe the same watch, which is based on discovery materials Breitling produced in December 2020. *See* ECF No. 209 at 13 (relying on Exhibit 7, ECF No. 206-8 at 5); ECF No. 212-1 at 2 (declaration that Exhibit 7 was produced in December 2020); ECF No. 215 (Solid 21's Reply juxtaposing images of Breitling watches that were available when Solid 21 filed its opposition to summary judgment); *see generally Belfiore v. Procter & Gamble Co.*, 140 F. Supp.3d 241, 244 (E.D.N.Y. 2015) ("In a motion for reconsideration, a party may not introduce new facts or raise new arguments that could have been previously presented to the court."). Further, Solid 21 could have submitted all of the evidence attached to its motion for reconsideration before now. It is true that Breitling filed its motion for summary judgment early and Solid 21 sought time to complete discovery before responding—a request I denied as moot when I denied summary judgment in September 2021. ECF Nos. 114 & 191. It is also true that several of the exhibits attached to Solid 21's motion for reconsideration were not available to it when it filed its opposition to summary judgment on January 26, 2021, including discovery materials the Court later compelled Breitling to produce. But as Breitling notes, Solid 21 could have sought to supplement the summary judgment record with these materials, as the Court did not decide the motion until three months after Solid 21 had obtained the missing discovery items. Worse, Solid 21 did not submit, and made no mention, of these materials when it opposed Breitling's October 4, 2021 motion for reconsideration on the issue of fair use. *See* ECF Nos. 196 & 199. It is not clear why, if Solid 21 considered these materials "highly pertinent" to the fair use defense, ECF No. 209 at 4, it did not

file them with its opposition to Breitling's motion for reconsideration, which asked me to revisit the issue of fair use.

All that said, given Breitling's early motion for summary judgment and the Court's subsequent order compelling Breitling to produce the additional discovery materials, I have considered Solid 21's exhibits derived from those materials—as well as all other exhibits attached to its motion for reconsideration—in deciding that motion. Because the compelled discovery materials are the most significant items Solid 21 did not have when it filed its opposition to summary judgment, I focus on those items in the discussion below.

None of the newly submitted materials leads me to conclude that I erred in granting summary judgment to Breitling on fair use. Although some of these materials call into question one aspect of my ruling granting Breitling's motion for reconsideration—the portion in which I suggested that Breitling's use of "red gold" and "rose gold" was a deliberate effort to assign nuanced descriptors to slightly different hues of its products, ECF No. 204 at 8–9—that aspect was not essential to my ruling. Instead, as the ruling explains, the critical point was that I had overlooked the law on the significance of "alternative terms" in assessing the descriptive element of the fair use defense in my summary judgment ruling. *Id.* at 4–7. I would have reached the same conclusion that Breitling had sustained its fair use defense as a matter of law without my discussion of the side-by-side images of the two Breitling watches that appear (overall) to be of slightly different hues, one mentioning "red gold," the other "rose gold." This is so because, as I explained, "the existence or non-existence of alternative terms" has not been "essential" to courts' findings regarding the descriptive use element of fair use within the Second Circuit. *Id.* at 7.

None of the evidence Solid 21 has now submitted—including Breitling's internal logs of calls with customers and screenshots from Breitling's website showing it has, at different times, described the same watch with the words "red gold" and "rose gold"—suggests that Breitling has made non-descriptive use of either of these terms or that it has used the descriptor "red gold" in bad faith.  The three customer call logs excerpted in Solid 21's brief provide little support for its argument.  They are internal documents reflecting conversations between a customer and a Breitling employee and say little about how Breitling presents its products to the world in advertisements.  In addition, they do not suggest that Breitling used "red gold" "inten[ding] to trade on the good will of [Solid 21] by creating confusion as to source or sponsorship."  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000).  Instead, the logs show that the customers had questions about the colors available for a particular watch model, *see* ECF No. 209 at 9 (Customers asked: "[D]oes this timepiece come in both regular and rose gold" and "Whats [sic] the difference between rose gold and red gold."), not that the customers were confused about the "source or sponsorship" of the watches.  Further, if anything, these documents suggest that Breitling employees use "red gold" and "rose gold" in a descriptive manner to describe the color of its watches even in one-on-one customer interactions.  *See* ECF No. 209 at 9 (Breitling employee responding to customer that "[t]his time piece is only *available in 'red-gold'* which is what we consider rose gold," and another employee responding to customer question about "the difference between rose gold and red gold" with: "They are both a *rose gold color*." (emphasis added)).  While these documents and the deposition testimony of Breitling executives Solid 21 cites suggest that there are inconsistencies between the ways some Breitling employees describe the colors of its products, there is no evidence that those inconsistences reflect an attempt to trade on Solid 21's good will or create confusion as to source

4

or sponsorship. To the contrary, the call logs and deposition testimony suggest that Breitling employees use both "red gold" and "rose gold" to describe a characteristic of the company's products, i.e., color.

The images Solid 21 features in its motion only confirm good-faith, descriptive use. Far from suggesting that Breitling is "label[ing] … as 'red gold'" products that some of its employees see as "rose gold" in color "to draw attention and exploit [Solid 21's] goodwill and cachet," ECF No. 209 at 10, these images make clear that Breitling is using "Red Gold" descriptively, just as it is using the other materials and colors that characterize its watches:




U17325211G1P2

**NAVITIMER AUTOMATIC 38**

Stainless Steel & 18k Red Gold - Silver
USD 6,150

U17325211G1U1

**NAVITIMER AUTOMATIC 38**

Stainless Steel & 18k Red Gold - Silver
USD 8,700

 

*Id.*  All these images come from Breitling's website and show Breitling's name on the watch face.  And in all of them, the name of the Breitling watch model, "Navitimer," appears in large, bold-faced type, while "Red Gold" appears beneath, in regular type, on a line next to other descriptors of color, weight, and material.  When these images are considered in their "overall context," *EMI Catalogue P'ship*, 228 F.3d at 66 (in assessing good faith in fair use analysis, "a court must take into account the overall context in which the marks appear and the totality of factors that could cause consumer confusion"), it is hard to see how they "exploit" Solid 21's "goodwill and cachet," ECF No. 209 at 10, simply because it has trademarked two of the words that appear in the line describing the watches' color, weight, and material.

      For similar reasons, the evidence Solid 21 has submitted showing that Breitling used "red gold" and "rose gold" at different times to describe the same watch—which, as noted above, is not "new" evidence at all and is not a proper basis for reconsideration—does not cause me to rethink my earlier ruling.  ECF No. 209 at 9–15.  The uses of the different hue designations were

descriptive on each occasion in the same way that the use of "red gold" as a color/material descriptor in the images above is descriptive. On each occasion, the use of either "red gold" or "rose gold" came from Breitling's website or catalogue, was paired with other color and material descriptors such as "stainless steel" and "mother-of-pearl," was placed beneath the Breitling mark and/or model name, and did not appear designed to attract public attention or indicate the source of the goods. *See* ECF No. 209 at 12–14 (showing images). Again, the use and physical placement of "red gold" in these images do not suggest that Breitling intended to "trade on the good will" of Solid 21. Nor does Solid 21 point to any evidence that Breitling's decision to use "red gold" and "rose gold" interchangeably was part of an effort to confuse consumers as to the "source or sponsorship" of the watches. The fact that Breitling has at times used an alternative term to describe a product does not mean that its use of the words comprising the mark to describe the product on other occasions is non-descriptive or in bad faith.

Solid 21 points out that in *EMI*, the Second Circuit found that "[t]he availability of other descriptive terms and a decision not to use one of those terms is also evidence suggesting bad faith." 228 F.3d at 67. In that case, however, there was ample other evidence of bad faith, including that an earlier version of the defendants' commercial "was intended to trade on the good will in the [trademarked song], because defendants contemplated paying for the right to do just that" but then used the same lyrics to different music because "the cost to license the song was too high." *Id.* More importantly, as noted, the Second Circuit in *EMI* instructed that "a court must take into account the overall context in which the marks appear and the totality of factors that could cause consumer confusion" when assessing the good faith element of the fair use defense. *Id.* at 66; *see also id.* at 66-67 ("Because the good faith inquiry in a fair use analysis necessarily concerns the question whether the user of a mark intended to create consumer

confusion as to source or sponsorship, we think that the same contextual considerations apply to a court's analysis of good faith in the fair use defense …."). As I have explained, no reasonable juror considering "overall context in which the marks appear" in the images set forth above or on pages 9-11 of Solid 21's brief could conclude that Breitling was seeking to create consumer confusion as to the source or sponsorship of its watches.

Finally, Solid 21's argument that Breitling's use of "red gold" is "descriptively misleading," ECF No. 209 at 15, because it is allegedly using the term to describe its "rose gold products" contradicts the position Solid 21 took earlier in the case that the two terms were synonymous. ECF No. 123 at 32–33, 37.[1] In fact, the evidence attached to Solid 21's motion suggests that the two terms are regarded by many, including some Breitling customers and employees, as synonymous. But as shown in my ruling granting Breitling's motion for reconsideration, the existence of an alternative term to describe a product is, by itself, insufficient to raise a genuine dispute of material fact about the descriptive use element, at least under the circumstances of this case.

I do not find any of Solid 21's other arguments, to the extent they are based on evidence or reflect points that could not have been submitted earlier, to warrant reconsideration of my ruling granting summary judgment to Breitling on fair use. And because I have considered the evidence attached to Solid 21's motion, some of which it obtained after it was required to file its opposition to summary judgment, I see no need to revisit my ruling denying Solid 21's motion for extension of time to respond to the summary judgment motion. *See* ECF Nos. 114, 191. Therefore, Solid 21's motion for reconsideration (ECF No. 206) is DENIED.

---

[1] As shown above, to the extent this argument is based on the evidence that Breitling described the same watch at different times using "rose gold" and "red gold," it is one Solid 21 could have raised in opposition to summary judgment and so is not a proper basis for reconsideration.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         January 24, 2022