**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SOLID 21, INC., | : | |
|     Plaintiff, | : | |
| | : | C.A. NO. 3:19-CV-00514-MPS |
| v. | : | |
| | : | |
| BREITLING U.S.A., INC.; BREITLING SA; | : | |
| AND BREITLING AG, | : | February 10, 2022 |
|     Defendants. | : | |
| | : | |

**DEFENDANTS AND COUNTERCLAIMANTS BREITLING U.S.A., INC. AND
BREITLING SA'S (A/K/A BREITLING AG) MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................................... 8

II.  ARGUMENT & AUTHORITIES ............................................................................. 9

     A.   This Motion Is Timely. ................................................................................ 9

     B.   Standard for Fee Recovery under the Lanham Act ...................................... 9

     C.   Fees Are Also Awardable under the Court's Inherent Power ...................... 12

     D.   Plaintiff's Conduct Justifies a Fee Award under Both the Lanham
          Act and the Court's Inherent Powers. ....................................................... 12

          1.   Plaintiff Dallied for Months Rejecting the Notice of "Fair
               Use," Which Breitling Maintained All Along, Consistent
               with the USPTO's Finding that the Purported "Red Gold"
               Mark Appeared to be Generic for that Gold Metal Alloy .................. 13

          2.   Plaintiff Delayed by "Double Switching" Counsel
               Pointlessly and Violated the Court's Orders ..................................... 14

          3.   After Losing on Summary Judgment, Plaintiff Finally
               Asserted an Argument Flatly Contradictory to Its Entire
               Case. ................................................................................................ 18

          4.   Plaintiff's Counsel Instigated a Ferocious Marketing against
               Breitling. .......................................................................................... 19

     E.   Breitling Is Entitled to Recover Its Fees for All Asserted Claims. ............ 20

     F.   The Amount of Fees Breitling Seeks Is Reasonable. ................................. 21

     G.   Breitling Is Entitled to Recover Its Costs. ................................................ 24

III. CONCLUSION ...................................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahava v. J.W.G., Ltd.*,
  286 F.Supp.2d 321 (S.D.N.Y.2003) ........................................................................ 24

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
  522 F.3d 182 (2d Cir. 2008) .................................................................................... 21

*Aurora Commercial Corp. v. Approved Funding Corp.*,
  No. 13 Civ. 230 (RPP),
  2014 WL 3866090 (S.D.N.Y. Aug. 6, 2014)............................................................. 21

*Baker v. Urban Outfitters, Inc.*,
  431 F. Supp. 2d 351 (S.D.N.Y. 2006) ...................................................................... 11

*Beastie Boys v. Monster Energy Co.*,
  112 F. Supp. 3d 31 (S.D.N.Y. 2015) ........................................................................ 11

*Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*,
  212 F. Supp. 2d 226 (S.D.N.Y. 2002) ...................................................................... 23

*Coach Inc. v. Just A Boun, LLC*,
  No. 6:11-cv-797-Orl-18GJK,
  2011 WL 6318966 (M.D. Fla. Nov. 8, 2011),
  *report and recommendation adopted*,
  2011 WL 6328696 (M.D. Fla. Dec. 15, 2011)........................................................... 23

*Craig v. Popmatters Media, Inc.*,
  448 F. Supp. 3d 844 (N.D. Ill. 2020) ....................................................................... 23

*Crestmont Capital, LLC v. P.A.R. Consulting, LLC, et al.*,
  2020 WL 6528418 (C.D. Cal. Sept. 17, 2020) ......................................................... 22

*Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*,
  782 F.2d 329 (2d Cir. 1986) .................................................................................... 12

*Eisemann v. Greene*,
  204 F.3d 393 (2d Cir. 2000) .................................................................................... 12

*Farbotko v. Clinton Cty. of New York*,
  433 F.3d 204, 209 (2d Cir. 2005) ............................................................................ 21

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994)................................................................................................. 10

*Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*,
   933 F. Supp. 2d 655 (S.D.N.Y. 2013) ................................................. 11

*GAKM Res. LLC v. Jaylyn Sales Inc.*,
   No. 08 CIV. 6030 (GEL),
   2009 WL 21508910 (S.D.N.Y. July 20, 2009) ....................................... 24

*Gracie v. Gracie*,
   217 F.3d 1060 (9th Cir. 2000) ........................................................ 20

*Gust, Inc. v. AlphaCap Ventures, LLC*,
   226 F. Supp. 3d 232 (S.D.N.Y. 2016)
   *rev'd on other grounds*, 905 F.3d 1321 (Fed. Cir. 2018) ....................... 11

*IMAF, S.p.A. v. J.C. Penney Co., Inc.*,
   810 F. Supp. 96 (S.D.N.Y. 1992) .................................................... 10

*In re Aspartame Antitrust Litig.*,
   817 F. Supp. 2d 608 (E.D. Pa. 2011) ............................................... 25

*In re One Infant Child*,
   No. 12 Civ. 7797 (PKC),
   2014 WL 704037 (S.D.N.Y. Feb. 20, 2014) ......................................... 21

*Innovation Ventures, LLC v. Ultimate One Distributing Corp.*,
   176 F. Supp. 3d 137 (E.D.N.Y. 2016) ............................................... 11

*Jackson v. Federal Exp.*,
   766 F.3d 189, 198 (2d Cir. 2014) ................................................... 18

*Kerin v. U.S. Postal Serv.*,
   218 F.3d 185 (2d Cir. 2000) ......................................................... 12

*Kirwan v. Kirwan*,
   No. FSTFA124023927S, 2018 WL 1177458 (Conn. Super. Ct. Feb. 5, 2018) ...... 22

*Kuzma v. Internal Revenue Service*,
   821 F.2d 930 (2d Cir. 1987) ......................................................... 24

*Lev v. New Haven Bd. of Educ.*,
   No. CV116023404S, 2014 WL 1565475 (Conn. Super. Ct. Mar. 19, 2014) ......... 22

*Lifeguard Licensing Corp. v. Kozak*,
   371 F. Supp. 3d 114 (S.D.N.Y. 2019) ................................................ 9

*Livingston v. Adirondack Beverage Co.*,
   141 F.3d 434 (2d Cir. 1998) ......................................................... 11

DEFENDANTS AND COUNTERCLAIMANTS BREITLING U.S.A., INC. AND
BREITLING SA'S (a/k/a BREITLING AG) MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS    PAGE 4 OF 27

*Lockheed Martin Idaho Techs. Co. v. Lockheed Martin Advanced Envtl. Sys.*,
  No. CV–98–316–E–BLW, 2006 WL 2095876
  2006 U.S. Dist. LEXIS 52242 (D. Idaho July 27, 2006) ........................................ 25

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
  No. 04 Civ. 5316 (RMB) (MHD),
  2007 WL 1284013 (S.D.N.Y. Apr. 24, 2007) ......................................................... 22

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
  24 F. Supp. 3d 329 (S.D.N.Y. 2014),
  *aff'd,* 811 F.3d 479 (Fed. Cir. 2016) ................................................................. 11, 12

*M Lady, LLC v. AJI, Inc.*,
  No. 06 Civ. 0194(HBP),
  2009 WL 1150279 (S.D.N.Y. Apr.29, 2009) .......................................................... 24

*Manhattan Review LLC v. Yun*,
  No. 16 Civ. 0102 (LAK)(JCF),
  2017 U.S. Dist. LEXIS 155508 (S.D.N.Y. Sept. 21, 2017) ............................... 11, 20

*Millea v. Metro-North R.R. Co.*,
  658 F.3d 154 (2d Cir. 2011) .......................................................................... 20, 21

*N. Am. Van Lines, Inc. v. N. Am. Moving & Storage, Inc.*,
  2020 WL 1130339 (N.D. Ind. Mar. 6, 2020) ......................................................... 23

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ........................................................................................... 10

*Perfect 10, Inc. v. Giganews, Inc.*,
  2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ........................................................ 23

*Pez Candy, Inc. v. Liesenfelt*,
  No. NNHCV116022017S, 2017 WL 6459816 (Conn. Super. Ct. Nov. 29, 2017).................. 22

*Pierz v. Pierz*,
  No. FSTFA980164351S, 2014 WL 4494325 (Conn. Super. Ct. July 29, 2014) ...................... 22

*Procter & Gamble Co. v. Amway Corp.*,
  280 F.3d 519 (5th Cir. 2002) .............................................................................. 20

*Prospect Capital Corp. v. Enmon*,
  No. 08 Civ. 3721 (LBS),
  2010 WL 2594633 (S.D.N.Y. June 23, 2010) ......................................................... 21

*Race Tires America, Inc. v. Hoosier Racing Tire Corp.*,
  No. 07–1294, 2011 WL 1748620
  2011 U.S. Dist. LEXIS 48847 (W.D. Pa. May 6, 2011)........................................... 25

*Reply All Corp. v. Gimlet Media, Inc.*,
   No. 15CV4950WFKPK, 2021 WL 1291103 (E.D.N.Y. Apr. 5, 2021) .................................. 11

*Robinson v. Lopez*,
   2003 WL 23162906 (C.D. Cal. Nov. 24, 2003) ........................................................................ 24

*Romanowicz v. Alister & Paine, Inc.*,
   No. 17-CV-8937 (PAE) (KHP),
   2018 WL 4762980 (S.D.N.Y. Aug. 3, 2018),
   *report and recommendation adopted*,
   2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018) ............................................................................ 22

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   776 F.2d 383 (2d Cir. 1985) ................................................................................................... 12

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
   909 F.3d 519 (2d Cir. 2018) ................................................................................................... 10

*Solid 21, Inc. v. Hublot, et al.*,
   United States District Court, Central District of California, Case No. 2:11-cv-00467-DMG-JC
   ............................................................................................................................................... 17

*Solid 21, Inc. v. Ulysse Nardin, Inc., et al.*,
   United States District Court, Southern District of Florida, Civil Case No. 19-80474 ....... 13, 16

*Toys "R" Us, Inc. v. Abir*,
   No. 97 Civ. 8673, 1999 WL 61817 (S.D.N.Y. Feb.10, 1999) ................................................. 24

*Tri-Star Pictures, Inc. v. Unger*,
   42 F. Supp. 2d 296 (S.D.N.Y. 1999) ...................................................................................... 24

*United States Bankr. v. Dorel Indus.*,
   Case No. A–08–CA–354–SS,
   2010 WL 3064007
   2010 U.S. Dist. LEXIS 78096 (W.D. Tex. Aug. 2, 2010) ....................................................... 25

*Universal Church, Inc. v. Universal Life Church/ULC Monastery*,
   No. 14-CV-5213-NRB, 2019 WL 4601741 (S.D.N.Y. Sept. 19, 2019) ................................... 12

*Yankee Candle Co. v. Bridgewater Candle Co., LLC*,
   140 F. Supp. 2d 111 (D. Mass.),
   *aff'd*, 259 F.3d 25 (1st Cir. 2001) .......................................................................................... 24

**Statutes**

15 U.S.C. § 1117(a) ................................................................................................ 8, 9, 24

28 U.S.C. § 1920(3) ....................................................................................................... 25

28 U.S.C. § 1920(4) ......................................................................................................... 25

**Rules**

Fed. R. of Civ. P. 54 ......................................................................................................... 8

Fed. R. of Civ. P. 54(d) ..................................................................................................... 9

Local Rule 54 ..................................................................................................................... 8

Local Rule 54(a) ................................................................................................................. 9

Local Rule 54(c)(2)(i) ...................................................................................................... 26

Local Rule 54(c)(2)(ii) ..................................................................................................... 25

Defendants and counterclaimants Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG) (collectively, "Breitling") respectfully move this Honorable Court under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), Fed. R. of Civ. P. 54, and Local Rule 54, for an award of prevailing party reasonable attorneys' fees and expenses it incurred in connection with its successful defense in this action, and in support of this request, would respectfully show the Court as follows:

## I.      INTRODUCTION

This is an exceptional case within the meaning of 15 U.S.C. §1117(a), and merits an award of attorneys' fees and costs under that statute and under the Court's inherent authority.  This case was beleaguered by dilatory conduct, including a failure to participate in the discovery process for months, thereafter filing multiple motions purportedly from "emergencies" of its own making, and "replacing" counsel who remained on correspondences about this case but disclaimed involvement, only to ultimately return and re-appear as counsel and later facilitate questionable marketing personally targeting Breitling's CEO.  Plaintiff many times changed course, ultimately conceding that "red gold" is in fact a metal alloy—a proposition that Plaintiff has denied all along in various filings in this Court—if only to save any claim and survive summary judgment. Plaintiff's concession demonstrates the frivolity of its claims against Breitling, which for years defended against Plaintiff's trademark claims on the grounds that "red gold" is an alloy and Breitling only ever used that term generically and descriptively for its watches made of that metal, only for Plaintiff to ultimately capitulate that Breitling's definition of "red gold" was correct. Plaintiff also offered up claims it had not pled, which relied on its concession—that red gold is a metal—against which it steadfastly fought since it first sued Breitling in 2011, and throughout the pendency of this suit in this Court.

Altogether, Plaintiff's claims were animated by its unsupported contention that its alleged "red gold" brand was famous; but when it came to proof, Plaintiff did not even bother to oppose Breitling's motion for summary judgment on Plaintiff's trademark dilution claim, which failed because Plaintiff's asserted mark was not famous as a matter of law.  Indeed, Plaintiff never proffered credible proof of damage to its alleged brand.  Rather, this case is and was always about Plaintiff's pursuit of windfall payments from Breitling and other well-known watchmakers, from whom Plaintiff sought disgorgement of profits stemming from the use of "red gold" in the generic and descriptive manner to identify and describe red gold alloy watch components, constituting fair use as a matter of law.  Alone or in combination, these actions by Plaintiff render this an exceptional case.  Breitling is therefore entitled to an award of attorneys' fees and costs under the Lanham Act, Federal Rule of Civil Procedure 54, and the Court's inherent power.

## II.      ARGUMENT & AUTHORITIES

### A.      This Motion Is Timely.

A motion seeking attorneys' fees "must … be filed no later than 14 days after the entry of judgment."  Fed. R. Civ. P. 54(d).  Local Rule 54 mandates the filing of a bill of costs within "fourteen (14) days after the District Court judgment becomes final due to the expiration of the appeal period."  D. Conn. Local Rules, Rule 54(a).  The Court entered judgment in favor of Breitling on January 27, 2022.  This Motion is therefore timely.

### B.      Standard for Fee Recovery under the Lanham Act.

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  "[A] defendant may be awarded attorneys' fees in a Lanham Act case if: (1) the defendant is the prevailing party and (2) the case is exceptional." *Lifeguard Licensing Corp. v. Kozak*, 371 F. Supp. 3d 114, 129 (S.D.N.Y. 2019).  The "exceptional" standard "demands a simple discretionary inquiry; it imposes no specific

evidentiary burden." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014) (rejecting application of a "clear and convincing evidence" standard to fees motions). Instead, a party seeking attorneys' fees under the Lanham Act must establish its entitlement to such fees by a preponderance of the evidence. *See id.* at 557-58.

As the Supreme Court explained in *Octane Fitness*, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554; *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 531 (2d Cir. 2018) (holding that Octane Fitness applies to Lanham Act cases). The Supreme Court called for district courts to be given wide latitude as they engage in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* In that "case-by-case exercise," courts may consider factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Importantly, "sanctionable conduct is not the appropriate benchmark"; a district court "may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. at 555.

"The attorneys' fee provision endeavors to afford protection to defendants against unfounded suits brought by trademark owners for harassment and the like." *IMAF, S.p.A. v. J.C. Penney Co., Inc.*, 810 F. Supp. 96, 98 (S.D.N.Y. 1992) (internal quotations and alterations omitted). "The Court must 'weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of

the burden of litigation as between winner and loser.'" *Innovation Ventures, LLC v. Ultimate One Distributing Corp.*, 176 F. Supp. 3d 137, 166 (E.D.N.Y. 2016) (quoting *Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 665 (S.D.N.Y. 2013) ).  "[C]ourts frequently look to whether the claims raised by either side were interposed for an 'improper purpose,' or whether the losing party engaged in 'deceptive litigation tactics.'" *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 46 (S.D.N.Y. 2015) (internal quotations and citations omitted).

"An action is 'frivolous' when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks omitted).  "[B]ad faith motivation" can be inferred from the assertion of allegations that are knowingly not true. *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006); *see also Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014), *aff'd,* 811 F.3d 479 (Fed. Cir. 2016) (finding a case exceptional where "the most basic pre-suit investigation" would have revealed non-infringement); *Reply All Corp. v. Gimlet Media, Inc.*, No. 15CV4950WFKPK, 2021 WL 1291103, at *3 (E.D.N.Y. Apr. 5, 2021) (finding case exceptional where plaintiff used unreasonable litigation tactics that needlessly expanded the proceedings); *Manhattan Review LLC v. Yun*, No. 16 Civ. 0102 (LAK)(JCF), 2017 U.S. Dist. LEXIS 155508, at *17-18 (S.D.N.Y. Sept. 21, 2017) (granting fees where non-prevailing party's arguments were "objectively unreasonable and frivolous"); *Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232, 241 (S.D.N.Y. 2016) *rev'd on other grounds*, 905 F.3d 1321 (Fed. Cir. 2018) (finding case "exceptional" where plaintiff asserted legal position for which "no reasonable litigant could reasonably expect success"); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 335-36 (S.D.N.Y. 2014), *aff'd*, 811 F.3d 479

(Fed. Cir. 2016) (same).

### C.    Fees Are Also Awardable under the Court's Inherent Power.

"One of the recognized common law exceptions to the American [R]ule against fee shifting is that attorneys' fees may be awarded where the party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 190 (2d Cir. 2000); *see also Universal Church, Inc. v. Universal Life Church/ULC Monastery*, No. 14-CV-5213-NRB, 2019 WL 4601741, at *3 (S.D.N.Y. Sept. 19, 2019).  A claim is brought in bad faith if it is "(1) meritless; and (2) brought for improper purposes such as harassment or delay."  *Id.* (internal footnote omitted).  "The award of fees pursuant to this exception is an exercise of a federal court's inherent equitable powers."  *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985).  "To impose sanctions under [court's inherent power], a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay."  *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000).  According to the Second Circuit:

> The appropriate focus for the court in applying the bad-faith exception to the American Rule is the conduct of the party in instigating or maintaining the litigation, for an assessment of whether there has been substantive bad faith as exhibited by, for example, its pursuit of frivolous contentions, or procedural bad faith as exhibited by, for example, its use of oppressive tactics or its willful violations of court orders.

*Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986).

### D.    Plaintiff's Conduct Justifies a Fee Award under Both the Lanham Act and the Court's Inherent Powers.

This case, originally filed on April 15, 2019, has been a series of Plaintiff's unjustified delays, lack of diligence, and unreasonable positions and litigation tactics.  Accordingly, this case should be deemed exceptional as outlined below.

1.      **Plaintiff Dallied for Months Rejecting the Notice of "Fair Use,"
Which Breitling Maintained All Along, Consistent with the USPTO's
Finding that the Purported "Red Gold" Mark Appeared to be
Generic for that Gold Metal Alloy.**

Plaintiff first filed against Breitling on January 14, 2011 (Civil Action No. 2:11-cv-00457-GAF-PLA, in the United States District Court for the Central District of California), though the matter was dismissed on October 28, 2013.  In the meantime, Plaintiff has been litigating the same trademark claims asserted in this case against other defendants.  Indeed, the claims in this case are based on the same complaint filed in the most recent of these cases—*Solid 21, Inc. v. Ulysse Nardin, Inc., et al.*, United States District Court, Southern District of Florida, Civil Case No. 19-80474—which was litigated through summary judgment and pretrial motions, all of which were pending when the case settled on the eve of trial.

When Plaintiff filed its Complaint against Breitling in this Court, Plaintiff also named CVC Capital Partners SICAV-FIS S.A. ("CVC-SIF") as a Defendant, who moved to dismiss the Complaint for lack of jurisdiction and failure to state a claim.  ECF No. 36.  Following CVC's motion to dismiss, the Court ordered Plaintiff to either "file a response to the motion or file an amended complaint in which it pleads as many facts as possible, consistent with Rule 11, to address the alleged defects discussed in [CVC-SIF's] memorandum of law." ECF No. 37.  Rather than oppose the motion or amend—and impliedly admitting it could not cure the pleading defects as to CVC-SIF, a Luxembourg company with no contacts with this forum establishing personal jurisdiction and no involvement in the alleged infringement—Plaintiff voluntarily dismissed CVC-SIF.  *See* ECF No. 36-1, CVC SIF's Memorandum of Law in Support of Motion to Dismiss; ECF No. 56, 57; *see also* ECF No. 53 at 4.

Plaintiff served its initial document requests in late 2019, and then refused or just failed to provide information on potential witnesses through all of 2020.  *See* Defendants' Opposition to

Plaintiff's Motion to Modify Scheduling Order, ECF No. 110, at 2-5.  Plaintiff's continued refusal to provide witness information resulted in the depositions not being completed until March 2021— months after Breitling had finally moved for summary judgment.  *See* Declaration of Julia K. Whitelock in Support of Defendants' Opposition to Plaintiff's Emergency Motion to Extend Time to Respond to MSJ, ECF No. 117-1 ("Whitelock Decl."), at ¶ 13.  Plaintiff finally served its first set of interrogatories on Breitling more than eighteen months after filing suit.  *Id.* at ¶ 11.  Of all the discovery Plaintiff finally conducted in the Spring of 2021, the main proposition for which Plaintiff cited any of it was to show that Defendants contended that "'Red Gold' describes a material used in parts of a watch, such as the case or bezel"—a fact hardly in dispute, since it was the crux of Defendants' Motion for Summary Judgment.  *See* Plaintiff's Motion for Summary Judgment, ECF No. 147, at 6-7; Memorandum in Support of Motion for Summary Judgment, ECF No. 107, at 7.  And in the end, the case came down to the Court's determination that Breitling's use of the term "red gold" is descriptive, consistent with the United States Patent & Trademark Office's determination in July 2020 that the term appeared to be a generic term for a gold alloy. *See* Ruling on Motion for Reconsideration, ECF 204, at 10 ("Breitling has established that its use of "Red Gold" was descriptive."); *see also* Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, ECF 107-2, at ¶ 15 ("[T]he USPTO concluded that the mark 'appears to be generic as to the material composition of [Plaintiff's] goods namely, goods made in significant part of gold including red gold.'").

### 2. Plaintiff Delayed by "Double Switching" Counsel Pointlessly and Violated the Court's Orders.

On March 17, 2020, the Court granted the Parties' joint motion to modify the deadline for disclosing the proponent's damages analysis and expert reports to May 18, 2020 and for completing discovery to August 21, 2020, in light of the COVID pandemic.  *See* ECF No. 71, 72.

The Parties' joint motion was filed the day before Plaintiff's deadline to disclose its damages analysis and expert reports, meaning that had Plaintiff been diligent, it would have at least retained experts as of that time even if their reports were not complete. But as of March 17, 2020, Plaintiff had not engaged expert witnesses. *See* Doc. 115 at 10 ("On or around January 4, 2021, undersigned counsel assisted Solid 21 in engaging three experts, which were promptly disclosed to Breitling."). On March 17, 2020, the Court granted the Parties' joint motion and modified the deadline for disclosing Plaintiff's damages analysis and expert reports to May 18, 2020 and for completing discovery to August 21, 2020. ECF No. 72.

Then, just a month later, on April 21, Mr. Hecht moved to withdraw as plaintiff's counsel. *See* ECF No. 82.  On April 24, the Court granted Mr. Hecht's motion.  ECF No. 83. As of May 18, 2020, Plaintiff had not engaged expert witnesses.  *See* ECF No. 115 at 10.  On July 15, 2020, the Parties again jointly moved to modify the Scheduling Order in light of the travel constraints due to the COVID-19 pandemic.  ECF No. 88.  Following the second joint motion, on July 16, 2020, the Court ordered that its Scheduling Order be modified, and extended the deadline to complete all discovery to March 21, 2021 and to file dispositive motions to April 21, 2021.  ECF No. 89.  The Court telephonically informed the parties that the parties should discuss and agree to expert deadlines. Whitelock Decl. ¶ 12, Exhibit 3 (ECF No. 117-5).

On July 23, 2020, counsel for the parties met and conferred on expert deadlines and deposition scheduling.  Whitelock Decl. ¶ 12.  The parties agreed to a deadline of December 18, 2020 for (1) providing damages analysis and (2) designating trial experts on issues on which the designating party bears the burden of proof.  *Id.*, Exhibit 3.  Apparently, by the third continued deadline to disclose its damages analysis and expert reports, Plaintiff had not even engaged expert witnesses.  *See* ECF No. 115 at 10.

On July 30, 2020, the Parties submitted a Joint Status Report re: Depositions (ECF No. 90), setting out an agreement to conduct seventeen depositions between September 8, 2020 and November 6, 2020.  The first of these, set for September 8, 2020, did not actually take place until September 30, 2020, and even then, only in part.  *See* ECF No. 105-2 ¶ 13; Exhibit 10; *See* Declaration of Thomas C. Blatchley, ECF No. 92-1 ("Blatchley Decl."), Exhibit 3, ECF No. 92-4. Counsel for Breitling repeatedly reached out to counsel for Plaintiff to move forward with the depositions, but received no response.  *See* Blatchley Decl., Exhibit 3.  Instead, on October 14, 2020, Plaintiff's counsel filed ***another*** Motion to Withdraw (ECF No. 91).  This was the second Motion to Withdraw in six months, and the Court, quite reasonably, denied this second motion on November 23, 2020, noting the numerous delays and lack of diligence by Plaintiff in seeking new counsel:

> ORDER: The motion to withdraw (ECF No. 91) is DENIED, both for the reasons set forth in the opposition brief filed by the defendant and because, in spite of representations made over a month ago that the plaintiff was seeking to retain new counsel (ECF No. 91-1 at para. 8), no new counsel has appeared for the plaintiff. Further, given the number of extensions of the scheduling order the Court has already permitted in this case, it is not inclined to further delay resolution of the case simply because of a recent payment dispute between the Plaintiff and its attorneys.

Order of November 24, 2020, ECF No. 93.

Notwithstanding the Court's Order, Plaintiff failed to engage in discovery and missed the agreed deadlines, including the December 18, 2020 expert deadline.  Instead, Mr. Hecht re-appeared as counsel on December 23, 2020.  *See* ECF No. 99, 101.  On January 2, 2021, two weeks after its expert designation deadline, Plaintiff provided just the names of its experts—the same experts used in a previous case involving the same exact trademarks[1]—and three days later filed a

---

[1] Plaintiff relied on the same experts in *Solid 21, Inc. v. Ulysse Nardin, Inc., et al.,* United States District Court, Southern District of Florida, Civil Case, No. 19-80474 ("*Nardin*") and *Solid 21, Inc. v. Hublot, et al.*, United States District Court, Central District of California, Case No. 2:11-

Motion to Modify the Scheduling Order.  *See* ECF No. 104.  On January 15, 2021, Plaintiff also filed an Emergency Motion for an extension of time to file its opposition to Breitling's Motion for Summary Judgment, which Plaintiff knew was forthcoming since at least October 2020.  ECF No. 107, 114; *see also* ECF No. 92 at p. 3.  Nevertheless, Plaintiff filed its Memorandum in Opposition to Breitling's Motion for Summary Judgment (ECF No. 123)—which it never sought to supplement—on January 26, 2021.

Months later, and after the close of discovery, Plaintiff decided to raise with the Court an issue about Breitling's document production dating back to October 2019, when Mr. Hecht was still representing Plaintiff the first time.  *See* ECF No. 89 (setting fact and expert discovery deadline of March 21, 2021); Order of April 5, 2021, ECF No. 135.  Though it had a firm basis to do so, Breitling opted not to object to the Magistrate's Order (ECF No. 153) and simply complied, producing fourteen years of largely irrelevant additional requested documents.  Conceding their irrelevance, Plaintiff never used nor sought leave to use these materials to oppose Breitling's summary judgment motion.  Plaintiff had multiple opportunities to use these documents—both in the three months prior to the Court's original September 27, 2021 ruling on Breitling's Motion for Summary Judgment (Dkt. 191), and then again in Plaintiff's October 20, 2021 opposition to Breitling's Motion for Reconsideration (ECF No. 203).  Instead, Plaintiff did nothing with the documents for seven months, when it finally and improperly attempted to rely on them in its Motion for Reconsideration (ECF No. 206), contravening the Court's December 10, 2021 Order instructing the Parties that "any evidence cited in the briefs must be from the existing summary judgment record."  ECF No. 205.  Indeed, when urging the Magistrate Judge to allow its untimely

---

cv-00467-DMG-JC ("*Hublot*").  *See* ECF No. 117 at p. 2.  *Nardin* was litigated through the filing of summary judgment motions and pre-trial submissions, and *Hublot* was litigated through summary judgment and appeal.  *Id.*

discovery motion regarding these additional documents, Plaintiff repeatedly argued that this supplemental production would have no impact on the case schedule or the parties' motions for summary judgment.  Breitling's Opposition to Plaintiff's Motion for Reconsideration, ECF No. 212, at 7 (citing April 19, 2021 Hrg. Tr. 2:7-24).

### 3.      After Losing on Summary Judgment, Plaintiff Finally Asserted an Argument Flatly Contradictory to Its Entire Case.

On September 27, 2021, the Court issued its Ruling on the parties' Motions for Summary Judgment, denying Plaintiff's motion in its entirety and granting Breitling's motion, in part, as to Plaintiff's dilution claim.  ECF No. 191.  In in its summary judgment Ruling, the Court noted that Plaintiff "fail[ed] to respond to Breitling's argument on the dilution claim, ECF No. 123 . . ." and concluded that Plaintiff "has abandoned this claim."  ECF No. 191 at 26-27 (citing *Jackson v. Federal Exp.,* 766 F.3d 189, 198 (2d Cir. 2014) (stating that "a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned")).

On October 4, 2021, Breitling filed its Motion for Reconsideration as to the specific issues of "descriptive use" and "good faith" elements of fair use.  ECF No. 195.  Plaintiff filed an opposition on October 20, 2021, which did not present the arguments or evidence in its possession that Plaintiff raised in its own motion for reconsideration.  ECF No. 199.  Breitling filed its reply on October 26, 2021, ECF No. 203.  The Court entered its order granting Breitling's motion for reconsideration on December 10, 2021, and ordered the Parties to brief the effect of fair use on Plaintiff's remaining claims.  ECF No. 204, 205.  On December 18, 2021, Plaintiff filed its Motion for Reconsideration based not on any new evidence, but on depositions taken in March 2021, documents it has had in its possession for six months at a minimum, and Plaintiff's expert report dated February 2021.  ECF No. 206.

In response to the Court's order to the Parties to brief the question of whether its summary judgment ruling on fair use should extend to all remaining claims, Plaintiff improperly switched tacks, asserting a new, previously-unpled claim that completely contradicted a position it had staked out forcefully throughout this litigation.  Specifically, Plaintiff argued it had a claim for false advertising that should survive summary judgment, based on the idea that Breitling was falsely advertising rose gold watches as "red gold."  *See* ECF No. 210 at 3 ("Breitling advertises their watches as 'Red Gold' even though they are actually made of 'Rose Gold.'").  Aside from the fact that this clearly was not pled in its Complaint, Plaintiff had spent the rest of the case arguing that it is a "fact" that "red gold" is not a 'material.'"  *See*, *e.g.*, Plaintiff's Opposition to Breitling's Motion for Summary Judgment, ECF No. 123, at 28.  The basis of Plaintiff's claims in this case is and has always been Breitling's alleged infringement of the so-called trademark "red gold," which Plaintiff had repeatedly maintained does not refer to a metal material of which the watches at issue are made, and therefore, cannot, according to Plaintiff, be generic or descriptive.  Indeed, in opposing Breitling's summary judgment motion, Plaintiff had not only decried the definition of red gold as being a metal alloy, it had also maintained that "rose gold" is an alternative descriptive term for that material, which is a position completely, and flatly, contrary to their revised argument regarding false advertising that is necessarily based on Plaintiff's concession that "red gold" *is* a material.  And, of course, this wholly-new false advertising claim had never been mentioned once in any of Plaintiff's summary judgment filings, including its opposition to Breitling's summary judgment motion (ECF No. 123) and Plaintiff's own cross-motion for summary judgment (ECF No. 147).

### 4. Plaintiff's Counsel Instigated a Ferocious Marketing against Breitling.

Plaintiff's counsel set into motion certain marketing that, among other things, touted a discovery ruling out of context, and described Breitling's president as having been "accused of

being homophobic" and as "lik[ing] to 'take risks.'"  *See* Declaration of Craig J. Mariam, ECF No. 163-2, Ex. C.  The article first appeared on the EUR/Electronic Urban Report (ww.eurweb.com) website with the attribution "source: Hecht Partners," though Plaintiff's counsel quickly had the attribution changed after the article was brought to the attention of the proposed mediator in this case.  *See id.*, at ¶ 6; *see also* Hecht Decl., ECF No. 172-1, at ¶ 24.  Counsel for Plaintiff admitted that he assembled a variety of documents, including article links, along with a transcript and supplied them to a public relations firm, who served as a conduit between counsel's firm and the article's publishers. *See* Hecht Decl., ECF No. 172-1, at ¶¶ 20, 24.

### E. Breitling Is Entitled to Recover Its Fees for All Asserted Claims.

A prevailing party may recover total attorneys' fees incurred in litigation containing both Lanham Act and non-Lanham Act claims if the "claims are so intertwined that it is impossible to differentiate between."  *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000); *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002); *Manhattan Review LLC v. Yun*, 765 F. App'x 574, 578 (2d Cir. 2019) (hours expended on non-compensable state law claims were "intertwined with work on the Copyright and Lanham Act claims, and … therefore compensable.") (citing *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 168 n.4 (2d Cir. 2011) ("Hours spent on legal work that furthers both fee-shifting and non-fee shifting claims [are compensable] because they would have been expended even if the plaintiff had not included non-fee-shifting claims in his complaint.")).

Here, the Court concluded that all of Plaintiff's claims were "either trademark infringement claims or wholly derivative of trademark infringement claims," and therefore granted summary judgment as to all of Plaintiff's claims.  Order of January 24, 2022, ECF No. 218, at 4.  Breitling is therefore entitled to recover its reasonable attorneys' fees as to all of Plaintiff's claims.

**F.      The Amount of Fees Breitling Seeks Is Reasonable.**

The calculation of a reasonable fee is within the district court's discretion.  *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  The inquiry into reasonableness in the context of attorneys' fees centers on the lodestar, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (the lodestar creates a "presumptively reasonable fee") (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  To determine reasonable hourly rates, courts engage in:

> [A] case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.  This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.

*Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005).  Considerations relevant to determining the reasonable fee include: "(1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained (to the extent known)."  *Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13 Civ. 230 (RPP), 2014 WL 3866090, at *3 (S.D.N.Y. Aug. 6, 2014); *see also In re One Infant Child*, No. 12 Civ. 7797 (PKC), 2014 WL 704037, at *2 (S.D.N.Y. Feb. 20, 2014) (same; citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008)).  To determine whether the number of hours billed is reasonable, "[t]he court looks at the amount of time spent on each category of tasks, as documented in the timekeeping records, and whether these hours were 'reasonably expended.'"  *Prospect Capital Corp. v. Enmon*, No. 08 Civ. 3721 (LBS), 2010 WL 2594633, at *4 (S.D.N.Y. June 23, 2010) (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316

(RMB) (MHD), 2007 WL 1284013, at *1 (S.D.N.Y. Apr. 24, 2007)).

Here, the total hours—5,180—spent over the period of nearly two years, is reasonable. There were two motions for summary judgment; multiple motions for reconsideration; disputes over whether attorneys should be allowed to withdraw, sanctions, and discovery; over 500,000 pages of documents produced; and fifteen depositions.  *See* Declaration of Craig J. Mariam ("Mariam Decl.") ¶¶ 4-5, Exhibit A; *see also* Declaration of Michael R. Heimbold ("Heimbold Decl."), ¶¶ 9, 11, 13, Exhibit A.

Gordon Rees's hourly rates have been significantly reduced in this case as a client courtesy—$235-$245 for associates and $290-$325 for partners—are also reasonable and actually significantly below rates approved by courts in recent years.  *See* Mariam Decl. ¶¶ 4-5; *see, e.g.*, *Kirwan v. Kirwan*, No. FSTFA124023927S, 2018 WL 1177458, at *5 (Conn. Super. Ct. Feb. 5, 2018) (approving as reasonable fees "billed at an hourly rate of $500 per hour"); *Pez Candy, Inc. v. Liesenfelt*, No. NNHCV116022017S, 2017 WL 6459816, at *3 (Conn. Super. Ct. Nov. 29, 2017) (approving as reasonable the "combined rate of approximately $514 per hour charged by plaintiff's counsel"); *Pierz v. Pierz*, No. FSTFA980164351S, 2014 WL 4494325, at *8 (Conn. Super. Ct. July 29, 2014) (attorneys' fees billed at $650 per hour are reasonable); *Lev v. New Haven Bd. of Educ.*, No. CV116023404S, 2014 WL 1565475, at *1 (Conn. Super. Ct. Mar. 19, 2014) ("An hourly professional attorney rate in the sum of $500 per hour regarding Mr. Williams is reasonable here."); *see also Romanowicz v. Alister & Paine, Inc.*, No. 17-CV-8937 (PAE) (KHP), 2018 WL 4762980, at *7 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018) (collecting cases where courts have awarded up to $500 for partners in trademark cases); *Crestmont Capital, LLC v. P.A.R. Consulting, LLC, et al.*, 2020 WL 6528418, at *3 (C.D. Cal. Sept. 17, 2020) (approving of hourly rates ranging from $360 to $695); *N. Am.*

*Van Lines, Inc. v. N. Am. Moving & Storage, Inc.*, 2020 WL 1130339, at *2 (N.D. Ind. Mar. 6, 2020) (acknowledging that "$400 is presumptively appropriate as the market rate for partner work in this trademark infringement action"); *Craig v. Popmatters Media, Inc.*, 448 F. Supp. 3d 844, 849 (N.D. Ill. 2020) (noting that hourly rates of $425 and $250 in intellectual-property matters were reasonable where one of the attorneys submitted "evidence that in 2013, one of his clients was awarded fees at the hourly rate of $409.00, [his] standard rate at the time, in an action in the Southern District of Illinois…"); *Coach Inc. v. Just A Boun, LLC*, No. 6:11-cv-797-Orl-18GJK, 2011 WL 6318966, at *6 (M.D. Fla. Nov. 8, 2011), *report and recommendation adopted*, 2011 WL 6328696 (M.D. Fla. Dec. 15, 2011) (in default judgment trademark case, finding $375.00 per hour reasonable).  Sheppard Mullin's rates are also reasonable and based on prevailing market rates accepted by courts.  *See, e.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *20-21 (C.D. Cal. Mar. 24, 2015) (finding reasonable hourly fees in intellectual property case for partners from $610 to $930, and for associates from $360 to $690).

Given the reasonableness of the total hours spent and the rates, the total figure billed—$1,481,148.21—is also reasonable.  *See* Mariam Decl. ¶ 5; Heimbold Decl. ¶ 13.  Furthermore, this case was managed efficiently and economically.  Mariam Decl. ¶ 4; *see also* Heimbold Decl. ¶¶ 5-9.  The case was leanly staffed by attorneys with experience in intellectual property litigation.  Mariam Decl. ¶ 4; *see also* Heimbold Decl. ¶¶ 5-9.  There was little to no duplication of efforts.  Mariam Decl. ¶ 4.  Defense counsel reviewed the bills in the normal course and reduced or excluded any duplicative, unproductive, or excessive hours prior to sending them to the client.  *Id.* at ¶ 4; Heimbold Decl. ¶ 10.  To date, Breitling has paid $1,454,283.21, which is a strong indication of the reasonableness of the fees.  Mariam Decl. ¶ 5; Heimbold Decl. ¶13; *see, e.g.*, *Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*, 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002)

("[N]egotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market."); *Robinson v. Lopez*, 2003 WL 23162906, at *3 (C.D. Cal. Nov. 24, 2003) ("The actual billing arrangement provides a strong indication of what private parties believe a 'reasonable' fee would be") (citation omitted).

### G.    Breitling Is Entitled to Recover Its Costs.

"The Lanham Act also provides for the award of costs in all cases." *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999) (citing 15 U.S.C. 1117(a)); *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 140 F. Supp. 2d 111, 126 (D. Mass.), *aff'd*, 259 F.3d 25 (1st Cir. 2001) (awarding costs under Section 1117(a) to prevailing defendant).  "Out of pocket litigation costs are generally recoverable if they are necessary for the representation of the client." *Tri–Star Pictures*, 42 F.Supp.2d at 306.  "[R]outine costs awarded to prevailing parties in trademark and copyright infringement actions" include:

> [F]iling fees; … fees for service of the summons and complaint and a subpoena; … fees for court reporters and transcripts; … copying fees; … legal research fees; … travel expenses; [the costs of] a certificate of good standing; [the costs of a] pro hac vice admission; and… postage.

*GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08 CIV. 6030 (GEL), 2009 WL 2150891, at *10 (S.D.N.Y. July 20, 2009) (citing *M Lady, LLC v. AJI, Inc.*, No. 06 Civ. 0194(HBP), 2009 WL 1150279, at *10 (S.D.N.Y. Apr.29, 2009) (awarding reproduction costs, travel expenses, service of process fees, trademark searches, and trademark investigator costs in copyright infringement action); *Ahava v. J.W.G., Ltd.*, 286 F.Supp.2d 321, 325 (S.D.N.Y.2003) (awarding LEXIS charges, correspondence fees, translation fees, and other miscellaneous expenses in trademark infringement action)); *see also Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933–34 (2d Cir. 1987) (permitting photocopying, telephone, travel, and postage expenses); *Toys "R" Us, Inc. v. Abir*, No. 97 Civ. 8673, 1999 WL 61817, at *5 (S.D.N.Y. Feb.10, 1999) (awarding costs for photocopying,

messenger services, telecopier, and local transportation). Awardable costs also include e-discovery costs, including creating and maintaining a litigation database, and processing and hosting electronic data. *In re Aspartame Antitrust Litig.*, 817 F. Supp. 2d 608, 614–16 (E.D. Pa. 2011) (awarding electronic discovery database costs requested under 28 U.S.C. § 1920(4)) (citing *Race Tires America, Inc. v. Hoosier Racing Tire Corp.,* No. 07–1294, 2011 WL 1748620, at *8–10, 2011 U.S. Dist. LEXIS 48847, at *26–30 (W.D. Pa. May 6, 2011) (awarding costs for creating a litigation database, imaging hard drivers, scanning documents, processing and indexing data, extracting metadata, and enabling documents to be OCR searchable); *United States Bankr. v. Dorel Indus.,* Case No. A–08–CA–354–SS, 2010 WL 3064007, at *3–4, 2010 U.S. Dist. LEXIS 78096, at *11–14 (W.D. Tex. Aug. 2, 2010) (granting costs under § 1920(3) for the creation of an electronic database); *Lockheed Martin Idaho Techs. Co. v. Lockheed Martin Advanced Envtl. Sys.,* No. CV–98–316–E–BLW, 2006 WL 2095876, at *2, 2006 U.S. Dist. LEXIS 52242, at *8 (D. Idaho July 27, 2006) (awarding costs under § 1920(4) for a litigation database necessary for complex case and voluminous documents)); *see also United States Bankr.v. Dorel Indus.,* No. A–08–CA–354, 2010 WL 3064007, at *4, 2010 U.S. Dist. LEXIS 78096, at *13–14 (W.D. Tex. Aug. 2, 2010) (costs of creation of an electronic database in lieu of "printing out thousands of pages of documents which would have otherwise been required in response to Plaintiffs' discovery request" was an appropriate cost).

Moreover, Local Rule 54(c)(2)(ii) expressly allows the recovery of the costs of deposition transcripts "[i]f used in support of a successful motion for summary judgment, or if they are necessarily obtained for the preparation of the case and not for the convenience of counsel." The record on the parties' cross-motions for summary judgment and motions for reconsideration cite to the deposition transcripts of the parties' respective witnesses, and the transcripts were

necessarily obtained for the preparation of the case.  Similarly, in various filings with Court, including the reconsideration motions on which Breitling prevailed, the parties cite to the transcripts of the discovery hearings before the Magistrate Judge, and such transcripts were therefore "necessarily obtained for use in the case."  Local Rule 54(c)(2)(i) ("The cost of the original and one copy of … transcripts of pre-trial proceedings, and the cost of postage required for the court reporter to file the transcripts with the Court are taxable … if necessarily obtained for use in the case.").

The following table is a summary of the costs incurred in this matter:

| Description | Total |
|---|---|
| Copy Services | $365.55 |
| Courier Fees | $947.08 |
| Court Reporter Appearance Fees | $395.00 |
| Demonstrative Exhibits | $204.38 |
| Deposition Transcripts | $29,013.95 |
| ESI Hosting Fees | $1439.11 |
| Filing Fees | $225.00 |
| International Telephone Charges | $77.06 |
| Legal Research Charges | $252.00 |
| PACER Charges | $68.70 |
| Process Server (Third Party Subpoenas) | $9,051.50 |
| Subpoena Fees | $45.00 |
| Transcripts of Court Hearings | $218.68 |
| **Total** | $42,303.01 |

Mariam Decl. ¶¶ 7-8, Exhibit B; Heimbold Decl. ¶¶ 14-15.  The above are reasonable costs of the sort routinely awarded to the prevailing parties in trademark matters.  Breitling is therefore entitled to recover these costs.

/ / /

/ / /

### III.    CONCLUSION

For each of the above and foregoing reasons, Defendants and Counterclaimants Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG) respectfully request that the Court find this case to be exceptional under the Lanham Act and award them their reasonable and necessary attorneys' fees and costs.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By  _/s/ Craig J. Mariam_____
     Thomas C. Blatchley (ct25892)
     Craig J. Mariam (*pro hac vice*)
     Hazel Mae B. Pangan (*pro hac vice*)
     95 Glastonbury Blvd., Ste. 206
     Glastonbury, CT 06033
     Phone: (860) 494-7525
     Fax: (860) 560-0185
     Email: tblatchley@grsm.com

     Attorneys for Defendants and Counterclaimants
     Breitling U.S.A., Inc. and
     Breitling SA (a/k/a Breitling AG)

### <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on February 10, 2022, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.

By  _/s/ Craig J. Mariam_____
     Craig J. Mariam

1198309/64771759v.1

DEFENDANTS AND COUNTERCLAIMANTS BREITLING U.S.A., INC. AND
BREITLING SA'S (a/k/a BREITLING AG) MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS          PAGE 27 OF 27