UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOLID 21, INC., <br><br>     Plaintiff, <br><br>     v. <br><br> BREITLING U.S.A., INC.; BREITLING SA; AND BREITLING AG, <br><br>     Defendants. | Civil Action No. 3:19-cv-00514-MPS |

**PLAINTIFF SOLID 21, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR <u>ATTORNEYS' FEES AND COSTS</u>**

**Oral Argument Requested**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    LEGAL STANDARD ..........................................................................................2

III.   BREITLING FAILS TO IDENTIFY ANY CONDUCT BY SOLID 21 THAT WOULD
       RENDER THIS AN "EXCEPTIONAL CASE" ...................................................4

IV.    ADDITIONAL FACTORS WEIGH HEAVILY AGAINST IMPOSING FEES ..............9

V.     BREITLING FAILS TO SHOW THAT ITS CLAIMED ATTORNEYS' FEES ARE
       REASONABLE..................................................................................................11

VI.    BREITLING'S BILL OF COSTS IS PREMATURE AND DEFECTIVE ......................14

VII.   CONCLUSION ..................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baker Botts L.L.P. v. ASARCO LLC*,
  576 U.S. 121 (2015) ................................................................................................. 2

*Ceraso v. Motiva Enters., L.L.C.*,
  No. Civ. 3:01CV193 PCD, 2002 WL 32175199 (D. Conn. May 28, 2002) ........................... 14

*East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
  No. 12-cv-517-LM, 2015 WL 4603463 (D.N.H. July 30, 2015) ....................................... 4, 15

*Eliya, Inc. v. Steven Madden, Ltd.*,
  No. 15-cv-1272, 2019 WL 4593451 (E.D.N.Y. Sept. 23, 2019) ........................................ 3

*F. D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*,
  417 U.S. 116 (1974) ................................................................................................. 2

*Graduation Solutions, LLC v. Acadima, LLC*,
  No. 3:17-CV-1342 (VLB), 2020 WL 1528082 (D. Conn. Mar. 30, 2020) ....................... 5, 6, 7

*Hnot v. Willis Group Holdings Ltd.*,
  No. 01 Civ. 6558(GEL), 2008 WL 1166309 (S.D.N.Y. Apr. 7, 2008) ................................. 12

*KX Techs., LLC v. Zuma Water Filters, Inc.*,
  3:16-cv-01433, 2018 WL 3302589 (D. Conn. July 5, 2018) ........................................... 13

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
  14-CV-3419 (JMF), 2018 WL 317850 (S.D.N.Y. Jan. 8, 2018), *aff'd*, 764 F.
  App'x. 39 (2d Cir. 2019) ..................................................................................... 5, 10, 11

*Malaco Leaf, AB v. Promotion in Motion, Inc.*,
  287 F. Supp. 2d 355 (S.D.N.Y. 2003) ......................................................................... 10

*Manufacturers Techs., Inc. v. Cams, Inc.*,
  728 F. Supp. 75 (D. Conn. 1989) ............................................................................... 13

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ............................................................................................... 3, 4

*Osterweil v. Bartlett*,
  92 F. Supp. 3d 14 (N.D.N.Y. 2015) ............................................................................ 13

*Penshurst Trading Inc. v. Zodax L.P.*,
  652 F. App'x. 10 (2d Cir. 2016) ................................................................................. 3

*Raspberry Junction Props., LLC v. Edwards Family P'ship, LP*,
No. 3:18-cv-01243-AWT, Dkt. No. 115 (D. Conn. Jan. 5, 2022)...........................................14

*RBC Nice Bearings, Inc. v. Peer Bearing Co.*,
No. 06-cv-1380 (TLM), 2010 WL 1960400 (D. Conn. May 14, 2010)..................................10

*RTR Techs., Inc. v. Helming*,
707 F.3d 84 (1st Cir. 2013)..................................................................................................4

*Schieffelin & Co. v. Jack Co. of Boca, Inc.*,
850 F. Supp. 232 (S.D.N.Y. 1994) .....................................................................................11

*Seong Soo Ham v. Sushi Maru Express Corp.*,
736 F. App'x. 19 (2d Cir. 2018) .........................................................................................12

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
909 F.3d 519 (2d Cir. 2018) ................................................................................................3

*Solid 21, Inc. v. Breitling USA, Inc.*,
512 F. App'x. 685 (9th Cir.2013)..........................................................................................2

*Solid 21, Inc. v. Hublot of America*,
685 F. App'x. 530 (9th Cir. 2017).........................................................................................2

*Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC*,
17-CV-5807 (SJF) (SIL), 2020 WL 6146617 (E.D.N.Y. Oct. 20, 2020), *aff'd*,
No. 20-3912-cv, 2022 WL 275378 (2d Cir. Jan. 31, 2022).............................................*passim*

*Universal Church, Inc. v. Universal Life Church/ULC Monastery*,
No. 14 Civ. 5213, 2019 WL 4601741 (S.D.N.Y. Sept. 19, 2019)..........................................9

*Zuppardi's Apizza, Inc. v. Tony Zuppardi's Apizza, LLC*,
No. 3:10-CV-01363 (RNC), 2014 WL 4841085 (D. Conn. Sept. 29, 2014)...........................9

**Statutes**

15 U.S.C. § 1117(a).........................................................................................................*passim*

**Rules**

Fed. R. App. P. 4(a)(1) ......................................................................................................14

Fed. R. App. P. 34 ..............................................................................................................6

Local Rule 54...............................................................................................................14, 15

**Other Sources**

AIPLA Report of the Economic Survey 2021 ......................................................................14

I.       **INTRODUCTION**

The Lanham Act's attorneys' fee provision is not meant to punish a losing party, or provide a windfall to a prevailing party, in a run-of-the-mill trademark case.  Rather, it confers discretion upon a district court to award fees in an "exceptional case" that stands out from others, whether with respect to the strength of a party's position or to the unreasonable manner in which it was litigated.

Rather than attempt to demonstrate that Plaintiff Solid 21, Inc. ("Plaintiff" or "Solid 21") conducted this case in an unreasonable manner or that there was objectively no merit to this case, Defendants Breitling U.S.A., Inc. and Breitling SA (collectively, "Defendants" or "Breitling") instead use this as an opportunity to rehash arguments that they already lost.  Primarily, Breitling attempts to paint the innocuous fact that Solid 21 changed counsel in 2020 to somehow indicate objectively unreasonable conduct.  But this Court concluded just the opposite in granting Solid 21's motion to compel when it concluded that Solid 21 was diligent in its pursuit of discovery when its current counsel resumed representation of Solid 21 in early 2021.  Likewise, what Breitling styles as a  "ferocious marketing campaign" that Solid 21's counsel engaged in was merely the provision to a public relations firm of a few publicly available documents and links to old articles that anyone could find instantly with a simple Google search.  This Court previously denied Breitling's sanctions motion on this very topic, so it is unclear why Breitling chooses to re-raise this here.

While re-hashing old claims, Breitling ignores that this was a *close* case and far from objectively meritless.  Indeed, Breitling is only able to file this motion because while the Court initially ruled in Solid 21's favor on denying summary judgment to Breitling on the validity of the at-issue RED GOLD® trademark and Breitling's fair use defense, the Court later reversed itself on reconsideration and ruled in Breitling's favor only on the latter issue.  It should thus

1

come as no surprise that Solid 21 filed a notice of appeal (Dkt. No. 222); it has previously

prevailed on appeal in cases involving the RED GOLD® mark against Breitling (*Solid 21, Inc. v.*

*Breitling USA, Inc.*, 512 F. App'x. 685, 686-87 (9th Cir.2013) ("*Solid 21-Breitling I*")) and

Hublot of America (*Solid 21, Inc. v. Hublot of America*, 685 F. App'x. 530, 532 (9th Cir. 2017)

("*Solid 21-Hublot*")).  While success on appeal will moot this motion, even at this time Breitling

has fallen far short of meeting its burden in proving that it is entitled to attorneys' fees.

Breitling's fee motion is defective for another reason: its attorney time entries are entirely

redacted.  While these redactions are ostensibly to protect privileged or confidential information,

it is implausible that the entirety of these entries are subject to protection.  Breitling makes no

attempt to disclose any of the contents of these entries, depriving Solid 21 of any meaningful

opportunity to object to what is contained therein.  Breitling has thus failed to demonstrate that

its attorney time entries are reasonable.

Finally, Breitling's bill of costs – while also defective – is more significantly premature

as this Court's rules require that it should have been filed after the time for appeal expired or a

mandate is issued, neither of which has occurred in this case.

For the following reasons, Solid 21 respectfully requests that the Court deny Breitling's

motion for fees and costs in its entirety

## II.     LEGAL STANDARD

The general rule in American litigation is that the parties bear their own attorneys' fees.

*F. D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 126 (1974); *see*

*also Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) ("Our basic point of

reference when considering the award of attorney's fees is the bedrock principle known as the

American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or

contract says otherwise.").  Under the Lanham Act, a court may award reasonable attorney fees

to the prevailing party in "exceptional cases."  15 U.S.C. § 1117(a).

In considering what it means to be an "exceptional case," the Second Circuit has adopted the framework outlined in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), where the Supreme Court considered the meaning of "exceptional case" under the Patent Act's attorneys' fees provision.  *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530-31 (2d Cir. 2018).  Under the Lanham Act, an "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Id.* (quoting *Octane Fitness*, 572 U.S. at 554).  Merely failing to prevail on the merits does not give rise to an "exceptional case."  *Penshurst Trading Inc. v. Zodax L.P.*, 652 F. App'x. 10, 12 (2d Cir. 2016).  Rather, a court should consider the totality of the circumstances and a variety of factors when considering whether such a case "stands out from others" so as to warrant an imposition of fees.  *Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC*, 17-CV-5807 (SJF) (SIL), 2020 WL 6146617, at *2 (E.D.N.Y. Oct. 20, 2020) ("*Greenberg I*"), *aff'd*, No. 20-3912-cv, 2022 WL 275378, at *1-2 (2d Cir. Jan. 31, 2022) (citations omitted). Such factors can include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Sleepy's LLC*, 909 F.3d at 530 (quoting *Octane Fitness*, 572 U.S. at 554 n.6).  A party seeking attorneys' fees under the Lanham Act bears the burden of establishing its entitlement to fees by a preponderance of the evidence.  *Greenberg I*, 2020 WL 6146617, at *2 (citing *Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-cv-1272, 2019 WL 4593451, at *2 (E.D.N.Y. Sept. 23, 2019)).

Under the court's inherent power, it may award fees when a party has acted in bad faith,

vexatiously, wantonly, or for oppressive reasons. *East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-cv-517-LM, 2015 WL 4603463, at *2 (D.N.H. July 30, 2015) (quoting *RTR Techs., Inc. v. Helming*, 707 F.3d 84, 94 (1st Cir. 2013)) (internal quotation marks omitted). A party seeking such fees must make such a showing by clear and convincing evidence. *Id.* (citations omitted). A district court should exercise this inherent power cautiously, sparingly, and reserve it for egregious circumstances. *Id.* (citations omitted). If a party fails to make a showing that a case is "exceptional" under the *Octane Fitness* standard, it would necessarily not be entitled to an award of fees pursuant to the court's inherent power as well. *Id.* at 3.

## III.   BREITLING FAILS TO IDENTIFY ANY CONDUCT BY SOLID 21 THAT WOULD RENDER THIS AN "EXCEPTIONAL CASE"

Breitling recycles baseless complaints about Solid 21's alleged "conduct" that has already been thoroughly addressed by this Court. The Court has already rejected Breitling's contentions on these issues and none of them come close to the sort of conduct that would give rise to an "exceptional case" under the Lanham Act.

First, Breitling somehow concludes that Solid 21's "double switching" of counsel was somehow objectionable behavior. Dkt. No. 220-1 ("Mot.") at 14-17. The Court has exhaustively addressed these circumstances *twice*: first in a detailed oral decision granting Solid 21's motion to compel discovery (Dkt. No. 155 at 18:25 – 20:17), and again in its written decision rejecting Breitling's baseless motion for sanctions (Dkt. No. 186 at 8-12). These are summarized as follows. In late 2019 and early 2020, Solid 21 was engaged in a RED GOLD® trademark litigation with defendant Ulysse Nardin in the Southern District of Florida. Because that case was proceeding full steam ahead (with trial set for early 2020), with counsel in that case being the same counsel in this one for both sides, along with the outbreak of COVID-19, the parties filed joint motions to extend the scheduling order in this case. *See* Dkt. No. 155 at 23:1 –

4

24:6.  Attorney Hecht, who was at the time part of the Pierce Bainbridge law firm and represented Solid 21, made preparations to leave that firm in early 2020 and another attorney from that firm took over the representation of Solid 21 in this case from that point forward.  *Id.* at 23:17-24.  The Court observed that "not much occurred in this case throughout the rest of 2020." *Id.* at 23:25 – 24:2.  In October 2020, Pierce Bainbridge's motion to withdraw from this case was denied, though the Court granted a motion for substitute counsel when Attorneys Hecht and Wu (both of whom previously represented Solid 21 in this case before they departed the Pierce Bainbridge firm earlier in 2020) reappeared in this case on behalf of Solid 21 in early 2021 (at a different law firm).  *Id.* at 24:7–20.  The Court observed that "there was obviously disagreement between – or at least some difficulties between [Solid 21] and their [Pierce Bainbridge] counsel for that 60-day period."  *Id.* at 24:11-16.

The Court observed that upon Attorney Hecht's reappearance in this case, Solid 21 was diligent in pursuing discovery, including conducting depositions and exchanging expert disclosures.  *Id.* at 25:8-21.  Solid 21's diligence is the exact opposite of the sort of conduct that might give rise to an "exceptional case."  *See Graduation Solutions, LLC v. Acadima, LLC*, No. 3:17-CV-1342 (VLB), 2020 WL 1528082, at *2 (D. Conn. Mar. 30, 2020) (declining to award attorneys' fees where there was no finding of litigation misconduct); *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 14-CV-3419 (JMF), 2018 WL 317850, at *3 (S.D.N.Y. Jan. 8, 2018) ("*Louis Vuitton I*"), *aff'd*, 764 F. App'x. 39, 41-42 (2d Cir. 2019) (rejecting claim that plaintiff's conduct was objectionable).

It is odd that Breitling complains of Solid 21's litigation conduct when its own was far worse.  The Court's oral decision was necessitated by Solid 21's successful motion to compel discovery.  Here, the Court concluded that Breitling failed to comply with Rule 34 in their

written discovery responses (Dkt. No. 155 at 21:20 – 22:20) and further found that Breitling

shirked its discovery obligations when it neglected to produce or even search for responsive

documents:

> The one thing that stood out to me as missing from those cases, or at least was not present in those rulings, were situations where the defendants themselves also did not comply with the discovery rules thereby contributing to the problem and where they may not be able to necessarily claim undue prejudice as a result of their own conduct.
>
> I find it disturbing that the [Breitling] Defendants never undertook a search for responsive electronically stored information despite what the local rules for the District of Connecticut define as electronically stored information and communications, as I mentioned earlier.
>
> I also find it troubling that there was never any mention made, despite the objections and the invocation of privilege, of a privilege log or whether there existed responsive documents.  I certainly agree with Attorney Pangan that experienced counsel like Mr. Hecht and Mr. Kennedy might have surmised that there must be documents that hadn't been produced, but that's not the way our discovery rules are set up for counsel to have to surmise that.  The rules require explicitly that documents that exist and are being withheld be specified and that a privilege log, if privilege is being claimed, be prepared and submitted to opposing counsel.  That was not done in this case, and it was never done in response to Request for Production No. 1.

*Id.* at 26:22 – 27:20.

On top of this, Breitling complains of issues that arise from its own conduct.  Breitling's

insinuations that it was somehow problematic that its summary judgment motion was filed

before depositions were completed (*see* Mot. at 14) is bizarre in view of the fact that Breitling

intentionally chose to file its summary judgment motion early.  At the time, that motion was not

due until April 21, 2021, while Breitling chose to file it on January 5, 2021.  Dkt. Nos. 89, 107;

*see also* Dkt. No. 206 at 3.  It has not escaped Solid 21's attention that this motion was timed to

coincide with Solid 21's replacement counsel re-entering the case in late 2020/early 2021.  Be

that as it may, Breitling's own questionable conduct with regard to shirking its discovery

obligations and creating problems of its own making are a far cry from rendering this case "exceptional" in such a way as to entitle Breitling to a massive attorneys' fee windfall. *See Greenberg I*, 2020 WL 6146617, at *4 (defendant failed to establish that plaintiff's conduct was objectively unreasonable or exceptional in view of the court's determination that defendant's own litigation conduct may have been worse).

Breitling again resurrects already rejected arguments by complaining about Solid 21's so-called "ferocious marketing" campaign. Mot. at 19-20. This has already been extensively briefed and argued by the parties in Breitling's sanctions motion. *See generally* Dkt. Nos. 163, 172, 186. This Court's detailed decision on this topic rejected Breitling's contention that this "ferocious marketing campaign" was sanctionable, which merely consisted of Solid 21's counsel supplying publicly available documents to a public relations firm and hyperlinks to old articles that "accurately set forth either the title or some content of its articles." *See* Dkt. No. 186 at 3-8, 5.[1] Accordingly, this in no way qualifies as conduct that turns this case into an "exceptional" one. *See Graduation Solutions*, 2020 WL 1528082, at *2 (D. Conn. Mar. 30, 2020) (declining to award attorneys' fees where there was no finding of litigation misconduct).

The other issues that Breitling raises are much ado about nothing and fall far short of the type of "objectionable" conduct that gives rise to fees. Breitling attempts to read much more into Solid 21's dismissal of former Defendant CVC Capital Partners SICAV-FIS S.A. ("CVC") early on from this litigation, but completely ignores its former counsel's admission that this dismissal

---

[1] Underscoring how baseless Breitling's claims were in this sanctions motion, which it repeats here (Mot. at 19-20), at oral argument Breitling resorted to concocting an entirely new theory of why Solid 21's "ferocious marketing campaign" was "sanctionable" conduct that was nowhere to be found in its briefing. *See* Dkt. No. 184 at 20:24 – 26:10. The Court generously permitted Breitling additional time to uncover support for this novel theory. *Id.* at 26:20 – 29:19. Unsurprisingly, Breitling failed to find any. *See generally* Dkt. No. 182 (no on-point case supporting Breitling's eleventh-hour theory found in its supplemental memorandum).

was "negotiated" by the parties.  *See* Dkt. No. 220-2 (Heimbold Decl.), ¶ 9 (prior counsel for Breitling acknowledging that he negotiated a dismissal of CVC).  If anything, this negotiated resolution lead to *less* litigation, not *more*.

Further, Breitling's claim that Solid 21 asserted an argument contradictory to its case is not only wrong, but replete with blatant misrepresentations.[2]  First, Solid 21's reconsideration motion was not a response to this Court's order to brief the applicability of its fair use decision on the remaining claims, as Breitling falsely claims (Mot. at 19), but moved this Court to reconsider its decision reversing its earlier summary judgment decision on fair use in Solid 21's favor.  *See* Dkt. No. 206 at 1-2; *see also* Dkt. No. 210 at 1 (Solid 21's response to this Court's order regarding the remaining claims (Dkt. No. 205) would come in a separate filing).

More to the point, nothing about Solid 21's reconsideration filing indicates that it conceded that RED GOLD® describes a material, as Breitling wrongly claims.  Mot. at 19.  Rather, much of Solid 21's reconsideration motion was focused on the fact that Breitling's additional production – which it produced only upon compulsion – demonstrated that its use of RED GOLD® was misleading to consumers and could not have been used to accurately describe the material of its watches as it used "Red Gold" and "rose gold" at different times to describe the exact same product.  *See* Dkt. No. 206 at 5-13.  If "Red Gold" was not an accurate descriptor

---

[2] Breitling makes numerous additional misrepresentations.  For example, its claim that Solid 21 represented that its motion to compel Breitling's production would not impact the case schedule or the parties' summary judgment motions (Mot. at 17-18) is demonstrably false.  All Solid 21 represented was that this production would not impact Solid 21's *own* summary judgment motion, which this Court clearly understood because its own motion only implicated Breitling's invalidity case, not Solid 21's affirmative infringement case.  Dkt. No. 214 at 7.  Breitling's claim that this Court's "descriptiveness" ruling on fair use is consistent with the USPTO's (Mot. at 14) is also misleading and nonsensical.  Not only was the USPTO discussing a different mark than the one at issue here, it was also a non-final office action.  *See* Dkt. No. 191 at 13-14. Further, the USPTO's responsibility encompasses issuing or denying trademarks and would have no reason to opine on a fair use issue.

of its watches, then its use could only be for one reason: to exploit the cachet associated with that term, a cachet which Solid 21 spent years building in its RED GOLD® brand.  *Id.* at 12.

## IV.  ADDITIONAL FACTORS WEIGH HEAVILY AGAINST IMPOSING FEES

In addition to Breitling's failure to demonstrate that Solid 21 litigated this case in any exceptionally unreasonable way, numerous other factors overwhelmingly weigh against an imposition of fees.  Solid 21's claims were objectively reasonable; indeed, the case was close. *Zuppardi's Apizza, Inc. v. Tony Zuppardi's Apizza, LLC*, No. 3:10-CV-01363 (RNC), 2014 WL 4841085, at *13 (D. Conn. Sept. 29, 2014) (The "close nature of the legal issues presented … weighs heavily against an award of attorneys' fees.").  Here, it is beyond dispute that this was a close case.  After all, the Court initially ruled in favor of Solid 21 on summary judgment for Breitling's affirmative defenses: fair use and validity of the mark.  Dkt. No. 191 at 22, 26.  Only upon reconsideration did the Court reverse part of its initial ruling and held in favor of Breitling only on the fair use defense.  Dkt. No. 204 at 1.  Moreover, the reasonableness of Solid 21's case is buttressed by the fact that Breitling failed to move to dismiss any of Solid 21's claims.  *See Greenberg I*, 2020 WL 6146617, at *2 (court found it telling that defendant failed to move to dismiss claims at the outset of the litigation) (citing *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, No. 14 Civ. 5213, 2019 WL 4601741, at *3 (S.D.N.Y. Sept. 19, 2019)). On top of this, on summary judgment Breitling did not even challenge Solid 21's affirmative infringement case on whether there was a likelihood of confusion arising from Breitling's unauthorized use of the RED GOLD® mark.  *See generally* Dkt. No. 107.

Second, "the law compels trademark owners to police their marks or risk losing their rights."  *Louis Vuitton I*, 2018 WL 317850, at *3 (citing *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 364-65 (S.D.N.Y. 2003)).  Thus, "a court should proceed cautiously before imposing fees on a trademark owner, lest it present trademark owners with the

Hobson's Choice of either defending their marks and risking punitive attorney's fee awards or turning a blind eye to infringement and dilution and risking the loss of their rights." *Louis Vuitton I*, 2018 WL 317850, at *3.

Solid 21's actions in this case and other similar cases involving the RED GOLD® mark unequivocally demonstrate that it pursued this case for a proper purpose believing its claims to be objectively reasonable: to defend its exclusive right to use the RED GOLD® mark in commerce. *See RBC Nice Bearings, Inc. v. Peer Bearing Co.*, No. 06-cv-1380 (TLM), 2010 WL 1960400, at *2 (D. Conn. May 14, 2010) (entirely appropriate for plaintiff in a trademark case to seek damages and halt defendant's use of the asserted mark). Whereas the paradigmatic case justifying an "exceptional case" finding is one where the plaintiff brings dubious claims in order to extract a nuisance settlement based on the spectre of a defendant incurring potentially high litigation costs, *Greenberg I*, 2020 WL 6146617, at *2, this case is the exact opposite: Solid 21 was willing to test its claims and vindicate its rights at considerable cost, proceeding to summary judgment and to trial if necessary. Indeed, as Breitling has acknowledged, Solid 21 also pursued enforcement actions involving its RED GOLD® mark to the eve of trial against Breitling's other competitors, including Ulysse Nardin. Mot. at 13. Solid 21 also pursued a long-running RED GOLD® case against Hublot of America, which lasted nearly a decade, went up to the Ninth Circuit Court of Appeals (where Solid 21 prevailed), and ultimately resolved on the eve of trial as well.[3] *Id.* at 16-17 n.1. These are hardly the actions of a nuisance plaintiff seeking to extract quick and easy settlement fees. *See Greenberg I*, 2020 WL 6146617, at *2 (plaintiff's willingness to pursue and test its claims at considerable cost to itself weighs against an

---

[3] Solid 21's earlier case against Breitling, which was voluntarily dismissed pursuant to a tolling agreement, also went up on appeal to the Ninth Circuit Court of Appeals, where Solid 21 prevailed. *See supra* Part I.

"exceptional case" finding); *see also Louis Vuitton I*, 2018 WL 317850, at *3 (no basis to conclude that there was litigation abuse by trademark owner where it prevailed in or amicably resolved its trademark enforcement actions). Instead, they reflect the legitimate actions of a trademark owner that has cultivated and invested considerable resources into building a valuable brand for decades – that of Solid 21's collection of luxury watches and jewelry under its RED GOLD® brand. Dkt. No. 147-2, ¶¶ 1-5. And Solid 21's prior success in similar litigation – including in defeating dispositive motions in two separate cases in the Ninth Circuit – confirms the objective reasonableness of its claims, even though this Court ultimately dismissed those claims on summary judgment.

Finally, imposing fees on Solid 21 here would have a chilling effect on smaller business entities seeking to protect their brands from encroachment by much larger ones. Punishing David (Solid 21) for daring to challenge Goliath (Breitling) would encourage future Goliaths to infringe trademarks owned by smaller entities with impunity, knowing that the spectre of attorneys' fees – assuredly trivial for Goliath but much more significant for David – hangs over any potential action by David to protect its rights. *See Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 850 F. Supp. 232, 253 n.11 (S.D.N.Y. 1994) (relevant to consider the disproportionate impact that the imposition of a fee may have on a smaller business or entity as compared to a larger one).

## V.     BREITLING FAILS TO SHOW THAT ITS CLAIMED ATTORNEYS' FEES ARE REASONABLE

Not only has Breitling failed to show that it is justified in receiving attorneys' fees, it has also failed to meet its burden of demonstrating that its claimed fees are reasonable. Breitling submitted attorney billing statements from its prior counsel (Sheppard Mullin, Dkt. No. 220-3) and current counsel (Gordon Rees, Dkt. No. 220-5). In both cases, the entirety of the time entry

descriptions are redacted – the only visible elements are the timekeeper and time expended. While Breitling claims that these redactions were made for the purposes of preserving privilege and protecting confidential information (*see* Dkt. No. 220-2 (Heimbold Decl.), ¶ 11; Dkt. No. 220-4 (Mariam Decl.), ¶ 5), it is implausible that every part of every time entry since 2019 contained privileged or confidential information.  Breitling has simply made no attempt to limit its redactions to only those portions necessary to preserve such privilege or confidentiality.[4] Breitling's indiscriminate redactions have effectively denied Solid 21 any meaningful opportunity to oppose these time entries as Solid 21 has no idea what is contained therein.

This is extremely problematic as the redactions hide many potential problems.  For example, courts have frowned upon the practice of "block billing," vague time entry descriptions, as well as an excessive number of attorneys performing the same task, among other problematic billing issues.  *See Seong Soo Ham v. Sushi Maru Express Corp.*, 736 F. App'x. 19, 20 (2d Cir. 2018); *Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558(GEL), 2008 WL 1166309, at *5-8 (S.D.N.Y. Apr. 7, 2008).  Solid 21 also has no way of knowing which time entries resulted from motion practice necessitated by Breitling's own objectionable conduct.  *See supra* p. 5-6 (this Court finding that Breitling shirked its discovery obligations and compelling Breitling to produce improperly withheld documents).  Solid 21 also has no way of knowing which time entries resulted from motion practice unrelated to the merits of the case, such as Breitling's frivolous sanctions motion.  *See supra* p. 7.  Nor does Solid 21 have any idea which time entries resulted from non-Lanham Act claims, which Breitling is not entitled to fees for. *See Manufacturers Techs., Inc. v. Cams, Inc.*, 728 F. Supp. 75, 86 (D. Conn. 1989) (court

---

[4] As there is a standing protective order in place (Dkt. No. 5), Breitling has no justification for withholding confidential information from its opposing party.

declined to permit party to use CUPTA as a vehicle to recover attorneys' fees under the Lanham Act).[5]  Nor does Solid 21 have any idea which time entries resulted from motions that were entirely unnecessary.  *See* Dkt. No. 185 at 1:5, 24:12-17, *generally* Dkt. No. 143 (Breitling filing a motion to exclude the testimony of Solid 21's expert *after* Breitling discovered that the expert had passed away and long before any such motion was due).  Breitling's wholesale redactions justify reducing or denying its claimed fees.  *See Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 31 (N.D.N.Y. 2015) (collecting cases where fees were reduced because time records were "so thoroughly redacted that the Court could not reasonably review them").

In addition, the billing rates for Breitling's attorneys are unusually high.  In particular, Breitling's former attorneys at Sheppard Mullin disclose hourly rates of $770 for partners (Mr. Heimbold and Ms. Pietrini) (*see, e.g.*, Dkt. No. 220-3 at 11), $650-685 for associates (Mr. Aigboboh and Mr. Bost[6]) (*see, e.g.*, *id.* at 25), and a wide range of $80 to over $600 for other individuals not identified or described in Mr. Heimbold's declaration (*id.*).  These rates far exceed the rates typically considered "reasonable" for comparable attorneys in this district.  *See KX Techs., LLC  v. Zuma Water Filters, Inc.*, 3:16-cv-01433 (CSH), 2018 WL 3302589, at *6 (D. Conn. July 5, 2018) (discussing reasonable hourly rates for intellectual property attorneys and collecting cases).

Finally, the unreasonableness of Breitling's attorneys' fees is clearly evident considering their total fees sought: more than $1.5 million.  Dkt. No. 220-2, ¶ 13; Dkt. No. 220-4, ¶ 4.  Thus far, this case has proceeded to summary judgment but not to trial.  According to the American

---

[5] While the Court held that Solid 21's CUPTA claim was wholly derivative of its trademark infringement claim under the Lanham Act (Dkt. No. 218 at 4), Breitling's redactions prevent any way of knowing whether its time entries for the CUPTA claim also reflected this.

[6] While Breitling discloses Mr. Bost as a "special counsel," he may have been an associate as of the dates work was billed.

Intellectual Property Law Association ("AIPLA") Report of the Economic Survey 2021, the median cost for a trademark litigation before it goes to trial ranges from $150,000 to $588,000[7], far lower than Breitling's claimed amount.  *See* Hecht Decl., Ex. A at 63.  The unreasonableness of Breitling's fees is underscored by hiding its time entries behind wholesale redactions, ensuring that Solid 21 is unable to meaningfully evaluate and challenge the reasonableness of the claimed fees.

## VI.    BREITLING'S BILL OF COSTS IS PREMATURE AND DEFECTIVE

As an initial matter, Breitling's bill of costs is premature.  Under L.R. 54(a)(1), a party seeking costs shall do so within fourteen days *after* the expiration of the appeal period or upon the issuance of a mandate by the federal appellate Court.  The Court entered judgment on January 27, 2022.  Dkt. No. 219.  Solid 21's deadline for filing a notice of appeal was on February 28, 2022, Fed. R. App. P. 4(a)(1), but it filed this notice on February 23, 2022.  Dkt. No. 222.  As neither of the events defined in L.R. 54(a)(1) have occurred, Breitling's motion for a bill of costs should be denied as premature.  *Ceraso v. Motiva Enters., L.L.C.*, No. Civ. 3:01CV193 PCD, 2002 WL 32175199, at *3 (D. Conn. May 28, 2002) (denying motion for costs as premature as appeal was pending and thus no mandate had issued); *Raspberry Junction Props., LLC v. Edwards Family P'ship, LP*, No. 3:18-cv-01243-AWT, Dkt. No. 115 (D. Conn. Jan. 5, 2022) (same).

Breitling also claims costs which are disallowed.  Local Rule 54 identifies items that are taxable as costs, as well as those that are not.  Breitling's itemization of costs includes many

---

[7] These amounts include expenses and costs in addition to attorneys' fees.  Hecht. Decl., Ex. A at 60.

items which are excluded, including service of summons and subpoena[8] ($9,096.50), ESI hosting services ($1,439.11), demonstrative exhibits ($204.38), telephone charges ($77.06), express delivery services like courier fees ($947.08), and legal research ($252.00). *See* Dkt. No. 220-7 at 3. Breitling's claimed costs for transcript fees are also excessive ($29,232.63) as one original and one certified transcript is permitted, but Breitling has impermissibly included costs such as expedited transcripts, exhibit share, additional transcripts (such as roughs), video services, and electronic delivery and handling. *See, e.g.*, 220-6 at 12. This amount would be $12,588.00[9] with such items removed. These amounts should be disallowed should the Court find that the bill of costs is not premature.

## VII.    CONCLUSION

A party in a Lanham Act case is not entitled to attorneys' fees merely because they prevailed – they must demonstrate that there is something more that constitutes an "exceptional case." Breitling has failed to do so here, which means they are not only ineligible for fees under the Lanham Act, but also ineligible under the Court's inherent power. *See East Coast Sheet Metal*, 2015 WL 4603463, at *3. Not only has this Court not made any finding of objectionable conduct by Solid 21 during the course of this litigation, but this was also a close case – one which Solid 21 is unsurprisingly appealing – that it pursued in good faith and with knowledge of its prior success in defeating dispositive motions in similar litigations. Thus, Solid 21 respectfully requests that this Court deny Breitling's motion for fees and costs in its entirety.

---

[8] In particular, document subpoenas (*See, e.g.*, Dkt. No. 220-6, Ex. B-5) are excluded under L.R. 54.

[9] The transcripts for Aire Vol. 1 (Dkt. No. 220-6, Ex. B-3 at 10) and Ericksen (*id.* at 15) were reduced to $5.95 per page as that is Veritext's normal rate instead of expedited.

Dated: February 24, 2022

                                   _/s/ David L. Hecht_
David L. Hecht (*pro hac vice*)
Conor McDonough (*pro hac vice*)
Yi Wen Wu (*pro hac vice*)
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
P: (212) 851-6821
dhecht@hechtpartners.com
cmcdonough@hechtpartners.com
wwu@hechtpartners.com

Jeffrey W. Kennedy
Milano & Wanat LLC
471 East Main Street
Branford, CT 06405
P: (203) 315-7000
jkennedy@mwllc.us

*Counsel for Plaintiff Solid 21, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, David L. Hecht, hereby certify that on February 24, 2022, I served a true and correct copy of the foregoing **PLAINTIFF SOLID 21, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS** to counsel of record via electronic filing.

*/s/ David L. Hecht*
David L. Hecht