# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SOLID 21, INC.,                                       :
     Plaintiff,                                 :
                                                :  C.A. NO. 3:19-CV-00514-MPS
v.                                                    :
                                                :
BREITLING U.S.A., INC.; BREITLING SA;                 :
AND BREITLING AG,                                     :  March 9, 2022
     Defendants.                               :
                                                :

**DEFENDANTS AND COUNTERCLAIMANTS BREITLING U.S.A., INC.
AND BREITLING SA'S (A/K/A BREITLING AG) REPLY IN SUPPORT OF THEIR
<u>MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

# TABLE OF CONTENTS

**Page**

I.    LEGAL ARGUMENT ................................................................................................. 2

    A.    Breitling Has Shown its Entitlement to Fees and Costs. ............................................ 2

    B.    Plaintiff Has Known of Breitling's Non-Actionable Fair Use of the Term "Red Gold" Since 2011. .................................................................................................. 3

    C.    The Magistrate's Discovery and Sanctions Motions Orders Did Not Validate Plaintiff's Conduct. .................................................................................................. 5

    D.    The Court's Ruling Granting Breitling's Motion for Summary Judgment on Fair Use Was Not a Close Call. ................................................................................. 7

    E.    Breitling's Fees Are Reasonable. ............................................................................. 9

    F.    Breitling Is Entitled to Recover Its Costs Under the Lanham Act. ........................... 10

II.   CONCLUSION ..................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*4 Pillar Dynasty LLC v. New York & Co., Inc.*,
   933 F.3d 202 (2d Cir. 2019) ................................................................................ 2, 3

*Beijing Daddy's Choice Sci. & Tech. Co. v. Pinduoduo Inc.*,
   No. 18 CIV. 6504 (NRB), 2020 WL 729518 (S.D.N.Y. Feb. 13, 2020) ................................ 3, 5

*Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*,
   212 F. Supp. 2d 226 (S.D.N.Y. 2002) ...................................................................... 10

*E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
   No. 12-CV-517-LM, 2015 WL 4603463 (D.N.H. July 30, 2015)........................................... 2

*GAKM Res. LLC v. Jaylyn Sales Inc.*,
   No. 08 CIV. 6030 (GEL), 2009 WL 2150891 (S.D.N.Y. July 20, 2009) ................................ 10

*Manhattan Review LLC v. Yun*,
   No. 16 Civ. 0102 (LAK) (JCF), 2017 WL 11455317 (S.D.N.Y. Sept. 21, 2017),
   *aff'd*, 919 F.3d 149 (2d Cir. 2019),
   *aff'd*, 765 F. App'x 574 (2d Cir. 2019)................................................................. 3

*Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*,
   223 F.3d 1143 (10th Cir. 2000) ............................................................................ 1

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*,
   771 F.2d 521 (D.C. Cir. 1985) ............................................................................. 1

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)................................................................................... 1, 2, 3

*Robinson v. Lopez*,
   2003 WL 23162906 (C.D. Cal. Nov. 24, 2003)............................................................. 10

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
   909 F.3d 519 (2d Cir. 2018) ............................................................................... 2

*Solid 21, Inc. v. Breitling USA Inc.*,
   No. CV 11-0457 GAF PLAX, 2011 WL 2938209 (C.D. Cal. July 19, 2011),
   *rev'd*, 512 F. App'x 685 (9th Cir. 2013).................................................................. 4

*Solid 21, Inc. v. Chopard USA Ltd.*,
   No. 19-CV-3089, 2020 WL 529213 (S.D.N.Y. Feb. 3, 2020)................................................. 9

*Solid 21, Inc. v. Hublot of Am.*,
  685 F. App'x 530 (9th Cir. 2017) ............................................................................. 4

*Solid 21, Inc. v. Movado Retail Grp., Inc.*,
  No. 19-CV-8093, 2020 U.S. Dist. LEXIS 3903 (D.N.J. Jan. 8, 2020) ...................... 9

*Solid 21, Inc. v. Richemont N. Am., Inc.*,
  No. 19 CIV. 1262 (LGS), 2020 WL 3050970 (S.D.N.Y. June 8, 2020) ..................... 8

*Solid 21, Inc. v. Ulysse Nardin, USA Inc.*,
  No. 19-CV-80474, 2019 WL 7933684 (S.D. Fla. Dec. 12, 2019) ............................. 9

*Tri-Star Pictures, Inc. v. Unger*,
  42 F. Supp. 2d 296 (S.D.N.Y. 1999) ...................................................................... 10

*Yankee Candle Co. v. Bridgewater Candle Co., LLC*,
  140 F. Supp. 2d 111 (D. Mass.),
  *aff'd*, 259 F.3d 25 (1st Cir. 2001) ......................................................................... 10

*Zuppardi's Apizza, Inc. v. Tony Zuppardi's Apizza, LLC*,
  No. 3:10-CV-01363 RNC, 2014 WL 4841085 (D. Conn. Sept. 29, 2014) ................ 8

**Statutes**

15 U.S.C. § 1117(a) ................................................................................................... 1, 2, 10

**Rules**

Fed. R. of Civ. P. 54................................................................................................... 1, 10

Local Rule 54 ................................................................................................................. 1

Defendants and counterclaimants Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG) (collectively, "Breitling") file this Reply in Support of their Motion for Fees and Costs ("Motion") (ECF No. 220), under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), Fed. R. of Civ. P. 54, and Local Rule 54, for an award of prevailing party reasonable attorneys' fees and expenses it incurred in connection with its successful defense in this action, and would respectfully show the Court as follows:

Plaintiff Solid 21, Inc. ("Plaintiff" or "Solid 21") conflates the standard for exceptionality with sanctionable conduct, apparently urging the Court that because no sanctions were granted in this case, then the case is not exceptional. But this position was expressly rejected by the Supreme Court as improperly inflexible and inconsistent with the statutory language of the Lanham Act. O*ctane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 555 (2014) ("sanctionable conduct is not the appropriate benchmark."). The standard requires far less: a district court may award fees where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 555 (citing *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985) ("[W]e think it fair to assume that Congress did not intend rigidly to limit recovery of fees by a [Lanham Act] defendant to the rare case in which a court finds that the plaintiff 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'.... Something less than 'bad faith,' we believe, suffices to mark a case as 'exceptional'"")). The law allows the award of fees to a prevailing party in an "exceptional" case—defined "simply [as] one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC*, 572 U.S. at 554. And, to be sure, even if the case has underlying merit but is pursued in a "meritless or improper manner," attorneys' fees are appropriate. *Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1149 (10th Cir. 2000).

Plaintiff posits that an award of fees and costs to Breitling would be a windfall, but in reality, allowing Breitling to recoup its fees and costs incurred in defending against this suit serves the objectives of the Lanham Act's fee-shifting provision, including compensation and deterrence of

years' long litigation notwithstanding Breitling's case of fair use that Plaintiff has been on notice of since it first sued Breitling in 2011. Plaintiff touts its well-documented history of suing nearly all of the major brands in the watch industry over the generic and descriptive term "red gold," with most settling before trial. Breitling had the mettle to defend its position on the merits and prevail—particularly when Plaintiff tanked any chances of reasonable settlement when it intentionally caused to be published an offending article about Breitling right before a settlement conference was to be scheduled—and the circumstances of this litigation make this case exceptional, warranting an award of fees and costs to Breitling.

## I.    LEGAL ARGUMENT

### A.    Breitling Has Shown its Entitlement to Fees and Costs.

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Under Section 35(a), an "exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d Cir. 2018) (quoting *Octane Fitness, LLC*, 572 U.S. at 554. Here, Plaintiff misstates the applicable evidentiary standard, claiming that "clear and convincing evidence" is required for an award of fees under the Lanham Act. Opposition at 4 (citing *E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-CV-517-LM, 2015 WL 4603463, at *5 (D.N.H. July 30, 2015)). Rather, the correct "exceptional" standard "demands a simple discretionary inquiry; it imposes no specific evidentiary burden." *Octane Fitness*, 572 U.S. at 557.

When evaluating whether a case is "exceptional," district courts have "wide latitude" to "engage in a 'case-by-case exercise of their discretion, considering the totality of the circumstances.'" *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 215 (2d Cir. 2019) (citing *Octane Fitness*,

572 U.S. at 554).   The exceptionality analysis examines "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *4 Pillar Dynasty LLC*, 933 F.3d at 215 (citing *Octane Fitness*, 572 U.S. at 554 n.6). An award of fees and costs to prevailing defendants "is necessary to compensate . . . for the resources expended in defending . . . [the] action" and "to deter plaintiff and others from pursuing similarly frivolous claims going forward." *Beijing Daddy's Choice Sci. & Tech. Co. v. Pinduoduo Inc.*, No. 18 CIV. 6504 (NRB), 2020 WL 729518, at *5 (S.D.N.Y. Feb. 13, 2020) (citing *Manhattan Review LLC v. Yun*, No. 16 Civ. 0102 (LAK) (JCF), 2017 WL 11455317, at *4, 7 (S.D.N.Y. Sept. 21, 2017) (even where "the merits of the ... Lanham Act claims have not been addressed ... the goals of compensation and deterrence are furthered by compensating the defendants for litigating against claims that should not have been brought in the first place")), *aff'd*, 919 F.3d 149 (2d Cir. 2019),  *aff'd*, 765 F. App'x 574 (2d Cir. 2019).

Breitling has shown that Plaintiff's litigation conduct and positions were objectively unreasonable and justify an award of fees, even if Plaintiff's tactics were not sanctionable, which is not the standard in any event.

### B.    Plaintiff Has Known of Breitling's Non-Actionable Fair Use of the Term "Red Gold" Since 2011.

In addition to maintaining that the term "red gold" is and has always been generic in the watch industry for a gold and copper metal alloy—a position confirmed by the Federation of the Swiss Watch Industry, whose membership includes famous watchmaker brands Rolex, Omega, Cartier, Longines, Baume & Mercier, Gucci, Movado, Audemars Piguet, Tag Heuer, and Patek Philippe—Breitling has always maintained fair use of the term.  *See* ECF No. 117-4, Exhibit 2 to Whitelock Decl. (amicus curiae brief of Federation of the Swiss Watch Industry in support of watchmaker Hublot, *et al.*).

Indeed, in 2011, when Plaintiff first sued Breitling along with several other well-known watch brands in the U.S. District Court for the Central District of California, Breitling moved to dismiss on

grounds including that Plaintiff's claims were non-actionable fair use.  *See Solid 21, Inc. v. Breitling USA Inc.*, No. CV 11-0457 GAF PLAX, 2011 WL 2938209, at \*6 (C.D. Cal. July 19, 2011) (the "California Action"), *rev'd*, 512 F. App'x 685 (9th Cir. 2013).  The district court in this earlier case granted Breitling's motion to dismiss on the grounds that the "red gold" mark was generic, but the Ninth Circuit reversed, holding that such a determination could not be made at the pleadings stage. Similarly, the Ninth Circuit in *Solid 21, Inc. v. Hublot of Am.*, 685 F. App'x 530, 531 (9th Cir. 2017) reversed the district court's holding on the issue of genericness but never reached the issue of fair use, which was not raised in that case.  Thus, in neither of these prior cases did the district courts or the Ninth Circuit ever reach the issue of fair use, so it is misleading for Plaintiff to cite them for the proposition that its litigation positions and claims *as to fair use* were validated there.  They were not.

In this case, Plaintiff could proffer no evidence that Breitling ever knew of Plaintiff before it filed suit in 2011 and before Breitling first started using the term "red gold" to identify and describe the gold copper alloy used in Breitling watches.  Plaintiff persisted in disputing that red gold is a metal alloy until it lost on summary judgment and completely reversed position, conceding that "red gold" *is* a metal material and that Breitling was allegedly describing products made of red gold when they were not.  ECF No. 210, Plaintiff's Response to Court Order Re: Fair Use, at 3 ("Breitling advertises their watches as 'Red Gold' even though they are actually made of 'Rose Gold.'").  Plaintiff's about-face resulted not only from Plaintiff's attempt to manufacture an unpled and unsupported claim for false advertising in order to survive summary judgment, but it was also necessarily compelled by the truth of the centuries' old meaning of this term as an alloy, as shown by Breitling's historical evidence that Plaintiff did not meaningfully dispute.  *See, e.g.*, ECF No. 123-1, Plaintiff's Statement in Opposition to Defendants' Statement of Facts, at pp. 4-8, Defendants' Statement No. 7 and Plaintiff's Response to Statement No. 7; *see also id.* at p. 13, Defendants' Statement No. 22 ("Plaintiff unequivocally acknowledged that it used 'Red Gold' to identify an 'amber hue gold alloy' when it sued

13 defendants for trademark infringement in its first lawsuit in 2010, referring to 'Red Gold' as a 'metal alloy gold derivative with an amber hue.'"), Plaintiff's Response to Statement No. 22 ("Undisputed.").

On the record before this Court, it was objectively unreasonable for Plaintiff to decry the fact that "red gold" is a metal alloy in light of the evidence that Plaintiff did not and could not effectively dispute, only to later concede this definition after summary judgment and after causing Breitling to litigate the issue at substantial effort and expense. *See, e.g.*, *Beijing Daddy's Choice Sci. & Tech. Co.*, 2020 WL 729518 at *4 (granting fees to a defendant under the Lanham Act and finding objective unreasonableness in plaintiff's litigation position, and stating "[w]here, as here, information becomes known to a plaintiff that reveals the implausibility of allegations pled 'on information and belief,' any decision not to disclose that information is, at best, highly misleading.").

### C.     The Magistrate's Discovery and Sanctions Motions Orders Did Not Validate Plaintiff's Conduct.

Plaintiff contends that the Court already addressed the character of its conduct in litigation, first in its discovery ruling on April 27, 2021 (ECF No. 155) (the "Discovery Ruling"), and then in its written order of July 27, 2021 (ECF No. 186) on Breitling's Motion for Sanctions.  But the portion of the Discovery Ruling cited by Plaintiff was part of the Court's consideration of whether to allow Plaintiff to obtain and compel further discovery on a motion brought *after* the discovery deadline had already passed, *incredibly long after* the discovery objections and responses at issue were served, and concluded nothing about the propriety of its conduct.  *See* Discovery Ruling, at 18:25-20:17 ("And now what is before me is a motion essentially to compel compliance with Request for Production No. 1 that the Plaintiff served in this case on August 20th of 2019.").

Throughout this litigation, Plaintiff has sensationalized the Discovery Ruling by taking it grossly out of context, precipitating Defendants' sanctions motion and torpedoing any potential settlement discussions between the parties, as Magistrate Judge Vatti himself observed during the hearing on Breitling's Motion for Sanctions.  *See* Transcript of Hearing on Motions for Sanctions, ECF

No. 184, at 7 (Magistrate Judge Vatti: "I will agree that shortly after we have [sic] a telephonic status conference where I suggest that the parties take a crack at settlement and everybody agreed to do that, and the case was referred to Judge Richardson for the purpose of scheduling a settlement conference, it probably was not a very good idea to provide any information for purposes of the press release that essentially poked Breitling in the eye. It may very well have poisoned the well for settlement, which it looks like it did."); 10 (Judge Vatti: "I see your [Defendants'] point that parts of that transcript [of the Discovery Ruling] were taken by the author of this article, and there's a lot of missing context to comments that I made.  Obviously, *I did not make any finding that Breitling attempted to hide information*.") (emphasis added).

    In any event, despite a firm basis to object to the Discovery Ruling, Breitling complied, producing largely irrelevant daily sales and inventory lists and in-store customer traffic reports spanning a fourteen year period as ordered.  ECF No. 153; Pangan Decl., ECF No. 212-1, ¶ 3.  Indeed, Plaintiff used virtually none of this supplemental production, other than three lines selectively excerpted, again out-of-context and mischaracterized, from two large spreadsheets produced, in support of its own motion for reconsideration, which the Court denied.  Plaintiff's Motion for Reconsideration, Exhibits 3-5, ECF No. 206, 206-4 to 206-6; Order Denying Plaintiff's Motion for Reconsideration, ECF No. 216.  In other words, Plaintiff pressed for and subjected Breitling to substantial effort and expense to produce supplemental documents, which had no utility in the parties' summary judgment motions – or this case generally.  Plaintiff cannot now complain about Breitling's request for recovery of its fees and costs associated with producing such documents at Plaintiff's urging.

    Moreover, Plaintiff does not meaningfully address its own failure for months to respond to Breitling's requests for depositions or otherwise participate in discovery, or why Plaintiff took months to secure current counsel's representation in this matter, after Pierce Bainbridge moved to withdraw

and Plaintiff represented to the Court that it was in the process of obtaining counsel. ECF No. 91, 91-1 at ¶ 8; *see also* ECF No. 93.  The result of Plaintiff's conduct was delay and Breitling's incurrence of additional effort simply to get Plaintiff to respond and comply with its discovery obligations.  *See id.* ("[g]iven the number of extensions of the scheduling order the Court has already permitted in this case, it is not inclined to further delay resolution of the case . . .").

> **D.    The Court's Ruling Granting Breitling's Motion for Summary Judgment on Fair Use Was Not a Close Call.**

In granting Breitling's Motion for Summary Judgment upon reconsideration, the Court acknowledged that it had "overlooked both applicable law and portions of the summary judgment record in determining that there were genuine disputes of material fact as to fair use in my September 27, 2021 summary judgment ruling; on reconsideration, I found that there were not and granted Breitling summary judgment." *See* ECF No. 216 (citing ECF No. 204).  In ultimately granting summary judgment to Breitling, the Court noted that Plaintiff had proffered no evidence that Breitling sought to "exploit" Plaintiff's alleged good will or "cachet," or otherwise cause confusion as to the source or origin of Breitling's products.  ECF No. 216 at 5-7.  The Court's conclusion was based on Plaintiff's utter lack of evidence to the contrary.  *See id.*  In so ruling, it was not lost on the Court that Plaintiff was (again) taking a wholly contradictory litigation position than it had before: in opposing Breitling's fair use arguments, Plaintiff forcefully argued that Breitling could have used "rose gold" instead of "red gold" to identify and describe that alloy used in its watches, but when the Court granted summary judgment to Breitling on fair use, Plaintiff contended that the two terms were not interchangeable. ECF No. 216 at 8: (The Court: "[S]olid 21's argument that Breitling's use of 'red gold' is 'descriptively misleading,' ECF No. 209 at 15, because it is allegedly using the term to describe its 'rose gold products' contradicts the position Solid 21 took earlier in the case that the two terms were synonymous.") (citing Plaintiff's Opposition to Breitling's Motion for Summary Judgment, ECF No.

123 at 32–33, 37); *see also* ECF No. 123 at 28 (Plaintiff stating that it is a "fact that 'red gold' is not a 'material . . .'").

Contrary to Plaintiff's assertions, it is Breitling who faced with a Hobson's Choice as to whether it could use "rose gold" or "red gold" without spurring a meritless trademark claim by Plaintiff. Under Plaintiff's theory, use of either term by Breitling was a trademark violation, resulting in a "tails, I win" and "heads, you lose" proposition. This was an objectively unreasonable—and disingenuous—position for Plaintiff to take.

Plaintiff's reliance on *Zuppardi's Apizza, Inc. v. Tony Zuppardi's Apizza, LLC*, No. 3:10-CV-01363 RNC, 2014 WL 4841085, at *13 (D. Conn. Sept. 29, 2014), for the proposition that the present case is a close one is inapposite. In *Zuppardi's Apizza*, the dispute centered on the parties' use of the same term as a trademark, and the Court denied summary judgment as to certain claims and issues, which remained for trial due to competing evidence. *See id.* In contrast, here, the Court has granted summary judgment as to all claims in favor of Breitling, precisely because Breitling's use of the term "red gold" is *not* as a mark, but rather fair use, and Plaintiff has not proffered any evidence that comes close to creating a triable issue, much less altering the Court's conclusion.

Finally, Plaintiff's argument that this case was not the "paradigmatic example" of a case where a "plaintiff brings dubious claims in order to extract a nuisance settlement," (Opposition at 10) ignores the undisputed fact that Plaintiff is in fact a serial litigant, having sued numerous famous watch brands over the same claims for the past decade. *See, e.g.*, ECF No. 107-39 (Plaintiff's Complaint filed in U.S. District Court, Central District of California); *Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19 CIV. 1262 (LGS), 2020 WL 3050970, at *1 (S.D.N.Y. June 8, 2020) (trademark case over the term "red gold"); *Solid 21, Inc. v. Chopard USA Ltd.*, No. 19-CV-3089, 2020 WL 529213 (S.D.N.Y. Feb. 3, 2020) (same); *Solid 21, Inc. v. Movado Retail Grp., Inc.*, No. 19-CV-8093, 2020 U.S. Dist. LEXIS 3903 (D.N.J. Jan. 8, 2020) (same); *Solid 21, Inc. v. Ulysse Nardin, USA Inc.*, No. 19-CV-80474, 2019

WL 7933684 (S.D. Fla. Dec. 12, 2019) (same).  And, Plaintiff fails to address its trademark dilution claims, which it simply abandoned and did not even bother opposing Breitling's summary judgment motion on the grounds that Plaintiff could not make the requisite showing of fame.  *See* ECF No. 191 at 26-27; ECF No. 107-1 at 23-26.  Plaintiff's inaction concedes that its dilution claim was categorically meritless.

       **E.**     **Breitling's Fees Are Reasonable.**

Plaintiff's objection to the redaction of Breitling's attorney's fees invoices overlooks that Breitling has offered to make the invoices available for in-camera review by the Court.  Plaintiff also complains about the rates charged, but fails to address the many cases cited by Breitling where courts found similar fees to be usual and customary.  *See* Motion for Fees, ECF No. 220-1 at 22-23.  Plaintiff's reliance on an excerpt from an AIPLA survey of litigation fees and costs in contesting the reasonableness of the total amount of fees and costs incurred by Breitling is improper because the survey excerpt provides no context as to the number of claims asserted in those surveyed cases, the number of parties, the extent of discovery, or the number of motions involved.  AIPLA Survey Excerpt, Hecht Decl., Ex. 1, ECF No. 223-2.  In this case, there were two motions for summary judgment; two motions for reconsideration; disputes over whether attorneys should be allowed to withdraw, sanctions, and discovery; over 500,000 pages of documents produced; and fifteen depositions.  *See* Motion for Fees, ECF No. 220-1 at 22.  Notably, the very same survey cited by Plaintiff cites data only up to 2020, which was an unprecedented year with the pandemic, many business closures, and litigation postponements and deferrals.  *See generally* ECF No. 223-2.  That very same survey, however, lists a median litigation fees and costs total of $1.6 million for 2018, for litigation up to dispositive motions but before trial and appeal.  ECF No. 223-2, at ECF pagination 18.  In any event, the survey lists median amounts for various intellectual property litigation, and by definition, there are and will be cases where the fees exceed the median amounts reported.

Plaintiff also does not address Breitling's cited case law that holds that "negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market." *Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*, 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002); *see also Robinson v. Lopez*, 2003 WL 23162906, at *3 (C.D. Cal. Nov. 24, 2003) ("The actual billing arrangement provides a strong indication of what private parties believe a 'reasonable' fee would be") (citation omitted).

### F.      Breitling Is Entitled to Recover Its Costs Under the Lanham Act.

Plaintiff's assertion that Breitling's bill of costs is premature ignores that Breitling's request for costs was made under the Lanham Act, in addition to Rule 54 of the Federal Rules of Civil Procedure.  As noted in Breitling's moving papers, "[t]he Lanham Act also provides for the award of costs in all cases." *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999) (citing 15 U.S.C. 1117(a)); *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 140 F. Supp. 2d 111, 126 (D. Mass.), *aff'd*, 259 F.3d 25 (1st Cir. 2001) (awarding costs under Section 1117(a) to prevailing defendant).  "[R]outine costs awarded to prevailing parties in trademark and copyright infringement actions" include:

> [F]iling fees; … fees for service of the summons and complaint and a subpoena; … fees for court reporters and transcripts; … copying fees; … legal research fees; … travel expenses; [the costs of] a certificate of good standing; [the costs of a] pro hac vice admission; and… postage.

*GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08 CIV. 6030 (GEL), 2009 WL 2150891, at *10 (S.D.N.Y. July 20, 2009) (citations omitted).  These awardable costs also include e-discovery hosting and processing fees.  Motion for Fees, ECF No. 220-1 at 24-25.  As such, Breitling's request for these costs are entirely proper and consistent with allowable costs under the law.

## II.      CONCLUSION

Based on the foregoing, Breitling respectfully requests an award of reasonable fees and costs in this case, which is exceptional for the reasons outlined in the moving papers and herein.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By   /s/ Craig J. Mariam
        Thomas C. Blatchley (ct25892)
        Craig J. Mariam (*pro hac vice*)
        Hazel Mae B. Pangan (*pro hac vice*)
        Gordon & Rees LLP
        95 Glastonbury Blvd., Ste. 206
        Glastonbury, CT 06033
        Phone: (860) 494-7525
        Fax: (860) 560-0185
        Email: tblatchley@grsm.com

        Attorneys for Defendants and Counterclaimants
        Breitling U.S.A., Inc. and
        Breitling SA (a/k/a Breitling AG)

## CERTIFICATION OF SERVICE

I hereby certify that on March 9, 2022, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.

        By   /s/ Craig J. Mariam
                Craig J. Mariam

1198309/65307061v.1